### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BOOKENDS & BEGINNINGS LLC,<br><br>                             Plaintiff,<br><br>       v.<br><br>AMAZON.COM, INC., HACHETTE BOOK GROUP, INC; HARPERCOLLINS PUBLISHERS L.L.C.; MACMILLAN PUBLISHING GROUP, LLC; PENGUIN RANDOM HOUSE LLC; SIMON & SCHUSTER, INC.,<br><br>                       Defendants. | Case No. 1:21-cv-02584-GHW-DCF<br><br><br>**ORAL ARGUMENT REQUESTED** |

### MEMORANDUM OF LAW IN SUPPORT OF PUBLISHER DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT <u>AND TO STRIKE PLAINTIFF'S CLASS ALLEGATIONS</u>

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...................................................................................................1

LEGAL STANDARD..................................................................................................................3

ARGUMENT .............................................................................................................................3

I.     Count II: Plaintiff Fails to Adequately Allege A Conspiracy under Section 1 of the Sherman Act......................................................................................................3

         A.     Plaintiff Does Not Allege Direct Evidence Of An Agreement Among Publisher Defendants.........................................................................................4

         B.     Plaintiff Does Not Adequately Allege Parallel Conduct Or "Plus Factors" That Give Rise To A Plausible Inference Of A Conspiracy ....................................4

         C.     Plaintiff Does Not Adequately Allege A "Hub-And-Spoke" Conspiracy..............8

II.     Count IV: Plaintiff Does Not Adequately Allege A Conspiracy To Monopolize Under Section 2 Of The Sherman Act ...................................................................9

III.     Counts II and IV: Plaintiff Fails to Plausibly Allege Antitrust Injury for its Sherman Act Claims ............................................................................................10

         A.     There Is No Presumption of Antitrust Injury for Sherman Act Claims................10

         B.     Plaintiff's Alleged Injury Is Nothing More Than Lawful Price Competition.......................................................................................................11

IV.     Counts II and IV: Plaintiff Fails to Plausibly Plead Harm to Competition Under the Sherman Act...................................................................................................12

         A.     Plaintiff Pleads No Facts Directly Showing Harm to Competition ......................13

         B.     Plaintiff Does Not Plausibly Allege Publisher Defendants Have Market Power.................................................................................................................15

V.     Count I: Plaintiff Fails to Adequately Allege a Price Discrimination Claim Under the Robinson-Patman Act ......................................................................................15

         A.     Plaintiff Does Not Merit the Morton Salt Presumption for Competitive Injury..................................................................................................................16

         B.     Any Alleged Price Differences Are Lawful Under Materially Different Contracts or Legitimate Functional Discounts .................................................17

         C.     Plaintiff Fails to Allege Reasonably Contemporaneous Sales..............................20

         D.     Plaintiff's Allegations Do Not State a Claim for Goods of Like Grade and Quality...............................................................................................................21

         E.     Plaintiff's Claim Is Barred by the Meeting Competition Defense........................22

MOTION TO STRIKE .............................................................................................................23

I.     Count I: Robinson-Patman Act Claims Present Individualized Inquiries that Cannot Be Class Actions as a Matter of Law ..................................................................23

CONCLUSION........................................................................................................................25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*A.A. Poultry Farms, Inc. v. Rose Acre Farms, Inc.*,
    881 F.2d 1396 (7th Cir. 1989) ..............................................................................18

*ABC Distrib., Inc. v. Living Essentials LLC*,
    No. 15-02064, 2017 WL 2603311 (N.D. Cal. Apr. 7, 2017)....................................23

*Abernathy v. Bausch & Lomb Inc.*,
    97 F.R.D. 470 (N.D. Tex. 1983) ............................................................................24

*Aerotec Int'l, Inc. v. Honeywell Int'l, Inc.*,
    836 F.3d 1171 (9th Cir. 2016) ..............................................................................18

*Anderson News, L.L.C. v. Am. Media, Inc.*,
    680 F.3d 162 (2d Cir. 2012).....................................................................................4

*Arista Recs. LLC v. Lime Grp. LLC*,
    532 F. Supp. 2d 556 (S.D.N.Y. 2007)....................................................................12

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...................................................................3, 16, 20, 22

*Atl. Richfield Co. v. USA Petroleum Co.*,
    495 U.S. 328 (1990).............................................................................10, 11, 12

*Atalanta Trading Corp. v. F.T.C.*,
    258 F.2d 365 (2d Cir. 1958)....................................................................................21

*Belfiore v. N.Y. Times Co.*,
    826 F.2d 177 (2d. Cir. 1987)....................................................................................9

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)........................................................................3, 4, 8, 15

*Best Brands Beverage, Inc. v. Falstaff Brewing Corp.*,
    842 F.2d 578 (2d Cir. 1987)....................................................................................16

*Best Effort First Time, LLC v. Southside Oil, LLC*,
    No. 17-825, 2019 WL 1427741 (D. Md. Mar. 29, 2019) .......................................18

*Black Gold, Ltd. v. Rockwool Indus., Inc.*,
    729 F.2d 676 (10th Cir. 1984) ...............................................................................20

*Bookhouse of Stuyvesant Plaza, Inc. v. Amazon.com, Inc.*,
    985 F. Supp. 2d 612 (S.D.N.Y. 2013).....................................................4, 5, 12, 15

*Boro Hall v. Metro. Tobacco Co.*,
   74 F.R.D. 142 (E.D.N.Y. 1977) ...................................................................................24

*Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*,
   509 U.S. 209 (1993)...........................................................................................15, 17

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*,
   429 U.S. 477 (1977)......................................................................................10, 11, 12

*Cap. Ford Truck Sales, Inc. v. Ford Motor Co.*,
   819 F. Supp. 1555 (N.D. Ga. 1992) ............................................................................20

*Cash & Henderson Drugs, Inc. v. Johnson & Johnson*,
   799 F.3d 202 (2d Cir. 2015)........................................................................................16

*Chen-Oster v. Goldman, Sachs & Co.*,
   877 F. Supp. 2d 113 (S.D.N.Y. 2012)....................................................................23, 25

*Clark v. H.P. Hood Inc.*,
   No. 83-0205, 1985 WL 6263 (D. Mass. Sept. 5, 1985) ...............................................24

*Coal. for a Level Playing Field, L.L.C. v. AutoZone, Inc.*,
   737 F. Supp. 2d 194 (S.D.N.Y. 2010)............................................................... *passim*

*Coal. for a Level Playing Field, L.L.C. v. AutoZone, Inc.*,
   813 F. Supp. 2d 557 (S.D.N.Y. 2011).........................................................................19

*Dickson v. Microsoft Corp.*,
   309 F.3d 193 (4th Cir. 2002) .......................................................................................8

*Drug Mart Pharmacy Corp. v. Am. Home Prods. Corp.*,
   472 F. Supp. 2d 385 (E.D.N.Y. 2007), *amended*,
   No. 93-5148, 2007 WL 4526618 (E.D.N.Y. Dec. 20, 2007)........................................22

*Elecs. Commc'ns Corp. v. Toshiba Am. Consumer Prods., Inc.*,
   129 F.3d 240 (2d Cir. 1997).........................................................................................9

*FLM Collision Parts, Inc. v. Ford Motor Co.*,
   543 F.2d 1019 (2d Cir. 1976).....................................................................................18

*Gen. Tel. Co. of Sw. v. Falcon*,
   457 U.S. 147 (1982)...................................................................................................23

*Genesee Vending, Inc. v. Lorillard Tobacco Co.*,
   No. 04-60091, 2004 WL 3168777 (E.D. Mich. Nov. 2, 2004)......................................24

*Geneva Pharms. Tech. Corp. v. Barr Lab'ys Inc.*,
   386 F.3d 485 (2d Cir. 2004)........................................................................................10

*Gold Strike Stamp Co. v. Christensen*,
   436 F.2d 791 (10th Cir. 1970) ........................................................................24

*Great Atl. & Pac. Tea Co. v. FTC*,
   440 U.S. 69 (1979)............................................................................................22

*In re Inclusive Access Course Materials Antitrust Litig.*,
   No. 20-2946, 2021 WL 2419528 (S.D.N.Y. June 14, 2021) ..............................17

*In re Initial Pub. Offering Sec. Litig.*,
   No. 21-92, 2008 WL 2050781 (S.D.N.Y. May 13, 2008) ...................................23

*K.M.B. Warehouse Distributors, Inc. v. Walker Mfg. Co.*,
   61 F.3d 123 (2d Cir. 1995).................................................................................15

*MacDermid Printing Sols. LLC v. Cortron Corp.*,
   833 F.3d 172 (2d Cir. 2016)...............................................................................13

*Mad Rhino, Inc. v. Best Buy Co.*,
   No. 03-5604, 2008 WL 8760854 (C.D. Cal. Jan. 14, 2008)......................23, 24, 25

*Mayfield v. Asta Funding, Inc.*,
   95 F. Supp. 3d 685 (S.D.N.Y. 2015)..............................................................23, 25

*In re Nine W. Shoes Antitrust Litig.*,
   80 F. Supp. 2d 181 (S.D.N.Y. 2000)..................................................................10

*NYNEX Corp. v. Discon, Inc.*,
   525 U.S. 128 (1998)..........................................................................................13

*O'Connell v. Citrus Bowl, Inc.*,
   99 F.R.D. 117 (E.D.N.Y. 1983).........................................................................23

*Perry v. NYSARC, Inc.*,
   424 F. App'x 23 (2d Cir. 2011) ..........................................................................3

*Planetarium Travel, Inc. v. Altour Int'l, Inc.*,
   97 F. Supp. 3d 424 (S.D.N.Y. 2015),
   *aff'd*, 622 F. App'x 40 (2d Cir. 2015).............................................................4, 13

*Rahman v. Smith & Wollensky Rest. Grp., Inc.*,
   No. 06-6198, 2008 WL 161230 (S.D.N.Y. Jan. 16, 2008) .................................23

*Synthes, Inc. v. Emerge Med., Inc.*,
   No. 11-1566, 2012 WL 4473228 (E.D. Pa. Sept. 28, 2012) ..............................19

*Shak v. JPMorgan Chase & Co.*,
   156 F. Supp. 3d 462 (S.D.N.Y. 2016).................................................................9

iv

*Sw. Paper Co. v. Hansol Paper*,
  No. 12-8721, 2013 WL 11238487 (C.D. Cal. Apr. 15, 2013) ...........................................19, 20

*Texaco Inc. v. Hasbrouck*,
  496 U.S. 543 (1990)...........................................................................................10, 17, 18

*United Mag. Co. v. Murdoch Mags. Distrib., Inc.*,
  146 F. Supp. 2d 385 (S.D.N.Y. 2001).....................................................................21, 24

*United Mag. Co. v. Murdoch Mags. Distrib., Inc.*,
  No. 00-3367, 2001 WL 1607039 (S.D.N.Y. Dec. 17, 2001) ..................................22

*United States v. Apple*,
  952 F. Supp. 2d 638 (S.D.N.Y. 2013).....................................................................5, 7

*United States v. Apple* (*Apple II*),
  791 F.3d 290 (2d Cir. 2015)...........................................................................5, 8, 13

*Woodman's Food Mkt., Inc. v. Clorox Co.*,
  833 F.3d 743 (7th Cir. 2016) .................................................................................22

*In re Zinc Antitrust Litig.*,
  155 F. Supp. 3d 337 (S.D.N.Y. 2016)......................................................................4

**Statutes**

15 U.S.C. § 1 (Sherman Act Section 1) ............................................................... *passim*

15 U.S.C. § 2 (Sherman Act Section 2) ............................................................... *passim*

15 U.S.C. § 13 (Robinson-Patman Act)............................................................... *passim*

**Other Authorities**

FED. R. CIV. P. 8 ........................................................................................................21

FED. R. CIV. P. 12(b)(6) ..............................................................................................3

FED. R. CIV. P. 12(f) ...................................................................................................3

FED. R. CIV. P. 23 ...................................................................................................3, 23

Philip E. Areeda & Herbert Hovenkamp, ANTITRUST LAW: AN ANALYSIS OF ANTITRUST
  PRINCIPLES AND THEIR APPLICATION (4th ed. 2020) ...............................................7

William M. Hannay, *Corp. Counsel's Guide to the Robinson-Patman Act* (2020)......................24

## PRELIMINARY STATEMENT

In its Amended Complaint, Plaintiff attempts to manufacture an antitrust conspiracy out of five independent, vertical agreements, separately negotiated and entered into with Amazon by each Publisher Defendant for the distribution of print books.[1] The Complaint recites that Amazon is a leading book retailer, takes issue with ordinary price competition, and tries to illogically and conclusorily claim that Publisher Defendants conspired with each other and with Amazon to confer a monopoly on Amazon, despite Publisher Defendants resisting Amazon's growing position in the market for decades. This is simply not plausible. After realizing its originally pled Sherman Act conspiracy claims had no basis, Plaintiff tried to repackage them in its Complaint and bolster them with a price discrimination claim under the Robinson-Patman Act. The Complaint, however, is fatally deficient under either statute and must be dismissed.

First, any alleged conspiracy under the Sherman Act fails as a matter of law because the Complaint alleges no direct evidence of an illegal agreement between the Publisher Defendants, nor does it allege parallel conduct and "plus factors" that would support an inference of any horizontal agreement.  The Complaint merely alleges that each Publisher Defendant separately entered into a vertical supply agreement with Amazon over the course of a year. Plaintiff does not, and cannot, point to any communications between Publisher Defendants to support an inference of an unlawful conspiracy. Plaintiff's attempt to paint sporadic third-party news reports as "signals" is groundless; these reports say nothing about Publisher Defendants' agreements with Amazon in the print book market alleged in this case. And Plaintiff's allegations regarding supposed past conspiracies involving a different retailer and an allegedly different market are irrelevant. Quite simply, Plaintiff pleads no facts to plausibly suggest a horizontal agreement

---

[1] *See* ECF No. 65, 66, Plaintiff's Amended Class Action Complaint (the "Complaint" or "Compl."). "Publisher Defendants" refers collectively to Defendants Hachette Book Group, Inc., HarperCollins Publishers LLC, Macmillan Publishing Group LLC, Penguin Random House LLC, and Simon & Schuster, Inc.

among Publisher Defendants, and the Complaint must be dismissed for this threshold failure.

Second, Plaintiff has not pled antitrust injury—a predicate requirement for private antitrust claims. The Complaint is devoid of factual support for alleged price increases or reduced output in print books that resulted from Publisher Defendants' contracts. Instead, Plaintiff—an independent bookstore that buys books from publishers at an alleged 46% discount from list price and then sells them at full undiscounted list price—is upset that Amazon—the largest seller of books—sells books to consumers at lower prices. As a result, Plaintiff alleges that it cannot compete with Amazon on price despite earning **nearly 50% gross profit** on each book. But stopping price competition is not the goal of the U.S. antitrust laws. If Plaintiff had its way, the result would be **higher prices** to consumers. This contravenes the very purpose of the antitrust laws and is not antitrust injury. For similar reasons, Plaintiff's conspiracy claims also fail under the rule of reason because this alleged conduct cannot amount to harm to competition.

Plaintiff's claim under the Robinson-Patman Act ("RPA") likewise fails. Stripped of labels and conclusions, the Complaint does not allege facts to plausibly suggest that any price differences violated the RPA. First, Plaintiff asserts no facts in support of competitive injury—an essential element of an RPA claim. Plaintiff fails to allege that it ever attempted or would have attempted to compete with Amazon on the basis of price or that it wishes to have customers pay any price other than the full list price for books. Next, Plaintiff fails to allege that any alleged price differences were not justified by materially different contracts or functional discounts. Plaintiff also fails to allege other elements, including that it made reasonably contemporaneous purchases of like grade and quality goods. Finally, Plaintiff cannot dispute that Publisher Defendants have a complete defense given that any supposed price differences were offered to legitimately "meet competition." These failures each warrant dismissal of the RPA claim.

If the Court is not inclined to grant dismissal of the RPA claim at this stage, Plaintiff's class allegations for its RPA claim should be struck. Precedent overwhelmingly demonstrates that RPA claims cannot be maintained as class actions because of their necessarily individualized elements and analysis. Plaintiff thus fails to plead a class action as a matter of law, and no amount of discovery can cure this deficiency. The motion to strike the RPA class should be granted.

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead enough facts to allow the court to "reasonabl[y] infer[] that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint "armed with nothing more" than "labels and conclusions" falls short. *Id.* at 678-79. Further, a complaint that pleads facts "merely consistent with" a defendant's liability "stops short of the line between possibility and plausibility." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007). And allegations "that are contradicted by the complaint itself" are not plausible. *Perry v. NYSARC, Inc.*, 424 F. App'x 23, 25 (2d Cir. 2011).

Federal Rule 12(f) allows a court to "'strike from a pleading…any redundant, immaterial, impertinent, or scandalous matter." FED. R. CIV. P. 12(f). Rule 23 permits courts to address class allegations at the pleading stage. Under Rule 23(d)(1)(D), courts can "require that…pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly," and Rule 23(c)(1)(A) instructs courts to address class issues "[a]t an early practicable time." FED. R. CIV. P. 23(d)(1)(D) and (c)(1)(A).

## ARGUMENT

## I.    COUNT II: PLAINTIFF FAILS TO ADEQUATELY ALLEGE A CONSPIRACY UNDER SECTION 1 OF THE SHERMAN ACT

To state a conspiracy claim under Section 1 of the Sherman Act, a plaintiff must first plead "enough factual matter (taken as true) to suggest that an agreement was made." *Twombly*, 550 U.S. at 556. "[A]llegations of parallel conduct that could…just as well be independent action" are not

sufficient. *Id.* at 557. Instead, "proof of joint or concerted action is required." *Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 183 (2d Cir. 2012). Therefore, "the crucial question is whether the challenged anticompetitive conduct stems from independent decision or from an express agreement" consistent with conspiracy. *Twombly*, 550 U.S. at 545. The Complaint fails to meet this threshold pleading requirement and should be dismissed.

### A. Plaintiff Does Not Allege Direct Evidence of An Agreement Among Publisher Defendants

First, the Complaint provides no direct evidence of a horizontal agreement among Publisher Defendants. Plaintiff fails to allege any "specific time, place, or person" involved. *Id.* at 565 n.10; *In re Zinc Antitrust Litig.*, 155 F. Supp. 3d 337, 368 (S.D.N.Y. 2016) (dismissing claim that did "not clearly identify who precisely made th[e] agreement, when it was made, where it was made, or its terms"). The only explicit agreements alleged are vertical distribution agreements independently entered between Amazon and each Publisher Defendant at different times over the course of a year. But individual, vertical agreements do not give rise to a horizontal conspiracy. *See Bookhouse of Stuyvesant Plaza, Inc. v. Amazon.com, Inc.*, 985 F. Supp. 2d 612, 622 (S.D.N.Y. 2013) (failing to link vertical agreements to horizontal conspiracy); *Planetarium Travel, Inc. v. Altour Int'l, Inc.*, 97 F. Supp. 3d 424, 431 (S.D.N.Y. 2015), *aff'd*, 622 F. App'x 40 (2d Cir. 2015).

### B. Plaintiff Does Not Adequately Allege Parallel Conduct Or "Plus Factors" That Give Rise To A Plausible Inference Of A Conspiracy

Plaintiff similarly fails to allege circumstantial evidence of a conspiracy involving Publisher Defendants. Allegations of parallel conduct alone are not sufficient; they "must be placed in a context that raises a suggestion of a preceding agreement." *Twombly*, 550 U.S. at 557. Plaintiff's allegations that each Publisher Defendant reached a separate agreement with Amazon at different times over a year-long period is insufficient to allege parallel conduct. Moreover, Plaintiff must also allege "plus factors," which typically include "a common motive to conspire,

evidence that shows that the parallel acts were against the apparent individual economic self-interest of the alleged conspirators,…evidence of a high level of interfirm communications, and the use of facilitating practices like information sharing." *United States v. Apple* (*Apple I*), 952 F. Supp. 2d 638, 690 (S.D.N.Y. 2013) (citations omitted). Here, Plaintiff's threadbare allegations fail.

**_Interfirm Communications._** Plaintiff pleads no allegations of any direct communications between Publisher Defendants to even suggest a horizontal agreement. Publisher Defendants were under consent decrees for e-books during the alleged period and were required to report certain communications with publishers to the Department of Justice. This is in direct contrast to *Apple* where the defendants and their executives were alleged to be "in constant communication" in-person and by phone. *United States v. Apple* (*Apple II*), 791 F.3d 290, 318 (2d Cir. 2015). Plaintiff's allegations instead resemble those in *Bookhouse* where the Court rejected a conspiracy claim based on "hypothetical discussions or agreements" that "may have involved one or more of the Publishers and Amazon." 985 F. Supp. 2d at 618. Plaintiff's weak claims here fare no better.

**_Signaling._** Plaintiff's "signaling" allegations, pointing to a handful of public news articles reporting that a Publisher Defendant and Amazon reached an agreement, are plainly insufficient. Compl. ¶ 40, n.44. These ordinary business announcements—spread out over a year—say nothing about the specific terms of the individual agreements at issue and contain no language that could possibly give rise to the alleged conspiracy. In fact, the cited third-party news reports focus on e-books, not print books. They do not even address the wholesale model under which print books are distributed (where a bookseller buys the books at wholesale and decides the prices at which it resells them), *id.* ¶ 3, but rather address the agency model used in e-book sales (where a publisher sells to a customer at a price it sets and pays a commission to an agent like Amazon). For example:

- October 2014: ***Publisher's Weekly*** reported that Simon & Schuster "supposedly reached" a "new sales agreement," which allegedly "return[ed] to a version of agency pricing" and

"maintain[ed] the author's share of income generated by *e-book* sales."

- December 2014: ***The Authors Guild*** reported, "Macmillan has reached a multiyear agreement with Amazon," under which "*e-books* will be sold under the agency model."
- March/April 2015: ***Business Insider*** reported that Amazon offered HarperCollins "the same terms for a contract" as it did to other publishers. ***The Authors Guild*** reported that the agreement reflected "a return to 'agency' pricing" and explained that the terms under an agency model affect discounting of *e-books*.
- September 2015: ***The Authors Guild*** reported that Penguin Random House "sign[ed] a new distribution deal with Amazon" as a "version of the 'agency' sales model," which affects "the prices of its *e-books*."

*Id.* ¶ 40 n.44 (emphases added). These alleged "signals" boil down to third-party reports related to different alleged markets, different business and pricing models, and different contracts, with no indication at all of any terms. They cannot possibly constitute actionable "signals" to Publisher Defendants regarding individual, vertical agreements for print books that were independently negotiated with Amazon at different times, let alone any specific, discernable terms.

**<u>Economic Self-Interest</u>.** The Complaint fails to plausibly allege that Publisher Defendants acted against their individual economic self-interests by contracting with the world's largest book retailer. Instead, Plaintiff's allegations explain exactly why it was in each of their ***individual*** interests to enter into ***independent*** vertical agreements with Amazon on terms favorable to Amazon—Amazon's significant buying power. As Plaintiff concedes, "generating sales in the print trade book market," Compl. ¶ 111, is an economic interest. And Plaintiff alleges that Amazon's sales account for "about 50% of the [alleged] retail market for…print books" and "about 90% of the [alleged] online submarket." *Id.* ¶ 118. Further, Plaintiff asserts that "Amazon has the ability to promote or destroy a book in the national marketplace," including by "removing the pre-set purchase…button," "removing the pre-order button," and "showing publishers' titles as out of stock or with delayed shipping times." *Id.* ¶ 51. The Complaint thus explains why it is in each Publisher Defendant's individual interest to contract with Amazon.

**<u>Past Conspiracy</u>.** Nor does Plaintiff's reliance on prior conspiracy allegations suggest a

conspiracy with Amazon now. The Court should not infer a conspiracy here based on alleged past conduct, let alone past conduct with a different retailer (Apple), different products (e-books), and a different sales model (agency). *See* Philip E. Areeda & Herbert Hovenkamp, Antitrust Law: An Analysis of Antitrust Principles and Their Application, ¶ 1421A ("Illegal behavior elsewhere in time or place does not generally allow the inference of an immediate conspiracy.") (4th ed. 2020).

Plaintiff's attempt to cast Publisher Defendants' alleged e-book conspiracy with ***Apple*** as support for its alleged print book conspiracy with Amazon is illogical. The alleged conspiracy with Apple supposedly had the intention of ***restraining*** Amazon. According to Judge Cote, Publisher Defendants had a well-known antipathy for Amazon's growing market power and pricing strategy. *Apple I*, 952 F. Supp. 2d at 648. The allegations here turn that alleged conspiracy upside down. After decades of resisting Amazon's growing position in the market, Plaintiff claims that Publisher Defendants are now conspiring ***with Amazon*** to solidify that position—*i.e.*, ***the exact opposite of what Publisher Defendants allegedly conspired to do with Apple***. Moreover, the prior conspiracy supposedly wrestled pricing power for e-books away from Amazon and the wholesale model by imposing an agency model. But as alleged here, Publisher Defendants sell to Amazon and Plaintiff under the wholesale model, and they are free to discount (though Plaintiff admits that it chooses not to do so). Compl. ¶¶ 3, 55. These allegations collectively undermine Plaintiff's position.

Plaintiff's reference to the supposed *Apple* conspiracy undercuts its claims for yet another reason. In *Apple*, Publisher Defendants entered into consent decrees with DOJ that obligated each of them to submit all e-book agreements entered during the relevant period for regulatory review and to log and submit certain communications between publishers. The existence of these consent decrees, coupled with the close government scrutiny over Publisher Defendants' contracting and communications throughout this entire period, makes any alleged conspiracy among Publisher

Defendants even more implausible.

       ***Amazon Investigations.*** Allegations concerning investigations into ***Amazon's*** conduct in an alleged ***e-book*** market are also irrelevant to Plaintiff's claims against Publisher Defendants in its alleged ***print book*** market. *Id.* ¶¶ 45-46, 61. Insofar as Plaintiff relies on foreign regulators' past investigations into e-books, *id.* ¶¶ 44-45, Plaintiff fails to link any foreign sales to the U.S.—or to print books—and even expressly alleges that "[b]ook retailers located outside of the United States are unable to constrain book pricing in the United States." *Id.* ¶ 75. Moreover, these past investigations target Amazon under a non-U.S. regulatory framework and do not concern Publisher Defendants' conduct. Indeed, Plaintiff does not allege any current investigations into Publisher Defendants' conduct or regarding print books at all. And Plaintiff's allegations regarding current government investigations into Amazon's conduct for e-books sales cannot amount to evidence of ***Publisher Defendants*** conspiring, let alone in a separate alleged market for ***print books***.

       The Complaint is replete with conclusory allegations and antitrust buzzwords lacking any factual context from which the Court could plausibly infer a horizontal agreement among Publisher Defendants. Plaintiff alleges nothing more than individual publishers facing similar market forces and contracting independently with Amazon. *Id.* ¶ 118. Such threadbare allegations fail to nudge Plaintiff's claim "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

### C.  Plaintiff Does Not Adequately Allege A "Hub-And-Spoke" Conspiracy

       Plaintiff pleads no facts supporting an "arrangement[] consist[ing] of both vertical agreements between the hub and each spoke and a horizontal agreement among the spokes." *Apple II*, 791 F.3d at 314. Because Plaintiff fails to plead a horizontal agreement among Publisher Defendants, and any purported "signaling" is belied by the language of the public statements cited by Plaintiff, *see supra*, the allegations amount to nothing more than a "rimless wheel," which cannot state a claim. *See Dickson v. Microsoft Corp.*, 309 F.3d 193, 203-04 (4th Cir. 2002) ("A

rimless wheel conspiracy is one in which various defendants enter into separate agreements with a common defendant, but where the defendants have no connection with one another[.]'").

## II.     COUNT IV: PLAINTIFF DOES NOT ADEQUATELY ALLEGE A CONSPIRACY TO MONOPOLIZE UNDER SECTION 2 OF THE SHERMAN ACT

Plaintiff's Section 2 conspiracy claim against Publisher Defendants fares no better. For a conspiracy to monopolize, Plaintiff must allege "(1) concerted action, (2) overt acts in furtherance of the conspiracy, and (3) specific intent to monopolize." *Elecs. Commc'ns Corp. v. Toshiba Am. Consumer Prods., Inc.*, 129 F.3d 240, 246 (2d Cir. 1997). "The essence of this offense is an agreement entered into with the specific intent of achieving monopoly." *Belfiore v. N.Y. Times Co.*, 826 F.2d 177, 183 (2d. Cir. 1987) (citation omitted). Plaintiff fails to plead each element.[2]

First, as discussed *supra* in Sections I.A-B, Plaintiff does not plausibly allege direct or circumstantial evidence of an agreement among Publisher Defendants. Just as Plaintiff's allegations are insufficient under Section 1, they are equally insufficient under Section 2. For the reasons above, Plaintiff "fails to even allege an agreement" and thus cannot assert a conspiracy to monopolize claim. *Shak v. JPMorgan Chase & Co.*, 156 F. Supp. 3d 462, 482 (S.D.N.Y. 2016).

Second, Plaintiff does not adequately allege that any Publisher Defendant had the specific intent to confer monopoly power on Amazon. Plaintiff's allegations logically undercut this suggestion. As discussed, Plaintiff's references to the alleged *Apple* conspiracy focused on restraining Amazon and resisting its growth. Further, Plaintiff alleges that "[p]ublishers, authors, and booksellers have significant fear because of Amazon's dominance," that Amazon uses "retaliatory tactics against publishers," and that "Amazon has used retaliation…to coerce publishers to accept contractual terms." Compl. ¶ 51. The Complaint thus contradicts the claim

---

[2] In Count III, Plaintiff alleges monopolization under Section 2 of the Sherman Act against Amazon. Thus, Count III does not pertain to Publisher Defendants.

that Publisher Defendants would intentionally seek to confer monopoly power on Amazon, which could then be used against them.[3] This is fatal to Plaintiff's Section 2 claim because "lack of intent by one party…precludes a conspiracy to monopolize." *Geneva Pharms. Tech. Corp. v. Barr Lab'ys Inc.*, 386 F.3d 485, 507 (2d Cir. 2004). Plaintiff's counterintuitive conspiracy should be dismissed.

## III.   COUNTS II AND IV: PLAINTIFF FAILS TO PLAUSIBLY ALLEGE ANTITRUST INJURY FOR ITS SHERMAN ACT CLAIMS

A private plaintiff must allege that it has suffered antitrust injury—an "injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977). This applies "regardless of whether a claim is based on a *per se* violation" or under the rule of reason. *In re Nine W. Shoes Antitrust Litig.*, 80 F. Supp. 2d 181, 189 (S.D.N.Y. 2000). The purpose is to ensure that a "plaintiff can recover ***only*** if the loss stems from a ***competition-reducing aspect or effect*** of the defendant's behavior." *Atl. Richfield Co. v. USA Petroleum Co.* (*ARCO*), 495 U.S. 328, 344 (1990) (emphasis added). Here, Plaintiff fails to allege that it suffered injury from a "competition-reducing aspect" of Publisher Defendants' conduct, and its claims must be dismissed on that basis.

### A.  There Is No Presumption Of Antitrust Injury For Sherman Act Claims

Plaintiff alleges that "[a]n 'injury to competition may be inferred' when 'some purchasers had to pay their supplier substantially more for their goods than their competitors had to pay." Compl. ¶ 119 (citing *Texaco Inc. v. Hasbrouck*, 496 U.S. 543, 559 (1990)). But this presumption is only potentially relevant to certain price discrimination claims under ***the Robinson-Patman Act***. *See Hasbrouck*, 496 U.S. at 559 (discussing a rebuttable presumption of injury under the RPA). It has no application to Plaintiff's Sherman Act conspiracy claims. *Id.*

---

[3] Relatedly, the Association of American Publishers (of which Plaintiff alleges Publisher Defendants are members) and two associations wrote to the House Judiciary Committee, FTC, and DOJ about allegedly anticompetitive contract provisions that Amazon imposed on publishers. The claim that Publisher Defendants colluded to confer a monopoly on Amazon while simultaneously complaining to Congress is self-contradicting. *See Compl.* ¶¶ 15-16.

### B.  Plaintiff's Alleged Injury Is Nothing More Than Lawful Price Competition

Plaintiff's alleged antitrust injury is nothing more than a complaint that Amazon offers lower prices on Publisher Defendants' books while Plaintiff chooses to sell them at full list price. Compl. ¶¶ 53-55. But as the Supreme Court held, "[l]ow prices benefit consumers regardless of how those prices are set, and so long as they are above predatory levels, they do not threaten competition." *ARCO*, 495 U.S. at 340. Plaintiff essentially claims that it lost sales and profits due to price competition from Amazon. Compl. ¶ 56. That is not a "competition-reducing aspect" of Defendants' conduct and "cannot give rise to antitrust injury." *ARCO*, 495 U.S. at 340, 344.

Plaintiff argues that it was harmed by separate, vertical agreements between each Publisher Defendant and Amazon, and Amazon's decision to offer lower prices to consumers for print books compared to other booksellers. Compl. ¶¶ 53-55. But "[t]he antitrust laws…were enacted for the protection of competition, not competitors." *Brunswick,* 429 U.S. at 488. And "[w]hen a firm, or even a group of firms adhering to a vertical agreement, lowers prices but maintains them above predatory levels, the business lost by rivals cannot be viewed as an anticompetitive consequence of the claimed violation." *ARCO*, 495 U.S. at 337. The Complaint essentially seeks to have all booksellers charge the full list price for books, which would result in ***higher prices*** to consumers. This contravenes the foundation of U.S. antitrust law, and it would be "inimical to the purposes of the laws to award damages for the type of injury claimed here." *Brunswick*, 429 U.S. at 488.

In fact, nothing prevents Plaintiff from competing on price with Amazon. Plaintiff and other booksellers are not required by Publisher Defendants (nor does Plaintiff allege that it is) to "use list price as the basis for pricing their books." Compl. ¶ 54. Plaintiff is free to discount its books by any amount, including to match—or beat—the discount that Amazon chooses to offer to consumers. Given that Plaintiff "was not constrained, at least in any anticompetitive way, in setting its own prices or offering its own level of services," any alleged "arrangement did not result in

antitrust injury." *Arista Recs. LLC v. Lime Grp. LLC*, 532 F. Supp. 2d 556, 570 (S.D.N.Y. 2007).

Plaintiff's conclusory allegations that it "cannot afford to compete with Amazon on price" and that the alleged conduct is "driving Amazon's bookseller competitors out of business," Compl. ¶¶ 4, 91, are belied by the Complaint. Plaintiff alleges that it receives a ***46% discount*** from Publisher Defendants off the list price of books. *Id.* ¶ 94. As an example from the Complaint, Plaintiff would purchase *Spy School at Sea* from a Publisher Defendant for $9.71, which is a 46% discount off the $17.99 list price. *Id.* ¶¶ 54, 94. Plaintiff then sells *Spy School at Sea* to consumers at the $17.99 list price. *Id.* ¶ 55. Plaintiff's allegations show Amazon selling the same book at a lower price of $15.99, a $2 discount off the list price. *Id.* ¶ 54. Plaintiff could lower its price to match Amazon's lower price and still earn over $6 in profits on every sale. Instead, Plaintiff alleges that it offers print books at full price ***only***. Plaintiff cannot credibly claim that it is unable to compete on price with Amazon when it never tried to do so. *See Bookhouse*, 985 F. Supp. 2d at 620 ("As to the allegation of restricted price competition, it is entirely conclusory, and plaintiffs do not even allege that they would sell the Publishers' e-books more cheaply than Amazon does.").

Plaintiff chooses to sell its books to consumers at full list price. Earning lower profits or losing customers to price competition is far from the "injury of the type the antitrust laws were intended to prevent." *Brunswick,* 429 U.S. at 489. As summed up by the Supreme Court, "[a] firm complaining about the harm it suffers from nonpredatory price competition is really claiming that it [is] unable to raise prices….***This is not antitrust injury***." *ARCO*, 495 U.S. at 337–38 (emphasis added). Plaintiff's conspiracy claims should accordingly be dismissed for lack of antitrust injury.

## IV.   COUNTS II AND IV: PLAINTIFF FAILS TO PLAUSIBLY PLEAD HARM TO COMPETITION UNDER THE SHERMAN ACT

Under the Sherman Act, agreements are analyzed under either the *per se* rule or the rule of reason. But only certain agreements that always or almost always tend to restrict competition are

deemed *per se* illegal and condemned without examination. *See NYNEX Corp. v. Discon, Inc.*, 525 U.S. 128 (1998) ("Certain kinds of agreements will so often prove so harmful to competition and so rarely prove justified that the antitrust laws do not require proof that an agreement of that kind is, in fact, anticompetitive[.]"). The vast majority of agreements—including nearly all vertical agreements—are instead evaluated under the rule of reason, which requires a plaintiff to "demonstrate that the defendants' conduct unreasonably restrained trade under a burden-shifting framework." *Planetarium*, 97 F. Supp. 3d at 431. This can be satisfied in two ways. Plaintiff can "offer direct evidence of harm to competition by proving higher prices, reduced output, or lower quality in the market as a whole." *MacDermid Printing Sols. LLC v. Cortron Corp.*, 833 F.3d 172, 182 (2d Cir. 2016). Alternatively, Plaintiff can prove "an adverse effect indirectly by establishing that the alleged conspirators had sufficient market power to cause an adverse effect, plus some other ground for believing that the challenged behavior has harmed competition." *Id.*

Here, Plaintiff tries to shoehorn Publisher Defendants' individual agreements with Amazon into a horizontal conspiracy to avail itself of a *per se* presumption. But Plaintiff's allegations show nothing more than independently negotiated, vertical contracts.[4] *See Planetarium,* 97 F. Supp. 3d at 431 ("Given the vertical nature of the agreements at issue, the *per se* rule is inappropriate, and the rule of reason applies."). Thus, Plaintiff must plausibly allege—and prove—a violation under the rule of reason through direct or indirect evidence. The Complaint fails under either standard.

### A.  Plaintiff Pleads No Facts Directly Showing Harm To Competition

Stripped of labels and conclusions, the Complaint does not plausibly plead harm to competition in the form of increased prices, reduced output, or diminished consumer choice.

***Prices.*** Plaintiff's allegation that Publisher Defendants "rais[ed] retail prices," Compl. ¶

---

[4] Plaintiff tries to fabricate similarities with *Apple II*, which the Second Circuit assessed as a *per se* and a rule of reason violation. For the reasons discussed, there is no plausible horizontal or any other conspiracy, and thus no basis for *per se* treatment. Plaintiff challenges vertical agreements, which fall under the rule of reason.

91, is undermined by other allegations that cite lower prices to consumers and challenge basic price competition. First, Plaintiff's chart titled "Weighted Average List Price" allegedly tracks the suggested list price of Publisher Defendants' print books. *Id.* ¶¶ 12-13. But these are not ***retail prices***, and say nothing about the prices actually charged to consumers by booksellers like Plaintiff and Amazon, which is the focus of any harm to competition analysis. To the contrary, the Complaint provides examples of ***lower prices*** offered to consumers on Publisher Defendants' print books. *See id.* ¶¶ 54-55 (showing *Spy School at Sea* at a $2 discount and *Our Time is Now* at a $2.51 discount). Such lower prices do not amount to harm to competition. Second, Plaintiff's chart shows the average suggested list price of Publisher Defendants' bestseller print books ***declining*** during the relevant period from 2017 to 2019, and holding steady from 2019 to 2020. *Id.* ¶¶ 12-13. This contradicts Plaintiff's claim that prices increased.

***Output****.* Plaintiff's allegations of supposedly reduced output are similarly contradictory. Plaintiff broadly claims that Defendants' alleged conduct caused "lower total market output of books." *Id.* ¶ 53. But sentences later, Plaintiff states that "book consumers look more aggressively for comparatively lower retail book prices and switch to Amazon." *Id.*; *see also id.* (discussing the number of "customers switching to Amazon from competing booksellers to obtain comparatively lower price[s]"). Thus, Plaintiff's Complaint admits that consumers are still buying print books, but they are instead buying them from Amazon at lower prices. Such a shift in sales to lower-priced options does not amount to harm to competition under any standard.

Next, Plaintiff's statistics in support of decreased output are irrelevant. First, Plaintiff cites ***publishers'*** declining revenues of 3.6% for "trade books." *Id.* ¶ 56. But a decline in publishers' revenues says nothing about whether print book output has been reduced. Such a decline could instead be caused by Publishers having sold books at lower prices to booksellers. Second,

Plaintiff's statistics do not pertain to the relevant market alleged in this case. The cited revenues are for all "trade books" (*i.e.*, print and e-books) whereas the market alleged is print trade books only. And Plaintiff argues that "[p]rint books are not reasonably interchangeable with eBooks or audio books," *Id.* ¶¶ 61-66, while later citing statistics lumping them all together. Plaintiff thus fails to plausibly allege any decline in output in the relevant market.

**_Consumer Choice_**. Finally, Plaintiff's allegations regarding diminished consumer choice or "driving Amazon's bookseller competitors out of business" contain no factual support whatsoever. *Id.* ¶ 91. Plaintiff fails to cite a single example, and its "formulaic recitation of the elements of a cause of action" should be disregarded. *Twombly*, 550 U.S. at 55.

### B.  Plaintiff Does Not Plausibly Allege Publisher Defendants Have Market Power

If a plaintiff cannot show actual harm to competition (like here), "it must at least establish that defendants possess the requisite market power and thus the capacity to inhibit competition market-wide." *K.M.B. Warehouse Distributors, Inc. v. Walker Mfg. Co.*, 61 F.3d 123, 129 (2d Cir. 1995). The Complaint falls short. First, while Plaintiff claims that all Publisher Defendants account for 80% of "trade publications," Compl. ¶ 118, without any factual support, Plaintiff alleges a "**_print_** trade books" market, or the "online submarket for the sale of print trade books." *Id.* ¶ 117-18. No allegations address Publisher Defendants' supposed market power in the relevant market actually alleged. Further, Plaintiff does not allege that any Publisher Defendant individually has market power. And "[i]n the absence of a horizontal conspiracy, grouping the Publishers' market shares together is inappropriate." *Bookhouse*, 985 F. Supp. 2d at 622. Plaintiff cannot sum shares to allege market power collectively, and the Complaint must be dismissed for this reason as well.

### V.   COUNT I: PLAINTIFF FAILS TO ADEQUATELY ALLEGE A PRICE DISCRIMINATION CLAIM UNDER THE ROBINSON-PATMAN ACT

The Robinson-Patman Act proscribes price discrimination "only to the extent that it threatens to injure competition." *Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*, 509

U.S. 209, 220 (1993). That is because "Congress did not intend to outlaw price differences that result from or further the forces of competition." *Id.* To state an RPA claim, Plaintiff must therefore plausibly allege: (i) reasonably contemporaneous sales to two buyers; (ii) of a good of "like grade and quality;" (iii) that the seller "discriminate[d] in price between" the favored and disfavored buyers; and (iv) that had a prohibited effect on competition. *Coal. for a Level Playing Field, L.L.C. v. AutoZone, Inc.*, 737 F. Supp. 2d 194, 209 (S.D.N.Y. 2010). The Complaint fails here, too.

### A.  Plaintiff Does Not Merit the Morton Salt Presumption for Competitive Injury

The Complaint fails to plausibly allege competitive injury—an essential element of an RPA claim. *See Best Brands Beverage, Inc. v. Falstaff Brewing Corp.*, 842 F.2d 578, 584 (2d Cir. 1987) ("[P]rice discrimination…alone is not illegal per se. Plaintiff also must prove the likelihood of competitive injury resulting from the alleged discrimination."). To fix this glaring fault, Plaintiff tries to invoke the so-called *Morton Salt* presumption rather than plead actual competitive injury. Compl. ¶ 98. Plaintiff, however, cannot avail itself of this presumption and its allegations fall short.

To merit the *Morton Salt* presumption, a plaintiff must—at a minimum—plead facts plausibly alleging "***substantial*** discounts to a competitor over a ***significant*** period of time." *Cash & Henderson Drugs, Inc. v. Johnson & Johnson*, 799 F.3d 202, 210 (2d Cir. 2015) (emphasis added). Here, Plaintiff merely parrots the case law explaining the *Morton Salt* presumption. Compl. ¶ 98, n.123. This is a classic example of a legal conclusion that must be rejected. *See Iqbal*, 556 U.S. at 678 ("[A] formulaic recitation of the elements of a cause of action will not do."). Plaintiff's other allegations fare no better. Plaintiff alleges that it purchased 10 books—two from each Publisher Defendant—within 10 months over the entire four-year period for which the Complaint seeks relief. Compl. ¶ 94. But the allegations do not mention any price differences with

Amazon for these books, let alone "substantial" differences.[5] And nowhere does Plaintiff factually allege that price discrimination occurred over a significant period of time or that it bought any book more than once. *See In re Inclusive Access Course Materials Antitrust Litig.*, No. 20-2946, 2021 WL 2419528, at *17 (S.D.N.Y. June 14, 2021) (dismissing RPA claim because "two isolated incidents" fall "far short of the significant period of time that is required to plead a substantial effect on competition"). Plaintiff's bald and incomplete assertions thus do not invoke the *Morton Salt* presumption. Further, to the extent any alleged price differences are functional discounts, which are presumptively allowable (as discussed below), "the inference of injury to competition recognized in the *Morton Salt* case will simply not arise." *Hasbrouck*, 496 U.S. at 571.

### B.  Any Alleged Price Differences Are Lawful Under Materially Different Contracts or Legitimate Functional Discounts

The Robinson-Patman Act condemns price discrimination "only to the extent that it threatens to injure competition[;]" it does not prohibit "price differences that result from or further the forces of competition." *Brooke Grp.*, 509 U.S. at 220; *see also AutoZone*, 737 F. Supp. 2d at 216 ("[W]hile the complaint plausibly alleges differentials, it contains virtually no allegations as to whether those differentials are justified.…[T]he complaint offers little more than rote allegations of illegality[.]"). Accordingly, price differences that are attributable to materially different contracts or legitimate functional discounts do not violate the RPA. *Id.* at 208-14.

***Materially Different Contracts.*** First, Plaintiff fails to plead that alleged price differences are not a result of materially different contract terms. For example, courts hold that a seller may charge different prices for goods under long-term contracts than for those sold on the spot market. *See AutoZone*, 737 F. Supp. 2d at 216-17. Because long-term contracts allow the parties to reduce

---

[5] Other bare allegations also fail to support the *Morton Salt* presumption. *See, e.g.*, Compl. ¶ 95 (alleging that Amazon received higher discounts from the Publisher Defendants "that were not equally available to Plaintiff" but failing to allege any facts on the extent or duration of alleged price differentials).

their exposure to changes in the market price, goods sold under a long-term contract are not "of like grade or quality," even if identical. *Id.* at 212; *see FLM Collision Parts, Inc. v. Ford Motor Co.,* 543 F.2d 1019, 1026 (2d Cir. 1976) (no RPA claim where varying prices resulted from "different terms of sale"); *Aerotec Int'l, Inc. v. Honeywell Int'l, Inc.,* 836 F.3d 1171, 1188 (9th Cir. 2016) (materially different contracts and transactions were not "reasonably comparable").

Here, Plaintiff alleges that Publisher Defendants sold print books to Amazon through individually negotiated distribution contracts. Compl. ¶¶ 3-4, 8, 102. But Plaintiff does not allege that it entered into **any** contracts with Publisher Defendants at all, let alone on similar terms. Rather, Plaintiff claims that it purchased books from Publisher Defendants at a "standard discount price of up to 46%." *Id.* ¶ 94. Plaintiff thus ignores that the discounts Amazon allegedly receives may be the product of materially different contracts with Publisher Defendants, which is fatal to the RPA claim. Indeed, Plaintiff identifies a number of varying provisions allegedly contained in Amazon's contracts with each of the Publisher Defendants, *id.* ¶ 102, none of which Plaintiff alleges to be included in its own agreements (if any) with Publisher Defendants. Plaintiff's own allegations thus show materially different contracts. Given the fact that Amazon buys books pursuant to long-term, negotiated contracts with numerous commitments by both sides, while Plaintiff does not, their respective book purchases are not "of like grade and quality" as a matter of law. *See A.A. Poultry Farms, Inc. v. Rose Acre Farms, Inc.*, 881 F.2d 1396, 1407-08 (7th Cir. 1989) (identical eggs sold under contracts with materially different terms were not "of like grade and quality"); *Best Effort First Time, LLC v. Southside Oil, LLC*, No. 17-825, 2019 WL 1427741, at *5 (D. Md. Mar. 29, 2019) (same for identical gasoline). Therefore, the RPA does not apply.

***Functional Discounts***. Additionally, Plaintiff fails to plausibly allege that any alleged price differences are not functional discounts, which are "presumptively allowable." *Hasbrouck*,

496 U.S. at 568. A seller may charge a buyer reduced prices if they reflect a bona fide "functional discount"—*i.e.*, a set-off for the value of services performed for the seller. *AutoZone*, 737 F. Supp. 2d at 210. In fact, "a functional discount is only illegal if (i) 'the discount is being given for services that are not being performed at all,' or (ii) 'the amount of the discount greatly exceeds the value or cost of the service.'" *Id.* at 211 (citation omitted). The plaintiff bears the burden of pleading and proving that any price differences are not legitimate functional discounts. *See Sw. Paper Co. v. Hansol Paper*, No. 12-8721, 2013 WL 11238487, at *4 (C.D. Cal. Apr. 15, 2013).

Other courts, including in this District, have dismissed RPA claims where plaintiffs failed to disprove the presumption of a functional discount. In *AutoZone*, for example, plaintiffs alleged that defendants offered volume discounts and price allowances to large retailers, but not to independent stores. 737 F. Supp. 2d at 197-99. The court held that plaintiffs failed to plausibly allege that these were not permissible functional discounts. *See id.* at 199 ("Plaintiffs believe that these deductions do not represent bona fide discounts for the value of services provided by defendants. But aside from formulaic accusations of illegality, plaintiffs provide scant factual material to support this view."). The Court later denied plaintiffs' motion to amend their complaint as similarly ambiguous and conclusory. *See Coal. for a Level Playing Field, L.L.C. v. AutoZone, Inc.*, 813 F. Supp. 2d 557, 565-69 (S.D.N.Y. 2011); *see also Synthes, Inc. v. Emerge Med., Inc.*, No. 11-1566, 2012 WL 4473228, at *13-15 (E.D. Pa. Sept. 28, 2012) (dismissing RPA claim for failure to plausibly allege that bundling discount was not a permissible functional discount).

Likewise here, Plaintiff fails to plead facts to rebut the presumption that Amazon's prices are functional discounts. *See AutoZone*, 737 F. Supp. 2d at 216 ("[C]ompared to [plaintiffs], the retailer defendants pay lower wholesale prices, operate in a different distribution chain, and provide a different mix of distribution, warehousing, marketing, and promotional services[.]").

Plaintiff offers only a bare legal conclusion that "[t]he significant difference between the discounts offered to Amazon versus Plaintiff…exceeds any cost savings achieved by selling to Amazon." Compl. ¶ 101. Elsewhere, Plaintiff lists a host of different components of Publisher Defendants' agreements with Amazon, yet baldly asserts that they are not functional discounts. *Id*. ¶¶ 101-03. Plaintiff's argument that functional discounts do not apply here because Amazon is "separately compensated" for services it provides to Publisher Defendants also fails. *Id.* ¶ 103. Functional discounts "need not precisely correspond to the costs a seller avoids by receiving services performed by the buyer." *Sw. Paper*, 2013 WL 11238487, at *5. They must only be "commercially reasonable" for services provided. *Id.* Plaintiff does not allege a single fact that suggests otherwise. Plaintiff has failed to meet its burden to show that any alleged price differentials were unlawful.

### C.  Plaintiff Fails to Allege Reasonably Contemporaneous Sales

Plaintiff alleges that only books of the same title are of like grade and quality. *See* Compl. ¶ 104. Plaintiff must therefore allege two "reasonably contemporaneous" sales of the same title at different prices—that is, they must occur within the same timeframe. *See Black Gold, Ltd. v. Rockwool Indus., Inc*., 729 F.2d 676, 683 (10th Cir. 1984) (Reasonably contemporaneous sales "must have been entered into within a reasonably short time period and…contemplate reasonably simultaneous delivery[.]") (citation omitted); *Cap. Ford Truck Sales, Inc. v. Ford Motor Co*., 819 F. Supp. 1555, 1572 (N.D. Ga. 1992) ("Contracts which contemplate contemporaneous delivery, but which are entered into at different times, are not reasonably contemporaneous[.]").

Plaintiff fails to allege that any book sales to Plaintiff and to Amazon were reasonably contemporaneous. Plaintiff instead asks the Court to "infer" this fact. Compl. ¶ 94. But *Iqbal* makes clear that a claim is plausible only when "the pleaded factual content allows the court to draw the reasonable inference[.]" 556 U.S. at 663, 678. Simply asking the Court to make an unsupported leap without the requisite factual content will not do. The Complaint only lists 10

purchases by Plaintiff, all in 2018, and says nothing about when Amazon purchased these same books at allegedly lower prices. Such incomplete allegations fail on their face. Moreover, the alleged class period spans over four years, and purchases mere months apart fail to qualify as "reasonably contemporaneous." *See Atalanta Trading Corp. v. F.T.C.*, 258 F.2d 365, 371 (2d Cir. 1958) (sales eight months apart were not "even closely within the same time periods"). This Court should hold Plaintiff to its pleading requirement and decline to "infer" that any sales to Amazon and Plaintiff were reasonably contemporaneous. Plaintiff's conclusory allegation that ***all*** sales were contemporaneous, Compl. ¶ 95, is plainly insufficient.[6]

### D.  Plaintiff's Allegations Do Not State a Claim for Goods of Like Grade and Quality

Plaintiff's claim also must be dismissed because it does not provide Publisher Defendants with the requisite notice under Rule 8(a) of which "books" are at issue. Plaintiff alleges that the case "concerns the sale of print books," Compl. n.1, but discusses different types, including "trade books." *Id.* ¶ 1. Plaintiff then alleges that it bought "numerous books," but certain "books" are distinct from others. Compare *id.* ("trade books" is a category of "books") with *id.* ¶ 81 (putative class of purchasers of "print books"). Moreover, Plaintiff's RPA claim hinges on its allegation that each "book" is only "of like grade and quality" with the same title. *Id.* ¶ 96. This necessarily conflicts with Plaintiff's alleged market and the putative class, which consists of all print books. *Id.* ¶ 61. Plaintiff lists 10 books allegedly purchased in one year of the class period, but fails to give notice of any other "books," "trade books," or "print books" that may be at issue. Plaintiff's confounding allegations fail to satisfy Rule 8(a), and Count I should be dismissed. *See United Mag. Co. v. Murdoch Mags. Distrib., Inc.*, 146 F. Supp. 2d 385, 395 (S.D.N.Y. 2001) (dismissing RPA claim where unclear references and inconsistent terms failed to provide adequate notice).

---

[6] Elsewhere Plaintiff alleges that "[e]ach Big Five Defendant engaged in contemporaneous sales of the same books…at different prices." Compl. ¶ 95. This is nothing more than a "simpl[e] attempt[] to paraphrase the relevant legal test," and the allegation should be disregarded. *See AutoZone*, 737 F. Supp. 2d at 217 (dismissing RPA claim).

### E.  Plaintiff's Claim Is Barred by the Meeting Competition Defense

Even if Plaintiff did plausibly allege an RPA price discrimination claim—which it does

not[7]—clauses in Publisher Defendants' contracts that Plaintiff cites provide a complete defense as

a matter of law. *See* Compl. ¶¶ 6, 8, 99, 104. No claim exists where a "lower price…was made in

good faith to meet an equally low price of a competitor." 15 U.S.C. § 13(b). The Supreme Court

has held that the RPA must be interpreted "consistently with broader policies of the antitrust laws."

*Great Atl. & Pac. Tea Co. v. FTC*, 440 U.S. 69, 80 n.13 (1979). Courts must not "extend [liability]

beyond the prohibitions of the Act and, in so doing, help give rise to a price uniformity and rigidity

in open conflict with the purposes of other antitrust legislation." *Id.* at 80 (citation omitted).

Plaintiff's conclusory assertion that the meeting competition defense does not apply should

be rejected. Plaintiff admits that certain of Publisher Defendants' contracts with Amazon contain

clauses specifying that discounts were conditioned upon meeting comparable discounts offered by

a competitor. Compl. ¶¶ 6, 8, 99, 104. And Plaintiff's argument that the defense only applies to

books of the same title, *id.* ¶ 104, is entirely unsupported by factual allegations, inconsistent with

Plaintiff's allegations that the relevant market comprises all print trade books, and should be

disregarded for the reasons discussed. *See supra*. Likewise, Plaintiff simply claims that Publisher

Defendants' clauses were "pretextual" and "could not qualify as a 'good faith' meeting of

competition[.]" *Id.* ¶¶ 6, 99, 104. These are threadbare allegations that fall far short of what is

necessary to state a cognizable claim. *See Iqbal*, 556 U.S. at 678.

---

[7] Plaintiff's claim that the alleged conduct violates Sections 2(d) and 2(e) of the RPA, in addition to 2(a), also fails. *See* Compl. ¶ 102. Sections 2(d) and 2(e) exclude claims that fall within 2(a). They are "mutually exclusive," rendering Plaintiff's argument irreconcilable with its allegations that the same conduct constitutes price discrimination under 2(a). *See United Mag. Co. v. Murdoch Mags. Distrib., Inc.*, No. 00-3367, 2001 WL 1607039, at *7 (S.D.N.Y. Dec. 17, 2001); *Woodman's Food Mkt., Inc. v. Clorox Co.*, 833 F.3d 743, 747 (7th Cir. 2016). Moreover, Plaintiff does not allege facts to support its bald assertion that anything Publisher Defendants allegedly provided to Amazon is a "service or facility" under Sections 2(d) and 2(e). *See* 15 U.S.C. § 13. Finally, Plaintiff's 2(d) and 2(e) claims fail for all of same reasons that its Section 2(a) price discrimination claim fails. *See Drug Mart Pharmacy Corp. v. Am. Home Prods. Corp.*, 472 F. Supp. 2d 385, 399-400, n.12 (E.D.N.Y. 2007), *amended*, No. 93-5148, 2007 WL 4526618 (E.D.N.Y. Dec. 20, 2007) ("[T]he structural elements of a § 2(d) claim are essentially the same as those under § 2(a).").

**MOTION TO STRIKE**

Where a complaint fails to set forth minimum allegations required for a certifiable class, the court may strike class allegations at the pleading stage. *See Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982) ("Sometimes the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim[.]"). Although courts in the Second Circuit may generally hesitate to grant motions to strike,[8] an exception exists "when a claim cannot succeed as a matter of law." *Chen-Oster*, 877 F. Supp. 2d at 117; *see Rahman v. Smith & Wollensky Rest. Grp., Inc.*, No. 06-6198, 2008 WL 161230, at *3 (S.D.N.Y. Jan. 16, 2008). Therefore, to succeed on a motion to strike, "Defendants would have to demonstrate from the face of the Complaint that it would be impossible to certify the alleged class regardless of the facts Plaintiffs may be able to obtain during discovery." *Mayfield v. Asta Funding, Inc.*, 95 F. Supp. 3d 685, 696 (S.D.N.Y. 2015). That is precisely the case with Plaintiff's RPA claim as overwhelmingly demonstrated by precedent. There is no reason to engage in factual Rule 23 analysis because Plaintiff's claim presents individualized inquiries by its nature.

**I.     COUNT I: ROBINSON-PATMAN ACT CLAIMS PRESENT INDIVIDUALIZED INQUIRIES THAT CANNOT BE CLASS ACTIONS AS A MATTER OF LAW**

Courts nationwide have almost universally held that RPA claims are manifestly "ill-suited to class action treatment." *O'Connell v. Citrus Bowl, Inc.*, 99 F.R.D. 117, 122 (E.D.N.Y. 1983); *see ABC Distrib., Inc. v. Living Essentials LLC*, No. 15-02064, 2017 WL 2603311, at *3 (N.D. Cal. Apr. 7, 2017) ("[RPA] case is not well suited for class certification because its analysis is singularly individualistic."); *Mad Rhino, Inc. v. Best Buy Co.*, No. 03-5604, 2008 WL 8760854, at *4 (C.D. Cal. Jan. 14, 2008) ("[RPA] claims are considered unsuitable for class treatment because

---

[8] Courts in the Second Circuit have granted motions that "address[] issues separate and apart from the issues…decided on a class certification motion." *Chen-Oster v. Goldman, Sachs & Co.*, 877 F. Supp. 2d 113, 117 (S.D.N.Y. 2012). *See, e.g., In re Initial Pub. Offering Sec. Litig.*, No. 21-92, 2008 WL 2050781, at *3 (S.D.N.Y. May 13, 2008) (striking class allegations).

of the factually specific issues that arise in proving such claims."); *Clark v. H.P. Hood Inc.*, No. 83-0205, 1985 WL 6263, at *1 (D. Mass. Sept. 5, 1985) ("The overwhelming weight of authority is that [RPA] price discrimination cases are not suitable for class certification.").[9]

The elements of an RPA claim necessarily require individualized inquiries, making it impossible to bring as a class action.[10] As one court explained:

> To establish liability under [the RPA], a plaintiff must prove: (1) price discrimination; (2) actual injury; and (3) the amount of damages. To prove the first element, price discrimination, the plaintiff must prove different prices were offered to the favored and disfavored customers. To prove the second and the third elements, actual injury and amount of damages, the plaintiff must show that there was actual competition between the favored and disfavored customers…and that defendants' discriminatory practices likely had a harmful effect on the competition…***By its very nature, such proof is singularly individualistic…As a result, Robinson–Patman cases are ill-suited for class actions***.

*Mad Rhino*, 2008 WL 8760854, at *4 (emphasis added). Thus, every plaintiff must assert its own independent RPA claim, precluding a class action as matter of law. *Cf. United Mag.,* 146 F. Supp. 2d at 394–95, n.3 (dismissing RPA claim: "Plaintiffs, six separate legal entities, may not simply assume that the ability of any one of them to assert [an RPA] action against any one of the defendants gives all of them the ability to assert that cause of action against all defendants.").

The Complaint confirms that thousands of individual inquiries would be necessary to prove Plaintiff's RPA claim on behalf of the putative class. Plaintiff alleges that ***each*** book title is its own good of like grade and quality. Compl. ¶ 104. Thus, by Plaintiff's own allegations, each book sale must be separately evaluated under each RPA element for each class member:

---

[9] *See also Genesee Vending, Inc. v. Lorillard Tobacco Co.*, No. 04-60091, 2004 WL 3168777, at *3 n.5 (E.D. Mich. Nov. 2, 2004) ("Defendant has cited persuasive authority indicating that [RPA] claims…are inherently unsuited for class treatment."); *Abernathy v. Bausch & Lomb Inc.*, 97 F.R.D. 470, 475 (N.D. Tex. 1983) ("[C]ourts have consistently found [RPA] claims ill-suited for maintenance as class actions."); *Boro Hall v. Metro. Tobacco Co.*, 74 F.R.D. 142, 145 (E.D.N.Y. 1977) ("[T]he courts have generally denied class action motions in [RPA] cases.").
[10] Research reveals only one RPA case in which a class seeking damages was certified. *See Gold Strike Stamp Co. v. Christensen*, 436 F.2d 791 (10th Cir. 1970). Since *Gold Strike*, courts have consistently denied class certification. *See supra* 25 and n. 9. And "[w]hile never overruled, the *Gold Strike* decision is frequently criticized and appears limited to its facts." William M. Hannay, *Corp. Counsel's Guide to the Robinson-Patman Act*, § 1:48 (2020); *see Mad Rhino*, 2008 WL 8760854, at *5 (distinguishing *Gold Strike*); *Clark*, 1985 WL 6263, at *2 (declining to apply *Gold Strike*).

- <u>Reasonably Contemporaneous Sales</u>: Each purchase of each book by each bookstore must be shown to be reasonably contemporaneous with Amazon's purchase of the same book;

- <u>Discriminatory Price</u>: Each bookstore must show the price that it paid for each individual book and prove that the price was higher than what Amazon paid for that book;

- <u>Competing Buyers</u>: Each bookstore must prove it directly competed with Amazon;

- <u>Competitive Injury</u>: Each bookstore must prove that it specifically lost sales to Amazon during that time as a result of the higher price paid to Publisher Defendants (i.e., that the sales were lost because the bookstore was unable to compete with Amazon); and

- <u>Damages</u>: Each bookstore must prove that its lost book sales were diverted to Amazon as a result of Amazon having received a favorable price and using that price advantage.

Given the required RPA elements, "the single most critical problem…is that Plaintiffs cannot establish the 'competitive injury' element…on a class-wide basis." *Mad Rhino*, 2008 WL 8760854, at *7. Competitive injury "involves the evaluation of necessarily individualized issues including the existence of: (1) substantial price discrimination over time; and (2) competition between the favored and disfavored customers." *Id.* Those issues are only amplified here given that Plaintiff's particular RPA claim implicates thousands of distinct print book sales.

Accordingly, "no discoverable facts exist" that would allow Plaintiff's case to proceed as a class action, making it unsustainable as a matter of law. *Chen-Oster*, 877 F. Supp. 2d at 117. No amount of discovery or evidence could resolve the underlying issue here because it relates to the fundamental requirements of the RPA. In sum, "it would be impossible to certify the alleged class regardless of the facts Plaintiffs may be able to obtain during discovery," and the Court should grant Defendants' motion to strike Plaintiff's class allegations. *Mayfield*, 95 F. Supp. 3d at 696.

## <u>CONCLUSION</u>

For these reasons, Publisher Defendants' motion to dismiss should be granted, dismissing Plaintiff's Amended Complaint with prejudice. To the extent Count I is not dismissed, the Court should strike Plaintiff's class allegations with respect to its RPA claim.

Dated:  September 7, 2021

Respectfully submitted,

/s/ *Yehudah L. Buchweitz*

**WEIL, GOTSHAL & MANGES LLP**
Yehudah L. Buchweitz
767 Fifth Avenue
New York, NY 10153
Telephone: (212) 310-8256
Facsimile: (212) 310-8007
yehudah.buchweitz@weil.com

Jeff L. White
2001 M Street, NW
Washington , DC 20036
Telephone: (202) 682-7059
Facsimile: (202) 857-0940
jeff.white@weil.com

*Attorneys for Defendant Simon &*
*Schuster, Inc.*

/s/ *Rich Snyder*

**FRESHFIELDS BRUCKHAUS**
**DERINGER US LLP**
Rich Snyder
700 13th Street, NW
10th Floor
Washington, DC 20005-3960
Telephone: (202) 777-4565
Facsimile: (202) 507-5965
richard.snyder@freshfields.com

*Attorney for Defendant Hachette Book*
*Group, Inc.*

/s/ *C. Scott Lent*

**ARNOLD & PORTER KAYE**
**SCHOLER LLP**
C. Scott Lent
250 W. 55th Street
New York, NY 10019
Telephone: (212) 836-8220
Facsimile: (212) 836-8689
scott.lent@arnoldporter.com

*Attorney for Defendant HarperCollins*
*Publishers LLC*

/s/ *Joel Mitnick*

**CADWALLER, WICKERSHAM &**
**TAFT LLP**
Joel Mitnick
200 Liberty Street
New York, NY 10281
Telephone: (212) 504-6555
Facsimile: (212) 504-6666
joel.mitnick@cwt.com

*Attorney for Defendant Macmillan*
*Publishing Group, LLC*

/s/ *Saul P. Morgenstern*

**ARNOLD & PORTER KAYE**
**SCHOLER LLP**
Saul P. Morgenstern
Margaret Rogers
250 W. 55th Street
New York, NY 10019
Telephone: (212) 836-7210
Facsimile: (212) 836-8689
saul.morgenstern@arnoldporter.com
margaret.rogers@arnoldporter.com

*Attorneys for Defendant Penguin Random*
*House LLC*