**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **BOOKENDS & BEGINNINGS, LLC, on behalf of itself and all others similarly situated,** | |
| **Plaintiff,** | |
| **v.** | **Case Number 1:21-cv-02584-GHW-DCF** |
| **AMAZON.COM, INC.; HACHETTE BOOK GROUP, INC; HARPERCOLLINS PUBLISHERS L.L.C.; MACMILLAN PUBLISHING GROUP, LLC; PENGUIN RANDOM HOUSE LLC; SIMON & SCHUSTER, INC.,** | **ORAL ARGUMENT REQUESTED** |
| **Defendants.** | |

**MEMORANDUM OF LAW IN SUPPORT OF AMAZON'S**
**<u>MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT</u>**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ..................................................................................................................1

BACKGROUND ..................................................................................................................3

LEGAL STANDARD............................................................................................................5

ARGUMENT ......................................................................................................................7

I.      PLAINTIFF'S ROBINSON-PATMAN ACT CLAIM AGAINST AMAZON
FAILS AS A MATTER OF LAW.................................................................................7

      A.     Plaintiff Fails To Allege Facts Adequate To Show that Amazon
Knowingly Received an Illegally Discriminatory Price from Any
Publisher Defendant.....................................................................................7

            1.     Plaintiff Alleges No Facts Plausibly Showing that Amazon
Receives Discounts that Are Unavailable To Other Buyers. .......................8

            2.     Plaintiff Alleges No Facts Plausibly Showing that Amazon
Knowingly Received Discriminatory Prices.............................................11

      B.     Plaintiff's Own Allegations Show that the Publisher Defendants Have
Multiple Defenses to a Discriminatory Pricing Claim, Precluding Liability
for Amazon Under Section 2(f). ................................................................14

            1.     Publisher Discounts Are Justified To Compensate Amazon for the
Value of Its Services. ...............................................................................14

            2.     Publisher Discounts Are Justified by Meeting Competition.....................17

      C.     Plaintiff Fails Adequately To Allege Harm To Competition................................20

II.     PLAINTIFF'S SHERMAN ACT CLAIMS FAIL AS A MATTER OF LAW.................21

      A.     The Sherman Act Does Not Independently Prohibit Price Competition. .............22

      B.     Plaintiff's Attempts To Allege a Conspiracy To Charge "Discriminatory"
Prices Fail To State a Claim........................................................................23

      C.     Plaintiff's Horizontal Conspiracy Allegations Are Implausible. ...........................25

CONCLUSION...................................................................................................................25

## **TABLE OF AUTHORITIES**

### CASES

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)................................................................5, 9, 10, 11

*Atl. Richfield Co. v. USA Petrol. Co.*,
    495 U.S. 328 (1990)...................................................................5, 22, 23

*Automatic Canteen Co. of Am. v. FTC*,
    346 U.S. 61 (1953)........................................................................ *passim*

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)....................................................................... *passim*

*Bishop v. GNC Franchising L.L.C.*,
    403 F. Supp. 2d 411 (W.D. Pa. 2005).................................................24

*Bookhouse of Stuyvesant Plaza, Inc. v. Amazon.com, Inc.*,
    985 F. Supp. 2d 612 (S.D.N.Y. 2013)..................................................15

*Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*,
    509 U.S. 209 (1993)..........................................................5, 6, 12, 22, 23

*Brown Shoe Co. v. United States*,
    370 U.S. 294 (1962)............................................................................5, 6

*Cash & Henderson Drugs, Inc. v. Johnson & Johnson*,
    799 F.3d 202 (2d Cir. 2015)...............................................6, 8, 20, 21

*Chapman v. New York State Div. for Youth*,
    546 F.3d 230 (2d. Cir. 2008).................................................................15

*CMS Volkswagen Holdings, LLC v. Volkswagen Grp. of Am., Inc.*,
    25 F. Supp. 3d 432 (S.D.N.Y. 2014), *vacated on other grounds*
    669 Fed. App'x 602 (2d Cir. 2016)..............................................6, 7, 8

*Coalition For A Level Playing Field, L.L.C. v. AutoZone, Inc.*,
    737 F. Supp. 2d 194 (S.D.N.Y. 2010)..................................6, 8, 14, 16

*Coalition for a Level Playing Field, L.L.C. v. AutoZone, Inc.*,
    813 F. Supp. 2d 557 (S.D.N.Y. 2011).................................................10

*Coastal Fuels of Puerto Rico, Inc. v. Caribbean Petroleum Corp.*,
    990 F.2d 25 (1st Cir. 1993) (Breyer, J.)...............................................16

*Dayton Superior Corp. v. Marjam Supply Co.*,
   No. 07-cv-5215, 2011 WL 710450 (E.D.N.Y. Feb. 22, 2011) ...............................................11

*Delta Airlines, Inc. v. Bombardier, Inc.*,
   No. 1:20-cv-3025-GHW, 2021 WL 1163702 (S.D.N.Y. Mar. 25, 2021)..............................20

*Drug Mart Pharm. Corp. v. Am. Home Prods. Corp.*,
   378 F. Supp. 2d 134 (E.D.N.Y. 2005) ...................................................................................24

*Drug Mart Pharm. Corp. v. Am. Home Prods. Corp.*,
   472 F. Supp. 2d 385 (E.D.N.Y. 2007) ...................................................................................23

*E & L Consulting, Ltd. v. Doman Indus. Ltd.*,
   472 F.3d 23 (2d Cir. 2006)......................................................................................................25

*FTC v. Henry Broch & Co.*,
   363 U.S. 166 (1960)................................................................................................................24

*FTC v. Morton Salt Co.*,
   334 U.S. 37 (1948)..................................................................................................................21

*Gen. Supply Deck & Floor Underlayment Co. v. Maxxon S.W., Inc.*,
   No. 00-cv-2745, 2001 WL 1480768 (N.D. Tex. Nov. 21, 2001) ...........................................24

*Gorlick Distr. Ctrs., LLC v. Car Sound Exhaust Sys., Inc.*,
   723 F.3d 1019 (9th Cir. 2013) ...................................................................................... passim

*Great Atl. & Pac. Tea Co., Inc. v. FTC*,
   440 U.S. 69 (1979)......................................................................................................... passim

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986)................................................................................................................22

*Mayor and City Council of Baltimore v. Citigroup, Inc.*,
   709 F.3d 129 (2d Cir. 2013)...............................................................................................24, 25

*New Albany Tractor, Inc. v. Louisville Tractor, Inc.*,
   650 F.3d 1046 (6th Cir. 2011) .............................................................................................9, 10

*Official Cmtee. of Unsecured Creditors of Colored Tile, Inc. v. Coopers & Lybrand, LLP*,
   322 F.3d 147 (2d Cir. 2003)....................................................................................................13

*Pac. Bell Tel. Co. v. linkLine Commc'ns, Inc.*,
   555 U.S. 438 (2009)...........................................................................................................22, 23

*PSKS, Inc. v. Leegin Creative Leather Prods.*,
    615 F.3d 412 (5th Cir. 2010) ....................................................................15

*Real Selling Grp. LLC v. ESN Grp., Inc.*,
    2021 WL 535748 (S.D.N.Y. Feb. 12, 2021)..........................................25

*Smith–Wholesale Co., v. R.J. Reynolds Tobacco Co.*,
    477 F.3d 854 (6th Cir. 2007) ............................................................7, 8, 9

*Texaco Inc. v. Hasbrouck*,
    496 U.S. 543  (1990)............................................................................14

*United States v. E. I. du Pont de Nemours & Co.*,
    351 U.S. 377 (1956)............................................................................19

*United States v. U.S. Gypsum Co.*,
    438 U.S. 422 (1978)......................................................................17, 18

*Volvo Trucks N. Am., Inc. v. Reeder–Simco GMC, Inc.*,
    546 U.S. 164 (2006)...............................................................6, 20, 22

*Walker v. Hallmark Cards, Inc.*,
    992 F. Supp. 1335 (M.D. Fla. 1997)...................................................18

*Zoslow v. MCA Distrib. Corp.*,
    594 F. Supp. 1022 (N.D. Cal. 1984) ...................................................18

## STATUTES

Robinson–Patman Act, 15 U.S.C. § 1................................................................21

Robinson–Patman Act, 15 U.S.C. § 2......................................................... *passim*

Robinson-Patman Act, 15 U.S.C. § 13 ........................................................ *passim*

## INTRODUCTION

Plaintiff Bookends & Beginnings, LLC ("Bookends" or "Plaintiff") originally alleged that the wholesale prices it pays for print trade books were artificially inflated by Most Favored Nation ("MFN") clauses that Plaintiff claimed were a core feature of agreements between Defendant Amazon.com, Inc. ("Amazon") and the "Big Five" Publisher Defendants.[1]  Compl., ECF 1.  The premise of Plaintiff's Complaint was that those clauses prevented other retailers from competing to "gain market share" by negotiating better wholesale prices for themselves, and passing those savings along to customers in the form of reduced "prices at retail to improve their market position."  *Id.* ¶ 23.

Plaintiff withdrew its Complaint after Defendants demonstrated that there was no factual basis for Plaintiff's core allegation:  those agreements do not and never did contain any such MFN clauses.   Rather than dismiss its claims, however, Plaintiff pivoted dramatically to allege effectively the opposite theory, that Amazon violated section 2(f) of the Robinson-Patman Act ("RPA"), 15 U.S.C. § 13(f), by negotiating for discounted wholesale prices and passing those savings along to consumers by charging "comparatively lower retail book prices" to improve its market position.  *See* Am. Compl., ECF 63, ¶ 53.  Plaintiffs new theory, in other words, attacks the very essence of robust and healthy competition that the antitrust laws overwhelmingly seek to promote.  Plaintiff's Amended Complaint is baseless and should be dismissed.

Bargaining between buyers and sellers is one of the most commonplace, procompetitive actions that can occur in any market.  As the Supreme Court has stressed repeatedly, it would do great damage to competition and consumers alike if the RPA were misconstrued as having

---

[1]       Hachette   Book   Group,   Inc.   ("Hachette");   HarperCollins   Publishers,   LLC ("HarperCollins"); Macmillan Publishing Group, LLC ("Macmillan"); Penguin Random House, LLC ("PRH"); and Simon & Schuster, Inc. ("S&S") (collectively the "Publisher Defendants").

outlawed competitive bargaining.  To avoid that outcome, the Court has interpreted section 2(f) of the RPA as creating only a narrow basis for liability on the part of prospective buyers.  To state a claim, Plaintiff must allege that the buyer knowingly accepted or induced an illegal price, a standard that requires knowledge that the seller lacks even the potential for a defense to its own liability under section 2(a).  Bookends' Amended Complaint does not come close to meeting that exacting standard.  It should not be permitted to proceed to discovery on speculative claims that threaten to chill procompetitive bargaining and injure consumers.

First, Plaintiff's core allegation is that Amazon knowingly accepted lower wholesale prices for print books in violation of RPA section 2(f)'s prohibition on "[k]nowingly inducing or receiving a discriminatory price."  *See* Am. Compl., ECF 63, ¶¶ 6, 99.  But Plaintiff does not even attempt to allege what wholesale prices Amazon pays for print trade books, or whether those prices are higher or lower than the prices charged to other retailers.   The Amended Complaint's allegations about supposedly "steep" discounts given to Amazon, *id.* ¶ 4, are pure speculation that cannot state a claim.  Likewise, the Amended Complaint is completely silent on whether Plaintiff made its own attempt to negotiate discounted prices, and thus fails to allege that any discounted prices offered by the five Publisher Defendants to Amazon were not functionally available to Plaintiff as well.  Indeed, Plaintiff cannot allege functional unavailability since the premise of its original complaint was that Plaintiff *could have* negotiated greater discounts if not for the purported MFN clauses.

Second, even if Plaintiff had alleged facts supporting the proposition that Amazon pays lower wholesale prices than were made available to Plaintiff, that still would not be enough to state a claim.  Plaintiff fails to allege any basis to conclude that Amazon knowingly accepted an *illegal* wholesale price, as required by controlling decisions of the Supreme Court.  To the contrary, the

Amended Complaint provides ample basis to conclude that Amazon had every reason to understand that the prices it received were the product of lawful, procompetitive bargaining between itself and its suppliers.

Third, Plaintiff attempts to repackage its meritless RPA allegation into other forms of purported antitrust violations, namely, as an agreement in restraint of trade (Second Cause of Action), unlawful monopolization (Third Cause of Action), and a conspiracy to monopolize (Fourth Cause of Action).  These causes of action all fail as a matter of law.  As an initial matter, the supposed "discriminatory pricing scheme"[2] underlying each of these theories is a contrivance based upon a deliberate mischaracterization of contractual language quoted in the Amended Complaint.  Beyond that, however, nothing in the Sherman Act penalizes the negotiation or receipt of *lower* prices.  Price competition is at the heart of the activities encouraged by the antitrust laws, and like all retailers, Amazon has every right to negotiate the most favorable wholesale acquisition terms that it can consistent with the RPA.  Because Plaintiff's Second, Third, and Fourth causes of action are not cognizable as a matter of law, they must be dismissed.

## **BACKGROUND**

Bookends is a bookstore located in Evanston, IL, that sells print books both online and in its physical store.  Am. Compl. ¶ 1.  It originally filed this suit in March 2021, alleging that Amazon and the Publisher Defendants had conspired to assure *uniformity* of print book prices through the mutual adoption of price and non-price MFN clauses in their wholesale distribution agreements.  Compl., ECF 1, ¶¶ 2, 22.  According to Bookends' original Complaint, these alleged MFNs "hinder[] competing retailers from offering their consumers *lower* book prices than Amazon."  *Id.* ¶ 23.  Absent such provisions, Bookends contended, "to encourage diversification, competing

---

[2]    Am. Compl. ¶¶ 3, 7, 37, 48, 57, §§ I.B, V.C.

booksellers may be able to obtain lower wholesale prices from publishers than Amazon, which would enable them to gain market share by offering lower prices to consumers." *Id.* Further, such clauses allegedly "ensure[d] that Amazon obtains access to books at the best wholesale terms in scenarios where publisher otherwise would have a preference not to offer a given book to Amazon." *Id.*

Bookends' MFN conspiracy theory was utterly baseless. Separate and apart from its mischaracterization of the purpose and effect of MFN provisions, the simple fact is that none of Amazon's and the Publisher Defendants' wholesale purchase agreements for print books contains any of the price or non-price MFNs that Bookends alleged. Neither are the agreements uniform or agreed upon by all defendants, as Bookends further alleged. Instead, Amazon and each Publisher Defendant entered into their own separately negotiated wholesale distribution agreement with terms and conditions unique to each relationship.

To ensure that Bookends accurately understood these basic facts and encourage it to withdraw its frivolous Complaint, Amazon made its print book distribution agreements available for Plaintiff's counsel to review. ECF 49. Those agreements were redacted to obscure commercially sensitive, nonpublic information, including individually negotiated pricing terms, that was not necessary for Bookends to determine that there were no MFNs or equivalent provisions in any of its print book distribution agreements. Following its counsel's review, Bookends withdrew its original Complaint.

On July 9, Bookends filed its First Amended Complaint. ECF 63. That Amended Complaint abandoned all of Bookends' former allegations about the existence or effect of alleged MFN provisions, effectively conceding the falsity of its prior MFN theory. In their place, Bookends now alleges an equally specious and unfounded conspiracy among Amazon and each of

the Publisher Defendants to discriminate on price in Amazon's favor, allegedly in violation of the RPA and the Sherman Act.  Am. Compl. ¶¶ 2-4, 7-8.  However, despite alleging that the Publisher Defendants sell to Amazon at "steep" discounts conferring a "significant competitive advantage," *id.* ¶ 4, Bookends fails to allege any actual facts to support those conclusory labels.  Likewise, the Amended Complaint contains no allegations about Bookends' own attempts to negotiate wholesale discounts, including whether it sought but was denied access to additional discounts beyond the purported "standard discount" it received.

Amazon now seeks the dismissal of Plaintiff's Amended Complaint.

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*  Thus, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]"  *Twombly*, 550 U.S. at 555.  "Factual allegations must be enough to raise a right to relief above the speculative level[.]"  *Id.*  "Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  *Iqbal*, 556 U.S. at 678-79.

The Supreme Court has repeatedly stressed that "Congress did not intend [for the RPA] to outlaw price differences that result from or further the forces of competition."  *Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 220 (1993).  To the contrary, "the Robinson–Patman Act should be construed consistently with broader policies of the antitrust laws," *id.*, which overwhelmingly seek to protect "*competition*, not *competitors*."  *Atl. Richfield Co. v. USA Petrol. Co.*, 495 U.S. 328, 338 (1990) (quoting *Brown Shoe Co. v. United States*, 370

U.S. 294, 320 (1962) (emphasis in original)).  Indeed, "[i]nterbrand competition . . . is the 'primary concern of antitrust law'" and "[t]he Robinson–Patman Act signals no large departure from that main concern." *Volvo Trucks N. Am., Inc. v. Reeder–Simco GMC, Inc.*, 546 U.S. 164, 180-81 (2006) (quoting *Continental T. V., Inc. v. GTE Sylvania Inc.*, 433 U.S. 36, 51-52 n.19 (1977)).

To that end, the Supreme Court has long required section 2(f) of the RPA to be construed so as not to discourage or punish "sturdy bargaining between buyer and seller." *Automatic Canteen Co. of Am. v. FTC*, 346 U.S. 61, 73-74 (1953).  Purchaser liability under section 2(f) is both narrow and "derivative" of seller liability under sections 2(a) or (b) thereof.  *Great Atl. & Pac. Tea Co., Inc. v. FTC*, 440 U.S. 69, 77 (1979) ("buyer liability under § 2(f) is dependent on seller liability under § 2(a)"); *see also Cash & Henderson Drugs, Inc. v. Johnson & Johnson*, 799 F.3d 202, 215 (2d Cir. 2015) ("A buyer cannot be liable unless the seller of the goods is liable under another section of the Act.").

"Reading *Twombly* together with the requirements of the Robinson–Patman Act § 2(a), then, a Robinson–Patman plaintiff must plead facts supporting a plausible inference of unlawful price discrimination." *Coalition for a Level Playing Field, L.L.C. v. AutoZone, Inc.*, 737 F. Supp. 2d 194, 215 (S.D.N.Y. 2010) ("*Coalition II*").  "[W]hen complicated contracts . . . are alleged, such pleading must refute the inference that [products] are not sold subject to materially different contract terms or, separately, that differentials simply reflect non-price terms of sale; both of which are lawful under the Act." *Id.*  Likewise, a plaintiff does not adequately allege price discrimination unless it alleges facts establishing that the prices about which it is complaining were not "functionally available to" it.  *CMS Volkswagen Holdings, LLC v. Volkswagen Grp. of Am., Inc.*, 25 F. Supp. 3d 432, 439 (S.D.N.Y. 2014), *vacated on other grounds* 669 Fed. App'x 602 (2d Cir.

2016); *Smith–Wholesale Co., v. R.J. Reynolds Tobacco Co.*, 477 F.3d 854, 861 (6th Cir. 2007) (explaining that "functional availability negates two essential elements" of a RPA claim).

While a *prima facie* showing of the seller's liability under section 2(a) is necessary to state a claim against a buyer under section 2(f), it is far from sufficient.  Because the buyer defendant must have knowledge of illegality, "a buyer cannot be liable if a prima facie case could not be established against a seller *or if the seller has an affirmative defense*."  *Great Atl. & Pac. Tea Co.*, 440 U.S. at 76.  Under this standard, a buyer is not liable under section 2(f) if the lower prices obtained are "either within one of the seller's defenses . . . or *not* known by him *not to be within* one of those defenses." *Automatic Canteen Co.*, 346 U.S. at 74; *see also id.* ("[T]here is no substantive violation if the buyer did not *know* that the prices it induced or received were not cost-justified.").  "Plaintiff thus bears the burden of showing that the buyer knew both that (1) he was receiving a lower price than a competitor and (2) the seller would have 'little likelihood of a defense' for offering that price." *Gorlick Distr. Ctrs., LLC v. Car Sound Exhaust Sys., Inc.*, 723 F.3d 1019, 1022 (9th Cir. 2013) (quoting *Automatic Canteen Co.*, 346 U.S. at 79).  "Restricting liability to situations where the buyer knowingly accepted illegal prices prevents section 2(f) from 'putting the buyer at his peril whenever he engages in price bargaining.'" *Id.* (quoting *Automatic Canteen Co.*, 346 U.S. at 73).

## ARGUMENT

### I.   PLAINTIFF'S ROBINSON-PATMAN ACT CLAIM AGAINST AMAZON FAILS AS A MATTER OF LAW.

#### A.   Plaintiff Fails To Allege Facts Adequate To Show that Amazon Knowingly Received an Illegally Discriminatory Price from Any Publisher Defendant.

Plaintiff has not met its burden of alleging particularized facts plausibly showing that Amazon knowingly accepted illegally discriminatory prices for print trade books.  On these alleged

facts, controlling Supreme Court authority requires the dismissal of Plaintiff's First Cause of Action to avoid unnecessarily chilling competition and harming consumer welfare.

        **1.**        **Plaintiff Alleges No Facts Plausibly Showing that Amazon Receives Discounts that Are Unavailable To Other Buyers.**

Plaintiff fails to allege any non-speculative facts concerning the wholesale prices Amazon pays for print trade books, and therefore does not plead the first essential part of any price discrimination claim under sections 2(a) or (f) of the RPA: "a difference in the price charged for the items of like grade and quality to two different buyers." *Cash & Henderson Drugs*, 799 F.3d at 209; *Coalition II*, 737 F. Supp. 2d at 209 (same); *Smith–Wholesale Co.*, 477 F.3d at 862 (same).

The Complaint asserts, without supporting detail, that "[t]he Big Five [Publisher Defendants] sell to Amazon at steep discounts to list prices below the standard discounts available to other booksellers." Am. Compl. ¶ 4. But that conclusory allegation is not supported by any specific facts to bring it across "the line between possibility and plausibility." *Twombly*, 550 U.S. at 557. Plaintiff does not even allege that it has direct knowledge of Amazon's wholesale prices—because it does not—leaving all such factual allegations impermissibly speculative.

Likewise, the Amended Complaint is entirely silent on Plaintiff's attempt to negotiate its *own* wholesale price discounts, and therefore fails plausibly to allege the functional unavailability of any discounts that Amazon may have received. *See CMS Volkswagen Holdings*, 25 F. Supp. 3d at 439 (price allowances do not violate the RPA "if the concessions are available equally and functionally to all customers") (quotation omitted); *Smith–Wholesale Co.*, 477 F.3d at 866 (same). Bookends alleges that the discount received by Amazon is "not equally available to Plaintiff and Class members," Am. Compl. ¶ 95, but once again that conclusory statement is unsupported by any facts establishing that Bookends actually sought and was denied better pricing. All the Amended Complaint alleges is that Plaintiff purchases print books "at her standard discount price

of up to 46%," *id.* ¶ 94, with absolutely no factual allegations suggesting it even attempted to obtain different prices. It therefore fails to plead "essential elements" of a price discrimination claim. *Smith–Wholesale Co.*, 477 F.3d at 861. Moreover, that failure is particularly glaring given that Plaintiff's original theory was that it *would have* bargained for better prices than Amazon but for the existence of MFN provisions that do not, in fact, exist. Compl., ECF 1, ¶ 23.

Under the *Twombly/Iqbal* plausibility standard, a plaintiff cannot "unlock the doors of discovery" by stating in conclusory terms the facts it hopes discovery will prove true. *Iqbal*, 556 U.S. at 678-79; *see also Twombly*, 550 U.S. at 558-59 (admonishing courts not "to forget that proceeding to antitrust discovery can be expensive" and rejecting the contention that "a claim just shy of a plausible entitlement to relief can, if groundless, be weeded out early in the discovery process through careful case management") (internal quotation omitted).

Plaintiff's inability to allege particularized facts concerning the wholesale prices paid by Amazon, and how they compare to prices Plaintiff actually sought for itself, mirrors the grounds for dismissal that were affirmed in *New Albany Tractor, Inc. v. Louisville Tractor, Inc.*, 650 F.3d 1046 (6th Cir. 2011). In that case, a retailer of mowing equipment sued both a manufacturer, Scag, and a competing retailer, Louisville Tractor, alleging that they discriminated against plaintiff in violation of the RPA. *Id.* at 1048-49. Plaintiff was unable to allege facts supporting the existence of discriminatory prices, however, "because defendants Scag and Louisville Tractor [were] apparently the only entities with the information about the price at which Scag sells its equipment to Louisville Tractor." *Id.* at 1050. The Sixth Circuit affirmed the dismissal of Plaintiffs' complaint, reasoning:

> [T]he . . . language of *Iqbal* specifically directs that *no* discovery may be conducted in cases such as this, even when the information needed to establish a claim of discriminatory pricing is solely within the purview of the defendant or a third party, as it is here. . . . In this case that means, as the district court held, that plaintiff must

9

> allege specific facts of price discrimination even if those facts are only within the head or hands of the defendants.

*Id.* at 1051 (emphasis in original).

The same analysis was subsequently adopted and applied in this District in *Coalition for a Level Playing Field, L.L.C. v. AutoZone, Inc.*, 813 F. Supp. 2d 557 (S.D.N.Y. 2011) ("*Coalition III*"). In that case, plaintiffs sought leave to file an amended complaint alleging that certain "auto parts manufacturers" price discriminated in favor of "large chain retailers that sell auto parts," in violation of sections 2(a) and (f) of the RPA. *Id.* at 559. Plaintiffs argued that the allegations of the proposed amended complaint cured earlier deficiencies because, *inter alia*, they directly alleged plaintiffs' "inability to determine or plead the extent of price discrimination without discovery." *Id.* Relying on the foregoing authorities, the court denied leave to amend: "Plaintiffs' implicit plea for discovery runs contrary to the pleading requirements of *Iqbal* and *Twombly*." *Id.* at 568. "Plaintiffs' difficulty in pleading this case is in large part due to plaintiffs' strategy of attacking industry wide sales arrangements that make price term comparisons and claims of discrimination across two different distribution chains difficult to support with the requisite factual allegations." *Id.* at 569. "And despite that, their pleading would still be tenable were plaintiffs to plead any factual content that explained why it is plausible—not merely possible—that defendants have broken the law." *Id.*

As in *New Albany Tractor* and *Coalition III*, Plaintiff in this case has alleged nothing more than the possibility that the discounts negotiated between Amazon and any one or more of the Publisher Defendants are illegally discriminatory and unavailable to Plaintiff. *Compare* Am. Compl. ¶ 4 n.7 (Amazon discount unknown), *with id.* ¶ 94 (Bookends receives up to a 46% discount off of the publishers' list prices). Given the absence of underlying factual information, Plaintiff's allegations that Amazon receives "steep discounts" that are "not equally available to

Plaintiff and Class members," Am. Compl. ¶¶ 4, 95, amount to nothing more than the "[t]hreadbare recitals" and "conclusory statements [that] do not suffice" to state a claim. *Iqbal*, 556 U.S. at 678.

### 2.   Plaintiff Alleges No Facts Plausibly Showing that Amazon Knowingly Received Discriminatory Prices.

In addition to its failure to allege the existence in fact of a price differential favoring Amazon, Plaintiff does not adequately allege that Amazon had *knowledge* that its wholesale prices were lower than the prices paid by other retailers, let alone that they were illegally discriminatory. For that separate and independent reason, Plaintiff fails to state a claim against Amazon under section 2(f) of the RPA. *See Gorlick Distr. Ctrs.,* 723 F.3d at 1022 (Plaintiff must show that the "buyer knew . . . he was receiving a lower price than a competitor"); *Automatic Canteen Co.*, 346 U.S. at 74 ("there is no substantive violation if the buyer did not *know* that the prices it induced or received were" illegal); *Dayton Superior Corp. v. Marjam Supply Co.*, No. 07-cv-5215, 2011 WL 710450, *12-*13 (E.D.N.Y. Feb. 22, 2011) (dismissing section 2(f) counterclaim for failure to allege facts showing purchaser had knowledge that it was receiving discriminatory price).

Plaintiff's two attempts at meeting this pleading requirement are contained in a single, conclusory paragraph of the Amended Complaint. *See* Am. Compl. ¶ 99. Both are unavailing. First, Plaintiff alleges that Amazon's knowledge of receiving discriminatory prices is "evidenced by its demand from the Big Five that the[y] increase Amazon's discounts annually." *Id.* Even if that assertion were credited, it does not remotely evidence the knowledge of *illegality* needed to state a claim under section 2(f). The Supreme Court has categorically rejected the proposition that a buyer evidences knowledge of illegality by bargaining for better prices. *See Automatic Canteen Co.*, 346 U.S. at 73 ("[W]e are unable, in the light of congressional policy as expressed in other antitrust legislation, to read this ambiguous language as putting the buyer at his peril whenever he engages in price bargaining"); *see also Gorlick Distr. Ctrs.*, 723 F.3d at 1022 ("The receipt of

better-than-published prices, without more, does not satisfy section 2(f)'s knowledge requirement."); *Brooke Grp. Ltd.*, 509 U.S. at 220 ("Congress did not intend [for the RPA] to outlaw price differences that result from or further the forces of competition.").  In short, there is no basis whatsoever to conclude that a party evidences knowledge of illegality by bargaining for better prices over time. Am. Compl. ¶ 99.  Buyers are not only expected but encouraged to engage in such bargaining, making Plaintiff's allegation inadequate as a matter of law to plead Amazon's knowledge of illegality.

Plaintiff's second conclusory attempt at pleading the element of knowledge of illegality – "[t]hat Amazon knowingly received the benefit of the Big Five's price discrimination is also supported by Defendants' pretextual insertion of the 'meeting competition' defense" in certain contracts, Am. Compl. ¶ 99 – further underscores that inadequacy.  Plaintiff has the law backwards.  A buyer categorically does not have knowledge of illegality if it knows that the "seller has an affirmative defense."  *Great Atl. & Pac. Tea Co.,* 440 U.S. at 76; *see also Automatic Canteen Co.*, 346 U.S. at 74 (same).  Indeed, Section 2(b) of the RPA makes clear that sellers are not engaged in illegal price discrimination if they "lower [their] price . . . in good faith to meet an equally low price of a competitor."  15 U.S.C. § 13(b).  The fact that distribution agreements expressly acknowledge that the publisher was setting prices to meet competition, *see* Am. Compl. ¶ 8 n.19, is evidence that Amazon has *not* violated section 2(f), rather than the other way around. *See Great Atl. & Pac. Tea Co.,* 440 U.S. at 81 ("[A] buyer who has done no more than accept the lower of two prices competitively offered does not violate § 2(f) provided the seller has a meeting-competition defense."); *Automatic Canteen Co.*, 346 U.S. at 71 (section 2(f) does not prohibit price differentials resulting from "bona fide attempts to meet competition").  Plaintiff's attempt to turn

those provisions into evidence of culpable knowledge, Am. Compl. ¶ 99, is exactly the sort of conclusory labeling that does not state a claim. *Twombly*, 550 U.S. at 555.[3]

Finally, Plaintiff's allegations about Amazon's purported knowledge of discriminatory pricing must be evaluated in the light of Plaintiff's now-abandoned allegations from the original Complaint, which bind Plaintiff notwithstanding its withdrawal of that Complaint.[4]   Plaintiff originally alleged that wholesale prices for print trade books were artificially constrained by price MFN clauses, which supposedly "ensure[d] that no rival bookseller can differentiate itself from, or otherwise compete with, Amazon on price[.]" Compl., ECF 1, ¶ 2.  Absent such provisions, Plaintiff alleged, "competing booksellers may be able to obtain lower wholesale prices from publishers than Amazon, which would enable them to gain market share by offering lower prices to consumers." *Id.* ¶ 23.  Plaintiff withdrew that Complaint because its review of Amazon's purchase agreements confirmed that the alleged MFN provisions do not exist, and the Publisher Defendants are therefore free to negotiate with rival booksellers.  There is, accordingly, no reason to presume, in the absence of well-pleaded facts to the contrary, that Amazon knows how its wholesale purchase price compares to those of all other retailers of print trade books, including Barnes & Noble, Walmart, and others.

---

[3]   The irony in Plaintiff's attack on these provisions is that they reflect a long-standing practice designed to *reduce* the possibility of horizontal collusion.  In *Great Atlantic and Pacific Tea, Co.*, the Supreme Court warned that requiring sellers to independently verify the terms of competing offers before they could meet competition would unduly facilitate "collusive action" leading to "price matching and anticompetitive cooperation among sellers."  440 U.S. at 80; *see also id.* at 84 (seller "could not then attempt to verify the existence and terms of the competing offer . . . without risking Sherman Act liability").  Accordingly, the Court endorsed the adequacy of a process in which sellers meet competition based upon the buyer's non-specific representations about the existence of competing offers.  *Id.*

[4]   While Plaintiff has shifted its tune in search of a new theory of wrongdoing, its original allegations continue to bind it "throughout the course of th[is] proceeding."  *Official Cmtee. of Unsecured Creditors of Colored Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 167 (2d Cir. 2003).

**B.    Plaintiff's Own Allegations Show that the Publisher Defendants Have Multiple Defenses to a Discriminatory Pricing Claim, Precluding Liability for Amazon Under Section 2(f).**

Amazon cannot be liable for receiving allegedly discriminatory prices if it had reason to believe that the Publisher Defendants had potentially valid justifications for offering those prices. *Great Atl. & Pac. Tea Co.,* 440 U.S. at 76.   Notably, this standard *does not* depend upon the ultimate vindication of the Publisher Defendants' defenses; it is enough that Amazon, at the time it accepted the prices, did not *know* that such defenses were invalid or that they had "little likelihood" of success.   *See Automatic Canteen Co.*, 346 U.S. at 74 ("a buyer is not liable under [section] 2(f) if the lower prices he induces are . . . *not known by him* not to be within one of those defenses"); *Gorlick Distr. Ctrs.*, 723 F.3d at 1022 (Plaintiff's burden is to show that the buyer knew that the "seller would have 'little likelihood of a defense' for offering that price").

Multiple allegations in the Complaint demonstrate the existence of viable defenses for the Publisher Defendants, leaving Plaintiff unable to meet their burden of alleging that Amazon violated section 2(f) of the RPA through knowing acceptance of the Publisher Defendants' allegedly lower wholesale prices.

**1.    Publisher Discounts Are Justified To Compensate Amazon for the Value of Its Services.**

It is well established that "where a price differential merely accords due recognition and reimbursement for functions actually performed by a downstream buyer, it 'is not illegal.'" *Coalition II*, 737 F. Supp. 2d at 211 (quoting *Texaco Inc. v. Hasbrouck*, 496 U.S. 543, 562 (1990)); *see also Gorlick Distr. Ctrs.*, 723 F.3d at 1022 (price differentials for two customers may lawfully result from "differences in how the two companies did business").   Plaintiff's Amended Complaint is replete with allegations substantiating the increased value to the Publisher Defendants of selling print books through Amazon when compared to other, less efficient retailers.

Among other allegations, Plaintiff contends:

- "[C]onsumers find online book shopping uniquely attractive because of the convenience, broad selection, and price, or because they hate shopping in-person." Am. Compl. ¶ 69;

- "Typically, with a few clicks or a simple voice command, an ecommerce retailer will send the product directly to the consumers without any interaction with sales staff. Consumers can shop online 24/7 and locate hard-to-find items more easily than they could by searching physical stores." *Id.*;

- "Online retail provides greater convenience to consumers who can order products from any location without having to find a brick-and-mortar store selling the specific product with the specific desired attributes and the desired quantity." *Id.*;

- "[O]nline bookstores provide . . . features, as alleged here, 24/7 access, easy search functions (often assisted by consumer data gathered online), vast inventory, quick checkout, and products that will be delivered in due course as opposed to immediately surrendered to the customer. These features are wholly distinguishable from physical stores. . . ." *Id.* ¶ 70;

- The physical location of the business operating within ecommerce becomes less relevant because the ecommerce market "facilitates production and distribution across borders ... and can assist in opening markets that were previously closed. *Id.* ¶ 72.

While Plaintiff makes these allegations in a misbegotten attempt to plead that print books sold online constitute a distinct antitrust submarket,[5] they plainly show that Publisher Defendants have legitimate reasons to provide lower wholesale acquisition prices to a hybrid retailer like Amazon that has invested more heavily than other retailers in a method of distribution that consumers find attractive and responsive to their tastes.  By Plaintiff's own allegation, Amazon

---

[5]      *See* Am. Compl. ¶¶ 67-80.  Although the Court need not resolve the issue to decide this motion, Amazon disputes that any or all of these allegations create a distinct product market for books sold online. To the contrary, print books sold online and identical print books sold in brick and mortar retail stores constitute obvious substitutes for one another and are plainly in the same relevant market for purposes of an antitrust claim. *See Chapman v. New York State Div. for Youth*, 546 F.3d 230, 238 (2d. Cir. 2008) (Markets that do not "encompass all interchangeable substitute products" must be rejected as a matter of law); *Bookhouse of Stuyvesant Plaza, Inc. v. Amazon.com, Inc.*, 985 F. Supp. 2d 612, 621 (S.D.N.Y. 2013) (rejecting alleged market that separated eBooks from print books); *PSKS, Inc. v. Leegin Creative Leather Prods.*, 615 F.3d 412, 418 (5th Cir. 2010) (rejecting market limited to goods sold at "independent retailers" because plaintiff had not "alleged facts that could establish why independent retailers do not compete with larger chain stores").

can reach a broader range of consumers; with fewer costs, theft and other losses; and greater tailoring to individual consumers' known preferences. *Ibid.* At a minimum, these allegations create a plausible defense for the Publisher Defendants, requiring Plaintiff to plead specific facts demonstrating that Amazon knew such a defense had little likelihood of success. *See Gorlick Distrib. Ctrs.*, 723 F.3d at 1022 (section 2(f) claim failed where plaintiff failed to show that defendant believed its superior prices "resulted from anything other than the significant differences in how the two companies did business"); *Coastal Fuels of Puerto Rico, Inc. v. Caribbean Petroleum Corp.*, 990 F.2d 25, 27 (1st Cir. 1993) (Breyer, J.) (RPA permits price differences that reflect purchasers' "different market conditions"); *Coalition II*, 737 F. Supp. 2d at 211-12 (products sold through more efficient business models are not of "like grade" and may be priced differently).

Plaintiff alleges in conclusory terms that the functional discount defense is unavailable because "the discounts offered to Amazon versus Plaintiff and members of the proposed Classes exceeds any cost savings achieved by selling to Amazon." Am. Compl. ¶ 101.[6] On top of being conclusory, Plaintiff's allegation does not address the issue relevant to Plaintiff's section 2(f) claim against Amazon: whether Amazon knows that any functional discount defense that may be asserted by a Publisher Defendant would be invalid or have "little likelihood" of success. *Automatic Canteen Co.*, 346 U.S. at 74; *Gorlick Distr. Ctrs.*, 723 F.3d at 1022. Nothing in the Amended Complaint comes close to meeting that standard. Quite the opposite, Plaintiff's allegations raise

---

[6]     Notably, Plaintiff pleads absolutely no facts that would allow for meaningful evaluation of this contention. The Amended Complaint quantifies neither the size of any discount received by Amazon, nor the size of the savings and other benefits to the Publisher Defendants from selling to Amazon, making any comparison between the two an exercise in speculation. Plaintiff's burden at the pleading stage is to allege facts sufficient to "*refute the inference* that [products] are not sold subject to materially different contract terms or, separately, that differentials simply reflect non-price terms of sale; both of which are lawful under the Act." *Coalition II*, 737 F. Supp. 2d at 215. A conclusory statement that costs outweigh benefits is incapable of making such a refutation.

substantial reasons to believe the Publisher Defendants may ultimately prevail on a functional discount defense, and that is all that is necessary at this stage to foreclose any entitlement to relief against Amazon under section 2(f).  *Ibid.*

### 2.  Publisher Discounts Are Justified by Meeting Competition.

As discussed above, section 2(b) of the RPA provides that a seller does not engage in unlawful price discrimination when it lowers its price "in good faith to meet an equally low price of a competitor."  15 U.S.C. § 13(b).  Importantly, this standard only requires that the seller hold a "good-faith belief, rather than absolute certainty, that a price concession is being offered to meet an equally low price offered by a competitor."  *United States v. U.S. Gypsum Co.*, 438 U.S. 422, 453 (1978).  A seller may successfully invoke the defense "despite the fact that [a] price concession [is] ultimately found to have undercut that of the competition and thus technically to have fallen outside the 'meet not beat' strictures of the defense."  *Id.* at 454; *see also Great Atl. & Pac. Tea Co.*, 440 U.S. at 83 ("Since good faith, rather than absolute certainty, is the touchstone of the meeting-competition defense, a seller can assert the defense even if it has unknowingly made a bid that in fact not only met but beat his competition.").  "Recognition of the right of a seller to meet a lower competitive price in good faith may be the primary means of reconciling the Robinson-Patman Act with the more general purposes of the antitrust laws of encouraging competition between sellers."  *Great Atl. & Pac. Tea Co.*, 440 U.S. at 83 n.16.

The facts alleged in the Amended Complaint would give any buyer in Amazon's position ample reason to believe that the Publisher Defendants could successfully invoke the meeting-competition defense, and absolutely no reason to believe that such a defense would be invalid or stand "little likelihood" of success.  *Automatic Canteen Co.*, 346 U.S. at 74; *Gorlick Distr. Ctrs.*, 723 F.3d at 1022.  In particular, Plaintiff quotes directly from distribution agreements that are conditioned on Amazon demonstrating to that publisher that it was meeting competition.  Am.

Compl. ¶ 8 n.19.  A seller who relies upon such assurances has a valid meeting-competition defense even if its own offer ultimately exceeds that of its competitors.  *See Great Atl. & Pac. Tea Co.*, 440 U.S. at 83; *U.S. Gypsum Co.*, 438 U.S. at 454-59.

Plaintiff makes two arguments against application of the meeting-competition defense.  *See* Am. Compl. ¶ 104.  Both are squarely wrong and contradicted by other allegations in the Amended Complaint.  First, Plaintiff argues that the Publisher Defendants are not truly competitors at all because each book they publish is a unique work "completely distinct from . . . any work that its competitor publishes," and "[c]onsumer demand and preference for different titles and different authors is not the same." *Id*.  According to Plaintiff, "[b]ecause different book titles are not commodities of like grade and quality, competition in the sale of different titles does not fall within the meeting the competition exception of the Robinson-Patman Act." *Id*.  Under that sweeping argument, a book publisher could never lower its own pricing to meet the competition of rival publishers, and would have to treat each of its published works as if it were its own unique commodity for purposes of the RPA.  That is not the law.  Federal courts have long applied the meeting competition defense in circumstances where the relevant competition was supplied by a seller of a non-identical competing product, and that application is compelled by the plain text of the statute.  *See, e.g.*, *Walker v. Hallmark Cards, Inc.*, 992 F. Supp. 1335, 1341-42 (M.D. Fla. 1997) (publisher of "Hallmark" greeting cards validly lowered its prices to chain retailer to meet competition from publisher of "American" greeting cards); *Zoslow v. MCA Distrib. Corp.*, 594 F. Supp. 1022, 1031 (N.D. Cal. 1984) (producer of music recordings under labels "Warner/Elektra/Atlantic" (WEA), had potentially viable meeting-competition defense based on

pricing strategies of competing music labels "CBS, MCA, RCA, and Capitol" (but denying summary judgment for other reasons)).[7]

Plaintiff's argument is also incoherent and contradicted by core allegations of the Amended Complaint. As Plaintiff directly pleads: the "Big Five [publishers] are *horizontal competitors* in the publication and sale (at wholesale) of print trade books." Am. Compl. ¶ 7. Indeed, according to Plaintiff, "[a]cting alone, none of the Big Five could have raised the market price of trade print books or changed public perception about the value of books." *Id.* ¶ 13; *see also id.* at ¶¶ 39-40 (same). It is only through "collusion" and "acting collectively" that the Publisher Defendants supposedly gained that power. *Ibid.* The necessary implication of those allegations is that the Publisher Defendants' pricing of individual print books is constrained by other publishers' pricing of different print books, *i.e.*, that they act as competitors. Each publisher is fully entitled to reduce its prices to meet that competition without fear of violating the RPA. *See* 15 U.S.C. § 13(b).

Plaintiff fares no better with its second argument – that the meeting-competition defense is supposedly unavailable because the Publisher Defendants acted collusively and "expressly conditioned that the discount applies only if the others accepted the same illegally discriminatory price." Am. Compl. ¶ 104. This argument is premised upon an indefensible reading of the contractual language quoted in footnote nineteen of the Amended Complaint. *See* Am. Compl., ¶ 8 n.19. The quoted provisions plainly state that a publisher *is* offering a particular price to meet

---

[7]    Contrary to Plaintiff's suggestion, the meeting-competition safe harbor is not qualified by any further requirement to show that the relevant competitors are sellers of "commodities of like grade and quality." Am. Compl. ¶ 104. That is an element of Plaintiff's burden to demonstrate that the *defendant* is engaged in discriminatory pricing *of its own* commodity product, *see* 15 U.S.C. § 13(a), but there is no comparable language cabining the scope of section 2(b)'s defense for meeting competition from third-parties. Instead, the statute speaks simply about meeting the price "of a competitor." *Id.* § 13(b). It is settled that a firm's "competitors" include sellers of non-identical substitute products. *See, e.g., United States v. E. I. du Pont de Nemours & Co.*, 351 U.S. 377, 394-400 (1956) (Although "[c]ellophane differs from other flexible packaging materials" its "interchangeability with the other materials mentioned suffices to make it a part of [a broader] flexible packaging material market.").

competition *that has already been* offered to Amazon.  *Id.*  That is why the contracts use past tenses to describe the competing offers, and present or future tenses to identify the terms being offered in response.  *Id.*  In other words, these clauses do nothing more than memorialize the publishers' individual decisions to meet competition, as section 2(b) of the RPA expressly permits them to do.  *See* 15 U.S.C. § 13(b); *see also Delta Airlines, Inc. v. Bombardier, Inc.*, No. 1:20-cv-3025-GHW, 2021 WL 1163702, *10 (S.D.N.Y. Mar. 25, 2021) ("When allegations contained within the complaint are contradicted by documents attached to the complaint, the documents control, and the Court need not accept the allegations contained within the complaint as true.") (quotation omitted).

In short, the Publisher Defendants have viable meeting competition defenses, and Amazon consequently cannot be charged with knowledge that their prices were illegally discriminatory. *Automatic Canteen Co.*, 346 U.S. at 74; *Great Atl. & Pac. Tea Co.,* 440 U.S. at 85.

### C.     Plaintiff Fails Adequately To Allege Harm To Competition.

In addition to alleging it was unlawfully discriminated against, Plaintiff has the burden of alleging (and ultimately proving) that such discrimination had the effect of substantially lessening competition.  *See* 15 U.S.C. § 13(a); *Volvo Trucks N. Am.*, 546 U.S. at 180 (any "price discrimination" must "affect substantially" competition between favored purchaser and plaintiff); *Cash & Henderson Drugs*, 799 F.3d at 210 (same).  Because Plaintiff has not adequately alleged harm to competition, it fails to state a claim under the RPA.

The requirements for proving harm to competition differ based on the nature of a plaintiff's claim.  For these purposes, Bookends is pursuing what the law regards as a secondary-line discrimination claim, *i.e.*, "injury to competition between different purchasers of the same product."  *Cash & Henderson Drugs*, 799 F.3d at 209.  In such a case, "the 'hallmark of the

requisite competitive injury' is the diversion of sales from a disfavored purchaser to a favored purchaser." *Id.* at 210 (quoting *Volvo Trucks N. Am.*, 546 U.S. at 177).

Plaintiff's Amended Complaint does not identify a single sale that Bookends claims to have lost to Amazon as a result of the alleged discrimination.  Instead, it seeks to plead this element by claiming a beneficial inference under the doctrine of *FTC v. Morton Salt Co.*, 334 U.S. 37 (1948).  *See* Am. Compl. ¶ 98 & n.123 (purporting to allege injury to competition under the "*Morton Salt* inference").  As the Second Circuit has explained, the *Morton Salt* doctrine creates a rebuttable inference of harm to competition where a seller can show that its rival received "*substantial* discounts . . . over a significant period of time." *Cash & Henderson Drugs*, 799 F.3d at 210.

Plaintiff's reliance upon *Morton Salt* fails for the same reason as its discriminatory pricing allegations: a failure to allege facts supporting the conclusory label that any discounts Amazon received were "substantial" over a "significant period of time."  Just as Plaintiff has not alleged factual support for its contention that Amazon's prices were lower, it equally fails to allege facts showing that any such discount was "substantial" or sustained over a "significant" period of time.  Instead its allegations merely parrot the relevant legal standard, with no supporting factual information specific to this case.  *Compare* Am. Compl. ¶ 98 ("Plaintiff and Class members had to pay . . . substantially more for their goods over time than their competitor"), *with Cash & Henderson Drugs*, 799 F.3d at 210 (requiring proof that the preferred buyer received "substantial discounts . . . over a significant period of time").  The Amended Complaint's conclusory allegations on this point are nothing more than a "formulaic recitation of the elements" of the *Morton Salt* standard, which fails to state a claim.  *Twombly*, 550 U.S. at 555.

## II.   PLAINTIFF'S SHERMAN ACT CLAIMS FAIL AS A MATTER OF LAW.

Plaintiff re-states its unfounded price discrimination theory in three other causes of action, all brought under the Sherman Act.  *See* Am. Compl. ¶¶ 105-23 (Second Cause of Action, for

violation of 15 U.S.C. § 1); *id.* ¶¶ 124-30 (Third Cause of Action, for violation of 15 U.S.C. § 2); *id.* ¶¶ 131-38 (Fourth Cause of Action, for violation of 15 U.S.C. § 2).  While Plaintiff nominally pleads these claims as alternative legal theories, each ultimately depends upon the same core allegation that the Publisher Defendants provide Amazon with "discriminatory pricing" that unfairly enhances its competitive position at the expense of Plaintiff and other retailers. *Id.* ¶¶ 111, 119, 128, 135 (alleging that "discriminatory pricing" was the actionable wrongdoing).

These causes of action fail to state a claim.  Outside of the RPA, nothing in the antitrust laws prohibits Amazon from competing to offer the best consumer-facing prices it possibly can. Rather, it is the express goal of federal antitrust law to encourage robust competition, and it would undercut rather than promote well-established antitrust policy to punish price competition that does not independently violate the RPA or the other, narrowly drawn antitrust theories not at issue here. For these and other reasons stated herein, Plaintiff's Sherman Act claims must be dismissed.

### A.     The Sherman Act Does Not Independently Prohibit Price Competition.

As discussed above, "[i]nterbrand competition . . . is the 'primary concern of antitrust law'" and "[t]he Robinson–Patman Act signals no large departure from that main concern." *Volvo Trucks N. Am.*, 546 U.S. 164, 180-81; *see also Atl. Richfield Co.*, 495 U.S. at 338 (underscoring the importance of protecting "*competition*, not *competitors*").  "[C]utting prices in order to increase business often is the very essence of competition." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 594 (1986).  "To avoid chilling aggressive price competition, [the Supreme Court has] carefully limited the circumstances under which plaintiffs can state a Sherman Act claim by alleging that prices are too low." *Pac. Bell Tel. Co. v. linkLine Commc'ns, Inc.*, 555 U.S. 438, 451 (2009).  "Low prices benefit consumers regardless of how those prices are set, and so long as they are above predatory levels, they do not threaten competition." *Id.* (quoting *Atl. Richfield*, 495 U.S. at 340).

22

"As a general rule, the exclusionary effect of prices above a relevant measure of cost either reflects the lower cost structure of the alleged predator, and so represents competition on the merits, or is beyond the practical ability of a judicial tribunal to control without courting intolerable risks of chilling legitimate price-cutting." *Brooke Grp.*, 509 U.S. at 223. "Even in an oligopolistic market, when a firm drops its prices to a competitive level to demonstrate to a maverick the unprofitability of straying from the group, it would be illogical to condemn the price cut:  The antitrust laws then would be an obstacle to the chain of events most conducive to a breakdown of oligopoly pricing and the onset of competition." *Id.* at 223-24.

Plaintiff's Second, Third, and Fourth Causes of Action cannot be reconciled with these core principles of federal antitrust law.  The basic allegation in each claim is that by charging lower wholesale prices to Amazon than they charge to other retailers, the Publisher Defendants give "Amazon an unfair advantage over its rival booksellers."  Am. Compl. ¶ 119 (Second Cause of Action); *id.* at ¶ 128 (similar for Third Cause of Action); *id.* at ¶ 135 (similar for Fourth Cause of Action).  Such allegations fail to state a claim under the Sherman Act.  *See linkLine Commc'ns*, 555 U.S. at 451; *Atl. Richfield Co.*, 495 U.S. at 338; *Brooke Grp.*, 509 U.S. at 223.  If Plaintiff cannot state a valid claim for unlawful price discrimination under the RPA, then nothing in sections one or two of the Sherman Act provide a viable outlet for its core contention that Amazon should be charged higher wholesale prices for print books.

**B.      Plaintiff's Attempts To Allege a Conspiracy To Charge "Discriminatory" Prices Fail To State a Claim.**

Plaintiff's Second and Fourth causes of action fail for the additional reason that they impermissibly seek to assert a conspiracy to violate the RPA, a cause of action that does not exist and is, in any event, unsupported by the facts alleged in the Amended Complaint.

First, both causes of action are premised upon a purported conspiracy to charge "discriminatory" prices – a term of art that exists under the RPA, but is not an actionable concept under the Sherman Act.  *See* Am. Compl. ¶¶ 111, 119 (Second Cause of Action), 135 (Fourth Cause of Action); *cf. Drug Mart Pharm. Corp. v. Am. Home Prods. Corp.*, 472 F. Supp. 2d 385, 402 (E.D.N.Y. 2007) ("It has frequently been noted by commentators that there is a tension between the objectives of the Robinson–Patman and Sherman Acts."); *Great Atl. & Pac. Tea Co.*, 440 U.S. at 83 n.16 ("Recognition of the right of a seller to meet a lower competitive price in good faith may be the primary means of reconciling the Robinson-Patman Act with the more general purposes of the antitrust laws of encouraging competition between sellers.").

Second, Plaintiff's attempt to allege a conspiracy to violate the RPA fails as a matter of law.  The RPA does not countenance such a claim.  *See FTC v. Henry Broch & Co.*, 363 U.S. 166, 174 (1960) (the RPA "is aimed at price discrimination, not conspiracy"); *see also Gen. Supply Deck & Floor Underlayment Co. v. Maxxon S.W., Inc.*, No. 00-cv-2745, 2001 WL 1480768, *4 (N.D. Tex. Nov. 21, 2001) ("There is no provision in the Robinson–Patman Act providing for such a claim—'[t]he Act is aimed at price discrimination, not conspiracy.'"); *Drug Mart Pharm. Corp. v. Am. Home Prods. Corp.*, 378 F. Supp. 2d 134, 140 (E.D.N.Y. 2005) ("research has not revealed a single case in which a conspiracy claim was asserted and allowed in a Robinson–Patman case"); *Bishop v. GNC Franchising L.L.C.*, 403 F. Supp. 2d 411, 424 (W.D. Pa. 2005) ("there exists no authority for allowing a conspiracy claim under the Robinson–Patman Act").

In addition, Plaintiff's repeated allegations about a supposed "discriminatory pricing scheme," Am. Compl. ¶¶ 3, 37, 57, are based upon blatant mischaracterizations of the Publisher Defendants' individual agreements to meet competition that has actually been offered.  *Supra* at pp. 19-20.

### C.   Plaintiff's Horizontal Conspiracy Allegations Are Implausible.

In addition to the foregoing reasons, Plaintiff's allegations of a horizontal conspiracy among the Publisher Defendants to collectively charge Amazon lower wholesale prices, *see* Am. Compl. ¶¶ 105-23, 131-38, are implausible and fail to state a claim.

"A plaintiff's job at the pleading stage, in order to overcome a motion to dismiss, is to allege enough facts to support the inference that a conspiracy actually existed." *Mayor and City Council of Baltimore v. Citigroup, Inc*., 709 F.3d 129, 136 (2d Cir. 2013). For the reasons stated more fully in the Publisher Defendants' separate motion to dismiss (which Amazon incorporates by reference), the Amended Complaint contains no facts plausibly supporting the inference that Publisher Defendants have conspired to consolidate sales in a single retailer by charging it lower prices than other retailers. *See* Pub. Defs.' Mot. To Dismiss, ECF 76, at 3-10. Moreover, any Publisher Defendant that wanted to increase the volume of books sold at the prices it charges to Amazon, would rationally seek to offer those same prices to other retailers as well – as Plaintiff itself has alleged. *See E & L Consulting, Ltd. v. Doman Indus. Ltd.*, 472 F.3d 23, 30 (2d Cir. 2006) (any seller of a product "would prefer multiple competing buyers unless an exclusive distributorship arrangement provides other benefits in the way of, for example, product promotion or distribution"); *Real Selling Grp. LLC v. ESN Grp., Inc.*, 2021 WL 535748, *4-*5 (S.D.N.Y. Feb. 12, 2021) (dismissing antitrust claim as implausible because seller "has no anticompetitive incentive to reduce the number of entities reselling its products"); ECF 1, Compl. ¶ 23.

## **CONCLUSION**

For all of these reasons, Plaintiff's Amended Complaint should be dismissed.

Dated:  September 7, 2021

Respectfully Submitted,

/s/ John E. Schmidtlein
John E. Schmidtlein (*Pro Hac Vice*)
Jonathan B. Pitt (S.D.N.Y. Bar No. jp0621)
Carl R. Metz (*Pro Hac Vice*)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC 20005
Tel.: (202) 434-5000
Fax: (202) 434-5029
JSchmidtlein@wc.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing Memorandum of Law in support of

Amazon's Motion to Dismiss Plaintiff's Amended Complaint has been filed and served upon

counsel of record via ECF electronic notification.


Dated:  September 7, 2021

Respectfully Submitted,

/s/ John E. Schmidtlein

John E. Schmidtlein (*Pro Hac Vice*)
