**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| BOOKENDS & BEGINNINGS LLC, on behalf of itself and all others similarly situated, | No. 21-cv-02584-GHW-DCF |
| Plaintiff, | **PLAINTIFF'S MEMORANDUM IN OPPOSITION TO PUBLISHER DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT AND TO STRIKE PLAINTIFF'S CLASS ALLEGATIONS** |
| v. | |
| AMAZON.COM, INC.; HACHETTE BOOK GROUP, INC.; HARPERCOLLINS PUBLISHERS L.L.C.; MACMILLAN PUBLISHING GROUP, LLC; PENGUIN RANDOM HOUSE LLC; SIMON & SCHUSTER, INC., | [REDACTED VERSION] |
| Defendants. | |

## TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ..................................................................................................1

II.    FACTUAL BACKGROUND ................................................................................2

III.   ARGUMENT ........................................................................................................5

    A.     Plaintiff plausibly alleges that the Publisher Defendants and Amazon conspired to raise wholesale prices of trade print book in violation of Section 1 of the Sherman Act. ...............................................................5

    B.     Plaintiff plausibly alleges the Defendants conspire to confer a Monopoly on Amazon in the online retail print trade book market in violation of Section 2 of the Sherman Act.......................................10

    C.     Plaintiff plausibly alleges antitrust injury for its Sherman Act claims. ..........12

    D.     Plaintiff plausib ly alleges harm to competition for its Sherman Act claims. ...............................................................................................................13

    E.     Plaintiff plausibly alleges that the Publisher Defendants' discriminatory prices violated the Robinson-Patman Act. ...........................15

        1.     Injury to competition does not require Plaintiff to allege every book purchased at discriminatory prices. ............................................16

        2.     Plaintiff does not allege materially different contracts that would justify Defendants' discriminatory pricing. .........................................17

        3.     The Publisher Defendants cannot legally provide Amazon a functional discount when they already pay Amazon separately for distribution and marketing services. ..............................................19

        4.     The complaint alleges contemporaneous sales in interstate commerce. .......................................................................................21

        5.     The complaint specifies goods of "like grade and quality." ...............22

        6.     Defendants did not lower their discounts to Amazon in a good faith effort to meet a competitor's price.............................................22

        7.     Plaintiff has stated claims for relief under Sections 2(d) and 2(e)..................24

    F.     The Publisher Defendants' motion to strike the class allegations fails to establish that class certification would be impossible.................................24

IV.    CONCLUSION ...................................................................................................25

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Aerotec Int'l, Inc. v. Honeywell Int'l, Inc.,*
836 F.3d 1171 (9th Cir. 2016) ......................................................................................................18

*Am. Booksellers Ass'n, Inc. v. Barnes & Noble, Inc.,*
135 F. Supp. 2d 1031 (N.D. Cal. 2001) .......................................................................................25

*American Booksellers Ass'n, Inc. v. Random House, Inc.,*
1996 WL 499520 (S.D.N.Y. Sept. 4, 1996) ........................................................................ 21, 24

*Anderson News, L.L.C. v. Am. Media, Inc.,*
680 F.3d 162 (2d Cir. 2012) ...........................................................................................................5

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) .........................................................................................................................5

*Atlantic Richfield Co. v. USA Petroleum Co.,*
495 U.S. 328 (1990) .......................................................................................................................13

*In re Auto. Parts Antitrust Litig.,*
29 F. Supp. 3d 982 (E.D. Mich. 2014) ..........................................................................................9

*Best Brands Beverage, Inc. v. Fallstaff Brewing Corp.,*
842 F.2d 578 (2d Cir. 1987) .........................................................................................................15

*Bookhouse of Stuyvesant Plaza, Inc. v. Amazon.com, Inc.,*
985 F. Supp. 2d 612 (S.D.N.Y. 2013) ...........................................................................................6

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.,*
429 U.S. 477 (1977) .......................................................................................................................12

*In re Burlington Coat Factory Sec. Litig.,*
114 F.3d 1410 (3d Cir. 1997) (Alito, J.) ......................................................................................14

*Cash & Henderson Drugs, Inc. v. Johnson & Johnson,*
799 F.3d 202 (2d Cir. 2015) .................................................................................................. 16, 17

*Checker Motors Corp. v. Chrysler Corp.,*
283 F. Supp. 876 (S.D.N.Y. 1968), *aff'd*, 405 F.2d 319 (2d Cir.), *cert. denied*, 394
U.S. 999 (1969) ..............................................................................................................................23

*In re Chocolate Confectionary Antitrust Litig.,*
801 F.3d 383 (3d Cir. 2015) ...........................................................................................................9

*Coalition for a Level Playing Field, L.L.C. v. AutoZone, Inc.,*
737 F. Supp. 2d 194 (S.D.N.Y. 2010) ...........................................................................18, 20, 21

010888-13/1694037 V1

*Concord Assocs., L.P. v. Ent'mt Props. Tr.,*
    817 F.3d 46 (2d Cir. 2016) ........................................................................................................19

*In re Crude Oil Commodity Futures Litig.,*
    913 F. Supp. 2d 41 (S.D.N.Y. 2012) ......................................................................................13

*In re Elec. Books Antitrust Litig.,*
    859 F. Supp. 2d 671 (S.D.N.Y. 2012) ......................................................................................7

*Falls City Indus. v. Vanco Beverage, Inc.,*
    460 U.S. 428 (1983) ................................................................................................................23

*FLM Collision Parts, Inc. v. Ford Motor Co.,*
    543 F.2d 1019 (2d Cir. 1976) ..........................................................................................18, 19

*Foman v. Davis,*
    371 U.S. 178 (1962) ................................................................................................................25

*Gelboim v. Bank of Am. Corp.,*
    823 F.3d 759 (2d Cir. 2016) ...................................................................................................13

*Gemini Supply Corp. v. Zeitlin,*
    590 F. Supp. 153 (E.D.N.Y. 1984) ........................................................................................21

*Geneva Pharms. Tech. Corp. v. Barr Labs., Inc.,*
    386 F.3d 485 (2d Cir. 2004) ...................................................................................................11

*Goel v. Bunge, Ltd.,*
    820 F.3d 554 (2d Cir. 2016) ...................................................................................................14

*Gold Strike Stamp Co. v. Christensen,*
    436 F.2d 791 (10th Cir. 1970) ...............................................................................................25

*Hu v. City of New York,*
    927 F.3d 81 (2d Cir. 2019) .......................................................................................................5

*In re Inclusive Access Course Materials Antitrust Litig.,*
    2021 WL 2419528 (S.D.N.Y. June 14, 2021) .......................................................................17

*Jones v. Micron Tech., Inc.,*
    400 F. Supp. 3d 897 (N.D. Cal. 2019) .....................................................................................9

*Krehl v. Baskin-Robbins Ice Cream Co.,*
    664 F.2d 1348 (9th Cir. 1982) .................................................................................................6

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC,*
    797 F.3d 160 (2d Cir. 2015) ...................................................................................................25

*Maier-Schule GMC, Inc. v. Gen. Motors Corp.,*
    780 F. Supp. 984 (W.D.N.Y. 1991) .......................................................................................21

010888-13/1694037 V1

*Mathias v. Daily News, L.P.*,
    152 F. Supp. 2d 465 (S.D.N.Y. 2001)................................................................20

*Meyer v. Kalanick*,
    174 F. Supp. 3d 817 (S.D.N.Y. 2016)..................................................................7

*Miami Prod. & Chem. Co. v. Olin Corp.*,
    449 F. Supp. 3d 136 (W.D.N.Y. 2020)..............................................................24

*Nat'l Ass'n of Coll. Bookstores, Inc. v. Cambridge Univ. Press*,
    990 F. Supp. 245 (S.D.N.Y. 1997) ............................................................. 19, 22

*Ne. Tel. Co. v. Am. Tel. & Tel. Co.*,
    651 F.2d 76 (2d Cir. 1981) ................................................................................11

*Ohio v. Am. Express Co.*,
    138 S. Ct. 2274 (2018) ......................................................................................15

*PharmacyChecker.com, LLC v. Nat'l Ass'n of Bds. of Pharm.*,
    2021 U.S. Dist. LEXIS 61184 (S.D.N.Y. Mar. 30, 2021) ...................................5

*Planetarium Travel, Inc. v. Altour Int'l, Inc.*,
    97 F. Supp. 3d 424 (S.D.N.Y. 2015), *aff'd*, 622 F. App'x 40 (2d Cir. 2015) ......................6

*Reeder-Simco GMC, Inc. v. Volvo GM Heavy Truck Corp.*,
    374 F.3d 701 (8th Cir. 2004), *rev'd on other grounds*, 546 U.S. 164 (2006)....................23

*Ross v. Am. Express Co.*,
    35 F. Supp. 3d 407 (S.D.N.Y. 2014), *aff'd*, 630 F. App'x 79 (2d Cir. 2015) ....................9

*Shak v. JPMorgan Chase & Co.*,
    156 F. Supp. 3d 462 (S.D.N.Y. 2016)............................................................ 10, 11

*Standard Oil Co. v. U.S.*,
    337 U.S. 293 (1949)...........................................................................................15

*Starr v. Sony BMG Music Entm't*,
    592 F.3d 314 (2d Cir. 2010) ..........................................................................7, 11

*Texaco, Inc. v. Hasbrouck*,
    496 U.S. 543 (1990)..............................................................................19, 20, 22, 23

*United Magazine Co. v. Murdoch Magazines Distrib.*,
    393 F. Supp. 2d 199 (S.D.N.Y. 2005), *aff'd*, 279 F. App'x 14 (2d Cir. 2008)..................16

*United Magazine Co. v. Murdoch Mags. Distrib., Inc.*,
    146 F. Supp. 2d 385 (S.D.N.Y. 2001)................................................................22

*United States v. Apple, Inc.*,
    791 F.3d 290 (2d Cir. 2015) .......................................................................*passim*

- iv -

*United States v. Apple Inc.*,
　　952 F. Supp. 2d 638 (S.D.N.Y. 2013), *aff'd*, 791 F.3d 290 (2d Cir. 2015) ....................................6, 14

*Volvo Trucks N. Am., Inc. v. Reeder-Simco GMC, Inc.*,
　　546 U.S. 164 (2006)........................................................................................................................15

## OTHER AUTHORITIES

Philip E. Areeda & Herbert Hovenkamp, Antitrust Law: An Analysis of Antitrust
　　Principles and Their Application, ¶ 1421A (4th ed. 2020)............................................................9, 10

010888-13/1694037 V1

## I.      INTRODUCTION

The five Publisher Defendants dominate the market for print trade books, together accounting for approximately 80% of all trade books published. Within less than a year, each Publisher Defendant entered into the same agreement that jointly raised their wholesale prices across the market while giving Defendant Amazon substantial discounts not equally available to Plaintiff and other book retailers. These contracts allowed Amazon to fortify its monopoly grip as the leviathan of e-commerce for retail book sales, while at the same time acting collectively, the agreements granted the Publisher Defendants the power to control wholesale prices of print trade books, which they exercised to advance a market-wide price increase. Defendants' anticompetitive conduct has depressed book sales in the U.S. market and directly injured Plaintiff and other book retailers, who overpaid as a result of Defendants' price-fixing conduct. The harm Defendants cause to competition and consumer choices is precisely what federal antitrust laws are intended to address.

Especially at the pleading stage with the allegations taken as true and all inferences drawn in Plaintiff's favor, what the Publisher Defendants characterize as nothing more than lawful price competition are federal antitrust violations: price discrimination in violation of the Robinson-Patman Act (RPA); a horizontal price-fixing scheme with Amazon to increase the prices of print trade books in violation of Section 1 of the Sherman Act; and acting in concert with Amazon to confer and maintain its monopoly power in violation of Section 2 of the Sherman Act.

In urging dismissal, the Publisher Defendants take a kitchen-sink approach advancing every conceivable objection to the complaint, including a strained request to strike the RPA class allegations. These various arguments lack merit. Because Plaintiff states plausible claims for relief under the RPA and Sections 1 and 2 of the Sherman Act, the Publisher Defendants' motions to dismiss and to strike should be denied.

## II.    FACTUAL BACKGROUND

Plaintiff's claims against the Publisher Defendants stem from a series of substantively identical agreements they entered with Amazon in order to raise the wholesale and retail prices of print trade books. Together, the Publisher Defendants and Amazon dominate the market for print trade books in the United States.[1] The Publisher Defendants publish roughly 80% of those books, and Amazon is the largest book retailer, accounting for more than 50% of print book sales and nearly 90% of all such sales online. ¶ 2. That market dominance allowed the Publisher Defendants and Amazon to both cement Amazon's pricing advantage in the market and, at the same time, allow the Publisher Defendants to raise their list prices (and thus the wholesale price of books to Amazon's competitors) across the board.

Between late-2014 and mid-2015, the Publisher Defendants and Amazon negotiated new supply agreements, under which the Publisher Defendants entered into a common agreement with Amazon to sell their books to Amazon at prices that are heavily discounted and not equally available to Plaintiff and other book retailers. ¶¶ 4–5, 40–41. ███████████████████████ ████████████████████████████████████████████████████ also are not available under the Publisher Defendants' standard discounts or otherwise provided to Plaintiff or other competing book retailers. ¶¶ 4, 9. ████████████████████████ ████████████████████████████████████████████████████ ███████████████████████████████████ *Id.*, ¶ 8.[2] Each Publisher Defendant thus

---

[1] "Trade books" refers to "general interest fiction and non-fiction books." Sealed Amended Complaint, ECF 65, ¶ 1 (quoting *United States v. Apple Inc.*, 952 F. Supp. 2d 638, 648 n.4 (S.D.N.Y. 2013)). Undersigned counsel Hagens Berman Sobol Shapiro LLP were lead counsel for the certified class in *Apple*, which settled for $560 million. All paragraph references are to the Sealed Amended Complaint.

[2] Amazon publicly confirmed at the time of negotiations that the "contract presented to HarperCollins"—████████████████████████████████████████████—"was the same contract" provided to the other Publisher Defendants. *Id.*, ¶ 8.

understood that the monetary and performance terms of its contract were consistent with the terms of its competitors' contracts with Amazon and, in fact, were conditioned on its competitors' agreement to the same terms. *Id.*

In exchange for their discriminatory discounts to Amazon, the Publisher Defendants were permitted to raise their list prices. The "list price" refers to the suggested retail price that is listed in catalogues and printed on book covers, ¶¶ 10, 54–55, and that is used as the basis for determining the Publisher Defendants' wholesale prices, ¶ 3. In other words, while the Publisher Defendants knew that the preferential treatment to Amazon would protect Amazon from competition from other book retailers and bolster Amazon's market power, ¶¶ 5, 10, that was acceptable to the Publisher Defendants—and, indeed, was the intended consequence—because, in return, they were able to (and did) collectively raise their list prices and wholesale prices across the board.

Because publishers announce their list prices for print books many months in advance of their release, the Publisher Defendants could not immediately raise print list prices after finalizing their agreements with Amazon in the first half of 2015. ¶ 12. But once able to do so, they promptly exercised their power to raise list prices. ¶¶ 13, 14.  In a competitive market, consistently low inflation rates would have resulted in consistently low prices. ¶ 14. But the Publisher Defendants' price fixing, through their collusive agreements with Amazon, resulted in artificially high prices for both retailers and consumers. ¶¶ 10–14, 20, 42, 91, 111, 119, 123, 129, 137. This increases the retailers' acquisition costs while simultaneously depressing consumer demand for print trade books. ¶ 56. And that reduced demand disproportionately benefits Amazon. ¶ 53. Because of its discriminatory discounts, Amazon can sell profitably to price-conscious consumers at significantly lower prices than its rival booksellers. ¶ 53. Meanwhile, Amazon's bookseller rivals, who cannot profitably sell at the same levels as Amazon, bear the burden of lost sales volume and market output of books.

Thus, both the purpose and intent of Defendants' serial agreements was to protect Amazon from competition from its retail rivals while simultaneously allowing the Publisher Defendants to collectively raise their list prices (which served to raise both retail and wholesale prices). *Id.*, ¶¶ 10–14. By signing the price-discrimination agreements with Amazon, each of the Publisher Defendants signaled a clear commitment to raise the prices of print trade books, thereby facilitating their collective action.[3] *Id.*, ¶ 12. And the Publisher Defendants' huge price concessions to Amazon—that they each agree to meet—ensures that Amazon has a significant competitive advantage over its bookseller rivals in the sale of print trade books. By drastically reducing Amazon's cost of doing business, the Publisher Defendants give the retail giant an unfair advantage—because Plaintiff and other competing book retailers pay more for the same books and, thus, cannot afford to compete with Amazon on price. This allows Amazon to acquire or maintain its monopoly power in the online market for print books without ever incurring the same risks as other competing book retailers. *Id.*, ¶ 5. This conduct violates the Sherman Act.

Based on these factual allegations and others discussed below, Plaintiff asserts three claims for relief relevant to this motion: (1) violations of the RPA, ¶¶ 92–104 (first cause of action); (2) violations of Sherman Act, Section 1, ¶¶ 105–23 (second cause of action); and (3) conspiracy to monopolize in violation of Sherman Act, Section 2, ¶¶ 131–38 (fourth cause of action).[4]

---

[3] *See United States v. Apple, Inc.*, 791 F.3d 290, 320 (2d Cir. 2015) (noting that the price restraints the Publisher Defendants agreed to in *Apple*, "were only attractive to the Publisher Defendants to the extent they acted collectively"); *id.* at 305 (While "no one Publisher could effect an industry-wide shift in prices or change the public's perception of a book's value, if they moved together they could.") (quoting *United States v. Apple Inc.*, 952 F. Supp. 2d 638, 665 (S.D.N.Y. 2013)); 791 F.3d at 317 ("By the very act of signing a Contract with Apple containing [the price restraint], then, each of the Publisher Defendants signaled a clear commitment to move against" competitive pricing, "thereby facilitating their collective action.").

[4] Each cause of action is asserted against all Defendants except the third—for monopolization in violation of Sherman Act, Section 2—brought solely against Amazon. ¶¶ 124–30.

### III.   ARGUMENT

A complaint will survive a motion to dismiss when it provides "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."[5] Although the Publisher Defendants urge inferences in their favor, the "Court must accept as true all allegations in the complaint and draw all reasonable inferences in favor of the non-moving party."[6]

**A.   Plaintiff plausibly alleges that the Publisher Defendants and Amazon conspired to raise wholesale prices of trade print book in violation of Section 1 of the Sherman Act.**

An antitrust plaintiff may "present direct or circumstantial evidence that reasonably tends to prove that the defendant and others had a conscious commitment to a common scheme designed to achieve an unlawful objective."[7] In this case, Plaintiff has alleged direct[8] evidence: in their contracts with Amazon, the Publisher Defendants each agreed to sell their books at highly discounted prices not available to other booksellers, and only on the condition that the other Publisher Defendants also participated in the pricing scheme. ¶¶ 4–9. Standing alone, these allegations are sufficient to plausibly allege a violation of § 1 of the Sherman Act.

In addition to that direct evidence, Plaintiff also has alleged other plus factors like those shown at trial in *United States v. Apple Inc.*[9] Like Apple in that case, Amazon offered each Publisher Defendant "a proposed Contract that would be attractive only if the publishers acted collectively."[10] And like Apple, Amazon "was also fully aware that once the Publisher Defendants" agreed to their

---

[5] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted).

[6] *Hu v. City of New York*, 927 F.3d 81, 88 (2d Cir. 2019) (quotation omitted).

[7] *Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 183–84 (2d Cir. 2012).

[8] *PharmacyChecker.com, LLC v. Nat'l Ass'n of Bds. of Pharm.*, 2021 U.S. Dist. LEXIS 61184, at *41 (S.D.N.Y. Mar. 30, 2021) ("Direct evidence of a conspiracy is explicit and requires no inferences to establish the proposition or conclusion being asserted.").

[9] *United States v. Apple, Inc.*, 791 F.3d 290 (2d Cir. 2015).

[10] *Id.* at 316.

common discriminatory pricing system that print trade book "prices would rise,"[11] ¶¶ 10, 103, and

that, "[b]y the very act of signing" the discriminatory pricing contract, "each of the Publisher

Defendants signaled a clear commitment" to "their collective action."[12] *Id.* In fact, all Defendants

agreed to act collectively, which had the effect of (a) "reliev[ing] [Amazon] of the need to compete

on price" and (b) "allow[ing] the Publisher Defendants to raise the prices for their [print books],

which they promptly did[.]"[13] ¶¶ 7–14. Defendants' arguments about the sufficiency of the

allegations miss the point because they assert the incorrect standards or disregard these critical

allegations.

　　　　*First*, the Publisher Defendants argue that "individual vertical agreements" do not support a

horizontal conspiracy. (ECF 76 at 4.) But when determining whether an agreement is vertical or

horizontal, it is the competitive effect, not the form, that counts.[14] Because Plaintiff plausibly alleges

that the Publisher Defendants agreed to collectively raise their list prices—*i.e.*, "agreed to the

horizontal restraint" in the print trade book market—it has plausibly alleged a *per se* violation.[15]

Moreover, Plaintiff also has plausibly alleged a hub-and-spoke conspiracy (ECF 76 at 9), because

---

　　[11] *Id.*

　　[12] *Apple, Inc.*, 791 F.3d at 317.

　　[13] *United States v. Apple Inc.*, 952 F. Supp. 2d 638, 694 (S.D.N.Y. 2013), *aff'd*, 791 F.3d 290 (2d Cir. 2015).

　　[14] *Apple, Inc.*, 791 F.3d at 325 (court "need not consider whether the vertical agreements" between Apple and the publishers "restrained trade because all participants agreed to the horizontal restraint, which is and ought to be, *per se* unlawful") (quotation omitted); *Krehl v. Baskin-Robbins Ice Cream Co.*, 664 F.2d 1348, 1356 (9th Cir. 1982) (in determining whether the *per se* rule applies, "our inquiry focuses not on whether the vertical or horizontal aspects of the system predominate, but rather, on the actual competitive impact" of the "system employed by [defendant]").

　　[15] *Apple, Inc.*, 791 F.3d at 325. Defendants' authorities are easily distinguished. *Bookhouse of Stuyvesant Plaza, Inc. v. Amazon.com, Inc.*, 985 F. Supp. 2d 612, 622 (S.D.N.Y. 2013) (plaintiff did not allege a horizontal conspiracy); *Planetarium Travel, Inc. v. Altour Int'l, Inc.*, 97 F. Supp. 3d 424, 431 (S.D.N.Y. 2015) (declining to apply *per se* rule to group boycott claim asserting intrabrand restraint), *aff'd*, 622 F. App'x 40 (2d Cir. 2015).

when "parties to vertical agreements have knowledge that other market participants are bound by identical agreements, and their participation is contingent upon that knowledge, they may be considered participants in a horizontal agreement in restraint of trade."[16]

Defendants also apply the incorrect pleading standard (ECF 76 at 4): in the Second Circuit, "plaintiffs [are] *not required* to mention a specific time, place or person involved in each conspiracy allegation."[17] Plaintiff easily satisfies notice pleading by pointing to the specific provisions of Defendants' contracts that recite their commitment to the same discriminatory pricing scheme and by providing, where available, the dates of Defendants' contract negotiators and public statements that Amazon had the same deal with all the Publisher Defendants. ¶¶ 40–41.

*Second*, the Publisher Defendants improperly contrast Plaintiff's allegations with the fully developed trial record in the *Apple* litigation that included business records revealing extensive interfirm communications. ECF 76 at 5. Plaintiff is not required under Rule 8(a) to plead the evidence that will presented at trial. Indeed, like Plaintiff here, the *Apple* plaintiffs alleged at the pleading stage only that "Apple acted as a conduit" for interfirm messages between the Publisher Defendants.[18]

Nor can the Publisher Defendants get a different result this time by pointing to the consent decrees they entered with *Apple*. Those consent decrees required the Publisher Defendants to submit only their eBook contracts for governmental review, and only for a limited period.[19] Nothing in those consent decrees prevented the Publisher Defendants from colluding with Amazon and each other in the print market with Amazon as their conduit.

---

[16] *Meyer v. Kalanick*, 174 F. Supp. 3d 817, 824 (S.D.N.Y. 2016).

[17] *Starr v. Sony BMG Music Entm't*, 592 F.3d 314, 325 (2d Cir. 2010) (emphasis added).

[18] *In re Elec. Books Antitrust Litig.*, 859 F. Supp. 2d 671, 676 (S.D.N.Y. 2012) (emphasis added).

[19] *Apple, Inc.*, 791 F.3d at 297.  Because the complaint does not address the consent decrees, they are properly speaking, not a matter for consideration on a motion to dismiss.

*Third*, Defendants misstate the relevance of Plaintiff's public signaling allegations. ECF 76 at 5. Plaintiff does not allege that Defendants revealed the content of their respective agreements through public signaling—because they did not need to. ███████████████████ ██████████████████████████████████████████████ The public announcements were confirmation of the Publisher Defendants' commitment to price fixing through collective action, and assurance that Amazon no longer obstructed that goal. ¶¶ 40–41.

*Fourth*, Publisher Defendants cannot explain why, in the absence of the conspiracy, it would be in their individual interests to enter the agreements with Amazon—a contractual partner that, by their own account, "acts anti-competitively in multiple ways," requires publishers "to pay more each year for Amazon's distribution and advertising services but receive less each year in return," and stifle[s] the emergence and growth of competitive alternatives in the book distribution marketplace." ¶ 15. The Publisher Defendant faced the same conundrum in the *Apple* litigation. There the Publisher Defendants agreed to a most favored nation's clause, which required them to carry out a market-wide switch from the more lucrative wholesale model to the agency model (which allowed them to set their own prices without retailer discounts).[20] Recognizing that the arrangement represented a significant financial loss that it was not in the Publisher Defendants' individual interests, the Court ruled that it could reasonably infer that the Publisher Defendants agreed to the onerous provision because it served as their means of carrying out their price-fixing agreement.[21] The same conclusion follows here. ¶¶ 39, 110-11.

*Fifth*, Defendants are incorrect about the scope of government investigations in the book industry. Both the *Apple* case and the more recent investigation by the House Judiciary Committee

---

[20] *Id.* at 316.

[21] *Id.* at 317.

examined the anticompetitive impact of Defendants conduct in the sale of print books.[22] ¶¶ 11, 46. House Judiciary Committee's investigation of similar anticompetitive conduct by Amazon in both the eBook and print book market further support the plausibility of Plaintiff's allegations. "Evidence of prior antitrust violations" in *Apple* "and the history of competition in" the trade book "market may be used to show the intent, motive and method of a conspiracy under Section 1 so long as there is a direct, logical relationship between the collateral conspiracy and the instant conspiracy."[23] Plaintiffs properly infer motive to collude based on past collusion by the same Publisher Defendants in the trade book market by similar means.

Defendants cite the Areeda & Hovenkamp treatise for the notion that illegal "behavior elsewhere in time or place does not generally allow the inference of an immediate conspiracy." ECF 76 at 7. But they omit the treatise's further statement that the earlier behavior may be relevant when "there is other evidence of a present conspiracy."[24] That is precisely the case here, and in that event,

---

[22] *Id.* at 310 (Because the conspirators agreed to set eBook prices based on hardcover list prices, their conduct had a significant "ripple effect" on print book prices as the conspirators "increased the prices of their newly released *hardcover* books to shift the ebook version into a higher price category.") (emphasis in original).

[23] *Ross v. Am. Express Co.*, 35 F. Supp. 3d 407, 449 (S.D.N.Y. 2014) (quoting *U.S. Football League v. Nat'l Football League*, 842 F.2d 1335, 1371 (2d Cir. 1988)) (brackets, quotation marks omitted), *aff'd*, 630 F. App'x 79 (2d Cir. 2015); *In re Chocolate Confectionary Antitrust Litig.*, 801 F.3d 383, 403 n.13 (3d Cir. 2015) (When "the people and companies involved in both conspiracies overlap[]," a price-fixing agreement in one product market "would be relevant to the claim that the same defendant also conspired to fix prices in … a closely related but distinct product market in the same geographic area."); *In re Auto. Parts Antitrust Litig.*, 29 F. Supp. 3d 982, 995 (E.D. Mich. 2014) (An "earlier conspiracy might create an inference strengthening the existence of a latter conspiracy … concerning a similar scheme involving the related market[.]"); *Jones v. Micron Tech., Inc.*, 400 F. Supp. 3d 897, 921 (N.D. Cal. 2019) ("District courts in the Ninth Circuit have recognized that historic behavior of parties accused of anticompetitive conduct may constitute a plus factor.").

[24] Philip E. Areeda & Herbert Hovenkamp, Antitrust Law: An Analysis of Antitrust Principles and Their Application, ¶ 1421A (4th ed. 2020).

the treatise says that evidence regarding "the defendants' sins elsewhere may cast doubt on the truthfulness of their innocent explanations."[25]

Plaintiff has plausibly alleged a violation of § 1 of the Sherman Act.

**B.      Plaintiff plausibly alleges the Defendants conspire to confer a Monopoly on Amazon in the online retail print trade book market in violation of Section 2 of the Sherman Act.**

Plaintiff's fourth cause of action is for conspiracy to monopolize. ¶¶ 131–38. The Publisher Defendants offer just two critiques; neither supports dismissal. ECF 76 at 9–10.

*First*, the Publisher Defendants contend that Plaintiff fails to "allege an agreement," so there can be no claim under Section 2. ECF 76 at 9. As previously discussed, Plaintiff plausibly alleges an agreement with the dual purpose of raising print book prices, while immunizing Amazon from price competition from other competing retailers. Plaintiff supports this through allegations that the Publisher Defendants knowingly entered uniform, discriminatory pricing agreements with Amazon ███████████████████████████████ and recognized by public signaling[26]) and that this collective action, like a similar collective action by the same Publisher Defendants in *Apple*, enabled them to raise list prices throughout the market—which each Publisher did soon after they finalized their agreements with Amazon. ¶¶ 7–18; 37–39.

Those allegations make this case very different than *Shak v. JPMorgan Chase & Co.*, which the Publisher Defendants rely on.[27] The plaintiff in that case alleged only that that the defendant

---

[25] *Id.*

[26] ████████████████████████████████████████████ Amazon publicly confirmed at the time of negotiations that the "contract presented to HarperCollins was the same contract" provided to the other Publisher Defendants. *Id.*, ¶ 8.

[27] 156 F. Supp. 3d 462 (S.D.N.Y. 2016).

brokers sat on the same committee of their alleged conspirators and failed to allege facts demonstrating their involvement in the alleged price manipulation.[28] Likewise, Defendants cite *Geneva Pharmaceuticals Technology Corp. v. Barr Laboratories, Inc.*, but that decision supports Plaintiff because the court found (on summary judgment) that a jury could infer intent to conspire from evidence of the parties' contractual negotiations.[29]

*Second*, the Publisher Defendants challenge the allegations regarding their specific intent. But as the Second Circuit has explained, in a conspiracy to monopolize, "it is frequently impossible for a plaintiff to obtain direct evidence of the alleged conspirators' specific intent. In such situations, the finder of fact must be allowed to infer defendants' intent from their anticompetitive practices."[30] Thus, in this case Plaintiff plausibly infers intent from Defendants' common discriminatory agreements and market-wide price increases.

Seeking to avoid that plausible inference, the Publisher Defendants counter that their economic interest in "restraining Amazon and resisting its growth" contradicts Plaintiff's allegation that they "would intentionally seek to confer monopoly power on Amazon, which could then be used against them." ECR 76 at 9–10. But at the pleading stage, Plaintiff needs only to allege "enough factual matter (taken as true) to suggest that an agreement was made" and *need not* "allege facts that tend to exclude independent self-interested conduct as an explanation for defendants' parallel behavior."[31] Plaintiff meets that standard by plausibly alleging that the Publisher Defendants assented to Amazon's demands to further their own price-fixing goals.

---

[28] *Id.* at 491.

[29] 386 F.3d 485, 507 (2d Cir. 2004).

[30] *Ne. Tel. Co. v. Am. Tel. & Tel. Co.*, 651 F.2d 76, 85 (2d Cir. 1981).

[31] *Starr*, 592 F.3d at 325.

In *Apple*, the court found that the Publisher Defendants "were willing to stomach" the lower compensation they received under Apple's pricing model "because the model allowed them to sell new releases and bestsellers for more[.]"[32] So too here: The Publisher Defendants again have "set aside [their] concerns because reaching this same deal with Amazon enables them to raise their list prices (and therefore their wholesale price to Plaintiff and Class members) without suffering any competitive disadvantages within the print trade book publishing market." ¶ 17. Because the Publisher Defendants when acting collectively stood to gain from Amazon's monopoly, in the form of greater control over both wholesale and retail prices, Plaintiff reasonably infers their intent to confer a monopoly on Amazon from their conduct.

### C.   Plaintiff plausibly alleges antitrust injury for its Sherman Act claims.

According to the Publisher Defendants, "Plaintiff fails to allege that it suffered injury from a 'competition-reducing aspect' of" the challenged conduct—meaning, antitrust injury. ECF 76 at 10. This ignores Plaintiff's allegations. After entering into their agreements with Amazon, the Publisher Defendants exercised their collective power to raise market prices, causing Plaintiff and other retail booksellers to pay inflated wholesale prices for books. ¶¶ 10–14, 20, 42, 54–55, 91, 111, 119, 123, 129, 137. This is a classic antitrust injury under the Sherman Act because it is "the type of loss that the claimed violations … would be likely to cause."[33]

The Publisher Defendants seek to muddle this straightforward inquiry with a diversionary argument. "Plaintiff's alleged antitrust injury," they contend, "is nothing more than a complaint that Amazon offers lower prices on Publisher Defendants' books while Plaintiff chooses to sell them at full list price." ECF 76 at 10. But in determining antitrust injury on the facts alleged here—payment of supracompetitive prices due to a horizontal conspiracy—the touchstone is not Plaintiff's retail

---

[32] *Apple, Inc.*, 791 F.3d at 316.

[33] *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977) (quotation omitted).

price compared to its rivals but, instead, the inflated wholesale price that Plaintiff paid because of Defendants' collusive conduct. As the Second Circuit has explained, when a purchaser "because of a conspiracy, must pay prices that no longer reflect ordinary market conditions, they suffer 'injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful.'"[34]

It is thus beside the point whether the Publisher Defendants priced their books "above predatory levels." ECF 76 at 11. In support of that contention, the Publisher Defendants rely on the statement in *Atlantic Richfield Co. v. USA Petroleum Co.* ("*ARCO*"),[35] which explains that, "[w]hen a firm, or even a group of firms adhering to a vertical agreement, lowers prices but maintains them above predatory levels, the business lost by rivals cannot be viewed as an 'anticompetitive' consequence of the claimed violation."[36] Unlike the plaintiffs in *ARCO*, however, Plaintiff's injury does not arise from "competition with firms following a vertical, maximum-price-fixing agreement,"[37] but rather the "quintessential antitrust injury—losses stemming from artificial prices caused by anticompetitive conduct."[38]

## D.   Plaintiff plausibly alleges harm to competition for its Sherman Act claims.

Plaintiff also adequately alleges harm to competition. Again, this issue is not as complicated as the Publisher Defendants try to make it. As the Publisher Defendants recognize, "Plaintiff can 'offer direct evidence of harm to competition by proving higher prices ....'" ECF 76 at 13 (quoting

---

[34] *Gelboim v. Bank of Am. Corp.*, 823 F.3d 759, 772 (2d Cir. 2016) (quoting *Brunswick,* 429 U.S. at 489).

[35] 495 U.S. 328 (1990).

[36] *Id.* at 337.

[37] *Id.* at 336.

[38] *In re Crude Oil Commodity Futures Litig.*, 913 F. Supp. 2d 41, 57 (S.D.N.Y. 2012).

*MacDermid Printing Sols. LLC v. Cortron Corp.*, 833 F.3d 172, 182 (2d Cir. 2016)). Defendants'

conspiracy had the same anticompetitive effects as the conspiracy that led to liability in the *Apple*

eBooks litigation. Both wholesale and retail print book prices increased, and Amazon secured its

monopoly position through anticompetitive means. *See, e.g.,* ¶¶ 5, 10–14, 54–55, 91, 111, 119. As in

*Apple*, Defendants' "[a]greements did not promote competition, but destroyed it."[39]

      To avoid Plaintiff's allegations of competitive harm, the Publisher Defendants attempt to

put their own spin on Plaintiff's liability theories, including by asserting that Plaintiff seeks to

prevent consumer discounts. ECF 76 at 11. But that assertion is false. What Plaintiff seeks to enjoin

is the Publisher Defendants' collusion to inflate wholesale and retail prices. Also false is the

Publisher Defendants' assertion that "Plaintiff's allegations show nothing more than independently

negotiated, vertical contracts." ECF 76 at 13. Not only has Plaintiff plausibly alleged to the contrary,

as already addressed above, but "at the pleading stage," courts are "required to credit plaintiffs'

allegations rather than defendants' responses."[40]

      The Publisher Defendants also argued that the complaint fails to adequately allege their

"market power." ECF 76 at 15. This argument goes nowhere. Plaintiff's *per se* horizontal price-fixing

claim is deemed unlawful without "an assessment of market effects."[41] This is also a non-issue under

Plaintiff's rule of reason and monopoly claims because, as Defendants concede, Plaintiff alleges

direct evidence of market power through allegations of "actual harm to competition." *Id.* And in all

events, Defendants incorrectly focus on whether "any Publisher Defendant individually" has a

---

[39] *United States v. Apple Inc.*, 952 F. Supp. 2d at 694.

[40] *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1421 (3d Cir. 1997) (Alito, J.); *see also Goel v. Bunge, Ltd.*, 820 F.3d 554, 560 (2d Cir. 2016) (challenges to the pleadings do not permit "a bespoke factual record, tailor-made to suit the needs of defendants").

[41] *Apple, Inc.*, 791 F.3d at 313.

sufficient market share, *id.*, because when a defendant enters into a series of vertical agreements, courts measure the *aggregate* anticompetitive effect of those agreements, not the separate effect of each individual agreement.[42] To the extent Plaintiff is required to make any allegations concerning market share, Amazon's 90% share of online book sales and the Publisher Defendants' 80% share of trade books sold amply establish their iron control of the markets at issue in this litigation. ¶ 2. Harm to competition is adequately alleged.

E.      **Plaintiff plausibly alleges that the Publisher Defendants' discriminatory prices violated the Robinson-Patman Act.**

Section 2(a) of the RPA "prohibits a seller from engaging in price discrimination that is likely to result in competitive injury."[43] To state an RPA claim for injury competition among the discriminating seller's customers, Plaintiff must allege: (1) sales in interstate commerce; (2) involving a good of "like grade and quality"; (3) where the Publisher Defendants "discriminate[d] in price between" Amazon and other book retailers; and (4) "the effect of such discrimination may be ... to injure, destroy, or prevent competition" to the advantage of Amazon, which "receive[d] the benefit of such discrimination."[44]

Plaintiff sufficiently alleges each prerequisite. ¶¶ 4–6; 92–104. Because the Publisher Defendants operate nationally, their sales occurred in interstate commerce. Because they sell the same books to different customers at different prices, they satisfy the "like grade and quality"

---

[42] *See, e.g., Standard Oil Co. v. U.S.*, 337 U.S. 293, 314 (1949) (evaluating the extent of competition foreclosed by the aggregate "proportion of retail sales of petroleum" affected by the defendant's vertical exclusive dealing arrangements); *Ohio v. Am. Express Co.*, 138 S. Ct. 2274, 2282 (2018) (holding that plaintiffs could have prevailed by showing that the cumulative effect of the defendant's vertical agreements increased costs, reduced output, or stifled competition in the relevant market).

[43] *Best Brands Beverage, Inc. v. Fallstaff Brewing Corp.*, 842 F.2d 578, 584 (2d Cir. 1987).

[44] *Volvo Trucks N. Am., Inc. v. Reeder-Simco GMC, Inc.*, 546 U.S. 164, 176 (2006) (distinguishing primary-line discrimination or "predatory pricing" and tertiary-line discrimination causing direct competitive injury to consumers).

requirement. And because they provide steep discounts to Amazon that they do not make equally available to other buyers, they engaged in discriminatory pricing. As Plaintiff alleges, the discriminatory pricing injures competition among competing retail booksellers because—faced with the inflated prices fixed by the Publisher Defendants and without the benefit of the favorable discounts given to Amazon—the retailers are forced into the position of operating at an unprofitable level or losing sales to Amazon.[45] ¶¶ 4, 26, 43, 53–55. Plaintiff also plausibly alleges injury to competition under the *Morton Salt* doctrine because the Publisher Defendants have provided Amazon substantial price reductions for the past six years that were not equally available to Plaintiff and other small sellers. *Id.*

None of the several challenges Defendants raise support dismissal of Plaintiff's RPA claim. ECF 76 at 16–22.

### 1. Injury to competition does not require Plaintiff to allege every book purchased at discriminatory prices.

The Publisher Defendants disregard Plaintiff's well-pleaded claim when they argue that Plaintiff fails to allege "substantial discounts to a competitor over a significant period of time." ECF 76 at 16 (emphasis omitted). Plaintiff satisfies that requirement by alleging that Amazon has enjoyed steep discounts far below the standard discounts the Publisher Defendants provide Plaintiff and other small retail booksellers for *six years*. Plaintiff also plausibly alleges that discriminatory pricing allowed Amazon to sell at prices that are unprofitable for Plaintiff. ¶¶ 4, 26, 43, 53–55.

Relying on *Cash & Henderson Drugs, Inc. v. Johnson & Johnson*,[46] Defendants argue that Plaintiff must allege more than the 10 illustrative examples of books it purchased at a higher prices than Amazon paid. But that reliance on *Cash* reflects the Publisher Defendants' repeated effort to impose

---

[45] *United Magazine Co. v. Murdoch Magazines Distrib.*, 393 F. Supp. 2d 199, 210 (S.D.N.Y. 2005), *aff'd*, 279 App'x 14 (2d Cir. 2008).

[46] 799 F.3d 202, 212–13 (2d Cir. 2015).

greater burdens on Plaintiff than are permitted at the pleading stage. The decision in *Cash* came at summary judgment, and the Court ruled that the plaintiff could not rely at that stage on an inference of competitive injury under the *Morton Salt* doctrine because the evidence adduced during discovery showed that the plaintiff had suffered only *de minimus* losses.[47] Nothing in that ruling requires Plaintiff to make such a showing without the benefit of discovery and full development of the evidentiary record. Nor is there any such requirement in *In re Inclusive Access Course Materials Antitrust Litigation*, in which the court ruled only that "two isolated incidents" do not show competitive injury under the RPA.[48] Plaintiff plausibly alleges injury to competition.

> **2.      Plaintiff does not allege materially different contracts that would justify Defendants' discriminatory pricing.**

The Publisher Defendants urge the Court to rule, as a matter of law, that the contractual discounts benefiting Amazon, but not other book retailers, "result from or further the forces of competition." ECF 76 at 17 (citation omitted). They argue that that the contractual price differences merely reflect "materially different contract terms" and thus do not violate the RPA. ECF 76 at 17. But nothing in the RPA supports such a ruling. Nor do the Publisher Defendants cite any authority for the notion that, in order to plead a plausible claim under Rule 8(a), Plaintiff must preemptively rebut potential arguments about contractual differences by walking through the contracts in particularized detail. The case law cited by the Publisher Defendants merely delineates two types of contractual differences that, when present, may justify a price differential. Neither contractual difference is present here.

---

[47] *Id.*

[48] 2021 WL 2419528, at *17 (S.D.N.Y. June 14, 2021).

The first type of contractual difference relates to the nature of the good being sold. The Publisher Defendants cite *Coalition for a Level Playing Field, L.L.C. v. AutoZone, Inc.*[49] and *Aerotec Int'l, Inc. v. Honeywell Int'l, Inc.*[50] for the point that "a seller may charge different prices for goods sold under long-term contracts than for those sold on the spot market." Courts reason that goods sold under long-term contracts are, by definition, not "of like grade or quality" to goods sold on the spot market.[51] But those decisions are irrelevant here—because Plaintiff does not buy from the Publisher Defendants on a spot market, and no allegations in the Amended Complaint even remotely suggest otherwise.[52]

The second type of contractual difference pertains to the function performed by the buyer. This difference can be seen in *FLM Collision Parts, Inc. v. Ford Motor Co.*[53] The Second Circuit ruled in *FLM Collision* that Ford did not engage in price discrimination, despite giving better pricing to one of its dealers, because the dealer was "act[ing] as a wholesaler rather than a retailer"—and Ford was not required to equalize pricing for "those performing different functions in the line of

---

[49] 737 F. Supp. 2d 194, 216–17 (S.D.N.Y. 2010).

[50] 836 F.3d 1171, 1188 (9th Cir. 2016).

[51] *Autozone*, 737 F. Supp. 2d at 212.

[52] In attempting to support their "spot market" argument, the Publisher Defendants misstate the holdings of their few cited cases. They mischaracterize *AutoZone* by omitting the bolded language in the following passage: "Because long-term sales contracts allow both buyer and seller to reduce their exposure to changes in the market price of a commodity, goods sold under a long-term contract are not 'of like grade or quality' *to those sold on the spot market*, even though the underlying goods are physically identical." *Compare Autozone*, 737 F. Supp. 2d at 212 *with* PD Mem. at 17-18. Likewise, the Ninth Circuit decision they cite holds that a "reasonably comparable" transaction is not presented "when a seller and purchaser choose the relative stability of a long-term contract *over individual transactions in a 'spot market.'*" *Compare Aerotec*, 836 F.3d at 1188 *with* PD Mem. at 18. And the Second Circuit decision cited by the Publisher Defendants observes that "varying prices according to different terms of sale" does not necessarily violate the RPA but—omitted from their squib—only so long as different terms are "administered equally to all purchasers," which is not so here. *Compare FLM Collision*, 543 F.2d at 1026 *with* ECF 76 at 18.

[53] 543 F.2d 1019, 1026 (2d Cir. 1976).

distribution."[54] But in this case, both Amazon and Plaintiff are book retailers, and to the extent the Publisher Defendants are seeking to rely on some functional difference, they must plead and prove the functional-discount defense, which (as discussed below) is not available here.

In short, the Publisher Defendants cannot support their motion to dismiss by speculating that there might be differences between the contracts they have with Amazon and with Plaintiff. Under Rule 8(a), Plaintiff must allege "a 'short plain statement' of facts supporting a plausible claim."[55] It must be enough only to nudge its claim "across the line from conceivable to plausible" by alleging "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[56] Plaintiff alleges—with reference to specific terms in the Publisher Defendants' contracts with Amazon—that Amazon received from Publisher Defendants "a substantially lower wholesale price and *more favorable contractual terms than its rivals.*" ¶ 110 (emphasis added). That is more than enough to meet the plausibility threshold and "provide[] the defendants with fair notice of the grounds upon which" Plaintiff's claims rest.[57]

### 3.     The Publisher Defendants cannot legally provide Amazon a functional discount when they already pay Amazon separately for distribution and marketing services.

Courts recognize a functional-discount defense. If a purchaser performs certain distribution or marketing functions for the seller, it may receive a "reasonable" discount reflective of the "supplier's savings and the [purchaser's] costs."[58] But as a matter of law, Amazon's marketing and

---

[54] *Id.*

[55] *Concord Assocs., L.P. v. Ent'mt Props. Tr.*, 817 F.3d 46, 52 (2d Cir. 2016).

[56] *Id.* at 52 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)).

[57] *Nat'l Ass'n of Coll. Bookstores, Inc. v. Cambridge Univ. Press*, 990 F. Supp. 245, 253 (S.D.N.Y. 1997).

[58] *Texaco, Inc. v. Hasbrouck*, 496 U.S. 543, 561–62 (1990).

distribution services cannot serve as the basis for a functional-discount defense because the Publisher Defendants separately compensate Amazon for those services.[59] ¶ 103. In *Texaco, Inc. v. Hasbrouck*, the Supreme Court warned against the use of functional discounts as a "subterfuge" to avoid RPA liability, and because the seller "separately compensated" the buyer for its distribution services in that case, the Court found no "evidence to connect the discount to any savings enjoyed" by the seller.[60]

The Publisher Defendants cite no decision to the contrary but, instead, rely on case law in which separate compensation was not addressed. For example, in *AutoZone*, it was "common ground" that the retailer defendants "operate[d] in a different distribution chain" and "provide[d] a different mix of distribution, warehousing, marketing, and promotional services to the parts manufacturers."[61] Yet not only did that plaintiff *not* allege that the retailer defendants were separately compensated for those extra services, but that plaintiff failed to allege any plausible basis for concluding that the price difference did not "reflect bona fide functional discounts."[62] That decision has no bearing in this case, in which Plaintiff specifically alleges that the Publisher Defendants in fact separately compensated Amazon and, indeed, the Publisher Defendants actually *overpay* Amazon, "pay[ing] more each year for Amazon's distribution and advertising services but receiving less each year in return." ¶ 15.

---

[59] *Id.* at 562.

[60] *Id.*

[61] 737 F. Supp. 2d at 216; *see also Mathias v. Daily News, L.P.*, 152 F. Supp. 2d 465, 476 (S.D.N.Y. 2001) (denying a motion to dismiss because the Supreme Court recognizes "the possibility that functional discounts could be used as 'subterfuges' to avoid the proscriptions of § 2(a)" of the RPA, and thus holding that "it would be premature" to grant dismissal without giving an opportunity "to prove de facto competition" and "actual price discrimination") (quoting *Texaco, Inc. v. Hasbrouck*, 496 U.S. 543, 563 (1990)).

[62] 737 F. Supp. 2d at 216.

4.     **The complaint alleges contemporaneous sales in interstate commerce.**

The Publisher Defendants argue that Plaintiff must allege "reasonably contemporaneous sales to two buyers" to establish a contemporaneous sale in interstate commerce. ECF 76 at 16. But the decision cited for this proposition, *AutoZone*,[63] does not address the contemporaneous sales requirement and, contrary to the Publisher Defendants' stringent interpretation, contemporaneous does not mean *simultaneous*. The need to show contemporaneous transactions is rarely in "serious dispute."[64] Sales are reasonably proximate if they occur during "the time period of the alleged Robinson-Patman Act violation."[65] Plaintiff satisfies that condition. ¶ 94.

The decision in *American Booksellers Ass'n, Inc. v. Random House, Inc.*[66] is analogous. In that RPA case, book publishers engaged in "price discrimination in terms of providing more favorable prices, discounts, and conditions to chains than to independent bookstores,"[67] and the complaint alleged that "the favored and disfavored purchasers are in direct competition with each other" and that "sales to the favored and disfavored purchasers were contemporaneous and involved books of like grade and quality."[68] These allegations sufficed "to state a claim under section 2(a)."[69]

In this case, Plaintiff's similar allegations of concurrent and ongoing competition, between all retailers and the Publisher Defendants, are sufficient to plausibly allege contemporaneous sales. ¶ 94. And, again, while the Publisher Defendants suggest the complaint falls short for not pleading more than an illustrative list of book purchases, ECF 76 at 20–21, that is not the law: "reference to

---

[63] 737 F. Supp. 2d at 209.

[64] *Gemini Supply Corp. v. Zeitlin*, 590 F. Supp. 153, 156 (E.D.N.Y. 1984).

[65] *Maier-Schule GMC, Inc. v. Gen. Motors Corp.*, 780 F. Supp. 984, 989 (W.D.N.Y. 1991).

[66] 1996 WL 499520, at *2 (S.D.N.Y. Sept. 4, 1996).

[67] *Id.*

[68] *Id.*

[69] *Id.*

specific transactions or book titles" is "unnecessary." By pleading illustrative examples, Plaintiff

exceeded what actually was required.[70]

### 5. The complaint specifies goods of "like grade and quality."

The Publisher Defendants briefly contend the complaint fails to provide "the requisite

notice under Rule 8(a) of which 'books' are at issue." ECF 76 at 21. But Plaintiff's allegations give

ample notice under the rule. Like the bookseller plaintiff in *Nat'l Ass'n of Coll. Bookstores, Inc. v.

Cambridge Univ. Press*, which sufficiently pled its RPA claim, Plaintiff alleges that "different prices are

charged to different purchasers for identical books."[71] ¶¶ 8–9, 40, 94–96. Although the Publisher

Defendants profess confusion, they "cannot seriously contend that these allegations do not give

them fair notice" of Plaintiff's RPA claim.[72] And as addressed above, the Publisher Defendants are

wrong that the complaint, in pleading the nature of the goods at issue, must identify all the relevant

book titles. ¶¶ 54–55, 94. "[S]uch pleading of the evidence ... is a matter for the discovery process,

not for allegations of detail in the complaint."[73]

### 6. Defendants did not lower their discounts to Amazon in a good faith effort to meet a competitor's price.

The meeting-competition defense is an affirmative defense that Defendants must plead and

prove.[74] A seller avoids liability under the RPA for discriminatory pricing if it proves that it lowered

its price to the favored buyer as a good faith effort to meet the equally low price offered to that

---

[70] *Nat'l Ass'n of Coll. Bookstores*, 990 F. Supp. at 253.

[71] *Nat'l Ass'n of Coll. Bookstores*, 990 F. Supp. at 252.

[72] *Id.*

[73] *Id.* This case is not like the Publisher Defendants' cited authority involving pleading flaws crying out for clarification. *United Magazine Co. v. Murdoch Mags. Distrib., Inc.*, 146 F. Supp. 2d 385, 395 (S.D.N.Y. 2001) ("'Publishers' are alleged to publish only magazines; accordingly, 'Magazines and Books' actually includes no books, newspapers, or 'other periodicals' other than magazines.").

[74] *Texaco*, 496 U.S. at 555–56; Sec. 2(b) of RPA (stating that "the burden of … showing [the meeting-competition defense] … shall be upon the person charged with a violation").

buyer by a competitor.[75] Plaintiff has gone beyond the pleading requirements of a Section 2(a) violation and has provided plausible allegations that Defendants can allege no facts that would satisfy that defense. ¶ 104.

*First*, the Publisher Defendants' agreement to charge Amazon, and not other book retailers, the same preferential prices does not provide a meeting-competition defense because Defendants don't sell Amazon the same commodities. As Plaintiff plausibly alleges, each book title sold by a Publisher Defendant is substantially different in terms of written content and appearance from any other book title sold by any Publisher Defendant. ¶ 96. And where "there are substantial physical differences in products affecting consumer use, preference or marketability, such products are not of 'like grade and quality.'"[76]

*Second*, the Publisher Defendants' agreement to charge Amazon, and not other book retailers, the same preferential prices does not provide a meeting-competition defense because they *jointly agreed* to a discriminatory pricing system that favored Amazon at the expense of other booksellers,

███████████████████████████████████████████████████████

████████████████ ¶ 104. They thus do not meet the good-faith requirement of Section 2(a); their discriminatory pricing was not "truly 'responsive to rivals' competitive prices,' … and therefore [] not genuinely made to meet competitors' lower prices."[77]

---

[75] *Texaco*, 496 U.S. at 555–56.

[76] *Checker Motors Corp. v. Chrysler Corp.*, 283 F. Supp. 876, 889 (S.D.N.Y. 1968), *aff'd*, 405 F.2d 319 (2d Cir.), *cert. denied*, 394 U.S. 999 (1969); *accord Reeder-Simco GMC, Inc. v. Volvo GM Heavy Truck Corp.*, 374 F.3d 701, 710 (8th Cir. 2004), *rev'd on other grounds*, 546 U.S. 164 (2006).

[77] *Falls City Indus. v. Vanco Beverage, Inc.*, 460 U.S. 428, 449–50 (1983).

7.      **Plaintiff has stated claims for relief under Sections 2(d) and 2(e).**

The Publisher Defendants drop a cursory footnote contending that Plaintiff's claims under RPA Sections 2(d) and 2(e) are foreclosed. ECF 76 at 22 n.7. "[C]ourts routinely decline to consider arguments mentioned only in a footnote on the grounds that those arguments are inadequately raised."[78] Moreover, their argument cannot avoid Plaintiff's allegations supporting an RPA claim under Sections 2(d) and 2(e).

Plaintiff's allegations mirror those upheld on a motion to dismiss in *Am. Booksellers Ass'n, Inc. v. Random House, Inc.* There, as to Section 2(d), the complaint "adequately set forth a cause of action by alleging that" book publishers "have made payments to chains for services relating to the sale of their books that are not made available to independent bookstores."[79] For pleading purposes, Section 2(e) was also satisfied by allegations that book publishers "provide services to the chains in connection with the sale of Defendants' books that are not made available on proportionally equal terms to the independent bookstores."[80] Plaintiff's substantially similar allegations are sufficient to plead plausible claims in this case. ¶ 102.

**F.      The Publisher Defendants' motion to strike the class allegations fails to establish that class certification would be impossible.**

Finally, the Publisher Defendants seek to foreclose class-action status for Plaintiff's RPA claims. To avoid duplication, Plaintiff adopts its arguments made in opposition to Amazon's motion to strike.[81] As explained there, the Court should defer until the class certification stage any questions about the suitability of Plaintiff's RPA claims for class treatment. The Publisher Defendants

---

[78] *Miami Prod. & Chem. Co. v. Olin Corp.*, 449 F. Supp. 3d 136, 157 n.1 (W.D.N.Y. 2020) (cleaned up).

[79] 1996 WL 499520, at *4.

[80] *Id.*

[81] *See* Plaintiff's Opp. to Amazon's Mot. to Strike Class Allegations.

themselves concede that the touchstone for this extreme relief at the pleading stage is whether "'it would be **impossible** to certify the alleged class regardless of the facts Plaintiffs may be able to obtain during discovery.'" ECF 76 at 23 (citation omitted and emphasis added).

Although the Publisher Defendants portray *Gold Strike Stamp Co. v. Christensen,*[82] as an outlier, it remains good law more than 50 years later. The Tenth Circuit's order approving class certification of an RPA claim for damages directly contradicts the Publisher Defendants' argument that RPA claims—as a matter of law in *all* cases—are too individualized and would trigger "thousands of individual inquiries." ECF 76 at 24. Nor does it necessitate examining "each book sale." *Id.* As one court observed in addressing an RPA claim on summary judgment, some "publishers offer standardized discounts on entire lines of books … rather than offering individualized discounts on specific titles."[83] Under these circumstances, "[t]here is no need to show that each plaintiff bought a specific title at a greater price than that paid by defendants for the same title at the same time."[84] Accordingly, although an RPA class claim *may* present individualized issues unsuited for class certification, it cannot be determined as a matter of law for all cases. Because the Publisher Defendants fail to surmount the high hurdle for striking class allegations, there is no basis to excise the RPA class allegations from Plaintiff's complaint.

## IV.   CONCLUSION

For the foregoing reasons, the Court should deny the Publisher Defendants' motions. Alternatively, Plaintiff requests leave to amend to cure any pleading deficiencies.[85]

---

[82] 436 F.2d 791 (10th Cir. 1970).

[83] *Am. Booksellers Ass'n, Inc. v. Barnes & Noble, Inc.*, 135 F. Supp. 2d 1031, 1039 (N.D. Cal. 2001).

[84] *Id.*

[85] *See Foman v. Davis*, 371 U.S. 178, 182 (1962) (leave to amend freely given absent narrow circumstances not present here); *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015) ("benefit of a ruling" on motion to dismiss guides possible amendments).

DATED:  October 22, 2021                 Respectfully submitted,

                                         HAGENS BERMAN SOBOL SHAPIRO LLP

                                         By: /s/ Steve W. Berman
                                             Steve W. Berman (*pro hac vice*)

                                         Barbara A. Mahoney (*pro hac vice*)
                                         1301 Second Avenue, Suite 2000
                                         Seattle, WA 98101
                                         Telephone: 206-623-7292
                                         Facsimile:   206-623-0594
                                         steve@hbsslaw.com
                                         barbaram@hbsslaw.com

                                         Eamon P. Kelly (*pro hac vice*)
                                         Joseph M. Vanek (*pro hac vice*)
                                         Paul E. Slater (*pro hac vice*)
                                         Alberto Rodriguez (*pro hac vice*)
                                         Jeffery Bergman (*pro hac vice*)
                                         SPERLING & SLATER, P.C.
                                         55 W. Monroe Street, Suite 3200
                                         Chicago, IL 60603
                                         ekelly@sperling-law.com
                                         jvanek@sperling-law.com
                                         pes@sperling-law.com
                                         arodriguez@sperling-law.com
                                         jbergman@sperling-law.com

                                         *Attorneys for Plaintiff and the Proposed Classes*

**CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the above document was served on ALL DEFENSE COUNSEL OF RECORD through the Court's electronic filing service on October 22, 2021, which will send notification of such filing to the e-mail addresses registered.

*/s/ Steve W. Berman*
Steve W. Berman

010888-13/1694037 V1