**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| BOOKENDS & BEGINNINGS LLC, on behalf of itself and all others similarly situated,<br><br>                    Plaintiff,<br><br>   v.<br><br>AMAZON.COM, INC.; HACHETTE BOOK GROUP, INC; HARPERCOLLINS PUBLISHERS L.L.C.; MACMILLAN PUBLISHING GROUP, LLC; PENGUIN RANDOM HOUSE LLC; SIMON & SCHUSTER, INC.,<br><br>                    Defendants. | No. 21-cv-02584-GHW-DCF<br><br>**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO AMAZON'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**<br><br>[REDACTED VERSION] |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................ 1

II.    FACTS ................................................................................................................ 2

III.    STANDARD OF REVIEW ................................................................................ 7

IV.    ARGUMENT ...................................................................................................... 8

    A.    Plaintiff adequately alleges violations of the Robinson-Patman Act. ........... 8

        1.    Plaintiff has adequately alleged a violation of § 2(a). ....................... 9

            a.    Plaintiff plausibly alleges price discrimination. ...................... 9

                (1)    The RPA does not require allegations of "particularized facts." .................................... 10

                (2)    The RPA does not require Plaintiff to plead "direct knowledge of Amazon's wholesale prices," or that Plaintiff negotiated for (but failed to obtain) Amazon's superior wholesale pricing. ................... 11

            b.    Plaintiff plausibly alleges injury to competition. .................. 13

        2.    Plaintiff has adequately alleged a violation of § 2(f) .......................... 15

            a.    Plaintiff plausibly alleges that Amazon knew that the Publisher Defendants did not have a viable functional-discount defense. ................................................. 17

            b.    Plaintiff plausibly alleges that Amazon knew that the Publisher Defendants did not provide discriminatory pricing as a good faith effort to meet a competitor's price. ................................................................................. 19

    B.    By arguing in a perfunctory manner in a footnote, Amazon waives any challenge to Plaintiff's market definition. ................................................. 21

    C.    Plaintiff has plausibly alleged violations of the Sherman Act. .................... 22

V.    CONCLUSION ................................................................................................ 25

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Am. Booksellers Ass'n v. Barnes & Noble, Inc.,*
135 F. Supp. 2d 1031 (N.D. Cal. 2001) ............................................................................... 13

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) .................................................................................................................. 7

*Automatic Canteen Co. v. FTC,*
346 U.S. 61 (1953) ............................................................................................................ 15, 16

*In the Matter of Boise Cascade Corp.,*
107 F.T.C. 76 (1986) .............................................................................................................. 15

*Brooke Grp., Ltd. v. Brown & Williamson Tobacco Corp.,*
509 U.S. 209 (1993) ................................................................................................................ 16

*Caribe BMW v. Bayerishe Motoren Werke,*
19 F.3d 745 (1st Cir. 1994) ...................................................................................................... 9

*Cash & Henderson Drugs, Inc. v. Johnson & Johnson,*
799 F.3d 202 (2d Cir. 2015) ................................................................................................... 14

*Checker Motors Corp. v. Chrysler Corp.,*
283 F. Supp. 876 (S.D.N.Y. 1968), *aff'd*, 405 F.2d 319 (2d Cir.), *cert. denied*, 394
U.S. 999 (1969) ....................................................................................................................... 19

*CMS Volkswagen Holdings, LLC v. Volkswagen Grp. Of Am., Inc.,*
25 F. Supp. 3d 432 (S.D.N.Y. 2014), *vacated and rev'd on other grounds*, 669 F. App'x
602 (2d Cir. 2016) ................................................................................................................... 12

*Coalition for a Level Playing Field, L.L.C. v. AutoZone, Inc.,*
737 F. Supp. 2d 194 (S.D.N.Y. 2010) ................................................................................... 18

*Coalition for a Level Playing Field, L.L.C. v. AutoZone, Inc.,*
813 F. Supp. 2d 557 (S.D.N.Y. 2011) ................................................................................... 11

*Coastal Fuels of Puerto Rico, Inc. v. Caribbean Petroleum Corp.,*
990 F.2d 25 (1st Cir. 1993) .................................................................................................... 19

*Concord Assocs., L.P. v. Ent'mt Props. Trust,*
817 F.3d 46 (2d Cir. 2016) ..................................................................................................... 10

*Dayton Superior Corp. v. Marjam Supply Co.,*
2011 U.S. Dist. LEXIS 17221 (E.D.N.Y. Feb. 22, 2011) ............................................... 15, 16

*Distance Learning Co. v. Maynard*,
    2020 U.S. Dist. LEXIS 99256 (N.D. Cal. June 4, 2020)........................................................22

*Falls City Indus. v. Vanco Beverage, Inc.*,
    460 U.S. 428 (1983) ........................................................................................................ 13, 20

*Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*,
    2020 U.S. Dist. LEXIS 9088 (S.D.N.Y. Jan. 17, 2020)........................................................22

*FTC v. A.E. Staley Mfg. Co.*,
    324 U.S. 746 (1945)................................................................................................................20

*FTC v. Borden Co.*,
    383 U.S. 637 (1966)................................................................................................................20

*FTC v. Morton Salt Co.*,
    334 U.S. 37 (1948)..............................................................................................................8, 9

*Gorlick Distrib. Ctrs., LLC v. Car Sound Exhaust Sys., Inc.*,
    723 F.3d 1019 (9th Cir. 2013) ......................................................................................... 16, 18

*Hatcher v. Bd. of Trs. of S. Ill. Univ.*,
    829 F.3d 531 (7th Cir. 2016)....................................................................................................8

*Hu v. City of New York*,
    927 F.3d 81 (2d Cir. 2019) ......................................................................................................7

*Monterey Bay Military Hous., LLC v. AMBAC Assur. Corp.*,
    2021 U.S. Dist. LEXIS 62687 (S.D.N.Y. Mar. 30, 2021) ....................................................17

*New Albany Tractor, Inc. v. Louisville Tractor, Inc.*,
    650 F.3d 1046 (6th Cir. 2011) ...............................................................................................11

*Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*,
    673 F.3d 84 (2d Cir. 2012)......................................................................................................22

*Official Committee of the Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*,
    322 F.3d 147 (2d Cir. 2003) ...................................................................................................17

*Premier Electrical Constr. Co. v. Nat'l Electrical Contractors Ass'n*,
    814 F.2d 358 (7th Cir. 1987)..................................................................................................23

*Reeder-Simco GMC, Inc. v. Volvo GM Heavy Truck Corp.*,
    374 F.3d 701 (8th Cir. 2004), *rev'd on other grounds*, 546 U.S. 164 (2006)...........................19

*Smith Wholesale Co. v. R. J. Reynolds Tobacco Co.*,
    477 F.3d 854 (6th Cir. 2007)..................................................................................................12

*Swanson v. Citibank, N.A.*,
  614 F.3d 400 (7th Cir. 2010) ................................................................................. 8

*Texaco, Inc. v. Hasbrouck*,
  496 U.S. 543 (1990) ................................................................... 9, 10, 17, 18

*Thompson v. 1-800 Contacts, Inc.*,
  2018 U.S. Dist. LEXIS 83806 (D. Utah May 17, 2018) ................................ 21

*Tichy v. Hyatt Hotels Corp.*,
  376 F. Supp. 3d 821 (N.D. Ill. 2019) ........................................................... 22

*United Magazine Co. v. Murdoch Magazines Distrib.*,
  393 F. Supp. 2d 199 (S.D.N.Y. 2005), *aff'd*, 279 App'x 14 (2d Cir. 2008) ...................................... 14

*United States v. Apple, Inc.*,
  791 F.3d 290 (2d Cir. 2015) ........................................................................5, 24

*United States v. E. I. du Pont de Nemours & Co.*,
  351 U.S. 377 (1956) ................................................................................. 19, 20

*Volvo Trucks N. Am., Inc. v. Reeder-Simco GMC, Inc.*,
  546 U.S. 164 (2006) .............................................................................. 8, 13, 14

*Walker v. Hallmark Cards*,
  992 F. Supp. 1335 (M.D. Fla. 1997) ............................................................ 19

*Zoslaw v. MCA Distrib. Corp.*,
  594 F. Supp. 1022 (N.D. Cal. 1984) ............................................................ 19

## STATUTES

15 U.S.C. § 13 ....................................................................................... 8, 15, 19

## OTHER AUTHORITIES

Fed. R. Civ. P. 8 .............................................................................................. 9

## I.   INTRODUCTION

Amazon accounts for more than half of all sales of print books and nearly 90 percent of print books sold online. The retail giant exercised its dominant power in the retail market for print trade books illegally by entering into a series of anticompetitive agreements with the Publisher Defendants. Under those agreements, the Publisher Defendants jointly raised their wholesale prices across the board while, at the same, providing substantial discounts to Amazon not equally available to Plaintiff and other book retailers. As Plaintiff alleges in its Amended Complaint, that pricing scheme, jointly implemented by Amazon and the Publisher Defendants, violates the Robinson-Patman Act (RPA) and Sections 1 and 2 of the Sherman Act.

Amazon's primary argument—that Plaintiff fails to allege a plausible discriminatory pricing claim under the RPA—widely misses its mark. The RPA prevents large buyers, like Amazon, from using their size to extract lower prices from their suppliers than are otherwise available to the buyer's competitors. Section 2(a) of the RPA makes it unlawful for the Publisher Defendants to sell the same books to Amazon at better prices without making their discounts equally available to Amazon's competitors.  Section 2(f) of the RPA makes it unlawful for Amazon to "knowingly to induce or receive" a price that violates 2(a) and is not subject to a recognized defense. Plaintiff has alleged (and Amazon does not dispute) that the sales occurred in interstate commerce and that the sale of books of the same title and written by the same author are goods of "like grade and quality." But Amazon argues that Plaintiff has failed to allege sufficient particularized facts to satisfy the remaining 2(a) requirements—that the prices are discriminatory and "injured competition"—or that Amazon acted knowingly as required by 2(f).

Amazon's arguments lack merit and do not justify Amazon's motion to dismiss. *First*, as Plaintiff alleges, Amazon's own contracts with the Publisher Defendants mandate that Amazon receive pricing discounts not available to other book retailers—demonstrating both price

discrimination and that Amazon knows about it and induced it. *Second*, those same contracts refute the availability of affirmative defenses to price discrimination because (a) they require the Publisher Defendants to compensate Amazon separately for marketing and distribution services it provides, and (b) they show that the discounts were not necessary to meet competition. *Third*, Plaintiff plausibly alleges harm to competition by alleging that (a) the discriminatory pricing allows Amazon to lower its retail prices without risking the same profit level as Plaintiff and (b) that Amazon has received significant price reductions from the Publisher Defendants for the past six years that were not equally available to Plaintiff and other small sellers.

Finally, as addressed in detail in response to the Publisher Defendant's motion to dismiss, Amazon's pricing scheme independently violates the Sherman Act. Amazon used its monopoly power in the retail market for print trade books to facilitate a horizontal agreement with the Publisher Defendants to raise the wholesale pricing—while simultaneously giving Amazon discounts unavailable to Amazon's competitors. That scheme in fact resulted in higher prices to both book retailers and to consumers, while impermissibly protecting Amazon's market power and pricing advantage.

## II.   FACTS

Defendants dominate the market for online sales of print trade books.[1] Amazon is the largest seller of print trade books in the United States and accounts for nearly 90% of all print books sold online, while the Publisher Defendants[2] collectively account for around 80% of all trade books published. Sealed Amended Complaint (ECF 65), ¶ 2.  Defendants' anticompetitive conduct

---

[1] "Trade books" refers to "general interest fiction and non-fiction books." Amended Complaint, ¶ 1 (quoting *United States v. Apple Inc.*, 952 F. Supp. 2d 638, 648 n.4 (S.D.N.Y. 2013)).

[2] Hachette Book Group, Inc.; HarperCollins Publishers L.L.C.; Macmillan Publishing Group, LLC; Penguin Random House LLC; and Simon & Schuster, Inc.

centers on a market-wide increase of the Publisher Defendants' list prices for tens of thousands of different book titles. The "list price" refers to the suggested retail price listed in catalogues and printed on book covers, and many consumers purchase at this price. *Id.*, ¶¶ 10, 54–55.  The Publisher Defendants also use their list prices to calculate wholesale prices by selling their books to Amazon, Plaintiff, and other resellers at a discount off the list prices. *Id.*, ¶ 3.

Booksellers, in turn, use list prices in their sales and marketing of books to consumers. For example, when Amazon displays books for sale on its website, it typically lists both its own sales price and the publisher's list price as the crossed-out price. ¶ 54. Defendants know that higher list prices translates into higher consumer prices. A substantial number of retailers, including Plaintiff and some of the Publisher Defendants themselves, sell some trade books at the Publisher Defendants' full list prices. ¶¶ 54–55.

Between late 2014 and mid-2015, Amazon negotiated new print book supply agreements with the Publisher Defendants, whereby each Publisher Defendant knowingly entered into a common agreement with Amazon to sell their books to the retail giant at heavily discounted prices that they do not make equally available to Plaintiff and other competing book retailers. *Id.*, ¶¶ 4–5, 40–41. These contracts establish that the standard discounts available to Plaintiff and other competing book retailers is merely the floor price and additionally guarantee that Amazon's discount will increase with each succeeding year by a specific percentage, which is not reflected in the Publisher Defendants' standard discounts or otherwise provided to Plaintiff or other competing book retailers. *Id.*, ¶ 4.

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████ Each Publisher Defendant therefore understood when it entered into its contract that the specific monetary and performance terms of its contract reflects its competitors' terms and in fact were conditioned on their agreement to the same terms. *Id.* The Publisher Defendants' collective action—and possession of their rivals' pricing information— enabled the Publisher Defendants to fix print book prices. Acting alone, none of them could have raised the market price of trade print books or changed public perception about the value of books.

Entering into the common agreement with Amazon empowered the Publisher Defendants to raise prices by increasing their list prices. Because the Publisher Defendants announce their list prices months in advance, however, they could not immediately raise their list prices. But they did so as soon as it was feasible and not long after they had finalized their agreements with Amazon. ¶ 12.

For example, from 2013 through 2015, the weighted average list price for print bestsellers held steady at about $16. But in 2016, soon after the Defendants' anticompetitive agreements took effect, the price increased to $17. ¶ 12. At the same time, the weighted average list price of the Publisher Defendants' lowest priced books increased from $16 to $16.50, and it increased again by a dollar just two years later. ¶ 13.

When the Publisher Defendants raise their list prices, they increase booksellers' acquisition costs while simultaneously depressing consumer demand for print trade books. ¶ 56. Amazon disproportionately benefits from reduced demand. ¶ 53. Because of its discriminatory discounts, Amazon can sell profitably to price-conscious consumers at significantly lower prices than its rival

---

[3] Amazon publicly confirmed at the time of negotiations that the "contract presented to HarperCollins"—████████████████████████████████████████—"was the same contract" provided to the other Publisher Defendants. *Id.*, ¶ 8.

booksellers. *Id.*, ¶ 53. Amazon's bookseller rivals, who cannot profitably sell at the same levels as Amazon, bear the burden of lost sales volume and market output of books.

The purpose and intent of Defendants' serial agreements was to protect Amazon from competition from its retail rivals while giving the Publisher Defendants the cover they needed to raise their list prices collectively (both retail and wholesale prices). *Id.*, ¶¶ 10–14. By the very act of signing the price discrimination agreements with Amazon, each of the Publisher Defendants signaled a clear commitment to raise the prices of print trade books, thereby facilitating their collective action.[4] *Id.*, ¶ 12. The Publisher Defendants' huge price concessions to Amazon—that they each agree to meet—ensure that Amazon has a significant competitive advantage over its bookseller rivals in the sale of print trade books. By drastically reducing Amazon's cost of doing business, the Publisher Defendants give the retail giant an unfair advantage. Plaintiff and other competing book retailers who pay more for the same books, cannot afford to compete with Amazon on price. This allows Amazon to acquire or maintain its monopoly power in the online market for print books without ever incurring the same risks as other competing book retailers. *Id.*, ¶ 5. This conduct violates the Sherman Act.

Notably, the Publisher Defendants' discriminatory discounts do not compensate Amazon for the value of any distributional or marketing services Amazon provides. Instead, the Publisher Defendants pay for these services separately, ███████████████████████████████

---

[4] *See United States v. Apple, Inc.*, 791 F.3d 290, 320 (2d Cir. 2015) (noting that the price restraints the Publisher Defendants agreed to in *Apple*, "were only attractive to the Publisher Defendants to the extent they acted collectively"); *id.* at 305 (While "no one Publisher could effect an industry-wide shift in prices or change the public's perception of a book's value, if they moved together they could.") (quoting *United States v. Apple Inc.*, 952 F. Supp. 2d 638, 665 (S.D.N.Y. 2013)); 791 F.3d at 317 ("By the very act of signing a Contract with Apple containing [the price restraint], then, each of the Publisher Defendants signaled a clear commitment to move against" competitive pricing, "thereby facilitating their collective action.").

██████████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████      *Id.*, ¶¶ 5, 103. Indeed, a letter to the House Judiciary Committee from the Association of American Publishers, where each of the Publisher Defendants' CEOs serve as board members, suggests that the Publisher Defendants *overpay* Amazon for these services, when it reveals that "Amazon acts anti-competitively in multiple ways, . . . so that publishers. . . . pay more each year for Amazon's distribution and advertising services but receive less each year in return[.]" *Id.*, ¶ 15.

While the Publisher Defendants occupy the same print trade book market, they do not trade in the same commodities. Each Publisher Defendant publishes, sells, and distributes thousands of unique titles, which are each separate commodities with distinct and substantial physical differences affecting consumer preference or marketability, so that for example, copies of *War and Peace* are not the same commodity as copies of *Pride and Prejudice*. *Id.*, ¶ 104. Amazon violates the RPA by inducing the Publisher Defendants to sell each title to Amazon at lower prices than they offer to Plaintiff and other sellers. Because they sell different commodities, ████████████████████ ████████████████████████████████████████████ is not a good faith effort to sell the same commodity to different purchasers at different prices in order to meet an equally low price of a competitor—a recognized defense to the RPA. *Id.*

Defendants' anticompetitive conduct is astonishingly brazen in light of repeated investigations into their book sales. *Id.*, ¶ 43. Only a decade ago, the Second Circuit affirmed that the Publisher Defendants conspired with Apple to raise trade eBook prices by combining agency pricing, which gave the Publisher Defendants control over eBook prices, with a most favored

nations clause (MFN), which guaranteed that the Publisher Defendants would not sell at a lower price on website that competed with Apple. A few years later, the European Commission's Directorate General for Competition found that the Publisher Defendants' eBooks contracts with Amazon *likewise* harmed competition in the distribution and sale of eBooks in the European markets. *Id.*, ¶ 45. The report issued by the House Judiciary Committee last year similarly found that here in the United States Amazon has also entered into a series of anticompetitive agreements to monopolize book distribution in a massive abuse of power that resembles the conduct of oil barons and railroad tycoons of another era. *Id.*, ¶ 46. Although Defendants employ a different mechanism in the print book market, their common discriminatory price agreement, like the common MFN and agency pricing agreement they employ in the eBook market, ensures both that no rival bookseller can compete with Amazon on price, while allowing the Publisher Defendants to raise the wholesale and retail prices of trade books. *Id.*, ¶ 43.

## III.   STANDARD OF REVIEW

On a motion to dismiss the "Court must accept as true all allegations in the complaint and draw all reasonable inferences in favor of the non-moving party."[5] The Court should deny a motion to dismiss if the complaint provides "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."[6] A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[7] But the Court's role is not "to stack up inferences side by side and allow the case to go forward only if the plaintiff's inferences seem more compelling than the opposing

---

[5] *Hu v. City of New York*, 927 F.3d 81, 88 (2d Cir. 2019) (quotation omitted).
[6] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted).
[7] *Id.*

inferences."[8] Because the Court must determine only whether the complaint "include[s] enough details about the subject matter of a case to present a story that holds together," the relevant question is "could these things have happened, not did they happen."[9] Under these standards, the Court must deny Amazon's motion to dismiss.

## IV.   ARGUMENT

### A.   Plaintiff adequately alleges violations of the Robinson-Patman Act.

Congress enacted the RPA to prevent large buyers from securing "a competitive advantage over [] small buyer[s] solely because of the large buyer's quantity purchasing ability."[10] Section 2(f) of the RPA makes it "unlawful" for Amazon to "knowingly to induce or receive a discrimination in price which is prohibited by" Section 2(a).[11] To prove a Section 2(a) violation, Plaintiff must prove four elements: (1) one of the allegedly discriminatory sales must cross a state line in interstate commerce; (2) the sales of the goods to the favored and disfavored buyers must be of "like grade and quality"; (3) the seller must have "discriminated in price between" the plaintiff and the favored buyer; and (4) "'the effect of such discrimination may be to injure, destroy or prevent competition' to the advantage of a favored purchaser, *i.e.*, the one who received the benefit of such discrimination."[12]  Amazon challenges only the third and fourth elements of 2(a) and the knowledge requirement of 2(f).

---

[8] *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010).

[9] *Hatcher v. Bd. of Trs. of S. Ill. Univ.*, 829 F.3d 531, 536 (7th Cir. 2016) (quoting *Carlson v. CSX Transp., Inc.* 758 F.3d 819, 826–27 (7th Cir. 2014)).

[10] *FTC v. Morton Salt Co.*, 334 U.S. 37, 43 (1948).

[11] 15 U.S.C. § 13(f).

[12] *Volvo Trucks N. Am., Inc. v. Reeder-Simco GMC, Inc.*, 546 U.S. 164, 177 (2006) (brackets omitted) (quoting 15 U.S.C. § 13(a)).

1.     **Plaintiff has adequately alleged a violation of § 2(a).**

    a.     **Plaintiff plausibly alleges price discrimination.**

A "price discrimination within the meaning of § 2(a) is merely a price difference."[13] But selling at two different prices does not violate the RPA unless the seller fails to give each buyer "an equal opportunity" to benefit from them.[14] Here, Plaintiff alleges that the Defendant Publishers sell to Amazon at "steep discounts to list price" that are "below the standard discounts available to other booksellers," and that the Defendant Publishers sell the same books to Amazon at a "higher discount … and price reductions" that "were not equally available to Plaintiff and Class members." ECF 65, ¶¶ 4, 95. These allegations support a price discrimination within the meaning of § 2(a).

Section 2(a) of the RPA provides two affirmative defenses: a defendant can avoid liability if it pleads and proves (1) that the lower cost of doing business with the favored buyer justifies a lower price to that buyer; or (2) that the lower price to the favored buyer was a good faith effort to meet the equally low price offered to that buyer by a competitor.[15] Here, Plaintiff has gone beyond the pleading requirements of a Section 2(a) violation and has provided plausible allegations that Defendants can allege no facts that would satisfy the cost justification or meeting-competition affirmative defenses. *Id.*, ¶ 101 (alleging that it costs the Publisher Defendants more to do business with Amazon, not less); ¶ 104 (Defendants cannot satisfy the meeting-competition defense because the Publisher Defendants do not sell the same commodities and did not act in good faith). *See also*

---

[13] *Texaco, Inc. v. Hasbrouck*, 496 U.S. 543, 558–59 (1990) (quotation omitted).

[14] *Morton Salt Co.*, 334 U.S. at 43; *Caribe BMW v. Bayerishe Motoren Werke*, 19 F.3d 745, 751–52 (1st Cir. 1994).

[15] *Texaco*, 496 U.S. at 555–56; Sec. 2(b) of RPA (stating that "the burden of … showing [the meeting-competition defense] … shall be upon the person charged with a violation"); Fed. R. Civ. P. 8 (obligating defendant to plead affirmative defenses); *see also* first proviso in Section 2(a) of the RPA (cost justification).

*infra* Section IV(A)(2)(a) (discussing Amazon's knowledge that the Publisher Defendants had not offered it more favorable pricing in a good faith effort to meet a competitor's price).

In addition to those express affirmative defenses, courts also recognize a functional-discount defense: if a purchaser performs certain distribution or marketing functions for the seller, it may receive a "reasonable" discount reflective of the "supplier's savings and the [purchaser's] costs."[16] Here, Plaintiff alleges that, far from performing functions that would save the Publisher Defendants money and allow them to grant a functional discount to Amazon legally, the Publisher Defendants ████████████████████████████████████████ ncrease the cost of selling to Amazon as compared to other Booksellers." *Id.* ¶¶ 5, 101–02. Plaintiff has also alleged that any savings achieved by selling to Amazon is significantly less than the discounts granted to Amazon. *Id.* As a result, Plaintiff has adequately alleged that the Defendants do not have a viable functional-discount defense. *See also infra* Section IV(A)(2)(b) (discussing Amazon's knowledge that it had not received a functional discount).

### (1)     The RPA does not require allegations of "particularized facts."

Amazon seeks to avoid Plaintiff's plausible allegations of price discrimination by arguing that Plaintiff failed to "allege particularized facts" about Plaintiff's "direct knowledge of Amazon's wholesale prices" and Plaintiff's "attempt to negotiate its *own* wholesale price discounts." (Amazon's Br. [ECF 78] at 8–9.) But Amazon argues under the wrong pleading standard. There "is no heightened pleading standard in antitrust cases."[17] Plaintiff need only comply with Rule 8(a)'s "general requirement of a 'short plain statement' of facts" that nudge its claim "across the line from conceivable to plausible"[18] Plaintiff's allegations are more than sufficient to satisfy the plausibility requirement under Rule 8(a).

---

[16] *Texaco*, 496 U.S. at 561–62.

[17] *Concord Assocs., L.P. v. Ent'mt Props. Trust*, 817 F.3d 46, 52 (2d Cir. 2016).

[18] *Id.*

(2)     **The RPA does not require Plaintiff to plead "direct knowledge of Amazon's wholesale prices," or that Plaintiff negotiated for (but failed to obtain) Amazon's superior wholesale pricing.**

Yet not only does Amazon invoke an inapplicable pleading standard, it cites no authority for the notion that Plaintiff must plead "direct knowledge of Amazon's wholesale prices," or that Plaintiff has the burden of alleging that it negotiated for (but failed to obtain) Amazon's superior wholesale pricing. The decisions Amazon relies on stand, at most, for two straightforward propositions, neither of which supports dismissing Plaintiff's RPA claims in this case.

*First*, Amazon's decisions confirm that a plaintiff generally cannot obtain discovery unless it alleges a plausible claim—in other words, a plaintiff cannot ask for discovery in order to meet the threshold requirement of plausibility. Thus, in *Coalition for a Level Playing Field, L.L.C. v. AutoZone, Inc.*, the court granted a motion to dismiss after the plaintiff in that case *conceded* its "inability to determine or plead the extent of price discrimination without discovery."[19] Likewise, in *New Albany Tractor, Inc. v. Louisville Tractor, Inc.*, the Sixth Circuit affirmed dismissal when the plaintiff invoked the RPA's indirect-purchaser doctrine but, without discovery, could not allege plausible facts to support the doctrine's application.[20]  Neither of those decisions supports Amazon's motion to dismiss because, in this case, Plaintiff does not rely on the indirect-purchaser doctrine and already has met the threshold plausibility requirement to assert price discrimination. Indeed, Plaintiff alleges—with reference to specific provisions in Amazon's own contracts with the Publisher Defendants—that Amazon receives better pricing from the Publisher Defendants than is available to Plaintiff or other retailer defendants. Such allegations raise a plausible inference of price discrimination, and nothing more is required at the pleading stage, much less the "particularized facts" threshold that Amazon

---

[19] 813 F. Supp. 2d 557, 559 (S.D.N.Y. 2011).
[20] 650 F.3d 1046, 1052 (6th Cir. 2011).

seeks to impose. The Court should reject Amazon's misguided effort to graft in a heightened pleading requirement for antitrust claims.

*Second*, Amazon's decisions also confirm that, when the supplier employs a uniform pricing formula for all customers, there is no price discrimination so long as, in practice, the supplier makes the same favorable pricing available to all its customers. Thus, in *CMS Volkswagen Holdings, LLC v. Volkswagen Group of America, Inc.*, the court stated that there is no price discrimination if "the favorable price was available, not only in theory but in fact, to all purchasers."[21]  The court in *Smith Wholesale Co. v. R.J. Reynolds Tobacco Co.* reached the same conclusion.[22] Neither of those decisions says what Amazon wishes they said—that, to plead price discrimination, Plaintiff has the burden to allege that it negotiated for (but failed to obtain) Amazon's superior wholesale pricing. The RPA does not impose such an exhaustion requirement, and this Court should reject Amazon's attempt to read one into the statute for purposes of this case.

In sum, Plaintiff must allege enough to raise a *plausible* inference that Amazon received favorable pricing that was not functionally available to Plaintiff and other book retailers. By alleging that specific provisions in Amazon's own contracts require that the Publisher Defendants give Amazon more favorable pricing than is available under the otherwise uniform pricing formulas, ECF 65, ¶¶ 4, 6, 9, 94, Plaintiff has more than met that plausibility threshold.

---

[21] 25 F. Supp. 3d 432, 439 (S.D.N.Y. 2014) ("The practice of conditioning price concessions and allowances upon the customer's purchase of a specific quantity of goods will not give rise to a Robinson—Patman violation if the concessions are available equally and functionally to all customers.") (quotation omitted), *vacated and rev'd on other grounds*, 669 F. App'x 602 (2d Cir. 2016).

[22] 477 F.3d 854, 867 (6th Cir. 2007).

**b.**     **Plaintiff plausibly alleges injury to competition.**

The RPA requires only a "reasonable possibility" or probability of competitive harm.[23] In cases involving injury to competition between a favored buyer (*i.e.*, Amazon) and disfavored buyers (*i.e.*, the Plaintiff Class),[24] the plaintiff may demonstrate that the discriminatory pricing injured competition in two ways. First, it may show that the discriminatory pricing diverted "sales or profits from a disfavored purchaser to a favored purchaser."[25] Second, under the *Morton Salt* doctrine, a factfinder may infer "competitive injury . . . from evidence that a favored competitor received a significant price reduction over a substantial period of time."[26] Plaintiff has alleged both methods of proving an injury to competition. *See* ECF 65, ¶¶ 98, 100.

Amazon argues that Plaintiff fails to allege direct evidence of harm to competition because "Plaintiff's Amended Complaint does not identify a single sale … lost to Amazon as a result of the alleged discrimination." (ECF 78 at 21.) But Amazon mischaracterizes Plaintiff's burden. Even on summary judgment, when "defendants receive discounts that are not available to plaintiffs," the plaintiffs need not demonstrate that they each "bought a specific title at a greater price than that paid by defendants for the same title at the same time."[27] Plaintiff may prove harm to competition directly through evidence, for example, that the discriminatory pricing allowed Amazon "to lower [its] prices" and that Plaintiff "had to lower its prices to an unprofitable level in response to such

---

[23] *Falls City Indus. v. Vanco Beverage, Inc.*, 460 U.S. 428, 435 (1983).

[24] The RPA also applies to an injury to competition at any one of three levels. A primary line injury damages competition between the discriminating seller and its competitors. A secondary line injury damages competition between the favored buyer and competing buyers. A tertiary injury damages competition between subsequent purchasers. Plaintiff alleges a secondary line injury. *See also* ECF 78 at 20.

[25] *Volvo Truck*, 564 U.S. at 177.

[26] *Id.*

[27] *Am. Booksellers Ass'n v. Barnes & Noble, Inc.*, 135 F. Supp. 2d 1031, 1039 (N.D. Cal. 2001).

low prices."[28] Plaintiff asserts plausible allegations, that if proven true would allow it to make that direct showing by alleging that the discriminatory pricing allows Amazon to lower its prices without risking the same profit level as Plaintiff, forcing Plaintiff to either lower its prices to unprofitable levels or lose customers to Amazon. ECF 65, ¶¶ 4, 26, 43, 53–55.

Amazon also argues that Plaintiff cannot alternatively rely on the *Morton Salt* doctrine to allege injury to competition because, according to Amazon, Plaintiff failed to allege that "any discounts Amazon received were 'substantial' over a 'significant period of time.'" (ECF 78 at 21.) On the contrary, Plaintiff, relying on Amazon's own contracts, Plaintiff plausibly alleges that Amazon has received significant price reductions from the Publisher Defendants for the past six years that were not equally available to Plaintiff and other small sellers. ECF 65, ¶¶ 4–6, 9, 12, 19, 40.

Amazon relies on *Cash & Henderson Drugs, Inc. v. Johnson & Johnson*[29] to argue that Plaintiff must identify specific sales that it lost to Amazon, but that decision does not support Amazon. To the contrary, Amazon's reliance on *Cash* reflects Amazon's persistent effort to impose greater burdens on Plaintiff than are permitted at the pleading stage. The decision in *Cash* came at summary judgment, and the Court ruled that the plaintiff could not rely at that stage on an inference of competitive injury under the *Morton Salt* doctrine because the evidence adduced during discovery showed that the plaintiff had suffered only *de minimus* losses.[30] Nothing in that ruling requires

---

[28] *United Magazine Co. v. Murdoch Magazines Distrib.*, 393 F. Supp. 2d 199, 210 (S.D.N.Y. 2005) (quotation omitted), *aff'd*, 279 App'x 14 (2d Cir. 2008).

[29] 799 F.3d 202, 212–13 (2d Cir. 2015).

[30] *Id.* at 212–13. Likewise, the court in *Cash* relied on *Volvo Trucks NA, Inc. v. Reeder-Simco GMC, Inc.*, 546 U.S. 164, 177 (2006)—a decision addressing that plaintiff's failure to demonstrate *at trial* that the seller consistently disfavored the plaintiff compared to the favored purchasers, or even to provide any examples of competition with the favored purchasers for the same customer.

Plaintiff to make such a showing without the benefit of discovery and full development of the evidentiary record.

> **2.      Plaintiff has adequately alleged a violation of § 2(f).**

As a purchaser, Amazon violates Section 2(f) of the RPA if it "knowingly induce[s] or receive[s] a discrimination in price which is prohibited" by the Act.[31] As explained above, Plaintiff has plausibly alleged an unlawful price discrimination under § 2(a) of the Act. Plaintiff has also clearly alleged that Amazon knowingly received and induced that illegal price. *See* ECF 65, ¶ 6 ("Amazon knows that its discounts are higher than Defendants' published standard discounts… .");[32] *Id.*, ¶ 99 ("Amazon knew it received higher discounts ████████████████ from the Big Five … as evidenced by its demand from the Big Five ███████████████ ████████████ ").

Plaintiff further supports that plausible inference of knowledge through allegations of Amazon's unique position in the industry. "[T]rade experience in a particular situation can afford a sufficient degree of knowledge,"[33] for example, when the defendants controlled more than 75% of the market and pressured the supplier to make them exclusive dealers, or where the defendants, through their acquisition of smaller competitors, obtained the "precise data to show defendants that they have been receiving favorable discriminatory prices."[34] Plaintiff raises similar allegations in support of Amazon's knowledge. As Plaintiff alleges in its Amended Complaint, Amazon controls

---

[31] 15 U.S.C. § 13(f).

[32] The fact-finder may infer from the fact that defendant paid less than the published list price that the defendant knew it was receiving a discriminatory price. *See In the Matter of Boise Cascade Corp.*, 107 F.T.C. 76 (1986).

[33] *Automatic Canteen Co. v. FTC*, 346 U.S. 61, 79–80 (1953).

[34] *Dayton Superior Corp. v. Marjam Supply Co.*, 2011 U.S. Dist. LEXIS 17221, at *32-35 (E.D.N.Y. Feb. 22, 2011) (quoting *Coalition for a Level Playing Field, LLC v. Autozone, Inc.*, 2001 U.S. Dist. LEXIS 27247, at *16 (E.D.N.Y. Oct. 18, 2001)).

over half of all sales of print books and nearly 90 percent of print books sold online. ECF 65, ¶ 2. The House Judiciary Committee found that Amazon's extraordinary size and out-sized influence on the market makes it uniquely placed as a gatekeeper to online sales. *Id.*, ¶ 46. That position uniquely enables Amazon to gather extensive market information, including the pricing received by the book retailers that sell on its web platform. *Id.*, ¶ 15. That "significant degree of knowledge"[35] belies Amazon's attempts to feign ignorance about the effects of its contracts.

     None of Amazon's authorities is to the contrary. Only one decision cited by Amazon even addresses whether a plaintiff adequately pleaded knowledge, and in that case, *Dayton Superior Corp. v. Marjam Supply Co.*, the plaintiff tried to allege knowledge based on tying allegations that it had neither asserted as a claim nor otherwise plausibly alleged.[36] But unlike that case, Plaintiff identifies the specific contractual terms Amazon negotiated to ensure that the Publisher Defendants would not make the same prices equally available to other buyers. Amazon cannot evade the results of its own knowledge by insisting that Plaintiff must plead even more particularized facts. Mere "receipt of better-than-published prices" did not satisfy the knowledge element on summary judgment in *Gorlick Distribution Centers, LLC v. Car Sound Exhaust System, Inc.*, because there was no evidence that the defendant had any insight into pricing offered to its competitors or that it knew the deals it received were anything other than an incentive for its continued loyalty.[37] By contrast, Plaintiff here has alleged facts demonstrating Amazon's knowledge of its competitors' acquisition costs and that

███████████████████████████████████████████████████████████████████████████.[38]

---

[35] *Automatic Canteen Co.*, 346 U.S.at 79–80.

[36] 2011 U.S. Dist. LEXIS 17221 at *35–37.

[37] 723 F.3d 1019, 1023 (9th Cir. 2013).

[38] *Brooke Grp., Ltd. v. Brown & Williamson Tobacco Corp.*, decided after trial, concerns unrelated predatory pricing claims, which Plaintiff does not assert. 509 U.S. 209, 220 (1993).

Nor can Amazon sidestep its knowledge by asking the Court to consider allegations in the original complaint—a superseded complaint that Plaintiff filed before obtaining access to Defendants' contracts and asserting an RPA claim. (ECF 78 at 9, 13 and n.4.) "'While courts are free to deny leave to amend a complaint if the proposed amended complaint attempts to omit certain previously alleged facts without adequate explanation or in bad faith, once an amended pleading is filed, a court may not import information that was contained in the prior pleading but omitted from the amended pleading."[39] Attempting to support a contrary position, Amazon mischaracterizes the holding of *Official Committee of the Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*.[40] While Amazon cites it as holding that a party's "original allegations continue to bind it 'throughout the course of th[is] proceeding'" (ECF 78 at 13 n.4), that decision (on a court's discretion to deny leave to amend a complaint) addressed the binding allegations of the *operative complaint*, not a superseded one, and thus does not support Amazon's assertion that superseded allegations remain binding throughout the case.[41]

> **a.** **Plaintiff plausibly alleges that Amazon knew that the Publisher Defendants did not have a viable functional-discount defense.**

Finally, Amazon argues that, even if it knew about the discriminatory pricing, "the Complaint demonstrate[s] the existence of viable defenses for the Publisher Defendants, leaving Plaintiff unable to meet their burden of alleging that Amazon violated section 2(f) . . . through knowing acceptance of the Publisher Defendants' allegedly lower wholesale prices." (ECF 78 at 14.)

---

[39] *Monterey Bay Military Hous., LLC v. AMBAC Assur. Corp.*, 2021 U.S. Dist. LEXIS 62687, at *71–72 (S.D.N.Y. Mar. 30, 2021) (quotation omitted).

[40] 322 F.3d 147 (2d Cir. 2003).

[41] *Id.* at 167.

In particular, Amazon asserts that the discriminatory prices were justified by the functional-discount defense and the meeting-competition defense. Amazon is again wrong on both points.

As a matter of law, Amazon's marketing and distribution services cannot serve as the basis for a functional-discount defense if the Publisher Defendants separately compensate Amazon for those services.[42] ECF 65, ¶ 103. Amazon postulates that the Publisher Defendants may "have legitimate reasons to provide lower wholesale acquisition prices to" Amazon because it "invested more heavily than other retailers in a method of distribution that consumers find attractive and responsive to their tastes." (ECF 78 at 15.) That argument fails because ███████████████████ ███████████████████████████████████████████████████████████████ ██████████████████████████████████ ECF 65, ¶ 8. Moreover, according to the Publisher Defendants' trade organization, the Publisher Defendants actually *overpay* Amazon for those services, "pay[ing] more each year for Amazon's distribution and advertising services but receiving less each year in return." *Id.*, ¶ 15. Amazon also ignores the critical allegation that its distribution provides a poor return for the Publisher Defendants, whose readers are nearly three times more likely to discover new books through in-person browsing at a physical store than by shopping on Amazon. *Id.*, ¶ 50.

Plaintiff's allegations put this case on different footing than the cases on which Amazon relies. For example, in *Gorlick Distribution Centers, LLC v. Car Sound Exhaust System, Inc.*, the plaintiff presented no evidence on summary judgment that the favored customer knew its better deals were not the result of the "higher volumes" and "promotional services" that it provided.[43] Unlike the favored customer in that case, Amazon knows that it receives separate compensation for its

---

[42] *Texaco Inc.*, 496 U.S. at 562.
[43] 723 F.3d at 1023.

marketing and distribution services and could not reasonably believe that the Publisher Defendants would legitimately compensate Amazon twice for the same services. And nothing in *Gorlick* (or any other decision cited by Amazon) suggests that a functional-discount defense is available even when the services provided are specifically and separately compensated.[44]

> **b.     Plaintiff plausibly alleges that Amazon knew that the Publisher Defendants did not provide discriminatory pricing as a good faith effort to meet a competitor's price.**

Plaintiff plausibly alleges that Amazon knew the meeting-competition defense is not available. *First*, that defense is unavailable because the Publisher Defendants do not sell "commodities of like grade and quality."[45] As Plaintiff plausibly alleges, each book title sold by a Publisher Defendant is substantially different in terms of written content and appearance for any other book title sold by any Publisher Defendant. And where "there are substantial physical differences in products affecting consumer use, preference or marketability, such products are not of 'like grade and quality.'"[46] None of Amazon's authorities refute this. The plaintiffs in *Zoslaw v. MCA Distributing Corp.*[47] and *Walker v. Hallmark Cards*[48] never challenged the differences in products for purposes of the meeting the competition defense. Indeed, the *Zoslaw* court rejected the meeting-

---

[44] *Coalition for a Level Playing Field, L.L.C. v. AutoZone, Inc.,* 737 F. Supp. 2d 194, 216 (S.D.N.Y. 2010) (dismissing RPA claim because the complaint "*ignores* the possibility that [] contract differences" between plaintiffs and other types of buyers "account for the lower prices paid by the retailer defendants[.]") (emphasis added); *Coastal Fuels of Puerto Rico, Inc. v. Caribbean Petroleum Corp.,* 990 F.2d 25, 27 (1st Cir. 1993) (rejecting dismissal of the RPA claims despite "the existence of significant defenses.").

[45] 15 U.S.C. § 13(a).

[46] *Checker Motors Corp. v. Chrysler Corp.,* 283 F. Supp. 876, 889 (S.D.N.Y. 1968), *aff'd,* 405 F.2d 319 (2d Cir.), *cert. denied,* 394 U.S. 999 (1969); *accord Reeder-Simco GMC, Inc. v. Volvo GM Heavy Truck Corp.,* 374 F.3d 701, 710 (8th Cir. 2004), *rev'd on other grounds,* 546 U.S. 164 (2006).

[47] 594 F. Supp. 1022, 1031–32 (N.D. Cal. 1984).

[48] 992 F. Supp. 1335, 1340–42 (M.D. Fla. 1997).

competition defense; to the extent it *entertained* the defendant's adoption of its competitors' "system of price discrimination among purchasers" as a defense, it is inconsistent with the Supreme Court's *Staley* decision, discussed in the following paragraph.[49] And the Court in *United States v. E. I. du Pont de Nemours & Co.* analyzed the product market under the Sherman Act, not for whether the products were commodities of like grade and quality under the RPA.[50] A market analysis under the Sherman Act and a commodities analysis under the RPA serve very different purposes. While a product-market analysis focuses on human behavior—*i.e.*, "how far buyers will go to substitute one commodity for another" regardless of the physical differences in the respective commodities (like cellophane and aluminum foil)[51]—the commodities analysis addresses "the characteristics of the product itself," not "consumer preferences, brand acceptability or what customers think of it and are willing to pay for it."[52] In this case, the commodities analysis depends on the physical characteristics of the book titles themselves, not on the functional interchangeability that is the focus of a market analysis.

  *Second*, Amazon cannot rely on the meeting-competition defense here because the Publisher Defendants' pricing was not "truly 'responsive to rivals' competitive prices,' … and therefore [] not genuinely made to meet competitors' lower prices."[53] For example, in *FTC v. A.E. Staley Mfg. Co.*, the Supreme Court rejected that defense when, much like the Publisher Defendants here, the

---

[49] 594 F. Supp. at 1031.

[50] 351 U.S. 377, 394–400 (1956). Plaintiff acknowledges that for first-line RPA claims (predatory pricing by a supplier) which Plaintiff does not assert, courts apply the same market analysis under the RPA and Section 2 of the Sherman Act to determine whether the defendant possessed monopoly power.

[51] *Id.* at 393 and Appendix C.

[52] *FTC v. Borden Co.*, 383 U.S. 637, 641 (1966).

[53] *Falls City Indus.*, 460 U.S. at 449–50 (emphasis in the original).

manufacturer's sole basis for adopting a discriminatory pricing system was that it adopted a pricing system strategy comparable to that of a major competitor.[54]  As Plaintiff plausibly alleges, the Publisher Defendants did not offer discriminatory pricing in a good faith effort to meet competition. They *jointly agreed* to a discriminatory pricing system that favored Amazon at the expense of other buyers, ██████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████. ECF 65, ¶¶ 8, 104.

Trying to avoid this conclusion, Amazon claims that its contracts with the Publisher Defendants merely reflect that "a publisher is offering a particular price to meet competition *that has already been* offered to Amazon." (ECF 78 at 19–20 (emphasis in original)). But that assertion is false. ████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████ *Id.*, ¶¶ 8–9. That arrangement confirms that the favorable pricing was not genuinely made to meet competition but, instead, to avoid it.

**B.**   **By arguing in a perfunctory manner in a footnote, Amazon waives any challenge to Plaintiff's market definition.**

Plaintiff plausibly supports its allegation that the online retail market for print trade books is the relevant market for its monopoly claim (and an alternative market for purposes of its Section 1

---

[54] 324 U.S. 746, 752 (1945).

claim) by distinguishing the characteristics of the online market versus the physical market, including the "service-oriented characteristics of online [print book] retailers, the preference of their customers for those services, and the distinct 'infrastructure' of the online retailers' business."[55] ECF 65, ¶¶ 59-72. Despite the plethora of recent decisions, recognizing the online marketplace as the relevant market for purposes of Sherman Act violations,[56] Amazon baldly challenges Plaintiff's assertion in a footnote with no analysis or any authorities that refute the relevance of an online retail print book marketplace. (ECF 78 at 15 n.5.) But as Amazon concedes "the Court need not resolve" the issue. *Id.* Issues "adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived,'" a rule with "particular force where" a party makes an argument only in a footnote," as was done here.[57]

## C.     Plaintiff has plausibly alleged violations of the Sherman Act.

As addressed more fully in response to the Publisher Defendants' motion to dismiss, Amazon's pricing scheme independently violates Sections 1 and 2 of the Sherman Act. Amazon controls the retail print trade book market, including a 90% share of the online retail market for print trade books and has secured the benefit of illegal discriminatory pricing in violation of the RPA. Using its market power, Amazon extracted a horizontal agreement from the Publisher Defendants to raise the wholesale pricing while simultaneously giving Amazon discounts unavailable to Amazon's competitors. ECF 65, ¶¶ 7–14, 16, 37–42, 105–123. In exchange for the Publisher

---

[55] *Thompson v. 1-800 Contacts, Inc.*, 2018 U.S. Dist. LEXIS 83806, at *27 (D. Utah May 17, 2018).

[56] *See, e.g.*, *id.* (online retail market for contact lenses); *Distance Learning Co. v. Maynard*, 2020 U.S. Dist. LEXIS 99256, at *19–20 (N.D. Cal. June 4, 2020) (online traffic schools); *Tichy v. Hyatt Hotels Corp.*, 376 F. Supp. 3d 821, 849 (N.D. Ill. 2019) (online retail market for hotel rooms).

[57] *Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 107 (2d Cir. 2012); *Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*, 2020 U.S. Dist. LEXIS 9088, at *5 (S.D.N.Y. Jan. 17, 2020) (Courts "routinely decline to consider arguments mentioned only in a footnote[.]") (quotation omitted).

Defendants' discriminatory discount, Amazon enabled the Publisher Defendants to raise wholesale prices for print trade book and, critically provided the necessary assurances that it struck the same deal with each of them. *Id.* Amazon acquired or maintained about 90% of the online retail print book market by entering into anticompetitive agreements with each of the Publisher Defendants on terms that raised the wholesale and retail price of print trade books market-wide and prevented other retailers from competing with Amazon on price. *Id.*, ¶¶ 15–18, 46, 124–130.  Amazon seeks dismissal of Plaintiff's claims under the Sherman Act on several grounds. As addressed more fully in response to the Publisher Defendants' motion to dismiss, none of those grounds has merit.

*First*, Amazon argues that Plaintiff's claims under the Sherman Act are dependent on its claims under the RPA. (ECF 78 at 21–22.) That argument is wrong. To state claims under Sections 1 and 2 of the Sherman Act, Plaintiff must plausibly plead only that Amazon violated those sections, not that it violated the RPA. Plaintiff has done so—by alleging that Amazon has monopoly power in the retail market for trade books and used that market power to extract agreements from the Publisher Defendants that have unlawful anticompetitive effects. ECF 65, ¶¶ 15–18, 46, 124–130.

*Second*, Amazon argues that Plaintiff cannot state a claim based on its "core contention that Amazon should be charged higher wholesale prices for print books." (ECF 78 at 23.) Amazon's argument might have had merit if Plaintiff had asserted a predatory-pricing claim, but it has no bearing on Plaintiff's price-fixing allegations. So while Amazon cites decisions addressing the need "[t]o avoid chilling aggressive price competition" and describing how "[l]ow prices benefit consumers" (ECF 78 at 22), what Amazon and the Publisher Defendants actually did was the opposite of competitive pricing. Their anticompetitive conduct *raised prices* to both book retailers and consumers while simultaneously protecting Amazon's market dominance and its pricing advantage over other book retailers.

Such conduct—raising rivals' costs "as a tool for suppressing competition"—is readily actionable under antitrust law.[58] Indeed, Plaintiff's claim closely tracks *United States v. Apple, Inc.*, where the Second Circuit affirmed judgment against Apple in a price-fixing conspiracy with the same Publisher Defendants. Like the conspirators in this case, Apple was relieved of the need to compete with other retailers on consumer prices, and the Publisher Defendants had the collective action they needed to "effect an industry-wide shift in [book] prices."[59] ECF 65, ¶¶ 7–14, 16, 37–42, 105–23. Like this case, the Publisher Defendants each carried out their conspiracy with Apple by knowingly entering into the same anticompetitive agreement with Apple despite a contractual restriction that was "only attractive to the Publisher Defendants to the extent they acted collectively" and "would be against their own interests were they acting independently[.]"[60] *Id.*, ¶¶ 11–12. And like this case, shortly after collectively entering contracts that eliminated retailer discounting, the Publisher Defendants increased their book prices.[61] *Id.*, ¶¶ 10–14.

*Third*, Amazon argues that Plaintiff has not adequately alleged a conspiracy because, if some of the Publisher Defendants raised wholesale prices, other Publisher Defendants would have an incentive to cut prices and increase their sales. (ECF 78 at 25.) But contrary to Amazon's hypothetical argument about incentives, every Publisher Defendant did raise its wholesale prices, including to Amazon itself. ECF 65, ¶¶ 10–14. The scheme was a win-win for Amazon and the Publisher Defendants: even with the substantial favorable discounts provided to Amazon, jointly

---

[58] *See Premier Electrical Constr. Co. v. Nat'l Electrical Contractors Ass'n*, 814 F.2d 358, 372 (7th Cir. 1987).

[59] 791 F.3d at 305.

[60] *Id.* at 320; *see also id.* at 305 ("The MFN played a pivotal role in this *quid pro quo* by stiffening the spines of the publishers to ensure that they would demand" an end to retailer discounting (*i.e.*, an agency model) by other retailers, thereby "protecting Apple from retail price competition.") (quotation, brackets omitted).

[61] *Id.* at 327–28.

raising wholesale prices across the board benefitted the Publisher Defendants. And the discount to Amazon ensured that it retained a discriminatory pricing advantage over all competing book retailers. *Id.*, ¶¶ 7–14, 16, 37–42, 105–23.

Moreover, as alleged in Plaintiff's Amended Complaint, Amazon did not merely enter into a series of independent bilateral agreements. Under those agreements, ███████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████ *Id.*, ¶ 8. By facilitating the horizontal agreement with the Publisher Defendants to raise their wholesale prices, Amazon enjoyed the anticompetitive effects that it achieved with its monopoly power.

## V.    CONCLUSION

For the foregoing reasons, the Court should deny Amazon's motion to dismiss. Plaintiff provides sufficient factual content that allows the Court to draw the reasonable inference that the Defendant is liable for the misconduct alleged. Alternatively, if the Court requires allegations that are more detailed, Plaintiffs ask for leave to amend.

DATED:  October 22, 2021          Respectfully submitted,

                                 HAGENS BERMAN SOBOL SHAPIRO LLP

                                 By: */s/ Steve W. Berman*
                                     Steve W. Berman (*pro hac vice*)
                                 Barbara A. Mahoney (*pro hac vice*)
                                 1301 Second Avenue, Suite 2000
                                 Seattle, WA 98101
                                 Telephone: 206-623-7292
                                 Facsimile:  206-623-0594
                                 steve@hbsslaw.com
                                 barbaram@hbsslaw.com

Eamon P. Kelly (*pro hac vice*)
Joseph M. Vanek (*pro hac vice*)
Paul E. Slater (*pro hac vice*)
Alberto Rodriguez (*pro hac vice*)
Jeffery Bergman (*pro hac vice*)
SPERLING & SLATER, P.C.
55 W. Monroe Street, Suite 3200
Chicago, IL 60603
ekelly@sperling-law.com
jvanek@sperling-law.com
pes@sperling-law.com
arodriguez@sperling-law.com
jbergman@sperling-law.com

*Attorneys for Plaintiff and the Proposed Classes*

**CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the above document was served on ALL DEFENSE COUNSEL OF RECORD through the Court's electronic filing service on October 22, 2021, which will send notification of such filing to the e-mail addresses registered.

*/s/ Steve W. Berman*
Steve W. Berman
