UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BOOKENDS & BEGINNINGS, LLC, on behalf of itself and all others similarly situated,<br>   Plaintiff,<br> v.<br>AMAZON.COM, INC.; HACHETTE BOOK GROUP, INC; HARPERCOLLINS PUBLISHERS L.L.C.; MACMILLAN PUBLISHING GROUP, LLC; PENGUIN RANDOM HOUSE LLC; SIMON & SCHUSTER, INC.,<br>   Defendants. | Case Number 1:21-cv-02584-GHW-DCF<br><br>ORAL ARGUMENT REQUESTED |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF AMAZON'S
MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

**TABLE OF CONTENTS**

INTRODUCTION ...........................................................................................................................1

I.   PLAINTIFF FAILS TO ALLEGE AMAZON VIOLATED THE RPA. ...............................1

    A.   The Amended Complaint's Conclusory Allegations Cannot Be Credited. ...............1

    B.   Allegations that Amazon Negotiated Lower-Than-List Prices Are Insufficient to Establish Knowledge of Illegality. .........................................................2

II.  PLAINTIFF CONTRADICTS ITS OWN AMENDED COMPLAINT TO DENY THE EXISTENCE OF VIABLE RPA DEFENSES. ................................................................5

    A.   Amazon's Business Model Delivers Greater Value to Publishers and Consumers Than Plaintiff's Business Model. ..................................................................6

    B.   Amazon May Validly Rely on Publisher Defendants' Defense that They Lowered Their Prices to Meet Competition from Other Publishers. .........................7

III. PLAINTIFF'S SHERMAN ACT CLAIMS FAIL AS A MATTER OF LAW. .....................9

# **TABLE OF AUTHORITIES**

## **CASES**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)................................................................................................................1

*Automatic Canteen Co. of Am. v. F.T.C.*,
  346 U.S. 61 (1953).......................................................................................................... *passim*

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)................................................................................................................1

*Bendfeldt v. Window World, Inc.*,
  No. 5:17-cv-39, 2017 WL 4274191 (W.D.N.C. Sept. 26, 2017)..............................................2

*Boise Cascade Corp. v. F.T.C.*,
  837 F.2d 1127 (D.C. Cir. 1988)...............................................................................................3

*Cash & Henderson Drugs, Inc. v. Johnson & Johnson*,
  799 F.3d 202 (2d Cir. 2015).....................................................................................................5

*Coalition For A Level Playing Field, L.L.C. v. AutoZone, Inc.*,
  737 F. Supp. 2d 194 (S.D.N.Y. 2010)..................................................................................2, 6

*Delta Airlines, Inc. v. Bombardier, Inc.*,
  No. 1:20-cv-3025-GHW, 2021 WL 1163702 (S.D.N.Y. Mar. 25, 2021).................................9

*F.T.C. v. Borden Co.*,
  383 U.S. 637 (1966)................................................................................................................8

*Gerber Prods. Co. v. Beech-Nut Life Savers, Inc.*,
  160 F. Supp. 916 (S.D.N.Y. 1958) .........................................................................................8

*Gorlick Distr. Ctrs., LLC v. Car Sound Exhaust Sys., Inc.*,
  723 F.3d 1019 (9th Cir. 2013) ............................................................................................3, 5

*Great Atl. & Pac. Tea Co., Inc. v. FTC*,
  440 U.S. 69 (1979)..........................................................................................................2, 5, 9

*Kaplan v. County of Orange*,
  528 F. Supp. 3d 141 (S.D.N.Y. 2021).....................................................................................5

*Marjam Supply Co. v. Firestone Bldg. Prods. Co.*,
  No. 11-cv-7119, 2014 WL 5798383 (D.N.J. Nov. 7, 2014) ...............................................3, 4

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986) .................................................................................................................10

*Monsieur Touton Selection, Ltd. v. Future Brands, LLC*,
    No. 06-cv-1124, 2006 WL 2192790 (S.D.N.Y. Aug. 1, 2006) ..................................................2

*New Albany Tractor, Inc. v. Louisville Tractor, Inc.*
    650 F.3d 1046 (6th Cir. 2011) ...................................................................................................2

*Volvo Trucks N. Am., Inc. v. Reeder–Simco GMC, Inc.*,
    546 U.S. 164 (2006) ...................................................................................................................7

## **STATUTES**

15 U.S.C. § 13 ..................................................................................................................................7, 8

Fed. R. Civ. P. 12(b) ............................................................................................................................7

**INTRODUCTION**

Bookends' Opposition to Amazon's Motion to Dismiss ("Opp.") fails to address the main grounds warranting dismissal of the Amended Complaint against Amazon. Simply put, Bookends failed to allege facts to plausibly show that Amazon knowingly received an illegally discriminatory price or otherwise violated antitrust laws. Bargaining between purchasers and sellers is fundamentally procompetitive because it can produce lower prices for consumers. Nothing in the Sherman Act penalizes the negotiation of lower prices, and binding precedents make clear that misconstruing the Robinson-Patman Act ("RPA") to outlaw competitive bargaining, as Plaintiff seeks to do, would greatly harm competition and consumers alike. For these and other reasons discussed more fully herein, Amazon's Motion to Dismiss should be granted.

**I.    PLAINTIFF FAILS TO ALLEGE AMAZON VIOLATED THE RPA.**

   **A.    The Amended Complaint's Conclusory Allegations Cannot Be Credited.**

Bookends erroneously contends that Amazon is seeking to hold it to a "heightened pleading standard" at the same time that it admits Rule 8 requires factual allegations sufficient to make its claims plausible. Opp. 10. The Amended Complaint fails the *Twombly/Iqbal* pleading standard precisely because it employs conclusory labels in place of well-pleaded facts. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (Rule 8 "requires more than labels and conclusions"); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (same). Throughout its Opposition, Bookends employs unsubstantiated rhetoric to characterize the magnitude of discounts the Publisher Defendants allegedly gave Amazon as "huge" or "steep." Opp. 5, 9-10. What is absent from the Amended Complaint is any allegation as to the discounts Amazon actually received.

Plaintiff asserts that Amazon "cites no authority for the notion that Plaintiff must plead 'direct knowledge' of Amazon's wholesale prices." Opp. 11. To the contrary, the cases Amazon

1

cited in its motion firmly address that requirement.  *See* Mot. at 6, 9-10;[1] *see also Monsieur Touton Selection, Ltd. v. Future Brands, LLC*, No. 06-cv-1124, 2006 WL 2192790, *5 (S.D.N.Y. Aug. 1, 2006) (dismissing Complaint that was "utterly devoid of any allegation of a *specific transaction* . . . consummated by defendants with Touton or with any allegedly favored competitor").  Indeed, courts "*routinely* dismiss[] Robinson-Patman Act claims for failing to allege these very elements." *Bendfeldt v. Window World, Inc.*, No. 5:17-cv-39, 2017 WL 4274191, *3 (W.D.N.C. Sept. 26, 2017) (collecting cases and dismissing RPA claim for failure to allege "the amount or duration of any supposed discrimination").[2]  The same reasons warrant dismissal of the Amended Complaint.

> **B.    Allegations that Amazon Negotiated Lower-Than-List Prices Are Insufficient to Establish Knowledge of Illegality.**

In addition to its failure to allege price discrimination, nothing in the Amended Complaint remotely establishes that Amazon had knowledge of illegality, as is required to state a claim under section 2(f) of the RPA.  *See Great Atl. & Pac. Tea Co., Inc. v. FTC*, 440 U.S. 69, 77 (1979).

Bookends' principal argument is that Amazon knows that its discounts are greater than the Publisher Defendants' "standard discounts" and should have deduced from that alleged fact that its discounts were *illegal*.  Opp. 15.  That argument fails as a matter of law.  In *Automatic Canteen*, the Supreme Court squarely rejected the proposition that a buyer could be shown to have

---

[1]    Plaintiff's attempt to distinguish these cases is unavailing.  The suggestion that *New Albany Tractor, Inc. v. Louisville Tractor, Inc.* merely concerns the indirect purchaser doctrine, Opp. 11, ignores that the Court of Appeals held that plaintiff had independently failed to allege "price discrimination" because, just like Plaintiff here, it lacked relevant knowledge.  650 F.3d 1046, 1051-52 (6th Cir. 2011).  Similarly, the argument that the plaintiff in the *Coalition* series of cases had "*conceded* its 'inability to . . . plead the extent of price discrimination,'" Opp. 11 (emphasis in original), is a distinction without a difference.  *See, e.g.*, *Coalition For A Level Playing Field, L.L.C. v. AutoZone, Inc.*, 737 F. Supp. 2d 194 (S.D.N.Y. 2010) ("*Coalition II*").  The Amended Complaint contains no well-pleaded allegations about the extent of any price discrimination, and Plaintiff openly contests the obligation to know or allege that information.  Opp. 10-11 (denying an obligation to plead "direct knowledge of Amazon's wholesale prices").  Plaintiff's repeated assertion that it has alleged "specific provisions" from Amazon's contracts, Opp. 11-12, greatly overstates the allegations of the Amended Complaint, which rely on inference and guesswork to substitute for well-pleaded facts.  *See* Am. Compl. ¶ 4 n.7 ▆▆▆▆▆▆▆▆ *id.* ¶ 9 n.21 ▆▆▆▆▆

[2]    All emphases are added unless otherwise indicated.

2

knowledge of illegality "if, through the seller or otherwise, he learned that the price he sought or received was lower than that accorded competitors[.]" *Automatic Canteen Co. of Am. v. F.T.C.*, 346 U.S. 61, 73 (1953). "Such a reading must be rejected in view of the effect it might have on that sturdy bargaining between buyer and seller for which scope was presumably left in the areas of our economy not otherwise regulated." *Id.* at 73-74. As the dissent cogently summarized the rule: "[E]ven though a 'buyer knew that the price was lower', such knowledge is *insufficient . . . .*" *Id.* at 83 (Douglas, J., dissenting). As a result, the law is well-established that "[t]he receipt of better-than-published prices, without more, *does not satisfy* section 2(f)'s knowledge requirement." *Gorlick Distr. Ctrs., LLC v. Car Sound Exhaust Sys., Inc.*, 723 F.3d 1019, 1022 (9th Cir. 2013).

Plaintiff does not meaningfully address these holdings. It argues in a footnote that the "fact-finder may infer from the fact the defendant paid less than the published list price that the defendant knew it was receiving a discriminatory price." Opp. 15 n.32. But the only citation it provides in support of that incorrect statement of law is an administrative law decision that was *vacated* by the Court of Appeals. *See Boise Cascade Corp. v. F.T.C.*, 837 F.2d 1127, 1147-48 (D.C. Cir. 1988) (vacating 107 F.T.C. 76 (1986) because the FTC embraced principles that have been "condemned by the Supreme Court as antithetical to our law"). Just as buyers are not required to accept list prices, they cannot be charged with knowledge of illegality based on the knowledge that they successfully negotiated a reduction from those prices. *Gorlick Distr. Ctrs.*, 723 F.3d at 1022. "Otherwise, we would contradict the policy that a buyer should be free to bargain without undue concern that its bargaining efforts will give rise to an inference of knowingly inducing price discrimination." *Marjam Supply Co. v. Firestone Bldg. Prods. Co.*, No. 11-cv-7119, 2014 WL 5798383, *6 (D.N.J. Nov. 7, 2014) (citing *Automatic Canteen*, 346 U.S. at 72).

3

In any event, the Amended Complaint contains no facts evidencing Amazon's knowledge of how its own wholesale prices compare to those paid by its competitors (including other large and sophisticated retailers, such as Barnes & Noble and Walmart), other than the legally inadequate allegation about a "standard discount" discussed above. Plaintiff argues that it need not allege that "*it* negotiated for (but failed to obtain)" the same wholesale prices as Amazon. Opp. 12. But the law requires Plaintiff to allege facts plausibly showing that Amazon knew it received prices that were unavailable to others, *see* Mot. at 6-7, and Plaintiff's mere allegation that a single retailer passively accepted "standard" pricing does not meet that test.

Plaintiff further argues that knowledge of illegality may be based upon Amazon's "unique position in the industry," by which it evidently means Amazon's size and sophistication. Opp. 15. But to state a claim, there must be "some element in addition to the size and sophistication of the defendant buyers" that shows knowledge of illegality. *Marjam Supply*, 2014 WL 5798383, at *6. "The mere existence of a buyer defendant's sophistication and successful negotiation of better prices do not lead to the inference that the [buyer] did anything other than bargain for the best legally justifiable price." *Id.*[3]

The Court should disregard Plaintiff's unsupported statement that Amazon's role as an online retailer "enables Amazon to gather extensive market information, *including the pricing received by the book retailers that sell on its web platform.*" Opp. 16 (citing Am. Compl. ¶ 15). Neither the paragraph Plaintiff cited, nor any other paragraph in the Amended Complaint, contains

---

[3] Plaintiff takes out of context the Supreme Court's statement in *Automatic Canteen* that "trade experience in a particular situation can afford a sufficient degree of knowledge" of illegality. Opp. 15 (quoting 346 U.S. at 79-80). As the Court explained in its very next sentence, that simply meant that "a buyer who knows that he buys in the same quantities as his competitor and is served by the seller in the same manner or with the same amount of exertion as the other buyer can fairly be charged with notice that *a substantial price differential* cannot be justified." *Id.* at 80. That holding is no help to Plaintiff because the Amended Complaint alleges that Amazon and Plaintiff do *not* purchase books in the same quantities or manner, *see* Am. Compl. ¶¶ 70-72, and because there are no alleged facts from which the finder of fact could conclude that any price differential was either "substantial" or known to Amazon.

4

facts evidencing Amazon's knowledge of other booksellers' wholesale acquisition costs.[4] To the extent Plaintiff is arguing that those costs can be inferred from the retail prices charged by other retailers selling in Amazon's store, Opp. 16, the Amended Complaint only demonstrates the futility of that exercise. After all, Plaintiff alleges that it charges its customers the *full list price* for books that it purchases at 46% below those prices. *Compare* Am. Compl. ¶¶ 55, 94. Moreover, the retail prices of goods sold on Amazon are *public* and available to all, as are the prices at Barnes & Noble, Walmart, and even Plaintiff's own website. If it was possible to infer *wholesale* prices from retail prices, then Plaintiff can have no excuse for failing to infer Amazon's wholesale price and allege that discount amount in its Amended Complaint.

## II. PLAINTIFF CONTRADICTS ITS OWN AMENDED COMPLAINT TO DENY THE EXISTENCE OF VIABLE RPA DEFENSES.

As Amazon explained in its motion and Bookends does not meaningfully contest, a purchaser cannot be liable under section 2(f) of the RPA unless it knows that *all* prospective defenses by the seller are invalid.[5] *See* Mot. at 14; *Automatic Canteen*, 346 U.S. at 74 (liability exists only if prices are known by the buyer "*not to be within* one of [the seller's] defenses"); *Gorlick Distr. Ctrs.*, 723 F.3d at 1022 (same). Under Plaintiff's own version of the facts, Amazon had ample reason to believe that the prices it negotiated were legally justified and the Publisher Defendants' defenses were valid. Nothing more is required to dismiss the Amended Complaint.

---

[4] A second such assertion – that Plaintiff has "alleged facts demonstrating Amazon's knowledge of its competitors' acquisition costs," Opp. 16 – is bereft of any citation at all and the Amended Complaint lacks any such factual allegations.

[5] In fact, the Opposition does not even mention *Great Atlantic & Pacific Tea Company*, and its few citations to *Automatic Canteen* are intended to address unrelated points. Opp. 15-16 nn.33 & 35. While Plaintiff attempts to distinguish *Gorlick* and *Cash & Henderson Drugs, Inc. v. Johnson & Johnson,* 799 F.3d 202 (2d Cir. 2015), because they arose at summary judgment, Opp. 14, 16, the statutory requirements discussed in those decisions "appl[y] regardless of the particular stage in a litigation," *Kaplan v. County of Orange*, 528 F. Supp. 3d 141, n.4 (S.D.N.Y. 2021). Plaintiff cannot satisfy its pleading burden by alleging facts that would be inadequate on summary judgment if proven true.

### A. Amazon's Business Model Delivers Greater Value to Publishers and Consumers Than Plaintiff's Business Model.

Plaintiff concedes that price differences may lawfully result from differences in the value conferred on the seller by different customers. Opp. 9, 17. However, it argues that this defense is unavailable ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* at 18. Plaintiff's argument fundamentally ignores its own allegations about the value publishers derive from Amazon relative to other, less efficient retailers.

In the paragraphs of the Amended Complaint Amazon cited, Mot. at 15, Plaintiff directly alleges that consumers find shopping for books at retailers like Amazon "*uniquely attractive*," in part as a result of "electronic ordering efficiency," a more "extensive inventory," and "greater convenience to consumers." Am. Compl. ¶ 69. Plaintiff further alleges that such retailers often have more attractive prices, *id.*, which Plaintiff alleges are *in part* the result of "unique cost savings" that are passed on to customers, *id.* ¶ 72. Contrary to Plaintiff's argument, Opp. 18, there are no factual allegations supporting Plaintiff's conclusion that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ The law is clear that the Publisher Defendants may charge Amazon lower prices in recognition of its ability to efficiently sell their books in ways that customers find "uniquely attractive." *See Coalition II*, 737 F. Supp. 2d at 216 (dismissing RPA claim because the complaint failed to refute the inference that differences in prices were the result of the buyer offering "a mix of services that is more valuable than that offered" by other purchasers); *see also* Mot. at 16 (citing additional cases).

It simply is not plausible for Plaintiff to allege that Amazon or any other retailer *presumptively* knows that any price concessions it negotiated for itself are the result of unearned favoritism, rather than merit. Like any buyer, Amazon is permitted to engage in "sturdy bargaining" with the Publisher Defendants to obtain prices that are reflective of the value it creates

6

for their books. *Automatic Canteen*, 346 U.S. at 73-74. Antitrust law openly *encourages* that behavior because it is procompetitive and beneficial to consumers. *See Volvo Trucks N. Am., Inc. v. Reeder–Simco GMC, Inc.*, 546 U.S. 164, 180-81 (2006) (stating that the Supreme Court "would resist interpretation [of the RPA] geared more to the protection of existing *competitors* than to the stimulation of *competition*") (emphasis in original). Nothing in the Amended Complaint remotely establishes Amazon's knowledge that the Publisher Defendants agreed to price concessions that could not be justified on the basis of merit.[6]

### B. Amazon May Validly Rely on Publisher Defendants' Defense that They Lowered Their Prices to Meet Competition from Other Publishers.

Plaintiff argues that the meeting competition defense is unavailable to the Publisher Defendants as a matter of law, and that Amazon therefore cannot rely upon the availability of that defense to negate its own knowledge of illegality. Opp. 19-20. According to Plaintiff, because each book has its own unique characteristics, *id.*, publishers are somehow incapable of meeting the safe harbor that exists for lowering their prices "in good faith to meet an equally low price of a competitor," 15 U.S.C. § 13(b). Plaintiff's argument is frivolous.

As Amazon previously explained, *see* Mot. at 19 n.7, Plaintiff is conflating two separate concepts from the RPA. When Plaintiff argues that the RPA only applies to products of "like grade and quality," Opp. 19, it cites to decisions that discuss whether differences in prices constitute price discrimination at all under section 2(a) of the RPA. But that is only because the very concept of price discrimination is defined to mean differences in prices charged "between different purchasers of commodities of like grade and quality." *See* 15 U.S.C. § 13(a). However,

---

[6] Plaintiff's argument that Amazon has "waive[d] any challenge to Plaintiff's market definition," Opp. 21-22, is meritless. The purpose of footnote 5 in Amazon's opening brief was merely to inform the Court that while Amazon was assuming certain allegations to be true for purposes of the motion to dismiss, it was not directly or indirectly endorsing Plaintiff's erroneous legal conclusion based upon those allegations. That does not effect a "waiver" of that issue anymore than if Amazon had not mentioned the subject at all. Criticisms of a plaintiff's antitrust market definition are not among the issues that are waived if not raised in a motion to dismiss. *See* Fed. R. Civ. P. 12(b).

the exception for lowering prices to meet competition has no equivalent language—that part of the statute merely states that "nothing herein contained shall prevent a seller" from lowering its prices "to meet an equally low price *of a competitor*, or the services or facilities furnished *by a competitor*." 15 U.S.C. § 13(b). Plaintiff's insistence that competitors can only be sellers of identical products ignores market reality and has no basis in the statute. Certainly, none of the cases it cites recognize any such limitation.[7]

Sellers in any number of industries, including book publishing, face competition from imperfect substitutes. The whole point of section 2(b)'s safe harbor is that it does not violate the law for companies to lower their prices in response to any competition that would otherwise result in lost sales.[8] Amazon has already cited several cases in which the defense was considered fully available in those circumstances, *see* Mot. at 18-19, but there are many others. *See, e.g.*, *Gerber Prods. Co. v. Beech-Nut Life Savers, Inc.*, 160 F. Supp. 916, 922 (S.D.N.Y. 1958) (meeting competition defense available to seller of baby food whose advertising emphasized the benefits of using glass bottles, in contrast to competitors' tin cans).

Finally, the Court should not credit Plaintiff's baseless assertion that  Opp. 21 (emphasis in original). Plaintiff relies upon its own misreading of a single phrase *Id.* But its insistence that the phrase implies automatic agreement to future offers, ignores that these

---

[7]  For example, in *F.T.C. v. Borden Co.*, 383 U.S. 637 (1966), Opp. 20 n.52, the Supreme Court focused its analysis on whether the Commission had demonstrated the existence of price discrimination under section 2(a), and specifically reserved analysis of whether the meeting competition defense of section 2(b) could also apply on the facts before the Court. *Id.* at 647 ("The issue we have here relates to [section] 2a, not to [section] 2b"). Plaintiff's other cited decisions, Opp. 19-20 nn. 46-52, similarly do not recognize the limitation argued by Plaintiff.

[8]  For example, fans of spy novels might decide between various titles by John le Carré, published by Simon & Schuster, or Kate Quinn, published by HarperCollins. That their works are not identical does not mean that readers interested in the spy novel genre would be indifferent to how the best-selling authors' works are priced. Spy novel publishers that lower their prices to gain readers are engaged in competition permitted by the RPA.

agreements are multi-year contracts covering overlapping time periods. There is absolutely nothing nefarious about a purchaser providing assurances to a seller that its competitors have already offered the same or better prices that will be in place during an overlapping timeframe. Indeed, that exact procedure was endorsed by the Supreme Court in *Great Atlantic and Pacific Tea Co.*, 440 U.S. at 83-84.

Moreover, the other agreements quoted in the Amended Complaint plainly contradict Plaintiff's interpretation, and show that its depiction of a series of obligations to match future price changes, Opp. 21, is a gross overreach. For one thing, those contracts unambiguously state that ▌.[9] For another, the agreements do not state that any publisher is required to match anyone else's lowest offered price. Instead, a typical formulation states that Amazon ▌[10] Such provisions impose no requirements that could create the "domino effect" that Plaintiff hypothesizes. *Id.* The Court need not accept rhetoric that is inconsistent with the underlying documents. *See Delta Airlines, Inc. v. Bombardier, Inc.*, No. 1:20-cv-3025-GHW, 2021 WL 1163702, *10 (S.D.N.Y. Mar. 25, 2021).

### III. PLAINTIFF'S SHERMAN ACT CLAIMS FAIL AS A MATTER OF LAW.

Plaintiff has not "plausibly alleged violations of the Sherman Act." Opp. 22-25. Plaintiff asserts that Amazon's distribution agreements reflect a "horizontal agreement" among the Publisher Defendants "to raise [their] wholesale pricing" to other retailers. *Id.* 22. But none of

---



[9] *See, e.g.,* Am. Compl. ¶ 8 n.19 ▌ *id.* ▌

[10] *Id.* ▌ *id.* ▌

9

the provisions alleged in the Amended Complaint compels any publisher to do anything at all to the prices it charges other retailers, and none impose requirements that are based upon horizontal actions of other retailers.  *See* Am. Compl. ¶¶ 8-9 nn.19-22.

Plaintiff's conspiracy argument also implausibly assumes that the Publisher Defendants are deliberately harming their own interests in multiple ways.  Plaintiff says that the object of the conspiracy was "to raise wholesale prices for print trade book[s]" sold by retailers other than Amazon, giving Amazon monopoly power.  Opp. 22-23.  But if true, that would mean that the Publisher Defendants conspired to lower their prices on the allegedly large share of print books Amazon sold, just so that they could raise prices to uncompetitive levels on the allegedly smaller share Plaintiff and the putative class sold.  That makes no sense.  The result of such an illogical conspiracy would be that the conspirators would sell more books at the lower prices, fewer at the higher price, and make themselves beholden to an alleged downstream monopolist.

Without its illogical conspiracy allegation, Plaintiff's argument reduces to an unsupported assertion that Amazon is violating the Sherman Act by negotiating the best wholesale prices it can, so that it can offer consumers the best possible re-sale prices for print books.  That outcome is exactly what fair competition and the antitrust laws intend, and Plaintiff cites no case to support the proposition that a company violates section 2 of the Sherman Act by offering its customers better prices than others.  Indeed, Plaintiff fails to respond at all to the myriad cases Amazon cited, Mot. 22, for the proposition that "cutting prices in order to increase business often is the very essence of competition."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 594 (1986).  Plaintiff's acknowledgement that it fails to discount retail pricing even when it receives a 46% discount at wholesale, *see* Opp. 3; Am. Compl. ¶¶ 55, 94, betrays that it is complaining about the *existence* of competition, not its absence.

Dated:  November 22, 2021

                                        Respectfully Submitted,

                                        /s/ John E. Schmidtlein
                                        John E. Schmidtlein (*Pro Hac Vice*)
                                        Jonathan B. Pitt (S.D.N.Y. Bar No. jp0621)
                                        Carl R. Metz (*Pro Hac Vice*)
                                        WILLIAMS & CONNOLLY LLP
                                        725 Twelfth Street, N.W.
                                        Washington, DC 20005
                                        Tel.: (202) 434-5000
                                        Fax: (202) 434-5029
                                        JSchmidtlein@wc.com

**CERTIFICATE OF SERVICE**

      I hereby certify that a copy of the foregoing Reply Memorandum of Law in support of Amazon's Motion to Dismiss Plaintiff's Amended Complaint has been filed and served upon counsel of record via ECF electronic notification.

Dated:  November 22, 2021

                                                Respectfully Submitted,

                                                /s/ John E. Schmidtlein
                                                John E. Schmidtlein (*Pro Hac Vice*)