**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

BOOKENDS & BEGINNINGS LLC,

                                        Plaintiff,

            v.

AMAZON.COM, INC., HACHETTE BOOK
GROUP, INC; HARPERCOLLINS
PUBLISHERS L.L.C.; MACMILLAN
PUBLISHING GROUP, LLC; PENGUIN
RANDOM HOUSE LLC; SIMON &
SCHUSTER, INC.,

                                        Defendants.

Case No. 1:21-cv-02584-GHW-DCF


**PUBLISHER DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S**
**OBJECTION TO THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ........................................................................................1

STANDARD OF REVIEW .............................................................................................2

ARGUMENT ...................................................................................................................3

I. THE MAGISTRATE JUDGE CORRECTLY RECOMMENDED DISMISSAL FOR
PLAINTIFF'S FAILURE TO PLEAD A SHERMAN ACT VIOLATION ............................3

    A. Plaintiff Does Not Plausibly Plead a Conspiracy ..........................................3

        1. The R&R Correctly Concluded That the CAC Did Not Plead Direct
Evidence of a Conspiracy ...........................................................................3

        2. The R&R Correctly Concluded That the CAC Did Not Plead
Circumstantial Evidence of a Conspiracy ..................................................5

    B. Plaintiff Does Not Plausibly Plead a Conspiracy to Monopolize ..................10

    C. Plaintiff Does Not Plausibly Plead Antitrust Injury .......................................11

    D. Plaintiff Does Not Plausibly Plead a Violation Under the Rule of Reason ....14

II. THE MAGISTRATE JUDGE CORRECTLY RECOMMENDED DISMISSAL FOR
PLAINTIFF'S FAILURE TO PLEAD A ROBINSON-PATMAN ACT VIOLATION ........16

    A. Plaintiff Does Not Plausibly Plead Competitive Injury..................................16

        1. The R&R Correctly Concluded that Plaintiff Failed to Adequately Plead
Lost Sales....................................................................................................17

        2. The R&R Correctly Concluded that Plaintiff Failed to Plead Facts
Giving Rise to the Morton Salt Presumption..............................................18

    B. Plaintiff Fails to Plausibly Plead That Any Alleged Price Differences Did Not
Result From Materially Different Contracts or Legitimate Functional Discounts .........20

        1. The R&R Correctly Concluded that Plaintiff Failed to Meet Its Burden
to Plead No Materially Different Contract Terms ......................................20

        2. The R&R Correctly Concluded that Plaintiff Failed to Meet Its Burden
to Plead No Functional Discounts..............................................................22

    C. Plaintiff's Claims Are Barred by the Meeting Competition Defense .............23

CONCLUSION...............................................................................................................24

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Adderall XR Antitrust Litig.*,
 754 F.3d 128 (2d Cir. 2014)..................................................19

*In re Androgel Antitrust Litig.*,
 No. 09-2084, 2018 U.S. Dist. LEXIS 99716 (N.D. Ga. June 14, 2018) ..................................4

*Applied Med. Res. Corp. v. Johnson & Johnson*
 No. 03-1329, 2004 U.S. Dist. LEXIS 29409 (C.D. Cal. Feb. 23, 2004) ................................16

*Arista Records LLC v. Lime Group LLC*,
 532 F. Supp. 2d 556 (S.D.N.Y. 2007)..................................................13, 14

*Atl. Richfield Co. v. USA Petroleum Co.*,
 495 U.S. 328 (1990)..................................................14

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007)..................................................18, 19

*Bookhouse of Stuyvesant Plaza, Inc. v. Amazon.com, Inc.*,
 985 F. Supp. 2d 612 (S.D.N.Y. 2013)..................................................10, 15

*Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*,
 509 U.S. 209 (1993)..................................................17

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*,
 429 U.S. 477 (1977)..................................................12, 18

*Cash & Henderson Drugs, Inc. v. Johnson & Johnson*,
 799 F.3d 202 (2d Cir. 2015)..................................................17

*Cleveland v. Viacom, Inc.*,
 73 F. App'x 736 (5th Cir. 2003) ..................................................22

*Coal. For A Level Playing Field, L.L.C. v. AutoZone, Inc.*,
 737 F. Supp. 2d 194 (S.D.N.Y. 2010)..................................................20, 21, 22, 23

*Dayton Superior Corp. v. Marjam Supply Co.*,
 No. 07-5215, 2011 WL 710450 (E.D.N.Y. Feb. 22, 2011) ..................................................18

*In re DDAVP Direct Purchaser Antitrust Litig.*,
 585 F.3d 677 (2d Cir. 2009)..................................................12

i

*In re Elec. Books Antitrust Litig.*,
    859 F. Supp. 2d 671 (S.D.N.Y. 2012)...................................................................23

*Fortner Enters. v. U.S. Steel Corp.*,
    394 U.S. 495 (1969)...................................................................................16

*Genico, Inc. v. Ethicon, Inc.*,
    No. 04-229, 2006 U.S. Dist. LEXIS 96909 (E.D. Tex. Mar. 23, 2006) ................................16

*George Haug Co. v. Rolls Royce Motor Cars, Inc.*,
    148 F.3d 136 (2d Cir. 1998).............................................................................19

*In re Hapag-Lloyd Aktiengesellschaft*,
    No. 19-5731, 2022 WL 1204809 (S.D.N.Y. Apr. 22, 2022) ...........................................2

*F. Hoffmann-La Roche Ltd. v. Empagran S.A.*,
    542 U.S. 155 (2004)....................................................................................5

*Illinois Brick Co. v. Illinois*,
    431 U.S. 720 (1977)...................................................................................12

*In re Inclusive Access Course Materials Antitrust Litig.*,
    No. 20-2946, 2021 WL 2419528 (S.D.N.Y. June 14, 2021) ..........................................11

*Interstate Circuit, Inc. v. United States*,
    306 U.S. 208 (1939)....................................................................................4

*John v. Whole Foods Mkt. Grp., Inc.*,
    858 F.3d 732 (2d Cir. 2017) ...........................................................................18

*Kruman v. Christie's Int'l PLC*,
    284 F.3d 384 (2d Cir. 2002) ............................................................................4

*Laumann v. NHL*,
    907 F. Supp. 2d 465 (S.D.N.Y. 2012).....................................................................4

*Louisiana Wholesale Drug Co. v. Shire LLC*,
    929 F. Supp. 2d 256 (S.D.N.Y. 2013)....................................................................19

*Mathew Enterprise, Inc. v. Chrysler Grp. LLC*,
    No. 13-04236, 2016 WL 4269998 (N.D. Cal. Aug. 15, 2016) ....................................19, 20

*McDonaugh v. Astrue*,
    672 F. Supp. 2d 542 (S.D.N.Y. 2009).....................................................................2

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
    No. 05-1720, 2008 WL 115104 (E.D.N.Y. Jan. 8, 2008)................................................24

*PharmacyChecker.com, LLC v. Nat'l Ass'n of Bds. of Pharmacy*,
   530 F. Supp. 3d 301 (S.D.N.Y. 2021)......................................................................3

*Premier Elec. Constr. Co. v. Nat'l Elec. Contractors Ass'n, Inc.*,
   814 F.2d 358 (7th Cir. 1987) ..............................................................................12

*Rodriguez v. Colvin*,
   No. 12-3931, 2014 WL 5038410 (S.D.N.Y. Sept. 29, 2014) .................................2

*Standard Oil Co. v. United States*,
   337 U.S. 293 (1949)...........................................................................................16

*Sw. Paper Co., LLC v. Hansol Paper*,
   No. 12-8721, 2013 WL 11238487 (C.D. Cal. Apr. 15, 2013) ...............................21

*Texaco Inc. v. Hasbrouck*,
   496 U.S. 543 (1990)...................................................................19, 20, 22, 23

*Toys "R" US, Inc. v. FTC*,
   221 F.3d 928 (7th Cir. 2000) ...............................................................................4

*United States v. Masonite Corp.*,
   316 U.S. 265 (1942)............................................................................................4

## Statutes

15 U.S.C. § 13(b) ...............................................................................................23

28 U.S.C. § 636(b) ...............................................................................................2

## PRELIMINARY STATEMENT

Magistrate Judge Figueredo's Report and Recommendation ("R&R")[1] carefully considered Plaintiff's arguments in light of the facts alleged in Plaintiff's Consolidated Amended Class Action Complaint ("CAC")[2] and rejected them. Drawing upon long-standing antitrust precedent and citing the Plaintiff's conclusory and contradictory allegations, the Magistrate Judge determined that the CAC does not adequately plead a violation under either the Sherman Act or the Robinson-Patman Act. In sum, the R&R concluded that Plaintiff failed to plead a plausible conspiracy, antitrust injury, or price discrimination. Each of these failures is independently fatal.

In response, Plaintiff offers nothing but conclusory and frivolous objections, rehashing and re-litigating its same arguments.[3] Tellingly, Plaintiff does not contest several of the R&R's central reasons for dismissing the CAC, including that: (1) lawful agreements cannot be direct evidence of a conspiracy; (2) the conspiracy resolved in *United States v. Apple* a decade ago was fundamentally different from the alleged facts here; and (3) Plaintiff did not identify any specific sales lost to Amazon due to alleged price discrimination. These reasons alone render the purported conspiracy here, and the derivative price discrimination claim, implausible. Further, Plaintiff does not and cannot dispute the R&R's conclusions—based upon its own CAC—that: (4) Plaintiff receives a substantial 46% discount on every print book purchased from the Publisher Defendants; (5) it chooses to sell those print books to customers at full list price earning nearly 50% profit; and (6) it fails to allege that it ***even tried to compete*** against Amazon on price. These uncontested points refute Plaintiff's arguments that it plausibly pled an antitrust claim.

Plaintiff's improper objections do not come close to showing error that would require this

---

[1]      ECF No. 141, Report and Recommendation ("R&R").

[2]      ECF No. 65, Plaintiff's Consolidated Amended Class Action Complaint ("CAC").

[3]      ECF No. 150, Plaintiff's Objection to the Magistrate Judge's R&R ("Objection" or "Obj.").

Court to reject the Magistrate Judge's sound reasoning and recommendations. Repeatedly, Plaintiff fails to clearly articulate where in the detailed R&R the Magistrate Judge purportedly erred. Plaintiff simply disagrees with the Magistrate Judge or applies an antitrust framework that is irrelevant to its claims. Accordingly, Publisher Defendants respectfully request that the Court adopt the Magistrate Judge's R&R in full and dismiss the claims against the Publisher Defendants with prejudice. Plaintiff already has amended its CAC and further amendment would be futile.

## STANDARD OF REVIEW

In reviewing an R&R, a district court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). It is true, as Plaintiff stated in its Objection, that if a party raises a ***proper*** objection, the court reviews that finding *de novo*. Obj. at 4; 28 U.S.C. § 636(b)(1)(C). However, proper objections "must be specific and clearly aimed at particular findings in the magistrate judge's proposal." *McDonaugh v. Astrue*, 672 F. Supp. 2d 542, 547 (S.D.N.Y. 2009) (citation omitted). Objections that are "conclusory or general" or simply "rehash or reiterate the original briefs to the magistrate judge" are not proper. *Rodriguez v. Colvin*, No. 12-3931, 2014 WL 5038410, at *3 (S.D.N.Y. Sept. 29, 2014). And when a party "makes only frivolous, conclusory or general objections, or simply reiterates her original arguments, the Court reviews the report and recommendation only for clear error." *In re Hapag-Lloyd Aktiengesellschaft*, No. 19-5731, 2022 WL 1204809, at *1 (S.D.N.Y. Apr. 22, 2022) (Woods, J.) (citations omitted). Under clear error, the district court should reverse only if it is "left with the definite and firm conviction that a mistake has been committed," and not merely if it "would have decided the case differently." *Rodriguez*, 2014 WL 5038410, at *4 (citation omitted).

Under this precedent, Plaintiff must show clear error in Magistrate Judge Figueredo's R&R to prevail on its Objection. But no matter what standard of review applies, Plaintiff's failure to plausibly plead any of its claims provides a strong basis for this Court to adopt the R&R in full.

## ARGUMENT

**I.    THE MAGISTRATE JUDGE CORRECTLY RECOMMENDED DISMISSAL FOR PLAINTIFF'S FAILURE TO PLEAD A SHERMAN ACT VIOLATION**

The R&R carefully assesses Plaintiff's allegations and applies well-established precedent to conclude that Plaintiff's Section 1 conspiracy and Section 2 conspiracy to monopolize claims should be dismissed for multiple, independent reasons. Plaintiff fails to plead a plausible conspiracy (whether horizontal or hub-and-spoke), any harm to competition in the alleged market, or that it suffered antitrust injury. *See* R&R at 12-33. In its Objection, Plaintiff simply repeats its same arguments and invokes the decade-old, factually distinct *Apple* litigation while selectively ignoring portions of the Magistrate Judge's R&R explaining why this case is distinct from *Apple*. None of Plaintiff's conclusory or improper objections show why this Court should reject the R&R's sound recommendation to dismiss Plaintiff's Section 1 and 2 claims as inadequately pled.

### A.   Plaintiff Does Not Plausibly Plead a Conspiracy

1. The R&R Correctly Concluded That the CAC Did Not Plead Direct Evidence of a Conspiracy

The Magistrate Judge correctly determined that Plaintiff fails to allege direct evidence of a horizontal conspiracy because "Plaintiff points [only] to the existence of the vertical distribution agreements between each Publisher and Amazon." R&R at 12. And as the R&R explained, "[a]n agreement that contains lawful contractual terms, standing alone, is not direct evidence of a conspiracy." *Id.* at 13. Here, Plaintiff does not dispute the R&R's key conclusion that "[t]here is nothing inherently unlawful about a distribution agreement between a publisher and retailer." *Id.* at 14. This is fatal to Plaintiff's argument. As the Magistrate Judge explained, direct evidence "is **explicit** and requires **no inferences** to establish the proposition or conclusion being asserted." *Id.* at 13 (citing *PharmacyChecker.com, LLC v. Nat'l Ass'n of Bds. of Pharmacy*, 530 F. Supp. 3d 301, 333 (S.D.N.Y. 2021)) (emphasis added). Consistent with this, Plaintiff recognizes that for a

contract to be direct evidence, it must "specifically address the conduct the Plaintiffs argue is unlawful." Obj. at 7 (citing *In re Androgel Antitrust Litig.*, No. 09-2084, 2018 U.S. Dist. LEXIS 99716, at *34-35 (N.D. Ga. June 14, 2018)). But Plaintiff does not argue here—nor can it—that the Publisher Defendants' individual vertical supply agreements are so inherently unlawful that they require no inference to show a conspiracy. To the contrary, Plaintiff concedes that the contracts are not unlawful "***on their face***." Obj. at 7 n.4 (emphasis added). Thus, these agreements cannot be direct evidence of a conspiracy.

Plaintiff appears to misunderstand the basic meaning of direct evidence, confusing it with alleged facts from which it asks the Court to infer a hub-and-spoke conspiracy. *See* Obj. at 7 ("[W]here parties to vertical agreements have knowledge that other market participants are bound by identical agreements, and their participation is contingent upon that knowledge, they may be considered participants in a horizontal agreement in restraint of trade.") (citing *Laumann v. NHL*, 907 F. Supp. 2d 465, 486–87 (S.D.N.Y. 2012)). First, the Magistrate Judge correctly rejected Plaintiff's argument that it plausibly alleged the Publisher Defendants' individual agreements were contingent upon others agreeing to an identical contract with Amazon. *See* R&R at 27 ("Here, there are no allegations that Publishers were simultaneously presented with identical, or even similar, agreements and that each was aware that all had received the same agreements."). Second, *Laumann* is irrelevant to pleading direct evidence. In fact, Plaintiff cites numerous cases for propositions that have nothing to do with direct evidence. *See* Obj. at 7.[4] Plaintiff goes so far afield as to cite a case discussing the U.S. effects of a foreign conspiracy under the Foreign Trade

---

[4]     *See Laumann*, 907 F. Supp. 2d at 486–87 (cited for hub-and-spoke conspiracy); *Interstate Circuit, Inc. v. United States*, 306 U.S. 208 (1939) (same); *Toys "R" US, Inc. v. FTC*, 221 F.3d 928, 930 (7th Cir. 2000) (same); *United States v. Masonite Corp.,* 316 U.S. 265, 275 (1942) (cited for general proposition on timing of agreements for a conspiracy).

Antitrust Improvements Act, which was abrogated by the Supreme Court, to suggest that it pled "direct evidence."[5] Plaintiff then broadly claims that its allegations were "sufficient to support a horizontal agreement…and the Magistrate Judge erred in concluding otherwise." *Id.* at 8. But its citations and unsupported assertions have no bearing on direct evidence. Plaintiff fails to identify any supposed error in the R&R.

Finally, Plaintiff points to the R&R's discussion of the timing of the Publisher Defendants' signed contracts to claim that the Magistrate Judge "attempted to distinguish the controlling legal principles on the ground that Bookends did not allege that the Publisher Defendants 'were simultaneously presented' with the vertical agreements." Obj. at 8. This is wrong for several reasons. First, as discussed, Plaintiff fails to cite any "controlling legal principles" on direct evidence. Second, the Magistrate Judge did not conclude that a conspiracy necessarily requires simultaneous agreements. She instead cited Plaintiff's allegations on the staggered timing over the course of a year to further distinguish the CAC from *Apple*. Third, Plaintiff cites this discussion out of context and under the wrong framework. The Magistrate Judge discussed the timing of Publisher Defendants' agreements as part of its analysis on Plaintiff's proffered ***circumstantial*** evidence of a conspiracy. R&R at 26-27. The timing has no bearing on direct evidence, which by its nature is explicit and requires no inferences. This irrelevant argument should be disregarded.

2. The R&R Correctly Concluded That the CAC Did Not Plead Circumstantial Evidence of a Conspiracy

Plaintiff's objections to the Magistrate Judge's conclusions on its proffered circumstantial evidence fare no better. As a threshold point, Plaintiff does not contest the R&R's conclusion that at least three key plus factors were not plausibly pled: (1) *Interfirm Communications*: Plaintiff does

---

[5]      Obj. at 8 n.6 (citing *Kruman v. Christie's Int'l PLC,* 284 F.3d 384, 399 (2d Cir. 2002), *abrogated by F. Hoffmann-La Roche Ltd. v. Empagran S.A.,* 542 U.S. 155 (2004)).

not contest that "there are no allegations concerning any communications among the Publishers or between the Publishers and Amazon." R&R at 24. This is in stark contrast to *Apple*. *Id.* (2) *Signaling*: Plaintiff does not contest that the articles referenced in its CAC do not amount to signals because they say nothing about the pricing model for print books. *Id.* at 26. (3) *Government Investigations*: Plaintiff does not contest that "[t]he existence of government investigations into ***Amazon's*** conduct…cannot raise a plausible inference that the ***Publishers*** colluded[.]" *Id.* at 27 (emphasis added). Plaintiff's failure to challenge the Magistrate Judge's conclusions on these plus factors alone provides enough support for this Court to accept the R&R's recommendation to dismiss the CAC for inadequately pleading circumstantial evidence of conspiracy.

With respect to the remaining plus factors, Plaintiff merely reiterates its prior conclusory arguments—which the Magistrate Judge determined to be unsupported or contradicted by the CAC—parroting quotes from *Apple* to cry error. These arguments should be rejected in turn.

As an initial matter, Plaintiff ignores a key conclusion in the R&R that fatally undermines its conspiracy claim. The Magistrate Judge dedicated more than two pages to explaining why the prior *Apple* conspiracy was fundamentally different from Plaintiff's factual allegations here, carefully contrasting the CAC with the facts underlying the *Apple* decision. *See* R&R at 17-19. Critically, as the R&R reasoned, the publishers in *Apple* "were [allegedly] attempting to force Amazon to abandon its pricing model and adopt agency pricing, but '[n]o single publisher would have had the leverage to force Amazon to make the switch.'" *Id.* at 18 (citing *In re Elec. Books Antitrust Litig.*, 859 F. Supp. 2d 671, 684 (S.D.N.Y. 2012)). The fact that no single publisher could force Amazon to make the switch is precisely why they needed concerted action in *Apple*, underpinning the finding of a conspiracy in that case. *Id.* Here, however, Plaintiff does not allege that there were "similar market conditions" or "a new pricing model." R&R at 19. As the Publisher

Defendants argued in their Motion to Dismiss, Plaintiff pled that print books were sold on a wholesale model, and they continued to be sold on that same model following the contracts at issue. MTD at 7.[6] Plaintiff never alleges otherwise. *See* CAC ¶ 3. There was thus no industrywide shift that required coordination like the Court found in *Apple*. R&R at 19. This point undercuts Plaintiff's entire conspiracy theory, yet Plaintiff fails to address it ***at all*** in its Objection, effectively conceding that *Apple* is inapplicable here. The Magistrate Judge properly rejected Plaintiff's repeated fallback citations to *Apple* in lieu of factual allegations.

> ***Acts Against Self-interest***. The Magistrate Judge also correctly rejected Plaintiff's argument that it plausibly alleged the Publisher Defendants acted against their individual self-interest. *See* R&R at 16-20. In response, Plaintiff greatly oversimplifies the Magistrate Judge's analysis, claiming that she merely concluded "that Amazon is a big purchaser, and it is thus in the individual self-interest of each Publisher Defendant to sell to Amazon." Obj. at 10. In actuality, the Magistrate Judge concluded that "the ***CAC itself explains why*** a Publisher, acting alone, would have sought to distribute books through Amazon: it could not afford to lose a retailer that accounted for more than 50% of the retail market and 90% of the online retail market for print books." R&R at 17 (emphasis added). The R&R then includes a full paragraph of quotes from Plaintiff's CAC identifying numerous reasons why each Publisher Defendant would independently enter into such an agreement with Amazon. *Id.* Thus, the Magistrate Judge rightfully determined that Plaintiff's allegations concerning "[t]he most important plus factor," Obj. at 9, were implausible.

> ***Motive to Collude***. Plaintiff nakedly asserts that the Publisher Defendants' motive to collude was to raise print book prices, but accepts the Magistrate Judge's conclusion and concedes

---

[6]      ECF No. 76, Publisher Defendants' Memorandum of Law in Support of Their Motion to Dismiss Plaintiff's Amended Complaint and to Strike Plaintiff's Class Allegations ("Publisher Defendants' Motion" or "MTD").

that each Publisher controls its own list prices. Obj. at 11. This is a stark difference from *Apple* where the alleged goal was to gain control of pricing. Plaintiff attempts to harmonize its claim by broadly arguing—without support or alleged facts—that "[a]lthough each Publisher Defendant controlled its own list prices, it would have been economically irrational for any Publisher Defendant to raise list prices unilaterally." Obj. at 11. The R&R, however, cites Plaintiff's CAC allegations that "each Publisher sells its 'own commodities'—that is, the book titles of one Publisher are 'completely distinct' from the book titles of another Publisher" to explain the implausibility of this very argument. R&R at 20 (citing CAC ¶¶ 96, 104). Given that Plaintiff pleads that "[c]onsumer demand and preferences for different titles and different authors is not the same," the rise in price of one title by a Publisher Defendant would not necessarily cause a customer to instead buy a different title or author from another Publisher Defendant. R&R at 20 (citing CAC ¶ 104). Thus, the Magistrate Judge correctly determined that "the CAC does not plausibly explain why a single Publisher could not raise the list price of its own book titles without suffering a competitive disadvantage." *Id.* at 20-21.

Likewise, Plaintiff fails to address the R&R's conclusions that the CAC's "allegations are contradictory" and that "Plaintiff has not offered any plausible reason why the Publishers would have colluded with Amazon now in a conspiracy that would have only further cemented Amazon's market dominance" when they were so opposed to Amazon in Plaintiff's often-cited *Apple* case. *Id.* at 21. Plaintiff provides no response to these well-reasoned conclusions.

***Opportunity to Collude.*** Next, the R&R properly determined that "the CAC contains a conclusory allegation that Defendants had an opportunity to collude (CAC ¶ 112), but it pleads no factual support for that allegation." R&R at 24. Recognizing this pleading deficiency, Plaintiff tries to point to a standard meeting competition clause in certain of Publisher Defendants' contracts

with Amazon. Obj. at 11. But just as this lawful and ordinary contract clause cannot provide direct evidence of a conspiracy, *see* R&R at 13, it similarly cannot provide a plausible basis for an "opportunity" for Publisher Defendants to conspire.

**_Prior Conspiracy._** Consistent with Plaintiff's theme, here, too, Plaintiff ignores the Magistrate Judge's reasoned explanation regarding why prior collusion is not a plus factor **_in this case_** and why the *Apple* conspiracy demonstrates that collusion is implausible here. *See* R&R at 23 ("More importantly, however, the existence of a conspiracy here cannot plausibly be inferred from the Publishers' collusive conduct in *Apple*, because, as already discussed…the market circumstances in *Apple* presented the Publishers with a starkly different economic scenario."). Rather than address this glaring defect, Plaintiff cites general principles and simply proclaims "[t]he Magistrate Judge should have considered the prior collusive behavior." Obj. at 12. But she did consider it and she determined that *Apple* made the current alleged conspiracy implausible. Plaintiff raises nothing to show why that was in error.

**_Timing of Agreements._** Finally, Plaintiff's effort to find fault with the Magistrate Judge's discussion of the timing of the Publisher Defendants' individual vertical agreements fails because Plaintiff cites it out of context (and in the wrong section under direct evidence). Obj. at 8. Plaintiff misses the point. The Magistrate Judge discussed the timing of these individual agreements with Amazon as one of many distinctions between the alleged facts here and *Apple*. R&R at 26-27. Plaintiff does not dispute that its CAC makes clear that the Publisher Defendants' contracts with Amazon were negotiated and signed at different times over the course of a year. *See* CAC ¶ 8 and n.18; R&R at 27. This is once again in stark contrast to *Apple*, where the contracts at issue were all entered simultaneously, further showing why Plaintiff's alleged conspiracy is implausible.

*      *      *

The Court should accept the Magistrate Judge's detailed and well-reasoned conclusions on Plaintiff's alleged direct and circumstantial evidence, rejecting Plaintiff's objections in total. It was not error to recommend dismissal of an illogical and implausible conspiracy pled solely on *Apple* quotes and unsupported allegations.

### B. Plaintiff Does Not Plausibly Plead a Conspiracy to Monopolize

With respect to Plaintiff's conspiracy to monopolize claim, the R&R properly concluded that Plaintiff failed to meet the threshold element under either Section 1 or Section 2 – ***concerted action***. Plaintiff concedes, as it must, that a conspiracy to monopolize requires "concerted action." Obj. at 15. Plaintiff then tries to downplay this element, misstating the requirements for a claim and wrongly citing a Section 1 case. *See* Obj. at 15 (citing *In re Foreign Exch. Benchmark Rates Antitrust Litig.*, No. 1:13-cv-07789, 2022 WL 294118, at *54 (S.D.N.Y. Feb. 1, 2022)). But even applying Plaintiff's false standard *arguendo*, the Publisher Defendants and Amazon still must "***agree*** to the '***conspiracy's*** 'general nature and extent.'" Obj. at 15 (emphasis added). Here, the Magistrate Judge determined that there was no plausible conspiracy pled – *i.e.,* no plausible agreement between the Publisher Defendants and Amazon to increase or maintain Amazon's alleged market power. This ends the analysis.

Plaintiff again points to individual vertical agreements with Amazon in response to similar market conditions, but these are "the hallmark of independent parallel conduct—not collusion." R&R at 19-20; *see Bookhouse of Stuyvesant Plaza, Inc. v. Amazon.com, Inc.,* 985 F. Supp. 2d 612, 619–20 & n.2 (S.D.N.Y. 2013) (rejecting the inference of a horizontal conspiracy from a series of vertical distribution agreements with a major distributor in the industry). The absence of concerted action similarly dooms Plaintiff's Section 2 conspiracy to monopolize claim against the Publisher

Defendants.[7] *See* R&R at 28 ("Similarly, Plaintiff's Section 2 conspiracy to monopolize claim against Defendants requires the existence of a conspiracy. […] Having failed to allege facts from which to infer that a conspiracy existed, the Section 2 claim against Defendants also fails.").

Furthermore, Plaintiff fails to meet the other elements for a conspiracy to monopolize—an overt act in furtherance of a conspiracy and specific intent to monopolize—for the reasons stated in the Publisher Defendants' Motion and Reply. *See* MTD at 9-10; Reply at 5.[8] And just as the R&R concluded in its analysis of motive, Plaintiff fails to plausibly allege why the Publisher Defendants would have a specific intent to "maintain Amazon's trade print book retail monopoly," Obj. at 16, which could be used against them. *See* R&R at 22 ("Here, the CAC plausibly alleges that the same 'fears' of Amazon's dominance would still exist [for the Publisher Defendants].""). The Magistrate Judge properly rejected this illogical and unsupported assertion.

### C. Plaintiff Does Not Plausibly Plead Antitrust Injury

Plaintiff concedes that "an antitrust plaintiff must allege 'injury attributable to the anticompetitive aspect of the practice under scrutiny.'" Obj. at 4 (citing R&R at 29). Consistently, the R&R cited the long-standing principle that antitrust injury must "stem[] from a competition-***reducing*** aspect or effect of defendant's behavior." R&R at 30 (quoting *In re Inclusive Access Course Materials Antitrust Litig.*, No. 20-2946, 2021 WL 2419528, at *7 (S.D.N.Y. June 14, 2021) (emphasis added)). That is exactly what the Magistrate Judge determined to be missing here.

The R&R concluded, "Plaintiff's complaint is that Amazon was given a ***lower wholesale price***, allowing it to charge ***a lower retail price*** to consumers without jeopardizing its profit

---

[7]    The Publisher Defendants do not address Count III, Plaintiff's Section 2 monopolization claim, which Plaintiff brings against Amazon only.

[8]    ECF No. 112, Reply in Further Support of Publisher Defendants' Motion to Dismiss Plaintiff's Amended Complaint and to Strike Plaintiff's Class Allegations. ("Reply").

margin." R&R at 32 (emphases added). Any alleged harm to Plaintiff therefore flows from the lower prices supposedly offered by the Publisher Defendants to Amazon (*i.e.*, discounts) and from Amazon engaging in ordinary price competition with Plaintiff for customers. Such conduct is neither competition-*reducing* nor sufficient to cause antitrust injury.[9] Disregarding Plaintiff's cases that do not discuss antitrust injury,[10] Plaintiff's newly raised (and only relevant) authority is consistent with this principle. In *In re DDAVP Direct Purchaser Antitrust Litigation*, the purchasers paid supracompetitive prices "as a result of the defendants' *anticompetitive conduct*." 585 F.3d 677, 688 (2d Cir. 2009) (emphasis added). The higher prices "flow[ed] from that which makes defendants' acts unlawful." *Id.* That critical link is missing here. While Plaintiff harps on a statement in the R&R distinguishing cases involving harm to end customers, Obj. at 5, Plaintiff tellingly fails to identify—nor could it—any non-predatory pricing case that found antitrust injury when customers benefited from lower prices like they did here.

Rather than address this glaring deficiency, Plaintiff attempts to (1) distance itself from its CAC, and (2) gloss over its failure to allege that it even tried to compete with Amazon on price. Both of these arguments are meritless.

First, Plaintiff's assertion that "the Magistrate Judge *recast* Bookends' complaint" to complain about lower prices is unfounded. Obj. at 5 (emphasis added). The Magistrate Judge's

---

[9]   Plaintiff is once again trying to contort its failed RPA price discrimination claim into an illogical conspiracy. Under Plaintiff's theory, any time that a company pays a higher price than a rival, the price is automatically supracompetitive. That is simply not the law under the Sherman Act. Plaintiff cannot circumvent its RPA pleading requirements with a distorted conspiracy claim.

[10]   *See Premier Elec. Constr. Co. v. Nat'l Elec. Contractors Ass'n, Inc.*, 814 F.2d 358 (7th Cir. 1987) (discussing *Noerr-Pennington* and sham litigation); *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977) (discussing antitrust standing and whether the alleged injury was too remote to confer standing). Here, Plaintiff conflates antitrust standing with antitrust injury. The fact that a direct purchaser may be a proper party to bring suit does not mean that it suffered antitrust injury – *i.e.*, "injury of the type the antitrust laws were intended to prevent." *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 488 (1977); *see* R&R at 29-30 (discussing elements of antitrust injury).

summation is directly rooted in Plaintiff's allegations. *See, e.g.,* CAC ¶ 110 (Amazon "obtain[s] a substantially lower wholesale price and more favorable contract terms than its rivals, thereby ensuring that they cannot compete with Amazon on price."); *Id.* at ¶ 53 ("[B]ook consumers look more aggressively for comparatively lower retail book prices and switch to Amazon, which due to its discriminatory discounts to list can sell at significantly lower prices that its rival book sellers."). Plaintiff cannot rewrite its CAC to dispute that it pled harm caused by discounts and lower prices.

Next, Plaintiff concedes that it sets its own prices to its customers, but disregards its failure to allege that it even tried to compete against Amazon on price. This is fatal. As properly noted by the R&R, "Plaintiff was free to charge consumers a price lower than list price, and it was also free to match Amazon's discounted price and sell to consumers at that price." R&R at 31. Indeed, Plaintiff does not dispute—nor could it—the Magistrate Judge's key observation that "there are no allegations in the CAC ***that any bookseller was required by the Publishers to sell books at list price***." *Id.* at 31 (emphasis added). Given that the Publisher Defendants did not constrain Plaintiff from "setting its own prices," there can be no antitrust injury here. *Arista Records LLC v. Lime Group LLC*, 532 F. Supp. 2d 556, 570 (S.D.N.Y. 2007); R&R at 31.

Plaintiff tries to convince the Court to disregard its failure to compete on price as irrelevant. Obj. at 5-6. But U.S. antitrust law "protect[s] competition, not competitors." R&R at 32 (citing *Brunswick*, 429 U.S. at 488). Plaintiff cannot argue—nor does it even attempt to—that it was unable to lower prices to customers given that it expressly pleads that it ***received a substantial 46% discount*** from the Publisher Defendants on every book purchased. *See* R&R at 31 ("Plaintiff was thus not constrained to sell books at list price, because having bought them at a substantial discount off of list price, it could have sold them to consumers for less than list price and still have made a profit on each sale."); CAC ¶ 94. Nothing in U.S. antitrust law protects Plaintiff's business

decision to sell books at full list price and earn nearly 50% profit on every sale when it could have "charg[ed] a lower price to consumers in order to better compete with Amazon." R&R at 32. This choice negates any supposed antitrust injury.

Finally, Plaintiff tries to distinguish *Atlantic Richfield Co. v. USA Petroleum Co. (Arco)* and *Arista* because they did not involve the alleged conspiracy to "sell…books at highly discounted prices" or "agreement to give…greater list-price discounts." Opp. at 5;[11] Obj. at 6, 9. But the R&R explains how applicable those cases are here. *See* R&R at 32 ("When a firm, or even a group of firms adhering to a ***vertical agreement***, ***lowers prices*** but maintains them above predatory levels, the ***business lost by rivals*** cannot be viewed as an 'anticompetitive' consequence of the claimed violation") (citing *Arco*, 495 U.S. 328, 337 (1990) (emphases added)). According to the CAC, Plaintiff is a rival of Amazon, which sold books at a lower price. CAC ¶¶ 54-55. Plaintiff pleads that the lower prices resulted from a vertical agreement between Amazon and its supplier(s). *Id.* at ¶ 4. Plaintiff complains that it lost sales to Amazon. *Id.* at ¶¶ 4, 17. While Plaintiff tries to frame its harm as an "overcharge," it cannot dispute that it "suffered no antitrust injury from having to compete against [Amazon's] lower prices" – just as in *Arco* and *Arista*. Obj. at 6 (citing *Arista*, 532 F. Supp. 2d at 570; *Arco*, 495 U.S. at 339). As the R&R properly concluded, "[t]hat Plaintiff may have had to charge a retail price that was lower than the list price, to compete with Amazon's lower price, does not amount to antitrust injury." R&R at 31.

**D. Plaintiff Does Not Plausibly Plead a Violation Under the Rule of Reason**

As a last ditch effort, Plaintiff argues that the Magistrate Judge erred in not applying the rule of reason. But given that Plaintiff did not plead the predicate agreement or conspiracy, there was no reason to consider harm to competition—either under a *per se* or rule of reason analysis.

---

[11]    ECF No. 94, Plaintiff's Memorandum in Opposition to Publisher Defendants' Motion to Dismiss Plaintiff's Amended Complaint and to Strike Plaintiff's Class Allegations ("Opp.").

Regardless, Plaintiff still fails to allege harm to competition directly or circumstantially for all of the reasons in the Publisher Defendants' Motion and Reply. *See* MTD at 13-15; Reply at 5-6. In short, Plaintiff's conclusory allegations of increased prices and reduced output are contradicted by the CAC, which provides examples of declining prices and customers purchasing from the lower-priced Amazon. *See* MTD at 13-15. Additionally, Plaintiff fails to plead that any Publisher Defendant's individual vertical agreement with Amazon caused a market-wide anticompetitive effect. *Id.* The Court should dismiss Plaintiff's Sherman Act claims for this reason as well.

Absent collusion—which the Magistrate Judge correctly rejected as implausible—the rule of reason analysis for Plaintiff's claim focuses on the effect of an individual Publisher Defendant's vertical agreement with Amazon. *See Bookhouse*, 985 F. Supp. 2d at 622 ("In the absence of a horizontal conspiracy, grouping the Publishers' market share together is inappropriate."). Given that Plaintiff does not allege that an individual Publisher Defendant has market power (nor could it), this claim fails. Recognizing this flaw, Plaintiff inserts a footnote asserting that the Court should "aggregat[e] the market effect of all five Publisher Defendants' pricing-fixing contracts"… "because they were aware of the broader conspiracy." Obj. at 14, n. 10. This is wrong for several reasons. First, the Magistrate Judge concluded that the CAC did not adequately plead price-fixing agreements or a broader conspiracy. So once again, the predicate element is missing. Second, Plaintiff's authorities do not actually support aggregating the Publisher Defendants' agreements to establish market-wide harm because Plaintiff merely alleges individual vertical contracts.[12]

---

[12]    Obj. at 14 n. 10. Contrary to Plaintiff's claim, *Sitts v. Dairy Farmers of America, Inc.* did not "hold" that "aggregation was permissible even without alleging a hub-and-spoke conspiracy." *Id.* At most, *Sitts* suggests in dicta that considering the "aggregate impact of the alleged conspiracy's conduct" is appropriate where defendants, like the two in *Sitts*, function as a single entity. 417 F. Supp. 3d 433, 468 (D. Vt. 2019). Plaintiff does not allege—nor could it—that the Publisher Defendants act as a single entity. This case is accordingly inapposite.

Plaintiff repeatedly cites inapposite exclusive dealing cases against a **single defendant**.[13] An exclusive dealing claim specifically challenges one company's use of exclusivity contracts and whether that company entered into enough of them to substantially foreclose rivals from a market. *See Standard Oil*, 337 U.S. at 304-05. Neither exclusive dealing nor the element of substantial foreclosure has any relevance to the alleged conspiracy. Plaintiff fails to show how it is in error for the Magistrate Judge to apply the proper antitrust framework to the conspiracy claim alleged.

## II.   THE MAGISTRATE JUDGE CORRECTLY RECOMMENDED DISMISSAL FOR PLAINTIFF'S FAILURE TO PLEAD A ROBINSON-PATMAN ACT VIOLATION

Similar to Plaintiff's arguments regarding its illogical conspiracy, Plaintiff's objections to the Magistrate Judge's analysis of its Robinson-Patman Act ("RPA") claim should be rejected as unavailing. Each of the R&R's conclusions that Plaintiff failed to plausibly plead prima facie elements of price discrimination, including competitive injury, the absence of materially different terms, and the absence of legitimate functional discounts, provides an independent basis for the Court to dismiss Plaintiff's RPA claim. This is more than enough to properly dismiss the claim. In addition, the R&R correctly concluded that even if there was price discrimination alleged, it is barred by the Publisher Defendants' meeting competition defense. The Court should accept all of these well-reasoned recommendations and dismiss Plaintiff's RPA claim as inadequately pled.

### A.  Plaintiff Does Not Plausibly Plead Competitive Injury

As the Magistrate Judge noted, when Congress enacted the RPA, it "did not intend to outlaw price differences that result from or further the forces of competition." R&R at 34 (citing

---

[13]    *Standard Oil Co. v. United States,* 337 U.S. 293 (1949) (exclusive dealing claim against single defendant); *Applied Med. Res. Corp. v. Johnson & Johnson*, No. 03-1329, 2004 U.S. Dist. LEXIS 29409, at *12–13 (C.D. Cal. Feb. 23, 2004) (same); *Genico, Inc. v. Ethicon, Inc.*, No. 04-229, 2006 U.S. Dist. LEXIS 96909 (E.D. Tex. Mar. 23, 2006) (same). *Fortner Enters. v. U.S. Steel Corp.*, 394 U.S. 495 (1969), is a tying case where the court applies a similar antitrust framework, considering the percentage of the market that was substantially foreclosed to rivals.

*Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 220 (1993)). For that reason, to state an RPA claim, a plaintiff must plausibly allege that price discrimination had a "prohibited effect on competition." *Id.* at 35 (citing *Coal. For A Level Playing Field, L.L.C. v. AutoZone, Inc.*, 737 F. Supp. 2d 194, 209 (S.D.N.Y. 2010)). A plaintiff can plead competitive injury either by plausibly alleging "substantial discounts to a competitor over a significant period of time, known as the *Morton Salt* inference, or proof of sales lost to favored purchasers." *Cash & Henderson Drugs, Inc. v. Johnson & Johnson*, 799 F.3d 202, 210 (2d Cir. 2015). The R&R correctly concluded that Plaintiff failed to plead competitive injury under either method. R&R at 46. Plaintiff's Objection merely rehashes arguments that it already made, *see* Opp. at 16-17, and does not come close to identifying any error. The Court should adopt the Magistrate Judge's R&R and dismiss Plaintiff's RPA claim for failure to plead competitive injury.

1. <u>The R&R Correctly Concluded that Plaintiff Failed to Adequately Plead Lost Sales</u>

In its Objection, Plaintiff wrongly argues that it adequately pled competitive injury through lost sales to Amazon. Obj. at 17-18. But as the Magistrate Judge recognized, the CAC does not allege a single lost sale to Amazon with the requisite specificity. R&R at 47 ("None of those [CAC] paragraphs provide an example of a circumstance where Plaintiff lost a sale to Amazon because of the alleged discriminatory pricing."). Rather than pleading any facts at all, the CAC contains only the conclusory allegation that Plaintiff "lost sales to price-sensitive consumers" and a discussion of "general economic principles, such as the 'cross-elasticity of demand.'" R&R at 46-47 (citing CAC ¶¶ 53); *see also* CAC ¶ 100. These labels and conclusions are far from sufficient under *Bell Atl. Corp. v. Twombly*. 550 U.S. 544, 555 (2007).

Plaintiff's reliance on *John v. Whole Foods Market Group* to argue that it pled competitive injury is misplaced because that case did not involve the RPA at all. *See* Obj. at 17-18. The plaintiff in *John* asserted claims for deceptive trade practices, false advertising, and unjust enrichment –

17

not price discrimination under the RPA. 858 F.3d 732, 737-38 (2d Cir. 2017). Here, the R&R correctly noted that under the RPA, a plaintiff must plead *specific examples* to show competitive injury through lost sales.[14] But Plaintiff failed to allege any specific examples in the CAC, and it was not error for the R&R to recognize this point. Indeed, Plaintiff effectively concedes that it did not plead sufficient facts, stating that "to the extent more is required, Bookends is able and willing to plead more detail about its lost sales." Obj. at 18. But Plaintiff already amended its CAC once and declined to amend it when Defendants filed their Motions to Dismiss the CAC. Plaintiff should not expect another chance to fix its many fatal flaws. *See* Individual Rules of Practice in Civil Cases Rule 3(D).

Furthermore, even if Plaintiff pled a single lost sale to Amazon (which it does not), Plaintiff cannot claim that the sale was lost due to any supposedly discriminatory discount because Plaintiff does not allege that it even tried to compete with Amazon on price. *See* CAC ¶ 54-55, 94. Indeed, Plaintiff does not contest the R&R's conclusions that it received a substantial 46% discount from the Publisher Defendants yet made the strategic business decision to sell its books at full list price rather than attempting to match Amazon's lower prices. *See* R&R at 31. Losing customers to competitors offering lower prices is far from "injury of the type the antitrust laws were intended to prevent." *Brunswick*, 429 U.S. at 489.

2. The R&R Correctly Concluded that Plaintiff Failed to Plead Facts Giving Rise to the *Morton Salt* Presumption

As the Magistrate Judge correctly noted, to invoke the *Morton Salt* presumption, Plaintiff must, at a minimum, plead facts plausibly alleging "*substantial* discounts to a competitor over a *significant* period of time." R&R at 35 (citing *Cash & Henderson*, 799 F.3d at 210) (emphasis

---

[14]     *See* R&R at 46-47 (citing *Dayton Superior Corp. v. Marjam Supply Co.*, No. 07-5215, 2011 WL 710450, at *10 (E.D.N.Y. Feb. 22, 2011)).

added). In its Objection, Plaintiff points to its allegation that "Publisher Defendants offered a price discount to Amazon over time and that this discount was substantial." Obj. at 18. This is nothing more than a formulaic recitation of the elements. The Magistrate Judge properly rejected it as conclusory for failing to allege any facts showing that discounts were "substantial." R&R at 46. Further, the CAC also fails to plausibly plead that any supposed discounts were provided over a significant period of time, since Plaintiff alleges only that it purchased 10 books within a 10-month period over the entire four years for which the CAC seeks relief. CAC. ¶ 94.[15]

Plaintiff's reliance on *George Haug Co. v. Rolls Royce Motor Cars, Inc.*, 148 F.3d 136 (2d Cir. 1998), for the proposition that "allegations of competitive injury under the RPA need not specify the amount and degree of the price discrimination," Obj. at 18, is misplaced. As courts in this District have recognized, *George Haug* predates *Twombly* and *Iqbal*, and the liberal pleading standard applied in *George Haug* is no longer the law. *See, e.g., Louisiana Wholesale Drug Co. v. Shire LLC*, 929 F. Supp. 2d 256, 260 n.6 (S.D.N.Y. 2013) (noting that *George Haug* "predate[s] *Iqbal* and *Twombly*"), *aff'd sub nom In re Adderall XR Antitrust Litig.*, 754 F.3d 128 (2d Cir. 2014), *as corrected* (June 19, 2014).

Plaintiff's reliance on *Mathew Enterprise, Inc. v. Chrysler Group LLC* for its argument that it "need not allege specific prices" for the *Morton Salt* inference is also unavailing. Obj. at 18-19. In *Mathew Enterprise*, the Northern District of California declined to find on summary judgment that a 2% price differential over 11 months was *de minimis* and therefore insufficient to invoke *Morton Salt* because the *de minimis* doctrine depends upon the "large or small effect that the price discrimination has on business rivalry." No. 13-04236, 2016 WL 4269998, at *7 (N.D. Cal. Aug.

---

[15]    Additionally, to the extent that any alleged price differences are bona fide functional discounts, as discussed below, "the inference of injury to competition recognized in the *Morton Salt* case will simply not arise." *See Texaco Inc. v. Hasbrouck*, 496 U.S. 543, 571 (1990).

15, 2016). Notably, in *Mathew Enterprise*, the parties did not dispute that the price discrimination caused plaintiff to lose sales for 11 months. *Id.* at *2. In this case, Plaintiff fails to allege that it lost ***a single sale*** due to the supposed price discrimination. It therefore has not plausibly pled that the alleged discrimination had a sufficient effect on "business rivalry." *See supra* Section II.A.1.

**B. Plaintiff Fails to Plausibly Plead That Any Alleged Price Differences Did Not Result From Materially Different Contracts or Legitimate Functional Discounts**

As a threshold matter, Plaintiff wrongly mischaracterizes materially different contracts and functional discounts as "affirmative defense[s]" that cannot justify dismissal here. Obj. at 19-24. That is wrong as a matter of law. While Plaintiff tries to conflate these factors with a "cost justification" defense under RPA Section 2(b), Obj. at 23, they are distinct analyses that negate a prima facie Section 2(a) violation. *See AutoZone*, 737 F. Supp. 2d at 212; *Hasbrouck*, 496 U.S. at 561 n.18. That is why the ***burden rests squarely on Plaintiff*** to address each of them, which is contrary to the cost justification defense that places the burden on defendants. *See AutoZone*, 737 F. Supp. 2d at 212-13; *Hasbrouck*, 496 U.S. at 561 n.18. As the Supreme Court made clear in *Hasbrouck*—and the Magistrate Judge correctly noted—"it is the plaintiff's burden to show that a claimed functional discount is not genuine because 'functional pricing negates the probability of competitive injury, an element of a prima facie' Section 2(a) claim." R&R at 48 (citing *Hasbrouck*, 496 U.S. at 561 n.18). It was therefore not in error for the R&R to recommend dismissal for Plaintiff's failure to plead the absence of materially different contracts or functional discounts.

1. The R&R Correctly Concluded that Plaintiff Failed to Meet Its Burden to Plead No Materially Different Contract Terms

As the Magistrate Judge correctly concluded, a seller is "not obligated to charge the same price for a commodity if its sales contracts with different buyers contain materially different terms." R&R at 48 (citing *AutoZone*, 737 F. Supp. 2d at 212). And as noted, the Court in *AutoZone* made clear that it is Plaintiff's burden to plausibly allege that any price differentials are not

attributable to materially different contract terms. 737 F. Supp. 2d at 212-13. Indeed, courts dismiss complaints that fail to adequately make this showing. *See id.* at 216-17; *Sw. Paper Co., LLC v. Hansol Paper*, No. 12-8721, 2013 WL 11238487, at *6 (C.D. Cal. Apr. 15, 2013). As the Magistrate Judge determined, that is exactly the case here. R&R at 49-50.

The CAC unquestionably pleads that the Publisher Defendants entered into detailed, long-term distribution agreements with Amazon that contained numerous provisions and governed the relationship between each Publisher Defendant and Amazon for multiple years. *See* CAC ¶¶ 8-9. By contrast, Plaintiff does not—and cannot—allege that it even has a contract with any Publisher Defendant. Plaintiff alleges only that it purchases books *ad hoc* from the Publisher Defendants at a "standard discount price of up to 46%." *Id.* ¶ 94. Accordingly, the Magistrate Judge correctly determined that the CAC "ignore[d] the possibility that these contract differences" could account for any alleged price differences. R&R at 49. Plaintiff thus failed to plausibly plead the absence of materially different contract terms. *Id.* at 49-50.

Plaintiff argues in its Objection that "although the discount to Amazon was promised for a period of years," there is no allegation that the Publisher Defendants' contracts with Amazon impose any long-term obligations on Amazon. Obj. at 23. Plaintiff misses the key point. ***Plaintiff does not even have a contract with a Publisher Defendant that is suitable for comparison to Amazon's contract*** to assess whether they were materially different. *Compare* CAC ¶¶ 5, 102 (discussing numerous detailed provisions of each Publisher Defendant's contract with Amazon); *with* ¶ 3 (alleging only that Plaintiff buys books "based on the Big Five's standard discounts"). There can be no RPA violation here as a matter of law due to the significantly different purchasing arrangements alleged. *See, e.g., Cleveland v. Viacom, Inc.*, 73 F. App'x 736, 741 (5th Cir. 2003) (finding no RPA violation in part due to purchases not being "reasonably comparable").

Plaintiff also wrongly argues that the Magistrate Judge's conclusion on materially different terms contradicts her determination that print books are of "like grade and quality." Obj. at 22-23. Not so. While the R&R concluded that Plaintiff adequately pled goods of like grade and quality in the sense that the "commodities at issue are print trade books," which are physically identical, R&R at 37, these books are not of like grade and quality *here* in light of the materially different purchasing arrangements. *See* R&R at 50. This is entirely consistent with the case law because as the Magistrate Judge pointed out in the R&R, courts have held that "goods sold under a long-term contract are not 'of like grade or quality' to those sold on the spot market, ***even though the underlying goods are physically identical***." *Id.* (citing *A.A. Poultry Farms, Inc. v. Rose Acre Farms, Inc.*, 881 F.2d 1396, 1407 (7th Cir. 1989)) (emphasis added).

2. The R&R Correctly Concluded that Plaintiff Failed to Meet Its Burden to Plead No Functional Discounts

Just as with materially different contract terms, the law is clear that it is Plaintiff's burden to "allege the illegitimacy of any price differences by pleading facts that plausibly show that the discounts are either excessive or were given with the purpose of passing along a price advantage." R&R at 48 (quoting *Sw. Paper Co.*, 2013 WL 11238487, at *5); *AutoZone*, 737 F. Supp. 2d at 211 ("[A] plaintiff must show that a claimed functional discount is not genuine to carry its burden of showing potential harm to competition."). Accordingly, the Magistrate Judge correctly determined that Plaintiff failed to plausibly allege that any supposed price differentials were not legitimate functional discounts. *See* R&R at 50-52.

Plaintiff relies on *Hasbrouck* to argue that the functional discount exception does not apply here because Amazon was "separately compensated" for additional services. Obj. at 21-22. Putting aside that this is an improper objection that purely rehashes an argument that was already made and rejected, *see* R&R at 50-52, it is wrong on the merits. As the R&R correctly concluded,

*Hasbrouck* does not support the "categorical assertion" that the functional discount exception is inapplicable "as a matter of law" if a favored purchaser is "separately compensated" for additional services. R&R at 51 n.17. Rather, under *Hasbrouck*, a discount need only be "reasonable" and not "completely untethered to either the supplier's savings or the wholesaler's costs." 496 U.S. at 561-63. Whether a buyer is "separately compensated" for additional services is merely one factor that courts may consider in assessing the alleged reasonableness of a functional discount. *See id.*

Here, Plaintiff alleges neither the amount of the alleged discount that Amazon received nor the amount that Amazon is "separately compensated" for services provided to the Publisher Defendants. Thus, Plaintiff cannot plausibly allege that any discount to Amazon was unreasonable and illegitimate. *See* R&R at 51-52. Plaintiff cites *In re LIBOR-Based Financial Instruments Antitrust Litigation*—a securities action that has nothing to with the RPA—to argue that "[r]easonableness is normally not to be decided on a motion to dismiss." Obj. at 22. But that misses the point. For an RPA claim, Plaintiff must plead facts plausibly suggesting that any price differentials were not legitimate functional discounts. *See AutoZone*, 737 F. Supp. 2d at 216. Plaintiff therefore must plead that any discounts for separate services were unreasonable. *See Hasbrouck*, 496 U.S. at 561-63. Since Plaintiff does not and cannot do so here, its RPA claim fails.

## C. Plaintiff's Claims Are Barred By the Meeting Competition Defense

Finally, under the meeting competition defense set forth in RPA Section 2(b), price concessions "made in good faith to meet an equally low price of a competitor" are lawful discounts. 15 U.S.C. § 13(b). Plaintiff claims in its Objection that because meeting competition is an affirmative defense, it does not justify dismissal of the CAC here. Obj. at 19-20. While it is true that meeting competition is "not an element of a prima facie case for violation of Section 2(a) of the RPA," as expressly recognized by the Magistrate Judge, R&R at 52 n.18, it is well-settled in the Second Circuit that a defendant may raise an affirmative defense on a Rule 12(b)(6) motion "if

the facts supporting the defense appear on the face of the complaint." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, No. 05-1720, 2008 WL 115104, at *9 (E.D.N.Y. Jan. 8, 2008) (citing *United States v. Space Hunters, Inc.*, 429 F.3d 416, 426 (2d Cir. 2005)).

In this case, Plaintiff's own allegations in the CAC implicate the meeting competition defense and make clear that it applies. *See* CAC. ¶¶ 6, 8, 99, 104. Plaintiff tries to avoid this pitfall by arguing that the discounts purportedly offered to Amazon cannot be in "good faith" because the Publisher Defendants "jointly agreed" to them. *Id.* at ¶ 104; Obj. at 20. But this argument hinges upon the existence of a price-fixing conspiracy, which the R&R correctly and resoundingly rejected as not plausibly pled. *See supra* Section I.A.[16] Since it is clear from the face of the CAC that the meeting competition defense applies, the Magistrate Judge properly recommended that Plaintiff's RPA claim be dismissed on this basis as well.

## CONCLUSION

For the foregoing reasons, as well as those explained in the Publisher Defendants' Motion and Reply, the Court should adopt the R&R in full and dismiss Plaintiff's claims against the Publisher Defendants with prejudice. Plaintiff already had ample opportunity to amend its CAC and has exhausted its right to amend. Plaintiff elected not to amend its CAC after Defendants filed their Motions to Dismiss. Accordingly, consistent with Rule 3(D) of this Court's Individual Rules of Practice in Civil Cases, the Court should not give Plaintiff leave to further amend the CAC to attempt to address its many, fatal deficiencies.

---

[16]     Plaintiff also argued before the Magistrate Judge that the meeting competition defense does not apply because different book titles offered by different Publishers are not "commodities of like grade and quality." *See* CAC. ¶ 104; Opp. at 23. Plaintiff has abandoned that argument. Obj. at 23.

Dated:  September 27, 2022

*/s/   Yehudah L. Buchweitz*

**WEIL, GOTSHAL & MANGES LLP**
Yehudah L. Buchweitz
767 Fifth Avenue
New York, NY 10153
Telephone: (212) 310-8256
Facsimile: (212) 310-8007
yehudah.buchweitz@weil.com

Jeff L. White
2001 M Street, NW
Washington , DC 20036
Telephone: (202) 682-7059
Facsimile: (202) 857-0940
jeff.white@weil.com

*Attorneys for Defendant Simon &*
*Schuster, Inc.*

*/s/  Rich Snyder (with permission)*

**FRESHFIELDS BRUCKHAUS**
**DERINGER US LLP**
Rich Snyder
700 13th Street, NW
10th Floor
Washington, DC 20005-3960
Telephone: (202) 777-4565
Facsimile: (202) 507-5965
richard.snyder@freshfields.com

*Attorney for Defendant Hachette Book*
*Group, Inc.*

Respectfully submitted,

*/s/   C. Scott Lent (with permission)*

**ARNOLD & PORTER KAYE**
**SCHOLER LLP**
C. Scott Lent
250 W. 55th Street
New York, NY 10019
Telephone: (212) 836-8220
Facsimile: (212) 836-8689
scott.lent@arnoldporter.com

*Attorney for Defendant HarperCollins*
*Publishers LLC*

*/s/   Joel Mitnick (with permission)*

**CADWALLER, WICKERSHAM &**
**TAFT LLP**
Joel Mitnick
200 Liberty Street
New York, NY 10281
Telephone: (212) 504-6555
Facsimile: (212) 504-6666
joel.mitnick@cwt.com

*Attorney for Defendant Macmillan*
*Publishing Group, LLC*

*/s/ Jennifer B. Patterson (with permission)*

**ARNOLD & PORTER KAYE**
**SCHOLER LLP**
Jennifer B. Patterson
Saul P. Morgenstern
250 W. 55th Street
New York, NY 10019
Telephone: (212) 836-7210
Facsimile: (212) 836-8689
jennifer.patterson@arnoldporter.com
saul.morgenstern@arnoldporter.com

*Attorneys for Defendant Penguin Random*
*House LLC*