**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| BOOKENDS & BEGINNINGS, LLC, on behalf of itself and all others similarly situated,<br><br>     **Plaintiff,**<br><br>  v.<br><br>AMAZON.COM, INC.; HACHETTE BOOK GROUP, INC; HARPERCOLLINS PUBLISHERS L.L.C.; MACMILLAN PUBLISHING GROUP, LLC; PENGUIN RANDOM HOUSE LLC; SIMON & SCHUSTER, INC.,<br><br>     **Defendants.** | Case Number 1:21-cv-02584-GHW-VF |

### AMAZON'S RESPONSE TO PLAINTIFF'S OBJECTIONS
### <u>TO THE MAGISTRATE JUDGE'S REPORT & RECOMMENDATION</u>

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ...................................................................................................................1

LEGAL STANDARD............................................................................................................2

ARGUMENT ........................................................................................................................3

I.     PLAINTIFF'S ROBINSON-PATMAN ACT CLAIM AGAINST AMAZON
FAILS AS A MATTER OF LAW.................................................................................4

     A.    Plaintiff Fails to Allege That "Substantial Discounts" Were Given to
Amazon "Over a Significant Period of Time."..................................................5

     B.    The Amended Complaint Directly Pleads the Existence of Multiple
Justifications for Lawful Price Differences. ....................................................7

          1.    Amazon Need Only Show the Potential Availability of Publisher
Defenses. ............................................................................................8

          2.    The Amended Complaint Establishes the Meeting Competition
Defense. ..............................................................................................8

          3.    The Amended Complaint Fails to Allege that Publisher Discounts
Are Not Justified as Functional Discounts..................................................11

          4.    The Amended Complaint Establishes that Plaintiff and Amazon
Purchase Print Trade Books Under Materially Different Terms. ..............13

     C.    The Amended Complaint Fails to Allege that Amazon Knowingly
Received Illegal Discounts ...........................................................................14

          1.    Applicable Legal Standard.................................................................14

          2.    The Amended Complaint Fails to Allege Facts Supporting a
Knowing Acceptance of Illegal Prices.............................................15

     D.    Plaintiff's Assertion of a Price Discrimination "Conspiracy" Fails as a
Matter of Law. ..............................................................................................16

II.    PLAINTIFF'S SHERMAN ACT CLAIMS FAIL AS A MATTER OF LAW.................17

     A.    Plaintiff's Legal Theory is Incompatible with the Sherman Act. ...........................17

     B.    Plaintiff's Remaining Arguments are Meritless. ...................................................19

          1.    Plaintiff Has Not Alleged "Direct" Evidence of Any Conspiracy.............19

          2.    Plaintiff Has Not Alleged Circumstantial Evidence of a
Conspiracy. .......................................................................................20

     C.    Plaintiff Has Not Preserved Any Arguments Under the Rule of Reason. .............22

     D.    The Magistrate Judge Properly Rejected Plaintiff's Monopolization Claim.........23

CONCLUSION....................................................................................................................24

## **TABLE OF AUTHORITIES**

### CASES

*ABC Distrib., Inc. v. Living Essentials, LLC,*
    2017 WL 3838443 (N.D. Cal. Sep. 1, 2017) ........................................................6

*Apex Oil Co. v. DiMauro,*
    822 F.2d 246 (2d Cir. 1987).........................................................................24

*Arthur S. Langenderfer, Inc. v. S.E. Johnson Co.,*
    729 F.2d 1050 (6th Cir. 1984) ......................................................................23

*Atl. Richfield Co. v. USA Petrol. Co.,*
    495 U.S. 328 (1990).............................................................................18,19

*Automatic Canteen Co. of Am. v. F.T.C.,*
    346 U.S. 61 (1953) .............................................................4, 8, 14, 15, 16

*B.C.B.S. United of Wis. v. Marshfield Clinic,*
    65 F.3d 1406 (7th Cir. 1995) .......................................................................10

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007)..........................................................................6, 16, 24

*Bishop v. GNC Franchising L.L.C.,*
    403 F. Supp. 2d 411 (W.D. Pa. 2005) ............................................................17

*Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.,*
    509 U.S. 209 (1993)....................................................................2, 3, 19, 22, 23

*Cargill, Inc. v. Monfort of Co., Inc.,*
    479 U.S. 116 (1986).................................................................................23

*Cash & Henderson Drugs, Inc. v. Johnson & Johnson,*
    799 F.3d 202 (2d Cir. 2015) ...............................................................5, 6, 14

*Chen v. New Trend Apparel, Inc.,*
    8 F. Supp. 3d 406 (S.D.N.Y. 2014).................................................................3

*Coalition for a Level Playing Field, L.L.C. v. AutoZone, Inc.,*
    737 F. Supp. 2d 194 (S.D.N.Y. 2010)......................................................3, 12, 13

*Coalition for a Level Playing Field, L.L.C. v. Autozone, Inc.,*
    813 F. Supp. 2d 557 (S.D.N.Y. 2011).............................................................5

*Coastal Fuels of Puerto Rico, Inc v. Caribbean Petroleum Corp.*,
990 F.2d 25 (1st Cir. 1993) ............................................................................14

*Continental T. V., Inc. v. GTE Sylvania Inc.*,
433 U.S. 36 (1977) ........................................................................................18

*Dayton Superior Corp. v. Marjam Supply Co.*,
2011 WL 710450 (E.D.N.Y. Feb. 22, 2011) ...................................................16

*Delta Airlines, Inc. v. Bombardier, Inc.*,
2021 WL 1163702 (S.D.N.Y. Mar. 25, 2021) .................................................20

*Drug Mart Pharm. Corp. v. Am. Home Prods. Corp.*,
378 F. Supp. 2d 134 (E.D.N.Y. 2005) ........................................................1, 17

*FTC v. Morton Salt Co.*,
334 U.S. 37 (1948) ....................................................................................5, 6, 7

*Falls City Indus. v. Vanco Beverage, Inc.*,
460 U.S. 428 (1983) ......................................................................................10

*Flash Elec., Inc. v. Univ. Music & Video Distr. Corp.*,
312 F. Supp. 2d 379 (E.D.N.Y. 2004) ...........................................................16

*FTC v. A.E. Staley Mfg.*,
324 U.S 746 (1945) ........................................................................................10

*FTC v. Henry Broch & Co.*,
363 U.S. 166 (1960) .......................................................................................16

*Gen. Supply Deck & Floor Underlayment Co. v. Maxxon S.W., Inc.*,
No. 00-cv-2745, 2001 WL 1480768 (N.D. Tex. Nov. 21, 2001) .....................16

*George Haug Co., Inc. v. Rolls Royce Motor Cars, Inc.*,
148 F.3d 136 (2d Cir. 1998) .............................................................................6

*Gorlick Distr. Ctrs., LLC v. Car Sound Exhaust Sys., Inc.*,
723 F.3d 1019 (9th Cir. 2013) ..............................................................14, 15, 16

*Great Atl. & Pac. Tea Co., Inc. v. FTC*,
440 U.S. 69 (1979) ........................................................................................14

*In re LIBOR Based Fin. Instrs. Antitrust Litig.*,
   2015 WL 4634541 (S.D.N.Y. Aug. 4, 2015) ........................................................................12

*Int'l Distribution Centers, Inc. v. Walsh Trucking Co.*,
   812 F.2d 786 (2d Cir. 1987)................................................................................................24

*John v. Whole Foods Mkt. Grp., Inc.*,
   858 F.3d 732 (2d Cir. 2017)..................................................................................................5

*Marjam Supply Co. v. Firestone Bldg. Prods. Co.*,
   No. 11-cv-7119, 2014 WL 5798383 (D.N.J. Nov. 7, 2014) .................................................16

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986)........................................................................................17, 19, 21

*Matthew Enter. v. Chrysler Grp.*,
   2016 WL 4269998 (N.D. Cal. Aug. 15, 2016) .......................................................................6

*Mayor and City Council of Baltimore v. Citigroup, Inc.*,
   709 F.3d 129 (2d Cir. 2013).........................................................................................20, 22

*New Albany Tractor, Inc. v. Louisville Tractor, Inc.*,
   650 F.3d 1046 (6th Cir. 2011) ..............................................................................................5

*Official Comm. of Unsecured Cred. of Color Tile, Inc. v. Coopers & Lybrand, LLP*,
   322 F.3d 147 (2d Cir. 2003)..................................................................................................8

*Pac. Bell Tel. Co. v. linkLine Commc'ns, Inc.*,
   555 U.S. 438 (2009)......................................................................................................18, 19

*Paladin Assocs. v. Montana Power Co.*,
   328 F.3d 1145 (9th Cir. 2003) ............................................................................................20

*Pani v. Empire B.C.B.S.*,
   152 F.3d 67 (2d Cir. 1998)....................................................................................................8

*Ravi v. Citigroup Glob. Mkts. Holdings, Inc.*,
   No. 1:21-cv-02223-GHW, 2022 WL 92775 (S.D.N.Y. Jan. 10, 2022) ..................................2

*Texaco, Inc. v. Hasbrouck*,
   496 U.S. 543 (1990)............................................................................................................11

*United States v. Apple, Inc.*,
   791 F.3d 290 (2d Cir. 2015)................................................................................................21

*United States v. Gladden*,
  394 F. Supp. 3d 465 (S.D.N.Y. 2019)...............................................................................3, 22

*Volvo Trucks N. Am., Inc. v. Reeder–Simco GMC, Inc.*,
  546 U.S. 164 (2006).............................................................................................3, 6, 18

## **<u>STATUTES</u>**

15 U.S.C. § 1 .............................................................................................................3, 18

15 U.S.C. § 2 ................................................................................................3, 4, 8, 14, 18

15 U.S.C. § 13 ......................................................................................................... *passim*

28 U.S.C. § 636 ...........................................................................................................2, 3

## <u>INTRODUCTION</u>

No matter what it may say, Plaintiff Bookends & Beginnings, LLC ("Bookends" or "Plaintiff") simply has not alleged "a classic hub-and-spoke conspiracy[.]" Objection ("Obj.") ECF 150, at 1.[1]  Instead, it alleges a convoluted and economically incoherent scheme whereby the five publisher defendants are accused of conspiring to *lower* their prices to a single retailer alleged to be responsible for selling around half of their print trade books, ostensibly because doing so was necessary for them to *raise* prices on the retailers selling the other half. *Id.* at 1-2, 16.  In a thorough and well-reasoned 58-page Report and Recommendation ("R&R"), ECF 141, the Magistrate Judge carefully reviewed all of Plaintiff's arguments in support of that implausible theory and found them to be deficient.  This Court should adopt those findings and dismiss Plaintiff's Amended Complaint without further leave to amend.

The centerpiece of Plaintiff's Amended Complaint is the conclusory allegation that Defendant Amazon.com, Inc. ("Amazon") orchestrated a conspiracy of publishers who all agreed to offer it discriminatory discounts in violation of the Robinson-Patman Act ("RPA"), 15 U.S.C. § 13, *et seq*.  But no court has ever found a *conspiracy* to violate the RPA—and there is no reason to do so here.[2]  All that Plaintiff has alleged is that each of five book publishers entered into separate lawful wholesale distribution agreements with Amazon, all of which provide for some unspecified level of discounting.  *See* Am. Compl. ("AC"), ECF 63, ¶ 4.  As the Magistrate Judge found, those allegations fail to support a conclusion that Amazon knew that its own prices were unlawful price discrimination because they were "not justified by any cost savings to the Publishers from distributing through Amazon," R&R, at 57, or that the Publisher Defendants

---

[1]       In this response, all emphases are added unless otherwise indicated.

[2]       *Drug Mart Pharm. Corp. v. Am. Home Prods. Corp.*, 378 F. Supp. 2d 134, 140 (E.D.N.Y. 2005) ("[R]esearch has not revealed a single case in which a conspiracy claim was asserted and allowed in a Robinson–Patman case.").

unlawfully conspired with Amazon on the terms of their respective contracts, *id.* at 17.  Because Amazon is a significant retailer of print trade books, AC ¶ 48, each Publisher Defendant negotiated its own distribution agreement with Amazon on terms that reflect marketplace conditions, including the value Amazon delivers to book publishers.  That each publisher came to terms with Amazon on a distribution agreement involving some level of discounting does not remotely suggest a conspiracy among Amazon and all of the publishers.

Once Bookends' meritless RPA conspiracy claim is dispensed with, all that is left is an allegation that Amazon and individual publishers somehow violated the Sherman Act by engaging in competitive bargaining that lowered costs to Amazon and to its customers.  That theory stands antitrust law on its head.  The Sherman Act *encourages* price competition; it does not outlaw it. To the extent that the RPA could be misread as discouraging or outlawing price competition, the Supreme Court has been clear that any such construction is not what Congress intended, and that the RPA does not "outlaw price differences that result from or further the forces of competition."[3] Because that is all that Plaintiff has alleged, its Sherman Act claims fail as a matter of law.

For all of these reasons, as further discussed below, Plaintiff's Objection should be overruled and the Amended Complaint should be dismissed.

## LEGAL STANDARD

"A district court reviewing a magistrate judge's report and recommendation 'may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.'" *Ravi v. Citigroup Glob. Mkts. Holdings, Inc.*, No. 1:21-cv-02223-GHW, 2022 WL 92775, *1 (S.D.N.Y. Jan. 10, 2022) (quoting 28 U.S.C. § 636(b)(1)).  "When a party timely objects to a magistrate's report and recommendation, a district court reviews *de novo* 'those portions of the

---

[3]     *Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 220 (1993).

report or specified proposed findings or recommendations to which objection is made.'" *Id*.  "But where 'the party makes only frivolous, conclusory or general objections, or simply reiterates her original arguments, the Court reviews the report and recommendation only for clear error.'" *Id.* (quoting *Chen v. New Trend Apparel, Inc.*, 8 F. Supp. 3d 406, 416 (S.D.N.Y. 2014)).  New arguments that were not first presented to the Magistrate Judge are forfeited in an objection.  *See United States v. Gladden*, 394 F. Supp. 3d 465, 480 (S.D.N.Y. 2019).

## ARGUMENT

Allegations of "price discrimination" are at the very core of Plaintiff's Amended Complaint.  They permeate all four causes of action—even those that are alleged to arise under the Sherman Act.[4]  Yet, the very concept of illegal discriminatory pricing has no basis in the Sherman Act.  It is a term that arises under the RPA, where its meaning implies more than just "price differences charged to different purchasers of commodities of like grade and quality."[5]  "[R]ather, the Act proscribes 'price discrimination only to the extent that it threatens to injure competition,'" *ibid.*, and there are numerous recognized circumstances in which "a seller may charge different prices to different buyers without violating" the RPA.[6]  These circumstances include when "the reduced prices reflect a bona fide 'functional discount'—in essence, a set-off for the value of services the purchaser performs for the seller," *id.*; when "sales contracts with

---

[4]      *See* AC, ¶ 107 (alleging Sherman Act § 1 violations resulting from "price discrimination agreements"); *id.* ¶ 128 (alleging Sherman Act § 2 violation resulting from "discriminatory pricing agreements"); *id.* ¶ 135 (alleging Sherman Act § 2 conspiracy involving "contracts with discriminatory pricing").

[5]      *Volvo Trucks N. Am., Inc. v. Reeder–Simco GMC, Inc.*, 546 U.S. 164, 176 (2006) (quoting *Brooke Group*, 509 U.S. at 220).

[6]      *Coalition for a Level Playing Field, L.L.C. v. AutoZone, Inc*., 737 F. Supp. 2d 194, 210 (S.D.N.Y. 2010) ("*Coalition I*").

different buyers contain materially different terms," *id.* at 211; and when prices are lowered "to meet an equally low price of a competitor," 15 U.S.C. § 13(b).

In light of the centrality of the "price discrimination" concept to all of Plaintiff's claims, this Response first addresses Plaintiff's failure to allege Amazon's knowing receipt of illegal discriminatory prices in violation of sections 2(a) and 2(f) of the RPA, followed by the resulting implications of that failure on Plaintiff's attempt to allege Sherman Act violations resultant from the same alleged conduct.

## I.   PLAINTIFF'S ROBINSON-PATMAN ACT CLAIM AGAINST AMAZON FAILS AS A MATTER OF LAW.

Plaintiff has not met its burden of alleging facts plausibly showing that Amazon knowingly received illegal discriminatory prices from any Publisher Defendant.  *See* 15 U.S.C. §§ 13(a), (f) (RPA §§ 2(a), (f)).  As the Magistrate Judge found, even if the Amended Complaint adequately supports the existence of a price differential between Amazon and other wholesale purchasers of print trade books, it fails to demonstrate that (a) any such differences were substantial and sustained over a significant period of time, as is necessary to allege competitive injury, R&R, at 46-47; (b) such differences were not justified by the materially different contract terms alleged in the Amended Complaint, *id.* at 48-52; (c) such differences were not justified by publishers' meeting competition, as is alleged in the Amended Complaint, *id.* at 52-55; or, critically, (d) Amazon had knowledge that all of the foregoing justifications were wholly unavailable to the Publisher Defendants, as is required for buyer-side liability under section 2(f) of the RPA, *id.* at 56-58 (citing *Automatic Canteen Co. of Am. v. F.T.C.*, 346 U.S. 61, 74 (1953)).  Each of these reasons independently forecloses Plaintiff's attempt to impose liability upon Amazon under the RPA.

### A.   Plaintiff Fails to Allege That "Substantial Discounts" Were Given to Amazon "Over a Significant Period of Time."

The Magistrate Judge concluded that the Amended Complaint fairly alleges that Amazon received lower prices than Bookends and other retailers.  R&R, at 45.  Amazon respectfully disagrees.[7]  Nevertheless, assuming that the Court adopts the R&R's finding that sufficient allegations of a price differential exist, the Magistrate Judge was correct to conclude that Plaintiff has not adequately alleged that any such difference was "substantial" or "sustained over time." R&R, at 46.[8]  In response, Plaintiff makes three arguments, each of which is unavailing.

First, Plaintiff reaches outside the context of the RPA and cites a case for the proposition that it need only "generally allege facts that, accepted as true, make [its] alleged injury plausible." Obj. 17 (quoting *John v. Whole Foods Mkt. Grp., Inc.*, 858 F.3d 732, 737-38 (2d Cir. 2017) (alteration in original)).  But the issue in *John* was whether plaintiff had alleged an injury that was sufficiently concrete to confer Article III standing in a consumer fraud case.  858 F.3d at 735-36. Here, by contrast, the burden of alleging *competitive injury* is part of the standard for establishing the existence of actionable price discrimination under the RPA, and controlling Supreme Court

---

[7]     Plaintiff's inability to identify the levels of any actual discounts given to Amazon or other retailers (besides itself) leave it unable to allege the existence in fact of a price differential existing between itself and Amazon, or between Amazon and other competitors (such as Barnes & Noble, Walmart, Books-a-Million, or others).  *See Coalition for a Level Playing Field, L.L.C. v. Autozone, Inc.*, 813 F. Supp. 2d 557, 568-69 (S.D.N.Y. 2011) (*Coalition II*) (concluding that plaintiff failed to satisfy applicable pleading standards when it could not allege the levels of any price discrimination between defendant and others in the market); *see also New Albany Tractor, Inc. v. Louisville Tractor, Inc.*, 650 F.3d 1046, 1051 (6th Cir. 2011) ("[P]laintiff must allege specific facts of price discrimination even if those facts are only within the head or hands of the defendants.").

[8]     These latter requirements arise because Plaintiff has not adequately alleged that it lost any particular sale to Amazon as a result of the alleged price discrimination, and instead seeks to rely upon the *Morton Salt* presumption of injury that exists only when a "substantial" price differential existing between two purchasers has been sustained over a significant period of time.  *Id.* (citing *FTC v. Morton Salt Co.*, 334 U.S. 37 (1948)); *see also Cash & Henderson Drugs, Inc. v. Johnson & Johnson*, 799 F.3d 202, 212 (2d Cir. 2015) (same).  As the Magistrate Judge concluded, Plaintiff has not alleged facts from which it could argue that it lost specific sales as a result of the alleged price discrimination.  R&R, at 47.  Plaintiff's belated offer "to plead more detail about its lost sales," Obj. 18, only confirms the inadequacy of the existing allegations in the Amended Complaint.  Likewise, Plaintiff's attempt to pivot to arguments about the "total volume of sales in the market," Obj. 18, does not establish that *it* was injured by Amazon's alleged receipt of a discriminatory price.

precedent requires that injury be to *competition* not just to the individual plaintiff.[9]  As with any other required element, a plaintiff that fails to plead facts adequate to show competitive injury fails to state a claim for price discrimination under the RPA.  R&R, at 45.

Next, Plaintiff argues—again by citing cases upon which it did not previously rely—that it "need not specify 'the amount and degree of the price discrimination'" to receive the benefit of the *Morton Salt* inference.  Obj., 18 (quoting *George Haug Co., Inc. v. Rolls Royce Motor Cars, Inc.*, 148 F.3d 136, 144 (2d Cir. 1998)).  To the contrary, *George Haug* clearly states that a plaintiff must "allege a substantial and sustained price differential."  148 F.3d at 144.  The court's conclusion, made under pre-*Twombly* pleading standards, that the plaintiff had adequately pled those elements under the very different facts of that case, *id.* at 144, is inapplicable here.[10]  As the Magistrate Judge rightly found, in this case "Plaintiff offers no factual support for its conclusory allegations that the discount was 'steep,' 'huge,' or 'substantial.'" R&R, at 46.  Plaintiff's response that such factual support is unnecessary, Obj., 18-19, only serves to confirm the point.[11]

---

[9]     *See Volvo Trucks N. Am.*, 546 U.S. at 176 (explaining that the RPA "proscribes price discrimination only to the extent that it threatens to injure competition") (quotation omitted); *id.* at 180 (concluding that plaintiff's claims were not actionable because "if price discrimination between two purchasers existed at all, it was not of such magnitude as to affect substantially competition between [plaintiff] and the 'favored' Volvo dealer"); *see also Cash & Henderson Drugs*, 799 F.3d at 211 (same).

[10]     None of the cases cited in support of this argument were cited in Plaintiff's briefs before the Magistrate Judge.  *Compare* Obj., at 18-19, *with* ECF 94, 95.  While the Magistrate Judge independently cited *George Haug*, R&R, at 29, she also correctly identified that it pre-dates *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and should not be seen today as good law on the sufficiency of factual allegations under Rule 8.  R&R, at 42 n.16.

[11]     Plaintiff's other newly cited authority is inapposite, unpublished, and from out-of-circuit.  In *ABC Distrib., Inc. v. Living Essentials, LLC*, 2017 WL 3838443 (N.D. Cal. Sep. 1, 2017), the size of the alleged discrimination was known (up to 31 cents per bottle of "5-Hour Energy").  *Id.* at *10.  The dispute that the Court found was for the jury to decide, was whether some of that differential could properly be claimed as payment for advertising services under RPA section 2(d), and therefore not discriminatory under section 2(a).  *Id.* at *11.  The court's decision thus has nothing at all to do with the issue presented here.  Likewise, in *Matthew Enter. v. Chrysler Grp.*, 2016 WL 4269998 (N.D. Cal. Aug. 15, 2016), the exact amount and duration of the price discrimination were both known ("$700 per vehicle—over 11 months").  *Id.* at *7.  The language that Plaintiff quotes out of context (Obj., 18-19), related to the court's analysis of whether those allegations could be considered "de minimis in a price-sensitive market with low profit margins."  *Id.* at *7.  That analysis lends no support to Plaintiff's position in this case: that it need not identify *any* facts concerning the amount of the alleged price discrimination.

Finally, Plaintiff argues that it "alleges facts that make it more than plausible that the degree of price discrimination was substantial and substantially affected its ability to compete with Amazon[.]" Obj., 19.  But in support, it points to little more than the very same conclusory paragraphs in which it characterized Amazon's discount as "steep," *see* AC ¶ 4, "huge," *id.*, and "substantial," *id.* ¶ 110, without identifying any facts to support those labels.  As the Magistrate Judge rightly concluded, "Plaintiff's allegation merely recites the standard for applying the *Morton Salt* inference," without supplying "sufficient facts to rely on [it]." R&R, at 46.[12]

For all of those reasons, the Magistrate Judge correctly found that Plaintiff failed to allege competitive injury.  R&R, at 47.

**B.      The Amended Complaint Directly Pleads the Existence of Multiple Justifications for Lawful Price Differences.**

Bookends next argues that the Magistrate Judge "erred in applying the meeting-competition affirmative defense, functional-discount defense, and in concluding that Defendants' contracts are materially different."  Obj., at 19.  Contrary to Plaintiff's argument, *id.* at 20, the Magistrate Judge did not shift the burden of pleading affirmative defenses from defendants to Plaintiff.  Rather, she correctly recognized that the allegations of the Amended Complaint directly establish several justifications for price differentials that are consistent with the RPA, R&R 48-55, and that Plaintiff's conclusory rhetoric could not overcome the clear implications of the alleged facts.  That was proper:  "An affirmative defense may be raised by a pre-answer motion to dismiss under Rule 12(b)(6), without resort to summary judgment procedure, if the defense appears on the

---

[12]      Other paragraphs cited by Plaintiff say nothing at all about the magnitude or duration of any price differences. *See, e.g.,* AC ¶¶ 15, 38.

face of the complaint."[13]  All of the justifications identified by the Magistrate Judge are established

from the face of the Amended Complaint.[14]

### 1. Amazon Need Only Show the Potential Availability of Publisher Defenses.

As an initial matter, the relevant question for the RPA claim against Amazon is not solely

whether the above defenses are established by the allegations of the Amended Complaint (although

they are), but whether Plaintiff has alleged facts from which it can be shown that Amazon *knows*

that those defenses are *wholly unavailable* to the Publisher Defendants.  *Infra*, § I.C (addressing

the standards for buyer-side liability under RPA § 2(f)); *see also Automatic Canteen*, 346 U.S. at

74; R&R, at 57.  Accordingly, if it is even debatable that the Publisher Defendants have a defense,

that necessarily means Amazon cannot be liable under the RPA.

### 2. The Amended Complaint Establishes the Meeting Competition Defense.

Plaintiff argues that the Magistrate Judge erred in recommending dismissal on the basis of

the RPA's meeting competition defense.  Obj., 20.  But that defense is established on the face of

the Amended Complaint.  In particular, the Amended Complaint directly pleads: the "Big Five

[publishers] are *horizontal competitors* in the publication and sale (at wholesale) of print trade

books."  AC ¶ 7.  Further, those horizontal competitors allegedly met one another's "price

concessions" to Amazon.  *Id.* ¶ 4.  The meeting competition defense was thus wholly established

within the first seven paragraphs of the Amended Complaint.  *See* 15 U.S.C. § 13(b) ("[N]othing

---

[13]     *Pani v. Empire B.C.B.S.*, 152 F.3d 67, 74 (2d Cir. 1998); *see also Official Comm. of Unsecured Cred. of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 158 (2d Cir. 2003) (same).

[14]     As discussed below, most of the issues raised by Plaintiff do not involve "defenses" to the RPA, but rather concern issues that go to whether Plaintiff has alleged price discrimination in the first instance.  Regardless, the salient point is that the Amended Complaint establishes multiple reasons why the alleged discounts given to Amazon are lawful, and the Amended Complaint fails to allege facts contradicting that conclusion.

herein contained shall prevent a seller rebutting the prima-facie case . . . by showing that his lower price . . . was made in good faith to meet an equally low price of a competitor").

Moreover, as the Magistrate Judge correctly stressed, "Plaintiff also alleges that 'acting alone, none of the [Publishers] could have raised the market price of trade print books'; it was only through 'collusion' that the Publishers were able to cause a market-wide rise in prices." R&R, at 53 (quoting AC ¶¶ 13, 39-40). The necessary implication of those allegations is that each Publisher Defendant's wholesale pricing of individual print trade books is constrained by other publishers' wholesale pricing of different print trade books, *i.e.*, that they act as competitors. These and other allegations identified by the Magistrate Judge, R&R, at 53, establish the applicability of the meeting competition defense from the face of the Amended Complaint.

Notably, Plaintiff *has abandoned* the primary argument it made before the Magistrate Judge, which was that the meeting competition defense was unavailable as a matter of law because book publishers sell differentiated products. *Compare* Opp., ECF 95, at 19, *with* Obj., at 20. The Magistrate Judge correctly determined that Plaintiff's former argument "finds no support in the text of the statute or the case law," R&R, at 54, and that it is contradicted by the allegation that collusion is necessary for publishers to raise their prices, *id.* Plaintiff is therefore right not to renew that argument here. But in abandoning it, Plaintiff simply underscores that the meeting competition defense *is* legally available to publishers who lower their prices to compete against other publishers, leaving no reason why that defense should not be applied to the alleged facts.

Plaintiff's final argument against the meeting competition defense is premised upon an unsupportable mischaracterization of the Amended Complaint. Obj., 20. As recited in the R&R's Procedural Background section, Plaintiff originally began this case by alleging that Amazon and the Publisher Defendants unlawfully *inflated* prices through the use of Most Favored Nation

("MFN") clauses.  R&R, at 7.  But Plaintiff abandoned that theory and adopted its current RPA price discrimination theory after a review of defendants' contracts enabled it to confirm that the relevant "agreements . . . *did not contain an MFN clause*."  *Id.*  Incredibly, against that backdrop, Plaintiff now argues that the meeting competition defense should be considered unavailable because certain publishers supposedly guaranteed to Amazon that its purchase discount would match the lowest discounts that they offered to any other retailer, *i.e.*, that they granted Amazon an MFN.  Obj., 20.  Plaintiff's argument is legally and factually meritless.

Even if Plaintiff's characterization of the alleged facts was correct—and it is not—there is no reason why an MFN clause would render the meeting competition defense unavailable.  By definition, an MFN clause ensures a purchaser that its price will be at least as favorable as the prices that a seller charges to its other customers.  *See, e.g., B.C.B.S. United of Wis. v. Marshfield Clinic*, 65 F.3d 1406, 1415 (7th Cir. 1995).  "[S]ystematic discrimination," Obj. 20, could not occur from a publisher increasing the discount given to Amazon to match the discounts that it was giving to others, because that price would necessarily be one that was available to other retailers in the marketplace.  Nothing about that circumstance suggests that a publisher would thereby be disqualified from showing that either the other retailers' prices, the matching price received by Amazon, or any other price existing in the marketplace, was justified by meeting competition.  The cases cited by Plaintiff, Obj. 20, did not involve MFNs, and offer no support to this argument.[15]

---

[15]     Plaintiff primarily relies upon *FTC v. A.E. Staley Mfg.*, 324 U.S 746 (1945).  However, in *Staley*, the Court was concerned with a pricing system that calculated freight costs based upon a starting location that was "distant from the point of production," which caused buyers in some locations to be systematically disadvantaged by the payment of "unearned or phantom freight."  *Id.* at 751.  The Court's conclusion that the defendant adopted that system for reasons other than meeting competition was specific to the peculiar facts of that case, *id.* at 754-55, and does not support Plaintiff's arguments in this case.  Likewise, in *Falls City Indus. v. Vanco Beverage, Inc.*, 460 U.S. 428 (1983), the Court distinguished *Staley* on the basis of its "markedly" different "facts and circumstances," and upheld price differences justified by meeting competition.  *Id.* at 442, 449-50.

Just as importantly, Plaintiff's factual representation in support of this argument is knowingly false, and contrary to the allegations of the Amended Complaint.  In the paragraph that serves as the basis for this new MFN-based argument, the Amended Complaint states only that Amazon receives "discounts below the standard discounts available to other booksellers"—not that it was promised discounts that would match the greatest discount received by anyone else.  *See* AC, ¶ 9.[16]  Neither that paragraph, nor any other allegation in the Amended Complaint, supports any "reasonable inferences," Obj. 20, that publishers' discounts to Amazon were based on MFNs or any similar policy.  Plaintiff withdrew its original Complaint after confirming the absence of any MFNs in defendants' agreements, *see* ECF 49, at 1-2, and it cannot use its Objection to re-assert their existence.

### 3. The Amended Complaint Fails to Allege that Publisher Discounts Are Not Justified as Functional Discounts.

Plaintiff next argues that "the functional-discount defense does not apply because . . . the Publisher Defendants separately compensate Amazon" for certain alleged services.  Obj. 21.  But as the Magistrate Judge observed, the existence of a functional discount has but one requirement—that the buyer provide services to the seller, which Plaintiff concedes that Amazon does—and only one possible disqualification—that the discount "greatly exceeds" the value of those services, which Plaintiff has no basis to allege.  R&R, at 50.[17]  As the R&R states, Plaintiff directly alleges

---

[16]    Plaintiff sources its argument to language in a different section of the R&R, in which the Magistrate Judge stated her reasons for finding adequate allegations of price discrimination, and errantly attributed to paragraph 9 a quotation that appears nowhere in that or any other paragraph of the Amended Complaint.  *See* Obj. 20 (quoting R&R, at 39 (citing AC ¶ 9.n.20)).  While Plaintiff thus claims to find support for its argument in an apparent direct quotation of its own Amended Complaint, *id.*, it knows full well that the Amended Complaint does not contain that quotation and does not otherwise allege the existence of any MFNs.  *See* AC ¶ 9 n.20.

[17]    Plaintiff erroneously characterizes this as a "defense."  Obj. 21.  To the contrary, Plaintiff has the burden of alleging facts negating the existence of a valid functional discount.  *See Texaco, Inc. v. Hasbrouck*, 496 U.S. 543, 561 n.18 (1990) ("[T]he burden of proof remains with the enforcement agency or plaintiff in circumstances involving functional discounts since functional pricing negates the probability of competitive injury, an element of a prima facie case of violation.").

"that Amazon performed additional services for the Publishers," *id.* (citing AC, ¶¶ 5, 102), establishing that it was entitled to receive a functional discount of some level to compensate it for those services, *id.* Plaintiff cannot allege that the amount of the discount given to Amazon "*greatly exceeds the value or cost of [those] service[s]*," *id.* (quoting *Coalition I*, 737 F. Supp. 2d at 215), because Plaintiff "does not know the amount of the discount offered to Amazon" nor "the amount of [any] separate fees paid by the Publishers to Amazon for the provision of additional services." *Id.* The Objection provides no basis to contest those straight-forward conclusions.

In addition to the services identified by the Magistrate Judge, the Amended Complaint directly alleges other significant benefits that the Publisher Defendants receive by virtue of Amazon's investment in its store, which differentiate it from other retailers like Plaintiff. *See* AC, ¶¶ 69-72. The Amended Complaint contains no allegations that the Publisher Defendants separately compensate Amazon for the value of those benefits, which independently establish a valid functional discount. *See* Amazon's Mot. to Dismiss, ECF 78, at 14-17.

The Magistrate Judge also correctly concluded that *Hasbrouck* does not support the "categorical assertion[s]" Plaintiff makes about that case. R&R, at 51 n.17; Obj., 21-22. The case is merely one in which the record failed to support that discounts were reasonable reimbursements for the services provided, *id.*, which in no way suggests that a Plaintiff can negate this defense by alleging *no facts* of any kind about the value of services provided or the proportionality of discounts provided in return for those services. Plaintiff's conclusory assertion that any discounts granted to Amazon are greater than the value of services received by the publishers, Obj. 22-23, is speculative and should not be credited.[18]

---

[18]      As is true of many of Plaintiff's citations, *In re LIBOR Based Fin. Instrs. Antitrust Litig.*, 2015 WL 4634541 (S.D.N.Y. Aug. 4, 2015), Obj. 22, has nothing to do with the RPA nor with the validity of Plaintiff's legal theories.

**4.      The Amended Complaint Establishes that Plaintiff and Amazon
Purchase Print Trade Books Under Materially Different Terms.**

Plaintiff also contests that differences in the "standard" discount it receives of 46% percent off publishers' list price, AC ¶ 94, and the unspecified discounts granted to Amazon are the result "'of materially different contract terms.'"  Obj. 22 (quoting R&R, at 48).  Notably, Plaintiff does not contest the Magistrate Judge's conclusion that such contractual differences may justify differences in the discounts given to different purchasers.  R&R, at 49-50 (citing *Coalition I*, 737 F. Supp. 2d at 215-17) (holding that plaintiff's "pleading must *refute the inference* that parts are not sold subject to materially different contract terms"); Obj., at 23 (conceding that "some terms can be so 'materially different' that they render the goods themselves different for purposes of RPA protection").  Rather, it solely argues that the Amended Complaint does not allege any contractual differences that could justify application of that rule.  Plaintiff is wrong.

The terms under which Amazon and Plaintiff allegedly purchase wholesale print trade books could not be more different.  While the Amended Complaint alleges that Plaintiff purchases print trade books under "standard" terms available to any wholesale purchaser without any further commitment, AC  ¶ 94, it alleges that Amazon negotiates highly customized, multi-year agreements providing not only for the wholesale purchase of print trade books, but also for the provision by Amazon of specific services that the Publisher Defendants value.  *Id.* ¶¶ 9, 101-03.  Plaintiff's assertion that the Publisher Defendants separately compensate Amazon for some (not all) of these services, Obj. at 22-23, does not contradict the Magistrate Judge's conclusion that the Amended Complaint itself shows that Plaintiff and Amazon purchase print trade books under

materially different contract terms, which on its own lawfully may justify differences in the prices that each pay.  R&R, at 49-50.[19]

*               *               *               *

In short, Plaintiff fails to allege that any wholesale price differences existing between Plaintiff and Amazon do not exist for reasons expressly permitted by the RPA and other competition laws.

### C.   The Amended Complaint Fails to Allege that Amazon Knowingly Received Illegal Discounts

#### 1.   Applicable Legal Standard.

The Supreme Court has long required section 2(f) of the RPA to be construed so as not to discourage or punish "sturdy bargaining between buyer and seller." *Automatic Canteen*, 346 U.S. at 73-74.   Purchaser liability under section 2(f) is both narrow and "derivative" of seller liability under sections 2(a) thereof.  *Great Atl. & Pac. Tea Co., Inc. v. FTC*, 440 U.S. 69, 77 (1979) ("buyer liability under § 2(f) is dependent on seller liability under § 2(a)"); *see also Cash & Henderson Drugs*, 799 F.3d at 215 ("A buyer cannot be liable unless the seller of the goods is liable under another section of the Act.").

While a *prima facie* showing of the seller's liability under section 2(a) is necessary to state a claim against a buyer under section 2(f), it is far from sufficient.  Because the buyer defendant must have knowledge of illegality, "a buyer cannot be liable if a prima facie case could not be established against a seller *or if the seller has an affirmative defense.*"  *Great Atl. & Pac. Tea Co.,* 440 U.S. at 76.  Under this standard, a buyer is not liable under section 2(f) if the lower prices

---

[19]     *See also Coastal Fuels of Puerto Rico, Inc v. Caribbean Petroleum Corp.*, 990 F.2d 25, 27 (1st Cir. 1993) (Breyer, J.) (the RPA permits price differences that reflect purchasers' "different market conditions"); *Gorlick Distr. Ctrs., LLC v. Car Sound Exhaust Sys., Inc.*, 723 F.3d 1019, 1022 (9th Cir. 2013) (RPA claim failed where plaintiff failed to show that price differences "resulted from anything other than the significant differences in how the two companies did business").

obtained are "either within one of the seller's defenses . . . or *not* known by him *not to be within* one of those defenses." *Automatic Canteen*, 346 U.S. at 74; *see also id.* ("[T]here is no substantive violation if the buyer did not *know* that the prices it induced or received were not cost-justified."). "Plaintiff thus bears the burden of showing that the buyer knew both that (1) he was receiving a lower price than a competitor and (2) the seller would have 'little likelihood of a defense' for offering that price." *Gorlick Distr. Ctrs., LLC v. Car Sound Exhaust Sys., Inc.*, 723 F.3d 1019, 1022 (9th Cir. 2013) (quoting *Automatic Canteen*, 346 U.S. at 79).   "Restricting liability to situations where the buyer knowingly accepted illegal prices prevents section 2(f) from 'putting the buyer at his peril whenever he engages in price bargaining.'" *Id.* (quoting *Automatic Canteen*, 346 U.S. at 73).

### 2.      The Amended Complaint Fails to Allege Facts Supporting a Knowing Acceptance of Illegal Prices.

Plaintiff has not met its burden of alleging particularized facts plausibly showing that Amazon knowingly accepted illegal discriminatory prices for print trade books.  As discussed above, multiple viable justifications for any price difference are evident in the allegations of the Amended Complaint.  *Supra*, at 8-11.  Even if Plaintiff were correct that there are grounds to contest the applicability of one or more of those justifications, that still would not show that Amazon has knowledge that the prices it received affirmatively were "not [] within one of those defenses." *Automatic Canteen*, 346 U.S. at 74; *see also Gorlick Distr. Ctrs.*, 723 F.3d at 1022 (same).

Plaintiff argues that it "is not solely relying on [Amazon's alleged receipt of] 'better-than-published prices[.]'"  Obj., 25.  But in fact its central argument before the Magistrate Judge was that "Amazon knows that its discounts are higher than Defendants' published standard discounts." Opp., ECF 95, at 15 (quoting AC ¶ 6).  That allegation is facially inadequate to show knowledge

of illegality.  *See Gorlick Distr. Ctrs.*, 723 F.3d at 1022 ("The receipt of better-than-published prices, without more, does not satisfy section 2(f)'s knowledge requirement.").  But while Plaintiff now appears to recognize that such an allegation does not carry its burden, it adds little else that could plausibly show knowledge of illegality under these circumstances.  The one additional allegation that it recites—that Amazon supposedly demands increased discounts over time, Obj., 25—is insufficient as a matter of law.[20]  Even if that were a well-pleaded allegation of fact, it still would not evidence knowledge that Amazon "did anything other than bargain for the best legally justifiable price."  *Marjam Supply Co. v. Firestone Bldg. Prods. Co.*, No. 11-cv-7119, 2014 WL 5798383, *6 (D.N.J. Nov. 7, 2014); *see also Automatic Canteen Co.*, 346 U.S. at 73-74 (the RPA should not be read in a manner to discourage "sturdy bargaining between buyer and seller").[21]

### D.   Plaintiff's Assertion of a Price Discrimination "Conspiracy" Fails as a Matter of Law.

Finally, to the extent that Plaintiff's claim depends upon an allegation that multiple publishers conspired to charge discriminatory prices to Amazon's competitors, Obj. 1, it fails as a matter of law.  As the Supreme Court has explained, the RPA "is aimed at price discrimination, not conspiracy."  *FTC v. Henry Broch & Co.*, 363 U.S. 166, 174 (1960).  For that reason, numerous courts have held that attempts to allege conspiracies under the RPA fail to state a claim.  *See Gen. Supply Deck & Floor Underlayment Co. v. Maxxon S.W., Inc.*, No. 00-cv-2745, 2001 WL 1480768, *4 (N.D. Tex. Nov. 21, 2001) ("There is no provision in the Robinson–Patman Act

---

[20]   Plaintiff notably hedges this allegation of fact by stating that it "presum[es]" that Amazon's discounts increase annually.  *See* AC ¶ 9 n.21.

[21]   Contrary to Plaintiff's description, Obj. 24, the court in *Dayton Superior Corp. v. Marjam Supply Co.*, 2011 WL 710450 (E.D.N.Y. Feb. 22, 2011) dismissed a counterclaim brought under RPA section 2(f) after finding that the allegations of knowledge were "wholly conclusory in nature."  *Id.* at *13.  Likewise, while the court in *Flash Electronics* found that a section 2(f) claim had been adequately pled under pre-*Twombly* standards, it acknowledged that the knowledge allegations were "admittedly thin, straying into the realm of conclusory statements that do little more than parrot the language of the statute."  *Flash Elec., Inc. v. Univ. Music & Video Distr. Corp.*, 312 F. Supp. 2d 379, 400 (E.D.N.Y. 2004).  Under modern standards, that type of allegation "will not do."  *Twombly*, 550 U.S. at 555.

providing for such a claim—'[t]he Act is aimed at price discrimination, not conspiracy.'"); *Drug Mart Pharm. Corp.*, 378 F. Supp. 2d at 140 ("research has not revealed a single case in which a conspiracy claim was asserted and allowed in a Robinson–Patman case"); *Bishop v. GNC Franchising LLC*, 403 F. Supp. 2d 411, 424 (W.D. Pa. 2005) ("[T]here exists no authority for allowing a conspiracy claim under the Robinson–Patman Act").

Plaintiff's purported conspiracy is no different. An allegation that multiple competing sellers somehow "conspired" to charge discriminatorily low prices to a common customer, would be practically and economically indistinguishable from an allegation that those same sellers lowered their prices in competition with one another. Indeed, everything that Plaintiff ascribes to a conspiracy in this case is equally consistent with the inference that the Publisher Defendants regard Amazon as an important sales channel for their print trade books, *see* AC ¶ 48, and they consequently compete against one another for the opportunity to sell more books in its store. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 594 (1986) ("[C]utting prices in order to increase business often is the very essence of competition."). It would contravene the very purpose of antitrust law if such price cutting were to be treated instead as indicia of an unlawful conspiracy. *Id.*

*        *        *        *

For all of these reasons, Plaintiff fails to show that the Magistrate Judge erred in recommending dismissal of Plaintiff's RPA claim against Amazon.

## II.   PLAINTIFF'S SHERMAN ACT CLAIMS FAIL AS A MATTER OF LAW.

### A.   Plaintiff's Legal Theory is Incompatible with the Sherman Act.

Once Plaintiff's meritless RPA allegation is discarded, the Amended Complaint charges nothing that can remotely be characterized as anti-competitive. While Plaintiff re-packages its

claims into three other causes of action, all brought under the Sherman Act,[22] each such theory describes the actionable wrongdoing as "discriminatory pricing" in some form or fashion.[23]  But if the prices Publisher Defendants charged to Amazon are not "discriminatory" within the meaning of the RPA, then there is nothing in federal antitrust law that would regard them with hostility.

"Interbrand competition . . . is the 'primary concern of antitrust law'" and "[t]he Robinson–Patman Act signals no large departure from that main concern." *Volvo Trucks N. Am.*, 546 U.S. at 180-81 (quoting *Continental T. V., Inc. v. GTE Sylvania Inc.*, 433 U.S. 36, 51-52 n.19 (1977)). "To avoid chilling aggressive price competition, [the Supreme Court has] carefully limited the circumstances under which plaintiffs can state a Sherman Act claim by alleging that prices are too low." *Pac. Bell Tel. Co. v. linkLine Commc'ns, Inc.*, 555 U.S. 438, 451 (2009).  "Low prices benefit consumers regardless of how those prices are set, and so long as they are above predatory levels, they do not threaten competition."  *Id.* (quoting *Atl. Richfield Co. v. USA Petrol. Co.*, 495 U.S. 328, 340 (1990)).

"As a general rule, the exclusionary effect of prices above a relevant measure of cost either reflects the lower cost structure of the alleged predator, and so represents competition on the merits, or is beyond the practical ability of a judicial tribunal to control without courting intolerable risks of chilling legitimate price-cutting." *Brooke Grp.*, 509 U.S. at 223.  "Even in an oligopolistic market, when a firm drops its prices to a competitive level to demonstrate to a maverick the unprofitability of straying from the group, it would be illogical to condemn the price cut:  The antitrust laws then would be an obstacle to the chain of events most conducive to a breakdown of

---

[22]     *See* Am. Compl. ¶¶ 105-23 (Second Cause of Action, under 15 U.S.C. § 1); *id.* ¶¶ 124-30 (Third Cause of Action, under 15 U.S.C. § 2); *id.* ¶¶ 131-38 (Fourth Cause of Action, under 15 U.S.C. § 2)

[23]     *Id.* ¶¶ 111, 119, 128, 135

oligopoly pricing and the onset of competition." *Id.* at 223-24. "[M]istaken inferences in cases such as this one are especially costly, because they chill the very conduct the antitrust laws are designed to protect." *Matsushita Elec. Indus.*, 475 U.S. at 594. "Firms might raise their retail prices or refrain from aggressive price competition to avoid potential antitrust liability." *Pac. Bell Tel. Co.*, 555 U.S. at 452.

These core principles of antitrust law are fatal to Plaintiff's Second, Third, and Fourth Causes of Action. While Plaintiff devotes many pages to arguing that it has validly alleged the existence of a conspiracy among Amazon and the Publisher Defendants, Obj., at 7-14, it never comes to grips with the basic reality that it is complaining about conduct (price competition between itself and Amazon) that the Sherman Act actively seeks to encourage. There is no number of conclusory references to "price-fixing," Obj., 2, 5, 6, 14, that can obscure the fact that "[a]t bottom, Plaintiff's complaint is that Amazon was given a lower wholesale price, allowing it to charge a lower retail price to consumers without jeopardizing its profit margin." R&R, at 32. The Magistrate Judge rightfully rejected that argument as antithetical to the very laws upon which Plaintiff purports to rely, which were after all "enacted for 'the protection of *competition*, not *competitors*.'" *Id.* (quoting *Atl. Richfield*, 495 U.S. at 338 (emphasis in original)).

### B.       Plaintiff's Remaining Arguments are Meritless.

Plaintiff's Sherman Act claims fail primarily for the reasons stated above. In addition, various individual arguments made by Plaintiff fail on other grounds.

#### 1.       Plaintiff Has Not Alleged "Direct" Evidence of Any Conspiracy.

Plaintiff implausibly argues that it has alleged "direct" evidence of a horizontal conspiracy, in the form of the separately-negotiated *vertical* agreements between Amazon and individual publishers. Obj., 9-10. As the Magistrate Judge concluded, that argument fundamentally misunderstands the nature of "direct" evidence, which is evidence that does not require drawing

any inferences such as "'a recorded phone call in which two competitors agreed to fix prices at certain levels.'"  R&R, at 14 (quoting *Mayor and City Council of Baltimore v. Citigroup, Inc*., 709 F.3d 129, 136 (2d Cir. 2013)).

To the extent that Plaintiff is attempting to argue that the terms of Defendants' contracts literally set forth a horizontal agreement, Obj., 7-8, it is mischaracterizing its own allegations in ways that should not be credited.   While the Amended Complaint asserts that defendants' agreements require publishers to match the discounts given by other publishers, AC ¶ 8, the contractual language cited in support of that assertion does not bear any such meaning, *id.* ¶ 8 n.19. Rather, the quoted provisions plainly state that an individual publisher *is* offering a particular price to meet competition *that has already been* offered to Amazon by another publisher.  *Id.*  That is why the contracts use past tenses to describe the competing offers, and present or future tenses to identify the terms being offered in response.  *Id.*[24]  Any suggestion that Defendants' contracts evidence a horizontal conspiracy, directly or indirectly, is meritless.[25]

### 2. Plaintiff Has Not Alleged Circumstantial Evidence of a Conspiracy.

Plaintiff also fails to allege indirect or circumstantial evidence of a conspiracy in restraint of trade.

### a. Asserted Actions Against the Publishers' Individual Self-Interest Do Not Evidence a Conspiracy.

Plaintiff argues that the "most important plus factor" evidencing a conspiracy is if Defendants acted against their individual self-interest, and that this factor is established by

---

[24]     *See Delta Airlines, Inc. v. Bombardier, Inc*., 2021 WL 1163702, *10 (S.D.N.Y. Mar. 25, 2021) ("When allegations contained within the complaint are contradicted by documents attached to the complaint, the documents control, and the Court need not accept the allegations contained within the complaint as true.") (quotation omitted).

[25]     Plaintiff's citation to *Paladin Assocs. v. Montana Power Co.*, 328 F.3d 1145 (9th Cir. 2003), Obj. 7 n.4, is inapposite.  In that case, parties competing at the same level of distribution entered into agreements that the plaintiff challenged as illegal group boycotts.  *Id.* at 1153.  The challenged agreements were, accordingly, horizontal in nature, making them distinctly unlike the vertical purchase agreements alleged in this case.

allegations that it would be "irrational in a competitive market, for any Publisher Defendant, acting independently, to agree to sell most of its book supply at discounts below the competitive market rate." Obj., 9-10. To describe Plaintiff's theory is to refute it.

First, Plaintiff's description of what should be expected in a competitive market has it backwards. "[C]utting prices in order to increase business often is the very essence of competition." *Matsushita Elec. Indus.*, 475 U.S. at 594 (rejecting the argument that "evidence of rebates and other price-cutting activities . . . tend to prove a combination to suppress prices"). As the Magistrate Judge concluded, Plaintiff's allegations about the share of print trade books sold by Amazon make it rational for any publisher "to reach a distribution agreement with Amazon—even if it meant offering Amazon a large discount[.]" R&R, at 19.

Second, an inference of conspiracy would not arise solely from evidence that defendants acted inconsistent with their individual self-interest. Rather, that inference depends upon the same actions *also* being consistent with defendants' interests when acting *collectively*. *See United States v. Apple, Inc.*, 791 F.3d 290, 316 (2d Cir. 2015). There is absolutely nothing about discounting to an important customer that becomes more advantageous to a seller when *others* engage in the same practice. To the contrary, the classic reason that many price-fixing cartels are unstable and difficult to enforce, is that individual sellers have a powerful incentive to undercut their rivals and gain market share. That advantage *goes away* when others follow suit. *See Brooke Grp.*, 509 U.S. at 223-24. So, if it would be irrational for an individual seller to offer discounts to a major customer, Obj., 10, it would be even more irrational to do so conspiratorially.[26]

---

[26]    This point is only underscored by Plaintiff's convoluted argument that a conspiracy to *cut* prices to Amazon was rational because it created a reason to then raise "list prices to recoup losses incurred because of the discounts." Obj. 10. That makes no sense. Plaintiff is arguing that the Publishers conspired to hurt themselves, only so that they could then undo the injury. A theory as incoherent as that one is, should not be credited.

        **b.**       **Other Asserted Plus Factors Fail to Suggest a Conspiracy.**

In addition to purported actions against self-interest, Plaintiff briefly recites a litany of other purported plus factors that it argues are evidence of a conspiracy, including some that it failed to advance previously. Obj., at 11-12.[27] Those arguments should be rejected for the reasons stated by the Magistrate Judge, R&R, at 20-28, and by the Publisher Defendants, ECF 153, at 7-10.

     **C.**      **Plaintiff Has Not Preserved Any Arguments Under the Rule of Reason.**

Plaintiff argues that the "Magistrate Judge erred" by not condemning the "vertical agreements between Amazon and the Publisher Defendants . . . under the rule of reason." Obj. 13. Plaintiff's argument is frivolous.

First, Plaintiff is foreclosed from making this argument because it did not first present it to the Magistrate Judge. *See Gladden*, 394 F. Supp. 3d at 480. Plaintiff included only one fleeting reference to its "rule of reason and monopoly claims" in its Opposition to the Publisher Defendants' Motion to Dismiss, *see* ECF 94, at 14, and made no mention at all of such a claim in its Opposition to Amazon's Motion to Dismiss, ECF 95. Neither brief contains a composed argument that the Amended Complaint can be upheld on the theory that vertical distribution agreements violate the rule of reason. Plaintiff cannot fault the Magistrate Judge for "not applying [rule of reason] scrutiny," Obj. 13, when it made no argument that she should.

 Second, Plaintiff cites no authority for the proposition that individual, vertical purchase agreements could ever be illegal under the rule of reason on the basis that the seller(s) offered the buyer(s) excessive discounts. The very notion is absurd. As the Supreme Court has held in a similar context, "[t]o hold that the antitrust laws protect competitors from the loss of profits due to

---

[27]     Plaintiff argues that "allegations of a concentrated market" support its alleged conspiracy. Obj., 12. But that argument is newly made in this Court, and therefore waived. *See Gladden*, 394 F. Supp. 3d at 480. In any event, it does not, standing alone, suffice to plead an antitrust conspiracy. *See, e.g., Mayor and City Council of Baltimore*, 709 F.3d at 139.

[] price competition would, in effect, render illegal any decision by a firm to cut prices in order to increase market share." *Cargill, Inc. v. Monfort of Co., Inc.*, 479 U.S. 104, 116 (1986); *see also Brooke Grp.*, 509 U.S. at 223 (same). "The antitrust laws require no such perverse result, for '[i]t is in the interest of competition to permit dominant firms to engage in vigorous competition, including price competition.'" *Id.* (quoting *Arthur S. Langenderfer, Inc. v. S.E. Johnson Co.*, 729 F.2d 1050, 1057 (6th Cir. 1984)). Plaintiff's contention that Amazon's wholesale acquisition price is itself anti-competitive, fails as a matter of law.

Likewise, there is no merit to Plaintiff's argument that allegations of Amazon's market share "combined with allegations that consumer prices increased," Obj. 14, adequately state a claim for violation of the antitrust laws. Plaintiff has not alleged any *conduct* on the part of Amazon other than that it purchased discounted books at wholesale and re-sold them to its customers. There is no allegation that those purchase agreements included any terms requiring the Publisher Defendants to raise their list prices. To the contrary, Plaintiff merely states that was a "foreseeable" outcome, Obj. 13, not that it was in any way a part of the agreement between Amazon and any Publisher. That does not state a claim.

### D. The Magistrate Judge Properly Rejected Plaintiff's Monopolization Claim.

Finally, Plaintiff argues that the "Magistrate Judge failed to address Bookends' monopoly claims." Obj., 15. That is false. The R&R contains a section specifically addressing that allegation, and recommending it be dismissed for failure to state a claim. R&R, at 28.

Plaintiff asserts no valid objection to the Magistrate Judge's reasoning. As she determined, Plaintiff's monopolization claim (Third Cause of Action), has only one operative allegation, which is that "Amazon has willfully acquired and maintained its monopoly power in the relevant market by unlawful and improper means, including Defendants' discriminatory pricing agreements and agreement to control the wholesale prices of print trade books." AC ¶ 128; R&R, at 28. By that

point in her analysis, however, the Magistrate Judge had already concluded that Plaintiff had not alleged the existence of any such agreements, so its "Section 2 claim as against Amazon, premised on Amazon having participated and facilitated in that conspiracy, necessarily fails." R&R, at 28. Plaintiff identifies no reason to contradict that conclusion.[28]

The Magistrate Judge also recommended dismissal of Plaintiff's claim for conspiracy to monopolize (Fourth Cause of Action) for much of the same reasons. R&R, at 28. Plaintiff's argument that it need not have alleged that the Publisher Defendants specifically intended to make Amazon a monopolist, but instead that each merely "understood the general nature of the conspiracy," misstates the law in the Second Circuit. *See Int'l Distribution Centers, Inc. v. Walsh Trucking Co.*, 812 F.2d 786, 793 (2d Cir. 1987) (a conspiracy to monopolize requires a "plurality of actors sharing [the] intent" to "create a monopoly"); *Apex Oil Co. v. DiMauro*, 822 F.2d 246, 252 (2d Cir. 1987) (same).

## CONCLUSION

For all of these reasons, Plaintiff's Objection to the Magistrate Judge's Report and Recommendation should be overruled and the Amended Complaint should be dismissed. Because Plaintiff has already amended its Complaint once, and did not seek leave to amend in response to Amazon's or the Publisher Defendants' motions, its belated request for "an opportunity to replead its claims," Obj. 25, should also be denied. *See* Indiv. R. Prac. (Civ.), R. 3(D); Fed. R. Civ. P. 15(a)(2).

---

[28]     Plaintiff's assertion that the Magistrate Judge "assumed for purposes of Amazon's motion" that Amazon had acquired "monopoly power" through "anticompetitive agreements with each of the Publisher Defendants," Obj. 15 (citing R&R, at 5), is meritless. Plaintiff is citing to a portion of the R&R in which the Magistrate Judge summarized and described the allegations of the Amended Complaint. *See* R&R, at 2-7 ("Factual Background"). But the alleged existence or use of "anticompetitive agreements" is not a fact that courts are required to assume to be true on a motion to dismiss. Rather, they are legal conclusions, and Plaintiff's burden was to allege facts plausibly supporting those conclusions. *Twombly*, 550 U.S. at 557. Plaintiff failed to do so.

Dated:  September 27, 2022

Respectfully Submitted,

/s/ John E. Schmidtlein
John E. Schmidtlein (*Pro Hac Vice*)
Jonathan B. Pitt (S.D.N.Y. Bar No. jp0621)
Carl R. Metz (*Pro Hac Vice*)
WILLIAMS & CONNOLLY LLP
680 Maine Ave., S.W.
Washington, DC 20024
Tel.: (202) 434-5000
Fax: (202) 434-5029
JSchmidtlein@wc.com

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that a copy of the foregoing AMAZON'S RESPONSE TO PLAINTIFF'S OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT & RECOMMENDATION has been filed and served upon counsel of record via ECF electronic notification.


Dated:  September 27, 2022

Respectfully Submitted,

/s/ John E. Schmidtlein

John E. Schmidtlein (*Pro Hac Vice*)