T 206.623.7292    F 206.623.0594



Steve W. Berman
**HAGENS BERMAN SOBOL SHAPIRO LLP**
1301 SECOND AVENUE, SUITE 2000
SEATTLE, WA  98101
www.hbsslaw.com
**Direct (206) 268-9320**
**steve@hbsslaw.com**

[REDACTED VERSION]

December 14, 2022

**Vɪᴀ ECF**

Honorable Valerie Figueredo
United States District Court
Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl St.
New York, NY 10007-1312

Re:     *Bookends & Beginnings LLC v. Amazon.com, Inc., et al.*, 1:21-cv-02584
        (*Bookends*)

Dear Judge Figueredo:

        In their letter briefs [ECF Nos. 166 and 167], Amazon and the Publisher
Defendants argue that Bookends' Second Amended Complaint ("SAC") failed to cure the
deficiencies identified by the Court. Bookends contends that it has stated plausible claims
for relief. But Bookends acknowledges that the SAC does not address all the Court's
grounds for dismissal of Bookends' Section 1 vertical restraint claim and RPA claims,
which it has amended. Moreover, with respect to the Section 1 horizontal restraint claim,
and the monopoly claims which depend on that claim, several of Bookends' amendments
make explicit allegations which Bookends previously asked the Court—in Bookends'
objections to the Report and Recommendations (R&R)—to infer based on allegations of
the previous complaint, and the Court nonetheless dismissed. For the reasons set forth in
its Objections to the R&R, Bookends believes these rulings were error. But anticipating
without assuming the Court is unwilling to revisit these rulings, Bookends amended
primarily to preserve its appellate rights based on the arguments raised in their prior
Objection [ECF 151] and the amendments to the complaint. *See United States ex
rel. Chorches for Bankr. Est. of Fabula v. Am. Med. Response, Inc.,* 865 F.3d 71, 94–95
(2d Cir. 2017). Plaintiff believes a pre-briefing conference could assist in narrowing the
scope or eliminating the need to further brief Defendants' motions to dismiss. To assist
the Court in preparing for the January 5, 2023 conference, Bookends summarizes the
deficiencies it addressed.

010888-13/2091311 V1

December 14, 2022
Page 2

## A.    Horizontal Price-Fixing

### 1.    Antitrust Injury[1]

The Court ruled that Bookends failed to allege injury in the *retail market* for print trade books because it was not the end purchaser and it could not allege injury as a competitor in this market based solely on its inability to price books lower than Amazon. R&R at 30-33; *see* ECF 151 at 4 n.2 (acknowledging in its objections that Bookends had not pled injury in the wholesale trade book market). The SAC addresses this deficiency by alleging that Plaintiff was injured in the *wholesale market* for the sale of print books as a direct purchaser of books sold by the Publisher Defendants at wholesale prices that are artificially inflated by Defendants' restraints of trade and monopoly conduct. ¶¶ 1, 112, 120-23, 149.

### 2.    Direct Evidence of an agreement between the Publisher Defendants.

The Court rejected Bookends' argument that its recitation of the agreements in its prior complaint demonstrated a horizontal conspiracy because "[a]n agreement that contains lawful contractual terms, standing alone, is not direct evidence of a conspiracy" and it is not "inherently unlawful ... for each Publisher, acting alone, to enter into the same distribution agreement with Amazon, even if it knew that its competitors were also doing the same . . . absent some preceding agreement to act collectively." R&R at 13-14. The SAC clarifies that as used here the contracts'



¶ 39. This allegation is not "mere gloss." As a matter of law, these allegations demonstrate horizontal agreement. ECF 166 at 2.

### 3.    Circumstantial evidence of an agreement between the Publisher Defendants.

The Court held that the Publisher Defendants acted in parallel. R&R at 15. A horizontal conspiracy can be inferred from the conscious parallel conduct of the defendants if "plus factors" exist, i.e., any fact that "tends to exclude the possibility" that

---

[1] Bookends alleges additional antitrust injury—raising of rivals costs—for purposes of its monopoly claim.

December 14, 2022
Page 3

the alleged co-conspirators acted independently. *Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 764 (1984).

**Action against self-interest:** The Court held that Bookends' allegations that "Amazon's market dominance made it an indispensable bookselling partner for each Publisher," which "readily explain[s] why each Publisher would have independently decided to distribute print books through Amazon, even without a guarantee that the other Publishers would follow." R&R at 16. But contrary to that factual conclusion, it is specifically alleged that the Publisher Defendants do not *independently* provide discriminatory prices. ¶ 39. To illustrate why it would be against the Publisher Defendants' independent economic interest to sell to Amazon at discriminatory prices in the absence of agreement with the Publisher Defendants—and why the Publisher Defendants require Amazon to demonstrate that others are selling to it at discriminatory prices—Bookends relies on data the Publisher Defendants produced in this case, showing that they receive ███████ less revenue from Amazon[2] than they receive from sales at their non-discriminatory price and that the magnitude of this loss is profound because their sales to Amazon represent 50% to 80% of each Publisher Defendant's total volume of sales. ¶¶ 7, 45. As to the Publisher Defendants' collective agreement to raise list prices to offset the revenue they lose under the discriminatory pricing agreement, the Court held that Bookends "does not plausibly explain why a single Publisher could not raise the list price of its own book titles without suffering a competitive disadvantage." R&R at 20. The SAC pleads the significant risk of lost sales and market share based on the *Apple* trial, which found that when the Publisher Defendants raised eBooks prices, their sales fell by 12%, whereas sales increased by 41% for their competitor, whose retail prices remained constant. ¶ 52.

**Prior collusion:** The Court held that the *Apple* conspiracy did not make it more likely that the Publisher Defendants colluded here because there "are no allegations that the Publishers were attempting to force Amazon to adopt a new pricing model" or "that a Publisher would have lost market share or revenues if it unilaterally entered into a distribution agreement with Amazon using wholesale pricing." R&R at 19. The SAC clarifies that Bookends is not asserting the identical conspiracy proved in the *Apple* case, but a logical relationship between Publisher Defendants' prior collusion to raise eBook prices and their current conspiracy to raise print trade book prices. ¶ 58. Bookends

---

[2] Amazon argues that the range of discounts the Publisher Defendants provide to Amazon under their discriminatory pricing agreements undermines Bookends' conspiracy claim. ECF 167 at 3. On the contrary, "[i]mpermissible price-fixing arrangements are not limited to agreements to charge uniform or identical prices." *Gerlinger v. Amazon.com, Inc.*, 311 F. Supp. 2d 838, 846 (N.D. Cal. 2004) (collecting cases).

December 14, 2022
Page 4

acknowledges that it did ask the Court in its objections to draw this inference in
Bookends' favor, however it was not necessary for the Court to rule on that argument to
adopt the recommendation of dismissal. ECF 151 at 12. And the SAC further includes the
findings of the District Court in *United States v. Bertelsmann*, which found the market to
be "'prone to collusion,'" and that "the Big Five are" again "engaging in tacit collusion"
to depress the cost of acquiring publication rights by tacitly agreeing not to compete on
authors' book deals. ¶¶ 59-67.[3]

**Common Motive:** The Court held: "Plaintiff has not offered any plausible reason
why the Publishers would have colluded with Amazon [] in a conspiracy that would have
only further cemented Amazon's market dominance[.]" R&R at 21. The SAC clarifies
that they colluded with Amazon because it controls the book market and is therefore the
single actor through which they can organize a scheme to raise prices market-wide. ¶ 57.
Bookends acknowledges that it did raise this argument in its objections, but that it was
not necessary for the Court to rule on that argument to affirm dismissal. ECF 151 at 12.

**Opportunities to collude:** The Court held that "the CAC contains [only] a
conclusory allegation that Defendants had an opportunity to collude" but lacked "factual
support for that allegation." R&R 24. The SAC addresses that deficiency by
demonstrating that the Publisher Defendants' meeting-competition provision requires
Amazon to disclose the other Publisher Defendants' confidential pricing information,
which enables each Publisher Defendant to gauge when and by how much it can raise its
book prices without fear of being undercut by its competitors. ¶¶ 55-56.

**Public signaling:** The Court rejected this plus-factor because the articles
Bookends cited did not rely on Amazon as a source concerning print books in the U.S.
market. R&R 25-26. The SAC relies on an article, which quotes an Amazon
spokesperson, confirming that Amazon offered HarperCollins the same deal that it had
recently concluded with three other Publisher Defendants. ¶ 10.[4] And the SAC includes
an article confirming that Amazon negotiated a single agreement with Penguin for both

---

[3] While the legal standard the court applies in a merger case is different, as Defendants note,
it is undisputed that the *Bertelsmann* court found prior collusion as alleged in the complaint.

[4] Bookends erroneously attributed to Amazon the quote from an unidentified source, which
the report led with, but critically the cited report *quotes Amazon's response* to the request for
comment: "An Amazon spokesperson sent the following: 'I can't comment on that rumor. I can
say that we have offered Harper the same terms for a contract that Simon & Schuster, Hachette
and Macmillan have all recently agreed to.'" Jillian D'Onfro, *Another major publisher is going
to war with Amazon*, Business Insider (Mar. 31, 2015)
https://www.businessinsider.com/harpercollins-amazon-contract-expiring-2015-3.

December 14, 2022
Page 5

the U.S. and UK market, which supports Bookends' inference that the statement from Amazon that it would agree to the same deal with "Penguin Random House UK" as it had the "with the other four major publishers," applies to Defendant Penguin. ¶ 10.[5]

## B.     Vertical Price-Fixing

The Court did not rule on Bookends' vertical claims. Bookends amended its complaint to allege that claim in more detail. ¶¶ 70-74. Bookends' allegations of harm to competition depend, however, on the aggregate impact of Defendants' agreements, a premise which the Court rejected in the related *eBooks* litigation. *In re Amazon.com, Inc. eBook Antitrust Litigation*, 2022 U.S. Dist. LEXIS 179410, at *74-75 (S.D.N.Y. Aug. 3, 2022). Bookends has therefore alleged this claim solely for purposes of preserving its appellate rights.

## C.     Monopoly

The Court rejected Bookends' monopoly claims because "[t]he crux of Plaintiff's Section 2 claims is that Amazon used its market power to extract agreements from the Publishers to engage in a horizontal price-fixing conspiracy," which Bookends had not adequately pled and that the "conspiracy to monopolize claim against Defendants" also fails for the same reason. R&R 28. If the Court finds that Bookends has adequately alleged its horizontal claim, it has likewise adequately pled its monopoly claims.

For purposes of appeal, Bookends amended its monopoly claims to adopt the legal framework it asserted in its objections, which the Court implicitly rejected when it overruled Bookends' objections and dismissed the prior complaint. ECF 151 at 15-16. The SAC clarifies that a horizontal conspiracy among publishers is unnecessary to establish either monopoly claim. To establish Amazon's liability, the SAC alleges that Amazon has market power in the online retail market for trade books and used its market power to extract discriminatory prices from the Publisher Defendants, which enabled it to compete against other booksellers at virtually any price without losing revenue. ¶¶ 75-79. To support its claim that the Publisher Defendants conspired with Amazon to maintain its monopoly, the SAC alleges that each Publisher Defendant understood the nature of the conspiracy and how its discriminatory pricing agreement with Amazon furthered the goal of raising Amazon's rivals' costs as a tool for suppressing competition. ¶¶ 81-83. They

---

[5] *See also* Alison Flood, *'Change is not happening fast enough': UK publishers promise to tackle inequality*, Guardian (Jun. 17, 2020), https://www.theguardian.com/books/2020/jun/17/uk-publishers-lack-of-diversity-black-writers-guild (identifying the Publisher Defendants as the "UK's major publishers").

December 14, 2022
Page 6

understood that this arrangement would further consolidate Amazon's market power, yet they acted in furtherance of this goal by agreeing to discriminatory prices and raising list prices. ¶¶ 80-81, 84.

Moreover, with respect to claims for monopolization of the online market, the SAC alleges that the monopolizing conduct resulted in increased prices to Bookends and other booksellers, relying on precedent that raising rivals' costs "as a tool for suppressing competition" is a violation of the Sherman Act. *See Premier Electrical Constr. v. Nat'l Elec. Contractors Ass'n*, 814 F.2d 358, 372 (7th Cir. 1987). Bookends acknowledges that it raised this argument previously in briefing and argument, but this issue has not been directly resolved because it was not necessary for the Court to rule on this argument. ECF 151 at 15-16.

**D.      Robinson-Patman Act – Price Discrimination**

**1.      Competitive injury**

Contrary to Defendants' assertion, the Court did not adopt their contention that proof of competitive injury requires Bookends to aver that it matched Amazon's prices. ECF 166 at 3; ECF 167 at 1. Rather, the Court rejected allegations of competitive injury under the *Morton Salt* inference because Bookends provided "no factual allegations from which to infer that Amazon received a 'substantial' discount." R&R at 47. Bookends has cured that deficiency by providing the specific discounts and demonstrating that Amazon pays between ███████ less than Bookends for the same books and that the Publisher Defendants have charged Amazon discriminatory prices for seven years. ¶ 89. Compare *Mathew Enter. v. Chrysler Grp. LLC*, 2016 U.S. Dist. LEXIS 108693, at *22 (N.D. Cal. Aug. 2, 2016) (declining on summary judgment to hold that a 2% price differential maintained over 11 months was insufficient to support plaintiff's *Morton Salt* inference). Bookends also amended its complaint to allege "circumstance[s] where Plaintiff lost a sale to Amazon because of the alleged discriminatory pricing." R&R at 47. The SAC also alleges that Bookends frequently lost sales to Amazon, that there is an industry-wide recognition of booksellers losing sales to Amazon as a result of "showrooming," and that Amazon has expressly sought to take such sales through Amazon lens (a visual search tool in the Amazon shopping app) by encouraging consumers to scan the books they are browsing in-store and then to buy them with one-click from Amazon. ¶ 105.

**2.      Meeting competition defense**

The Court held that Bookends did not adequately allege that "the meeting-competition clause . . . was pretextual" because Bookends had "not plausibly alleged the

December 14, 2022
Page 7

existence of a conspiracy." R&R 55. Bookends amended its complaint to bolster its allegations that each Publisher Defendant conspired with Amazon to maintain Amazon's retail monopoly and that they also engaged in a horizontal conspiracy. If the Court finds that Bookends has adequately pled either conspiracy, it has likewise adequately pled that the discriminatory pricing was neither offered nor accepted in a good faith effort to meet a lawful competitive offer. Furthermore, the meeting competition affirmative defense only allows a defendant to meet the lawful price of a competitor. Here, no Publisher Defendant could have met a lawful price. The first Publisher Defendant to offer discriminatory discounts did not meet any lower price at all and that Defendant's discriminatory price was unlawful. Thereafter, any Publisher who met the lower price, or the subsequent lower price of another Publisher, met an unlawful price, making the affirmative defense unavailable. The Court, however, has rejected Bookends' arguments that it had pleaded a horizontal conspiracy, and its arguments that meeting competition is a defense on which Plaintiffs bore the burden, and that Bookends need not plead an actionable horizontal conspiracy in violation of the Sherman Act to avoid the meeting-competition defenses.

### 3.    Functional discount

The Court held that Bookends failed to allege that the discriminatory prices were "unreasonable or untethered to any cost savings to the Publishers" because the complaint lacked "any factual detail concerning the amount of the fees paid to Amazon or the amount of the discount received by Amazon[.]" R&R 52. First, the SAC demonstrates that the discriminatory prices were unreasonable. It relies on a news article that reports that Amazon charges the Publisher Defendants approximately 7% to promote their books, so that even when Publisher Defendants previously charged Amazon their standard discount, Amazon's *effective* discount was about 53%. ¶ 12. The SAC further alleges, based on the Publisher Defendants' own data that its discriminatory discounts to Amazon are ██████ more favorable than the standard discount the Publisher Defendants provide to Bookends and other booksellers. ¶ 7. And when Amazon's promotional fee is included, Amazon purchases books at prices ████████ less than Bookends and other booksellers. ¶ 12. Second, the SAC relies on the letter to the House Committee on Antitrust from the American Publishers Association, whose board of directors includes the CEOs of each of the Publisher Defendants. The letter asserts that distributing books through Amazon is less economical than through other booksellers, but publishers are forced to do so because of Amazon's market power. ¶¶ 14-16.

December 14, 2022
Page 8

### 4.      Materially different contracts

The Court held that Bookends failed to allege "facts from which to infer that the pricing differential offered to Amazon was not the result of … materially different contract terms." R&R at 47. In some cases the circumstances of sales transactions are so "materially different" that they cannot be considered to involve the same goods, e.g., goods purchased under long-term supply contracts versus surplus goods or goods purchased on the spot market. *See Aerotec Int'l, Inc. v. Honeywell Int'l, Inc.*, 836 F.3d 1171, 1188 (9th Cir. 2016). But as the SAC alleges, Amazon's contracts with the Publisher Defendants are not materially different from Bookends' agreements because both Amazon and Bookends purchase from the Publisher Defendants at set discounts off their list prices. ¶ 92. In ruling on Bookends' objections, the Court rejected the argument that the R&R misapplied the materially different contract precedent. ECF 151 at 22-24.

As set forth above, Bookends has amended its complaint to address the above deficiencies the Court identified. Bookends is cognizant of the significant time the Court has already invested in this case and is open to a streamlined resolution of Defendants' motions to dismiss.

Sincerely,

HAGENS BERMAN SOBOL SHAPIRO LLP

Steve W. Berman

*Counsel for Bookends & Beginnings LLC*

SWB:bam
cc: All Counsel of Record (via ECF)