**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| BOOKENDS & BEGINNINGS, LLC, on behalf of itself and all others similarly situated,<br><br>     Plaintiff,<br><br>  v.<br><br>AMAZON.COM, INC.; HACHETTE BOOK GROUP, INC; HARPERCOLLINS PUBLISHERS L.L.C.; MACMILLAN PUBLISHING GROUP, LLC; PENGUIN RANDOM HOUSE LLC; SIMON & SCHUSTER, INC.,<br><br>     Defendants. | Case Number 1:21-cv-02584-GHW-VF |

**MEMORANDUM OF LAW IN SUPPORT OF AMAZON'S**
**MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................................1

BACKGROUND .........................................................................................................................2

LEGAL STANDARD ..................................................................................................................3

I.       STANDARD OF REVIEW .........................................................................................3

       A.     Pleading Standards..........................................................................................3

       B.     Law of the Case Doctrine ...............................................................................4

ARGUMENT...............................................................................................................................4

I.       PLAINTIFF'S ROBINSON-PATMAN ACT CLAIM AGAINST AMAZON FAILS AS A MATTER OF LAW...........................................................................................5

       A.     Plaintiff Fails to Allege Facts Adequate to Show that Amazon Knowingly Received an Illegal Discriminatory Price from Any Publisher Defendant. ............5

       B.     The SAC Continues to Directly Plead the Existence of Multiple Justifications for Lawful Price Differences.........................................................6

              1.     The SAC continues to allege that Amazon purchases print books under materially different contract terms than does Bookends. .................6

              2.     The SAC continues to support the application of the meeting competition defense..................................................................................8

       C.     The SAC continues to fail to demonstrate harm to competition. .........................10

II.      PLAINTIFF'S SHERMAN ACT CLAIMS FAIL AS A MATTER OF LAW...............11

       A.     Plaintiff Fails to Allege a Horizontal Conspiracy................................................12

              1.     Plaintiff Fails to Allege Antitrust Injury .................................................12

               2.     Plaintiff Has No Direct Evidence of an Agreement Between Defendants. ...........................................................................................13

              3.     Plaintiff Fails to Demonstrate Circumstantial Evidence of an Agreement Between Defendants...........................................................13

|   |   |   |   |
|---|---|---|---|
| B. | The Sherman Act Does Not Independently Prohibit Price Competition. | ............. | 14 |
| C. | Plaintiff's Monopolization Claim Fails Again. | .................................................... | 16 |
| D. | Plaintiff's Attempts to Allege a Conspiracy to Charge "Discriminatory" Prices Fail to State a Claim. | ............................................................................... | 16 |

CONCLUSION................................................................................................................17

# TABLE OF AUTHORITIES

## CASES

*Arizona v. California*,
    460 U.S. 605 (1983) ................................................................................4

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ................................................................................3

*Atl. Richfield Co. v. USA Petrol. Co.*,
    495 U.S. 328 (1990) ........................................................................ 12, 15

*Automatic Canteen Co. of Am. v. FTC*,
    346 U.S. 61 (1953) ..................................................................................5

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ................................................................................3

*Bishop v. GNC Franchising L.L.C.*,
    403 F. Supp. 2d 411 (W.D. Pa. 2005) ..................................................17

*Cadigan v. Texaco, Inc.*,
    492 F.2d 383 (9th Cir. 1974) ...............................................................10

*Coalition for a Level Playing Field, L.L.C. v. AutoZone, Inc.*,
    737 F. Supp. 2d 194 (S.D.N.Y. 2010) ...............................................3, 4

*Continental T. V., Inc. v. GTE Sylvania Inc.*,
    433 U.S. 36 (1977) ...........................................................................14-15

*Dayton Superior Corp. v. Marjam Supply Co.*,
    No. 07-cv-5215, 2011 WL 710450 (E.D.N.Y. Feb. 22, 2011) ...............5

*Drug Mart Pharm. Corp. v. Am. Home Prods. Corp.*,
    378 F. Supp. 2d 134 (E.D.N.Y. 2005) .................................................17

*Electronics Communications Corp. v. Toshiba Am. Consumer Products, Inc.*,
    129 F.3d 240 (2d Cir. 1997) .................................................................17

*FTC v. Henry Broch & Co.*,
    363 U.S. 166 (1960) ..............................................................................16

*Gen. Supply Deck & Floor Underlayment Co. v. Maxxon S.W., Inc.*,
    No. 00-cv-2745, 2001 WL 1480768 (N.D. Tex. Nov. 21, 2001) .....16-17

*Gorlick Distr. Ctrs. LLC v. Car Sound Exhaust System, Inc.*,
    723 F.3d 1019 (9th Cir. 2013) ................................................................5

*Great Atl. & Pac. Tea Co., Inc. v. FTC*,
    440 U.S. 69 (1979) ....................................................................................... 6

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986) ............................................................................... 11, 15

*N. River Ins. Co. v. Phila. Reinsurance Corp.*,
    63 F.3d 160 (2d Cir. 1995) ........................................................................... 4

*Pac. Bell Tel. Co. v. linkLine Commc'ns, Inc.*,
    555 U.S. 438 (2009) ..................................................................................... 15

*Port Dock & Stone Corp. v. Oldcastle Northeast, Inc.*,
    507 F.3d 117 (2d Cir. 2007) ....................................................................... 12

*State Farm Mut. Auto. Ins. Co. v. Mallela*,
    No. 00–CV–4923, 2002 WL 31946762 (E.D.N.Y. Nov. 21, 2002) ........................................ 4

*Std. Oil Co. v. Brown*,
    238 F.2d 54 (5th Cir. 1956) ........................................................................ 10

*Std. Oil Co. v. Fed. Trade Comm'n*,
    340 U.S. 231 (1951) ..................................................................................... 10

*United States v. Bertelsmann SE & Co. KGaA*,
    No. CV 21-2886-FYP, 2022 WL 16748157 (D.D.C. Nov. 7, 2022) ........................................ 14

*Volvo Trucks N. Am., Inc. v. Reeder-Simco GMC, Inc.*,
    546 U.S. 164 (2006) ................................................................................. 14-15

*Weslowski v. Zugibe*,
    96 F. Supp. 3d 308 (S.D.N.Y.), *aff'd*, 626 F. App'x 20 (2d Cir. 2015) ................................... 4

## STATUTES

15 U.S.C. § 13(b) ...................................................................................... 9, 10

Fed. R. Civ. P. 11(b)(3) ................................................................................. 6

## INTRODUCTION

Plaintiff Bookends & Beginnings, LLC ("Bookends" or "Plaintiff") has confirmed, both in writing and in a meet and confer with Defendants, that its Second Amended Class Action Complaint ("SAC"), ECF No. 163, does not warrant reversal of this Court's dismissal of any of the causes of action against any Defendant.[1]  Accordingly, the SAC should be dismissed in its entirety for the reasons stated in the Report & Recommendation ("R&R"), ECF No. 141, which Judge Woods adopted "in full," ECF No. 156.

Nevertheless, because Plaintiff argues that its SAC strengthens its claim for appellate review, Defendant Amazon.com, Inc. ("Amazon") submits this brief memorandum addressing why Plaintiff's amended allegations fail to state a claim and must again be dismissed.  First, there still are no facts pled that Amazon knowingly received an illegal discriminatory price discount.  The SAC contains only insubstantial, stylistic changes to Plaintiff's prior allegations on that legal requirement.  Plaintiff's failure to allege facts demonstrating Amazon's knowledge of illegality is, on its own, dispositive of the Robinson-Patman Act ("RPA") claim against Amazon.  There also are still no allegations that Plaintiff attempted to compete with Amazon on price.  The SAC also continues to allege that Bookends and Amazon purchase books under materially different contractual terms, and that the Publisher Defendants meet one another's competition by providing discounts to Amazon.  For all of those reasons, Plaintiff's allegations fail to state a claim under either sections 2(a) or 2(f) of the RPA.  Finally, Plaintiff's Sherman Act claims continue to fail for all of the same reasons identified previously, including because there is no basis to infer a horizontal conspiracy, and because the Sherman Act does not prohibit vertical agreements that reflect competitive bargaining.  The SAC should be dismissed with prejudice.

---

[1]     *See* Ex. A (12.22.22 Ltr. from C. Metz to Plaintiffs' Counsel, and Plaintiffs' emailed response).

## BACKGROUND

As the Court is aware, Bookends originally filed this suit in March 2021, alleging that Amazon and the Publisher Defendants had conspired to assure *uniformity* of print book prices through the mutual adoption of price and non-price MFN clauses in their wholesale distribution agreements. R&R at 7. Bookends later filed its First Amended Complaint ("FAC") on July 9, 2021, after Defendants demonstrated that these MFN allegations were both unfounded and frivolous. ECF No. 65. That Amended Complaint abandoned all of Bookends' former allegations about the existence or effect of alleged MFN provisions, and substituted in their place the equally deficient theory that the Publisher Defendants and Amazon violated both the RPA and the Sherman Act by negotiating wholesale prices that are different from the publishers' "standard" discounts. ECF No. 141, at 7-8.

Following motion to dismiss briefing, Magistrate Judge Figueredo issued a 59-page Report & Recommendation, recommending dismissal of all of Bookends' claims on multiple independent grounds. ECF No. 141. Judge Woods adopted "in full" the "thoughtful and well-reasoned Report and Recommendation" on September 29, 2022, and dismissed the First Amended Complaint. ECF No. 156.

Plaintiff asked for leave to amend the First Amended Complaint in its Objections to the Magistrate Judge's R&R, ECF No. 150, at 25, which the Court granted, ECF No. 156, at 4-5. Plaintiff amended for the second time and filed the SAC on November 21, 2022, adding only one new allegation of material fact: that purchase discounts that Amazon allegedly received from certain of the Publisher Defendants in varying amounts are higher than the "standard" discount received by Bookends. *See* SAC ¶ 7. To allege this, Plaintiff used the single-month sales data samples that were produced by the Publisher Defendants as part of their pre-discovery coordination obligations. *Id.* ¶

2

7 n.8.  The SAC otherwise fails to allege facts bearing upon any of the other multiple grounds upon which the First Amended Complaint was dismissed.

After filing the SAC, Defendants submitted pre-motion letters indicating their intention to file motions to dismiss, and Plaintiff submitted a response which acknowledged that "the SAC does not address all the Court's grounds for dismissal."  ECF No. 172, at 1.  Counsel for Plaintiff then requested a meet and confer with all Defendants' counsel, during which Plaintiff confirmed that the SAC does not address the grounds for dismissal of the First Amended Complaint.  *See* Ex. A at 1 (Defendants' letter:  "[W]e understand Plaintiffs' position to be that there are causes of action that were dismissed for reasons that the amendments do not cure. . . .  [Plaintiffs] take that position as to all of the causes of action against all Defendants in the *Bookends* matter"); *id.* at 3 (Plaintiffs' email reply:  "[T]hat's an accurate statement of our position.").  Nevertheless, Plaintiff declined Defendants' request to withdraw its SAC, and the parties agreed that it was necessary for Defendants to file motions to dismiss the SAC.

## LEGAL STANDARD

## I.    STANDARD OF REVIEW

### A.    Pleading Standards

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "Reading *Twombly* together with the requirements of the Robinson–Patman Act § 2(a), then, a Robinson–Patman plaintiff must plead facts supporting a plausible inference of unlawful price discrimination."  *Coalition for a Level Playing Field, L.L.C. v. AutoZone, Inc.*, 737 F. Supp. 2d 194, 215 (S.D.N.Y. 2010).  "[W]hen complicated contracts . . . are alleged, such pleading must refute the inference that [products] are not

sold subject to materially different contract terms or, separately, that differentials simply reflect non-price terms of sale; both of which are lawful under the Act." *Id.*; *see also* R&R at 48-49 (same).

### B.    Law of the Case Doctrine

Under the law of the case doctrine "a court should be 'loathe to revisit an earlier decision in the absence of extraordinary circumstances.'" *Weslowski v. Zugibe*, 96 F. Supp. 3d 308, 315–18 (S.D.N.Y.), *aff'd*, 626 F. App'x 20 (2d Cir. 2015) (quoting *N. River Ins. Co. v. Phila. Reinsurance Corp.,* 63 F.3d 160, 165 (2d Cir. 1995)).  "As most commonly defined, the doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Arizona v. California*, 460 U.S. 605, 618 (1983).  Plaintiff's "mere filing of an Amended Complaint does not entitle Plaintiff to relitigate his claims absent new factual allegations," and where an amended complaint "is in large part identical to Plaintiffs' first Complaint, the law of the case doctrine counsels against reconsideration of the [] dismissal of the first Complaint." *Weslowski*, 96 F. Supp. 3d at 315–18 (citing *State Farm Mut. Auto. Ins. Co. v. Mallela,* No. 00–CV–4923, 2002 WL 31946762, at *8 (E.D.N.Y. Nov. 21, 2002)).

## ARGUMENT

In light of Plaintiff's concession that the amended allegations of the SAC fail to reverse the grounds upon which the Court dismissed the previous Complaint, *see* Ex. A, the Court could simply dispose of this case with a summary order dismissing the SAC for the reasons previously stated. Nevertheless, to the extent that the Court intends to issue a more fulsome Order, Amazon submits these additional arguments on the deficiencies of the SAC.

# I.   PLAINTIFF'S ROBINSON-PATMAN ACT CLAIM AGAINST AMAZON FAILS AS A MATTER OF LAW.

## A.   Plaintiff Fails to Allege Facts Adequate to Show that Amazon Knowingly Received an Illegal Discriminatory Price from Any Publisher Defendant.

Plaintiff's First Cause of Action for violation of the Robinson-Patman Act ("RPA") fails again because the SAC contains no plausible allegations that Amazon had knowledge of illegality under section 2(f) of the RPA.  Plaintiff must plausibly allege that Amazon knew that it was receiving not just a lower price than its competitors, but an unlawful price that its supplier could not justify under any applicable exception to the RPA.  *See Automatic Canteen Co. of Am. v. FTC*, 346 U.S. 61, 74 (1953) ("[T]here is no substantive violation if the buyer did not *know* that the prices it induced or received were" illegal.); *Dayton Superior Corp. v. Marjam Supply Co.*, No. 07-cv-5215, 2011 WL 710450, *12-*13 (E.D.N.Y. Feb. 22, 2011) (dismissing section 2(f) counterclaim for failure to allege facts showing purchaser had knowledge that it was receiving an illegal discriminatory price).

The SAC contains only superficial differences from the First Amended Complaint on this issue.  Whereas before Plaintiff (inadequately) alleged in a single paragraph that Amazon had knowledge of illegality based on purported demands to increase discounts annually and the allegedly "pretextual insertion" of "meeting competition" language in certain contracts, *see* FAC ¶ 99, the SAC restates those same allegations but divides them between two paragraphs instead of one.  *See* SAC ¶¶ 157-58.  Plaintiff's nearly identical allegations fail for the reasons stated previously: "The receipt of better-than-published prices, without more, does not satisfy section 2(f)'s knowledge requirement." R&R, at 56-57 (quoting *Gorlick Distr. Ctrs. LLC v. Car Sound Exhaust System, Inc.*, 723 F.3d 1019, 1022 (9th Cir. 2013)).  "[T]o plead Amazon's knowledge, the [Complaint] must contain some factual detail supporting a plausible inference that Amazon knew or would have known that its discount was not justified by any cost savings to the Publishers." R&R, at 58.  Because the

SAC adds no material allegations of fact relevant to that required element of Plaintiff's claim, it must be dismissed with prejudice as against Amazon.[2]

**B.      The SAC Continues to Directly Plead the Existence of Multiple Justifications for Lawful Price Differences.**

Plaintiff's RPA claim fails for additional, independent reasons as against both the Publisher Defendants and Amazon.[3]  First, the SAC continues to allege, as in the prior complaint, that Amazon purchases print books under materially different contract terms than does Bookends.  Second, the SAC also continues to support the application of the meeting competition defense.  And third, Plaintiff fails to show injury to competition.  The SAC's addition of the alleged discounts that Amazon receives does not change these insufficiencies, and the Bookends' RPA claim should again be dismissed for each of these independent reasons.

**1.      The SAC continues to allege that Amazon purchases print books under materially different contract terms than does Bookends.**

Just as it did in the First Amended Complaint, Plaintiff continues to allege that Amazon and Bookends have materially different contract terms.  The Court previously determined that "Plaintiff [did] not allege[] facts from which to plausibly infer that the discount offered to Amazon did not result from materially different contract terms[.]"  R&R at 49.  In so holding, the R&R pointed to facts demonstrating those different contractual terms, as well as the absence of other facts that might have refuted that inference.  *Id.*  All of those allegations are effectively unchanged in the SAC:

---

[2]      Contradicting its own prior concessions, Bookends now makes the frivolous and conclusory allegation that Amazon "demanded that the discounts . . . it received would not be available to other booksellers[.]" SAC ¶ 157.  But as the Court already recognized, Bookends withdrew its original Complaint after inspecting Amazon's contracts with the Publisher Defendants and confirming the absence of any such provision.  R&R at 7 ("The print distribution agreements between the Publishers and Amazon, however, did not contain an MFN clause; a fact Plaintiff discovered when Defendants made the agreements available to Plaintiff's counsel for review.").  By once again alleging the existence of provisions it knows not to exist, Plaintiff violates its duty of candor.  *See* Fed. R. Civ. P. 11(b)(3).

[3]      Because "[l]iability under section 2(f) is entirely derivative of Section 2(a)'s liability," any ground that requires dismissal of Plaintiff's RPA claim against the Publisher Defendants equally requires dismissal as against Amazon.  R&R at 56 (citing *Great Atl. & Pac. Tea Co., Inc. v. FTC*, 440 U.S. 69, 77-78 (1979)).

- Publishers entered into distribution agreements with Amazon that governed the parties' relationship *for a period of several years*. *Compare* FAC ¶¶ 8-9, *with* SAC ¶ 11.

- Plaintiff had no allegations that Bookends had any sort of contractual agreement with the Publishers, let alone a multi-year agreement. *Compare* FAC ¶ 94 (alleging only that Plaintiff "purchased numerous books, often repeatedly"), *with* SAC ¶ 152 (same).

- While Plaintiff had *argued* in its brief that it does not purchase print trade books on a "spot market," there were "no allegations . . . to that effect" in the Amended Complaint, which said only that Plaintiff "purchases books at wholesale prices directly" from the Publisher Defendants at their "standard" discount prices. R&R at 49 (citing FAC ¶ 26). In the SAC, there *still* are no allegations describing any distinct contractual arrangements between Bookends and any of the Publisher Defendants, and Plaintiff continues to make identical allegations. *See* SAC ¶ 24.

*See* R&R at 49.

The SAC contains one fleeting and unexplained reference to "contracts through which Bookends and members of the proposed Classes purchase books from the Publisher Defendants." SAC ¶ 92. However, neither that allegation nor anything else in the SAC attempts to identify these purported contracts, or otherwise to describe their nature, scope, duration, or other material terms. In contrast, it continues to describe a wide array of individually negotiated provisions in Amazon's agreements with the Publisher Defendants, none of which are claimed as being included in any "contracts through which Bookends" purchases print trade books. *See* SAC ¶¶ 12, 90.

"Absent any allegations about the type of buying arrangement Plaintiff has with the Publishers, Plaintiff has not alleged any facts from which to plausibly infer that the price differential offered to Amazon was not the result of differences in the contractual relationship Amazon and Plaintiff had with the Publishers." R&R, at 50. The SAC contains no new allegations to disrupt this holding, which Plaintiff acknowledges. Accordingly, Plaintiff's RPA claim should be dismissed on this independent basis.[4]

---

[4]     Relatedly, the Court concluded that Plaintiff had "not pled sufficient facts from which to conclude that any price differential was not the result of a bona-fide functional discount." R&R at 52. The described

2.      **The SAC continues to support the application of the meeting competition defense.**

The Court dismissed the First Amended Complaint on the additional basis that "Plaintiff's allegations do not plausibly allege that Defendants could not avail themselves of the meeting-competition defense in Section 2(b)."  R&R at 55.  Plaintiff has not undermined any of the grounds for that dismissal; to the contrary, the SAC only strengthens the reasons for applying the defense at the pleading stage.

All of the allegations cited by the Court in the course of applying the meeting competition defense remain in the SAC – with the exception that Plaintiff has now dropped what was formerly its primary argument against the defense.[5]  Plaintiff continues to allege that the Publisher Defendants are "horizontal competitors," SAC ¶ 2; who "sell to Amazon at prices below the standard discounts available to other booksellers," *id.* ¶ 11; *compare* FAC ¶ 7 (Big Five Publishers "are *horizontal competitors* in the publication and sale (at wholesale) of print trade books.").  Plaintiff's allegation that the defense is unavailable because the Publisher Defendants are conspiring to fix prices, SAC ¶ 163, is repeated nearly verbatim from the last Complaint, FAC ¶ 104, where it was rejected, *see* R&R, at 55.  Likewise, Plaintiff continues to make the same allegation that the Court previously identified as creating the "implication" that that the "Publishers acted as competitors and thus their

the absence of "factual detail concerning *the amount of [any] fees paid to Amazon* [and] the amount of the discount received by Amazon," as material omissions supporting that ground for dismissal. *Id.* (emphasis added).  While Bookends has now alleged varying purchase discounts, it continues not to allege the magnitude of any fees, and therefore cannot allege that the two taken together are not "a commercially reasonable functional discount or the result of materially different contract terms."  *Id.*

[5]      Plaintiff previously alleged that the meeting competition defense was unavailable as a matter of law because book publishers sell differentiated products that do not compete with one another, but it has dropped that allegation from the corresponding equivalent paragraph of the SAC.  *Compare* FAC ¶ 104, *with* SAC ¶ 163.  The Court correctly determined that Plaintiff's former argument "finds no support in the text of the statute or the case law," R&R, at 54, and that it is contradicted by the allegation that collusion is necessary for publishers to raise their prices, *id.*  Plaintiff is therefore right not to renew that argument here.  But in abandoning it, Plaintiff simply underscores that the meeting competition defense is legally available to publishers who lower their prices to compete against other publishers, leaving no reason why that defense should not be applied to the alleged facts.

pricing of an individual book title was constrained by another Publishers' pricing of its different book titles."  R&R at 53-54 (citing FAC ¶¶ 13, 39-40); *see* SAC ¶ 51.

In addition to all of the previously identified grounds for applying the meeting competition defense, the SAC now adds allegations of the size of the purchase discounts that individual Publisher Defendants allegedly provide to Amazon.  *See* SAC ¶ 7.  The specific amounts alleged are highly sensitive and therefore have been placed under seal.  *See* ECF 165, at 1 (Sealing Order).  Nevertheless, it can be stated without revealing those details that the SAC identifies by name two publishers whose specific alleged discounts for Amazon could be justified on the basis that they are no greater than "an equally low [alleged] price" of one or more of the other Publishers whose alleged discounts are identified in the SAC.  15 U.S.C. § 13(b); SAC ¶ 7.  For three other publishers, the SAC provides only a range of alleged discounts that are not attributed to any one publisher individually.  *See* SAC ¶ 7.  Nevertheless, to the extent that Plaintiff's allegation is that each of those publishers provide discounts within the alleged range, then at a minimum each could similarly invoke the defense on the basis of the discounts offered by the other publishers whose discount percentages are alleged in that paragraph.  *Id.*

In its pre-motion letter, Plaintiff argued that the meeting competition defense is inapplicable because "[t]he first Publisher Defendant to offer discriminatory discounts did not meet any lower price at all" and that "[t]hereafter, any Publisher who met the lower price, or the subsequent lower price of another Publisher, met an unlawful price[.]"  ECF 171, at 7.  That fallacious argument assumes that, to be lawful, a purchase discount could *only* be justified on the basis of the meeting competition defense and nothing else.  But as the foregoing discussion reflects, there are other grounds upon which a "first" publisher could lawfully lower its price.  *Supra* § I.B.1; R&R at 48-52 (discussing both materially different contract terms and functional discounts as lawful reasons to discount).  The point is simply that once *any* of the competing publishers lowered its price for one or

more of the lawful reasons available, then *every* competing publisher could do so as well either for the *same* reasons as the first publisher (if applicable), or for the *additional* reason that such a discount was now necessary for it to meet "an equally low price" of one of its competitors.  15 U.S.C. § 13(b).  Plaintiff's implicit suggestion that competitive discounting should never occur because the first competitor to lower its price for any reason would always violate the RPA, *see* ECF 171 at 7, is meritless.[6]

    In short, all of the reasons that previously supported the dismissal of Plaintiff's RPA claim on the basis of the meeting competition defense continue to exist, and the SAC adds still more.

### C.    The SAC continues to fail to demonstrate harm to competition.

    Bookends' lost sales allegations are virtually unchanged from the previous Complaint, and therefore fail to demonstrate any actual harm to competition.  It continues to identify the same two titles that it seeks to sell "at their list prices," while alleging that Amazon sells those titles at a discount.  *Compare* SAC ¶¶ 107-08, *with* FAC ¶¶ 54-55.  Although Plaintiff has added an allegation missing previously (the purchase discounts that Amazon purportedly receives from various publishers, SAC ¶ 7), it nevertheless fails to "provide an example of a circumstance where Plaintiff lost a sale to Amazon *because of the alleged discriminatory pricing*."  R&R at p. 47 (emphasis added).  Having failed to plead any evidence that Plaintiff ever even attempted to offer discounted book prices to compete with Amazon, the Court's prior holding should remain unchanged, and the SAC must be dismissed on this basis as well.

---

[6]     Bookends also identifies no authority for the proposition that if a "first to discount" publisher could not justify its own offered price, that other publishers who matched that price would somehow lose the protections of the meeting competition defense.  That is not the law.  *See Std. Oil Co. v. Brown*, 238 F.2d 54, 58 (5th Cir. 1956) (rejecting the argument that "the seller must carry the burden of proving the actual legality of the sales of its competitors in order to come within the protection of the [meeting competition defense]"); *Cadigan v. Texaco, Inc.*, 492 F.2d 383, 387 (9th Cir. 1974) ("A defendant need not prove the actual lawfulness of his competitor's price in order to secure the protection of the proviso."); *see also Std. Oil Co. v. Fed. Trade Comm'n*, 340 U.S. 231, 241, 250 (1951) ("[A] price reduction made [by a seller] to meet in good faith an equally low price of a competitor" does not violate the RPA.).

## II.      PLAINTIFF'S SHERMAN ACT CLAIMS FAIL AS A MATTER OF LAW.

Plaintiff's Second (Conspiracy in Restraint of Trade), Third (Monopolization), and Fourth (Conspiracy to Monopolize) Causes of Action continue to fail for multiple reasons.  Each claim ultimately depends upon the same core allegation that the Publisher Defendants conspired with one another to provide Amazon with "discriminatory pricing" that unfairly enhances its competitive position at the expense of Plaintiff and other retailers.  SAC ¶¶ 170, 179, 187, 194.  But for all of the reasons that the Court identified previously, Bookends has not adequately alleged a basis for inferring any such horizontal conspiracy, and the SAC adds nothing of consequence on that issue.  As a result, all that is left are allegations that in a series of independent, vertical distribution agreements, each Publisher Defendant agreed to provide Amazon with a purchase discount that is larger than the "standard discount" given to *every* retailer with whom they do business.  *See* SAC ¶ 152.  That allegation does not remotely state a claim under the Sherman Act, whether for conspiracy or for monopolization.  Quite the opposite, it is the express goal of federal antitrust law to encourage robust price competition because "cutting prices in order to increase business often is the very essence of competition." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 594 (1986); *see also* ECF No. 78, at pp. 22-23 (citing additional cases).  Plaintiff's failure to allege a viable RPA claim together with its failure to allege a viable horizontal conspiracy in restraint of trade, necessarily means that it fails to alleges any antitrust violation at all.[7]

---

[7]      Because Plaintiff concedes the insufficiency of the SAC as to all four causes of action, this memorandum focuses upon the relatively few amended allegations that Plaintiff has identified as bearing upon subsidiary issues within those causes of action.  Nevertheless, for the avoidance of doubt, Amazon re-asserts and incorporates by reference all of the arguments for dismissal that it made previously, *see* ECF  Nos. 78, 114, as well as every basis for dismissal identified by the Court in the R&R.

**A.     Plaintiff Fails to Allege a Horizontal Conspiracy.**

The SAC does not attempt to expand or improve upon the alleged grounds for inferring a horizontal conspiracy among the Publisher Defendants to collectively offer discriminatory prices to Amazon, and that alleged conspiracy remains inherently implausible and illogical. The new allegation that the Publisher Defendants did not all provide the same purchase discount to Amazon, SAC ¶ 7, makes an inference of coordination even less plausible than it was before.  As Plaintiff acknowledges, the alleged horizontal conspiracy fails for the reasons given in the R&R.  *See* Ex. A (12.22.22 Ltr. from C. Metz to Plaintiffs' Counsel, and Plaintiffs' emailed response).

**1.     Plaintiff Fails to Allege Antitrust Injury.**

Although Plaintiff admits that nothing in the SAC addresses the bases for dismissing the First Amended Complaint, Plaintiff now argues that it demonstrates antitrust injury by alleging that Plaintiff was injured not in the retail market for print trade books, but in the wholesale market for the sale of print books as a direct purchaser of books sold by the Publisher Defendants at wholesale prices that are artificially inflated by Defendants' conduct.  SAC ¶¶ 1, 112, 120-23, 149.  However, this does not change the fact that:

> "[a] firm complaining about the harm it suffers from nonpredatory price competition is really claiming that it [is] unable to raise prices," which "is not *antitrust* injury." *See Atl. Richfield Co.*[*v. USA Petrol. Co.*, 495 U.S. 328, 337-38 (1990)] (internal quotation marks and citations omitted, alteration and emphasis in original); *see also Port Dock* [*& Stone Corp. v. Oldcastle Northeast, Inc.*, 507 F.3d 117, 122 (2d Cir. 2007)] ("Despite their actual injury from price competition, the competitors would not have antitrust injury, for it is axiomatic that the antitrust laws do not protect a competitor against competition.") (citation omitted).

R&R, at 31.

The SAC again states that Bookends receives a "standard discount price of up to 46%" off the wholesale price of books.  SAC ¶¶ 6, 152.  "Plaintiff was thus not constrained to sell books at list price, because having bought them at a substantial discount off of list price, it could have sold

them to consumers for less than list price and still have made a profit on each sale."  R&R, at 31.

"That Plaintiff may have had to charge a retail price that was lower than the list price, to compete

with Amazon's lower price, does not amount to antitrust injury."  *Id.*  Nothing in the SAC changes

that conclusion.  Plaintiff still has not alleged the existence of antitrust injury.[8]

### 2.  Plaintiff Has No Direct Evidence of an Agreement Between Defendants.

Plaintiff repeats its meritless allegation that the inclusion of meeting-competition clauses in

certain contracts demonstrates a horizontal agreement by the Publisher Defendants to collectively

lower their prices to Amazon.  But as Plaintiff explicitly admits in its pre-motion letter, the Court

rejected this argument because "[a]n agreement that contains lawful contractual terms, standing

alone, is not direct evidence of a conspiracy" and it is not "inherently unlawful . . . for each

Publisher, acting alone, to enter into the same distribution agreement with Amazon, even if it knew

that its competitors were also doing the same . . . absent some preceding agreement to act

collectively."  ECF No. 171 at 2 (quoting R&R, at 13-14).  By Plaintiff's own admission, nothing

has been alleged to change this holding.

### 3.  Plaintiff Fails to Demonstrate Circumstantial Evidence of an Agreement Between Defendants.

Plaintiff's allegations of circumstantial evidence of an agreement between the Defendants is

likewise meritless and repeats language from the First Amended Complaint, which the Court

rightfully rejected.

In its pre-motion letter, Plaintiff argues that its allegations about the magnitude of the

purchase discounts that Amazon receives from various Publisher Defendants supports a finding that

those publishers were acting against their own unilateral interest.  ECF No. 171, at 3.  However, those

---

[8]       In addition to supporting dismissal of Plaintiff's two conspiracy (Second and Fourth) causes of action, the absence of antitrust injury is fatal to Plaintiff's monopolization (Third) cause of action.  *See* R&R at 33.

additional alleged facts do not address the Court's reasoning, which was that "Plaintiff's own allegations readily explain why each Publisher would have independently decided to distribute print books through Amazon, even without a guarantee that the other Publishers would follow." R&R, at 16. The SAC adds nothing new to overcome that finding. Plaintiff's bald insistence that the Publisher Defendants are acting collectively rather than individually, *see* ECF No. 171, at 3, provides no basis for the Court to reconsider its prior conclusion. As before, "a Publisher, acting alone, would have sought to distribute books through Amazon: it could not afford to lose a retailer that accounted for more than 50% of the retail market and 90% of the online retail market for print books." *Id.* at 17; *see also* SAC ¶¶ 137-38 (re-alleging the facts underlying the Court's holding).

In addition to purported actions against self-interest, Plaintiff recites a litany of other purported plus factors that it argues are evidence of a conspiracy, which likewise fail for the reasons previously stated. *See* R&R, at 20-28. As before, the alleged plus factors "do not raise a plausible inference that the Publishers acted collectively because, viewed collectively, they do not describe the existence of an environment that required collective action for the Publishers and Amazon to fulfil their respective goals." R&R, at 27-28.[9]

**B.    The Sherman Act Does Not Independently Prohibit Price Competition.**

All three of Plaintiff's Sherman Act claims also fail for the reason that, in the absence of a horizontal conspiracy, the conduct of which Plaintiff complains is not prohibited by the Act. "Interbrand competition . . . is the 'primary concern of antitrust law'" and "[t]he Robinson– Patman Act signals no large departure from that main concern." *Volvo Trucks N. Am., Inc. v. Reeder-Simco*

---

[9]    Plaintiff also spends numerous paragraphs alleging that findings made in *United States v. Bertelsmann SE & Co. KGaA*, No. CV 21-2886-FYP, 2022 WL 16748157 (D.D.C. Nov. 7, 2022), somehow demonstrate the existence of a horizontal conspiracy. SAC ¶¶ 59-69. But the statements from that case that are included in the SAC relate to the Court's understanding of how the events from the *Apple* litigation bore upon the legality of a then-pending merger that was successfully challenged based upon its probable effects upon competition for the acquisition of literary rights for anticipated best selling works. Nothing about that case plausibly supports the existence of the horizontal conspiracy alleged in this case.

*GMC, Inc.*, 546 U.S. 164, 180-81 (2006) (quoting *Continental T. V., Inc. v. GTE Sylvania Inc*., 433 U.S. 36, 51-52 n.19 (1977)). "Low prices benefit consumers regardless of how those prices are set, and so long as they are above predatory levels, they do not threaten competition." *Pac. Bell Tel. Co. v. linkLine Commc'ns, Inc.*, 555 U.S. 438, 451 (2009) (quoting *Atl. Richfield Co.*, 495 U.S. at 340).

These core principles of antitrust law are fatal to Plaintiff's Second, Third, and Fourth Causes of Action. While Plaintiff again devotes many paragraphs to alleging the existence of a horizontal conspiracy among Amazon and the Publisher Defendants, SAC ¶¶ 35-69, 164-83, it concedes that its current allegations do not overcome the Court's previous finding that the Complaint fails to allege facts sufficient to make the existence of a horizontal conspiracy plausible. R&R at 9-33. Absent such a horizontal conspiracy, there is no number of conclusory references to "price-fixing" that can obscure the fact that Plaintiff is complaining about lawful independent vertical distribution agreements: "[a]t bottom, Plaintiff's complaint is that Amazon was given a lower wholesale price, allowing it to charge a lower retail price to consumers without jeopardizing its profit margin." *Id.* at 32. Nothing in either Section 1 or Section 2 of the Sherman Act remotely prohibits a retailer like Amazon from negotiating for the best possible wholesale prices that it can obtain, so that it can offer its customers better retail prices. To the contrary, that is "the very essence of competition." *Matsushita Elec. Indus. Co.*, 475 U.S. at 594. The Court should again reject Plaintiff's attempt to pursue claims that are antithetical to the very antitrust laws upon which it purports to rely. Those laws were after all "enacted for 'the protection of *competition*, not *competitors*.'" R&R at 32 (quoting *Atl. Richfield Co.*, 495 U.S. at 338 (emphasis in original)). Plaintiff's Sherman Act claims all fail for that reason.

### C.      Plaintiff's Monopolization Claim Fails Again.

The Court rejected Plaintiff's monopolization claim because it was premised on Plaintiff alleging a horizontal price-fixing conspiracy, which it had failed to do.  R&R, at 28.  Plaintiff is wrong to now argue that a horizontal conspiracy among publishers is unnecessary to establish a monopolization claim against Amazon.  *See* ECF No. 171, at 5.  Plaintiff still repeats, verbatim, that:

> Through its anticompetitive agreements with the Big Five, Amazon has willfully acquired and maintained its monopoly power in the relevant market by unlawful and improper means, *including Defendants' discriminatory pricing agreements and agreement to control the wholesale prices of print trade book*s.

*Compare* SAC ¶ 187, *with* FAC ¶ 128 (emphasis added).  Because the horizontal conspiracy claim fails for multiple reasons as explained above, the monopolization claim fails as well.

Absent any basis to find the existence of the alleged conspiracy, the SAC does not allege anything that could constitute illegal acquisition or maintenance of a monopoly.  Amazon is alleged to have negotiated for and received better prices, and to have passed on much of its discount to consumers in the form of lower retail prices.  SAC ¶ 105.  It turns antitrust law on its head to characterize *competition* as somehow constituting illegal, monopolistic behavior.  The Third Cause of Action must be dismissed with prejudice.

### D.      Plaintiff's Attempts to Allege a Conspiracy to Charge "Discriminatory" Prices Fail to State a Claim.

Plaintiff's Second and Fourth causes of action fail for the additional reason that they impermissibly seek to assert a conspiracy to violate the RPA, a cause of action that does not exist and is, in any event, unsupported by the facts alleged in the SAC.

Plaintiff's attempt to allege a series of vertical conspiracies to violate the RPA fails as a matter of law.  The RPA does not countenance such a claim.  *See FTC v. Henry Broch & Co.*, 363 U.S. 166, 174 (1960) (the RPA "is aimed at price discrimination, not conspiracy"); *see also Gen. Supply Deck & Floor Underlayment Co. v. Maxxon S.W., Inc.*, No. 00-cv-2745, 2001 WL 1480768, *4 (N.D. Tex.

16

Nov. 19, 2001) ("There is no provision in the Robinson–Patman Act providing for such a claim—'[t]he Act is aimed at price discrimination, not conspiracy.'"); *Drug Mart Pharm. Corp. v. Am. Home Prods. Corp.*, 378 F. Supp. 2d 134, 140 (E.D.N.Y. 2005) ("[R]esearch has not revealed a single case in which a conspiracy claim was asserted and allowed in a Robinson–Patman case."); *Bishop v. GNC Franchising L.L.C.*, 403 F. Supp. 2d 411, 424 (W.D. Pa. 2005) ("[T]here exists no authority for allowing a conspiracy claim under the Robinson–Patman Act.").

Moreover, as the Court previously recognized, because Plaintiff has not alleged the existence of a horizontal price-fixing conspiracy among the Publishers, Plaintiff's Section 2 conspiracy to monopolize claim against Defendants necessarily fails.   See R&R, at 28 (citing *Electronics Communications Corp. v. Toshiba Am. Consumer Products, Inc.*, 129 F.3d 240, 246 (2d Cir. 1997) (listing "concerted action" as an element of a Section 2 conspiracy to monopolize claim)).

Plaintiff's Second and Fourth Causes of Action therefore fail as a matter of law.

## CONCLUSION

For all of these reasons, Plaintiff's Second Amended Complaint should be dismissed with prejudice.

Dated:  January 23, 2023

Respectfully Submitted,

/s/ John E. Schmidtlein
John E. Schmidtlein (*Pro Hac Vice*)
Jonathan B. Pitt (S.D.N.Y. Bar No. jp0621)
Carl R. Metz (*Pro Hac Vice*)
WILLIAMS & CONNOLLY LLP
680 Maine Avenue, S.W.
Washington, DC 20024
Tel.: (202) 434-5000
Fax: (202) 434-5029
JSchmidtlein@wc.com
JPitt@wc.com
CMetz@wc.com

17

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing Memorandum of Law in Support of Amazon's Motion to Dismiss Plaintiff's Second Amended Complaint has been filed and served upon counsel of record via ECF electronic notification.


Dated:  January 23, 2023

Respectfully Submitted,

/s/ John E. Schmidtlein
John E. Schmidtlein (*Pro Hac Vice*)